IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF ESTHER KLIEMAN, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE PALESTINIAN AUTHORITY et. al., )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 04-1173 (PLF) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS PALESTINIAN AUTHORITY AND PALESTINE LIBERATION ORGANIZATION

### Preliminary Statement

This is an action for wrongful death, personal injury, international terrorism and related torts pursuant to the Antiterrorism Act, 18 U.S.C. §2331 *et. seq.* and 28 U.S.C. §1602 *et. seq.*, brought by American citizens, and by the family members and the administrator of the Estate of Esther Klieman, an American citizen, who was murdered on March 24, 2002 in a terrorist attack when a group of terrorist snipers shot at the public bus in which Ms. Klieman was riding on the Abud by-pass road in the State of Israel with the intent to injure or murder Ms. Klieman and possibly others.

The defendants in this action are the Palestinian Authority, the Palestinian Liberation Organization ("PA/PLO"), Al Aqsa Martyrs' Brigade ("AL AQSA"), FATAH, TANZIM, FORCE 17, Yassar Arafat, now deceased, ("ARAFAT"), Marwan Barghouti, Tamer Rassam Salim Rimawi (hereinafter "RIMAWI"), Hussam Abdul-Kader Ahemed Halabi a/k/a Abu Arav (hereinafter "HUSSAM'), Ahmed Hamad Rushdie Hadib

a/k/a Ahemed Barghouti (hereinafter ""HADIB") and Anan Azis Salim Hashash (hereinafter "HASHASH").

On July 13, 2004 Plaintiff filed its Complaint against the defendants for the damages resulting from the murder of Esther Klieman in this terrorist attack. Following the filing of the Complaint, defendants, the Palestinian Authority, the Palestinian Liberation Organization (a.k.a. P.L.O), Fatah, Al Aqsa Martyrs Brigade, Tanzim, Force 17, and Yasser Arafat were served with process on the 11th of August, 2004 in accordance with Fed. R. of Civ. P. 4 (e)(2) and (h)(1).

On November 4, 2004 and again on November 16, 2004 plaintiffs' counsel as well as counsel for the defendants PA/PLO and Yasser Arafat, now deceased, and the Estate of Yasser Arafat, "Arafat Estate" and some or all of the other defendants appeared before this Court for status/scheduling conferences.[1] At the time of these status/scheduling conferences counsel for the defendants PA/PLO, Arafat and the Arafat Estate advised the Court that the PA/PLO would be asserting a defense of sovereign immunity pursuant 28 U.S.C. § 1604 and 18 U.S.C.§2337, and accordingly would be filing Rule 12(b) motions to dismiss the Complaint on those grounds. A scheduling order for the Rule 12(b) motions was then entered by this Court. At that time, plaintiffs petitioned the Court to be permitted to conduct discovery while the motion to dismiss was pending and being briefed. However, because of the PA/PLO's objection on sovereign immunity grounds, the Court entered an Order to stay discovery in this proceeding until it had ruled on the issue of the sovereign immunity defense being asserted by the PA/PLO.

---

[1] Maher Hanania, Esq. appeared at these status/scheduling conferences for the defendants. At the time of said conferences and in the Joint Status Report filed by the parties, Mr. Hanania advised the Court that he was entering his appearance on behalf of the PA/PLO, Yasser Arafat and the Arafat Estate, however, he was unsure what other defendant entities and/or persons he and his co-counsel, Lawrence Schilling and

2

The Court further indicated that the plaintiffs could file with the Court information relevant to the Court's ruling staying discovery.

The issues anticipated to be filed by the PA/PLO have previously been determined in other proceedings against the PA and PLO. No United States District Court has held that the PA or the PLO to be a sovereign state entitled to immunity from judicial proceedings in the United States. By continuing to attempt to assert this non-existent immunity, the PA/PLO are doing nothing more than intentionally attempting to delay the plaintiffs from proceeding with the orderly and efficient administration of justice in this matter. Plaintiffs assert that the issue of sovereign immunity has been repeatedly determined against the PA and PLO and that the defendants claims to sovereign immunity are by collateral estoppel. Plaintiffs, accordingly now move for partial summary judgment establishing that neither the PA nor the PLO is immune from this action under 28 U.S.C. § 1604 or 18 U.S.C. §2337 and further seek to commence discovery in the within action after a ruling by the Court on the issues presented herein. Plaintiffs seek partial summary judgment on grounds of collateral estoppel, as detailed below.

## ARGUMENT

### I. DEFENDANTS' CLAIMS TO SOVEREIGN IMMUNITY ARE BARRED BY COLLATERAL ESTOPPEL

Defendants' PA/PLO have advised the Court and plaintiffs' counsel that they intend to seek to dismiss this action on the grounds that they meet the definition of "foreign state" under the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1604 and 18 U.S.C. §2337 and are therefore immune from this action. This issue has been

---

Ramsey Clark would be representing.

repeatedly determined by other courts against these very defendants, represented by the same counsel, Maher Hanania.

The United States District Courts for (a) the District of Columbia, (b) the Southern District of New York, and (c) the District of Rhode Island have thoroughly examined and analyzed – and resoundingly rejected – the very same statehood and immunity claims that defendants have asserted here. See Biton v. Palestinian Interim Self-Government Authority, 310 F.Supp.2d 172, 181 (D.D.C. 2004)(holding that the Palestinian Authority was not a sovereign state entitled to immunity in action under the Antiterrorism Act); Knox v. Palestine Liberation Organization, 306 F. Supp.2d 424 (S.D.N.Y. 2004) (holding that there is no independent state of Palestine for purposes of either international law, the Foreign Sovereign Immunities Act or United States law in general and thus neither the PA nor the PLO are entitled to sovereign immunity protection); Ungar v. Palestinian Authority, 315 F. Supp.2d 164, 177-78 (D.R.I. 2004) (denying a Rule 12(b) motion to dismiss), 325 F. Supp.2d 15, 26-27 (D.R.I. 2004) (entering final judgment).

The decisions in Biton, Ungar and Knox have conclusively established that defendants are not immune from suit under 28 U.S.C. §1604 or 18 U.S.C. §2337. The doctrine of collateral estoppel therefore precludes the PA/PLO from re-asserting and re-litigating their immunity claims in this action, and entitles plaintiffs to summary judgment on those claims.

### A. Collateral Estoppel — General

Under the doctrine of collateral estoppel, " a final judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in

4

the prior suit, regardless of whether the subsequent suit is based on the same cause of action." Next Wave Pers. Communications, Inc. v. F.C.C., 254 F.3d 130, 147 (D.C. Cir. 2001) ( citing I.A.M. Natl'l Pension Fund v. Indus. Gear Mfg. Indus., 723 F.2d 944, 947 (D.C. Cir. 1983)).

The Court of Appeals for this district has explained the rationale behind the doctrine:

> Collateral estoppel serves three main purposes. It protects litigants from the burden of relitigating an issue which the other party has already litigated and lost. It promotes judicial economy by preventing needless litigation. Finally, it fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

Southern Pacific Communications Co. v. Am. Tel. & Tel. Co., 740 F.2d 1011, 1019 (D.C. Cir. 1984) (internal quotes and citations omitted) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) and Montana v. United States, 440 U.S. 147, 154 (1979)).

Collateral estoppel will apply when "(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was actually litigated in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action." Thomas v. Gen. Services Admin., 794 F.2d 661, 664 (Fed. Cir. 1986) (internal quotes and citations omitted).

### B. The Decisions in Ungar, Biton and Knox Have Full Preclusive Effect

The final judgment in Ungar is currently pending appeal before the Court of Appeals for the First Circuit. That pending appeal, however, has no effect whatsoever on its preclusive force in this action. The Court of Appeals in this Circuit has long held that

5

Case 1:04-cv-01173-PLF   Document 17-1   Filed 12/01/04   Page 6 of 15

"the federal rule and the rule in this circuit is that collateral estoppel may be applied to a trial court finding even while the judgment is pending on appeal." Southern Pacific Communications, 740 F.2d at 1018 (D.C. Cir. 1984). See Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 189 (1943)l; Nixon v. Richey, 513 F.2d 430, 438 n.75 (D.C. Cir. 1975). See also Wagner v. Taylor, 836 F.2d 596, 598-99 (D.C. Cir. 1987) (holding that district court judgment in employment discrimination case barred relitigation of identical claims in second case, even though appeal from first judgment was still pending); Hunt v. Liberty Lobby, 707 F.2d 1493, 1498 (D.C. Cir. 1983) ("The federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel") (quoting with approval Moore's Federal Practice); Synanon Church v. United States, 579 F.Supp. 967, 974 (D.D.C. 1984) ("The rule for both District of Columbia and federal courts is that the pendency of an appeal does not impair the conclusiveness of a final judgment" for purpose of collateral estoppel and party's objection to the application of collateral estoppel on basis that prior judgment was pending appeal is therefore "without merit.")

The decisions of the Ungar court denying defendants' Rule 12(b) motion to dismiss, 315 F. Supp.2d 164, and entering final judgment, 325 F. Supp.2d 15, conclusively and finally disposed of defendants' sovereign immunity claims and therefore have full preclusive effect irrespective of the pending appeal.
The decisions in Biton and Knox also have full preclusive effect under the doctrine of collateral estoppel. The Court of Appeals for this circuit has long held that collateral estoppel will arise from any conclusive decision, whether or not that decision is a "final judgment" in the technical sense of the term. In Donovan v. United States Postal Service,

6

the plaintiff argued that it could only be estopped from challenging the facts found by the judge in a separate case if "those facts formed the predicate for a final judgment within the meaning of 28 U.S.C. §1291." 530 F. Supp. 894, 898-899 (D.D.C. 1981). The Court rejected this contention, holding that"[u]nder collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive . . ." (quoting Montana v. United States, 440 U.S. 147, 153 (1979) . . . The court in Donovan went on to explain that "the finality requirement for collateral estoppel is not governed by 28 U.S.C. § 1291. Rather, it is governed by a rule of reason." Id. The court looked to Judge Friendly's opinion for the Second Circuit in Lummus Co. v. Commonwealth Oil Refining Co. to explain that "whether a judgment, not final in the sense of 28 U.S.C. §1291, ought nevertheless be considered "final" in the sense of precluding litigation on the same issues, turns upon such factors as the nature of the decision (i.e. that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context as here relevant means little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." Id. (quoting Lummus Co. v. Commonwealth Oil Refining Co, 297 F.2d 80, 89 (2d Cir. 1961)). The Court then noted that not only has the Second Circuit consistently affirmed this approach, but this approach has also been approved by three other circuits and the Restatement (Second) of Judgments. Id. at 899; see also United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262, 1265 (2d. Cir. 1975), Restatement (Second) of Judgments § 13 ("for purposes of issue preclusion ... 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.").

7

The exhaustive, treatise-like decision of the <u>Knox</u> court was unequivocal, categorical and clearly intended to be finally dispositive of defendants' claims to immunity. Moreover, in <u>Biton</u>, Judge Collyer, reaffirmed the holding in <u>Knox</u>, unequivocally stating that the "Court must conclude that neither §2337(2) of the ATA nor § 1604 of the FSIA" bars lawsuits against the PA/PLO. Thus, <u>Biton</u> and <u>Knox</u> are "sufficiently firm to be accorded conclusive effect," and that decision—together, of course, with the decisions in <u>Ungar</u>—collaterally estop defendants from pursuing their statehood and immunity claims in this Court and entitle plaintiffs to summary judgment on those claims.

### C. <u>Collateral Estoppel Applies to a Holding That Defendants Are Not Foreign States</u>

This Court has specifically ruled that a previous determination by another federal court that a defendant is not a "foreign state" will collaterally estop that defendant from repeating and relitigating its claim to statehood in a later proceeding before this Court.

For example, in <u>In re Rimsat Ltd. v. Hilliard</u>, a party previously asserted in an Indiana federal court that he met the definition of "foreign state" under the FSIA and enjoyed foreign sovereign immunity. 207 B.R. 964 (D.D.C. 1997). The Indiana federal court thoroughly examined the respondent's statehood and immunity claims and rejected them. Judge Lamberth ruled that the respondent was collaterally estopped from relitigating his statehood and immunity claims in this Court:

> Hilliard . . . argues that the D.C. Bankruptcy Court erred in refusing to hear his argument concerning his alleged sovereign immunity. Because Hilliard had fully litigated the issue in the Indiana Bankruptcy Court, Judge Ted believed the complainant was collaterally estopped from re-adjudicating the exact same issue in the D.C. Bankruptcy Court. Judge Ted's analysis is correct.

8

> The doctrine of issue preclusion or collateral estoppel is applicable if "(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was actually litigated in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action." Thomas v. General Services Admin., 794 F.2d 661, 664 (Fed. Cir. 1986) (internal quotations omitted). See also Otherson v. Department of Justice, Immigration and Naturalization Serv., 228 U.S. App. D.C. 481, 711 F.2d 267, 272 (D.C. Cir. 1983).
>
> Applying this test to the case at bar, it is clear that Hilliard is precluded from re-arguing his immunity claim before this court. The Indiana Bankruptcy Court previously heard Hilliard's argument pertaining to his alleged immunity. The issue was fully litigated. The bankruptcy judge found that Hilliard was not an "agent or instrumentality" of Nevis for purposes of the FSIA. In Re: RIMSAT, Ltd. v. Hilliard, No. 95-10 120 (Bank. N.D. Ind. 1995). As a result, he could not claim sovereign immunity to avoid appearing before the Indiana Bankruptcy Court. This determination was necessary to the order granting partial summary judgment in favor of RIMSAT. Hilliard was of course fully represented in the proceedings.
>
> Hilliard now asks this court to decide the exact same issue resolved by the Indiana Bankruptcy Court, namely his alleged immunity under the FSIA. He also invited the D.C. Bankruptcy Court to rule upon this issue. Judge Ted properly declined the invitation, finding the doctrine of collateral estoppel forbid him from re-deciding the already adjudicated issue. So too must this Court reject Hilliard's offer. The four-prong collateral estoppel test has clearly been met. This court is therefore barred from ruling upon the previously determined issue of Hilliard's immunity under the FSIA.

Id. at 967-968.

Like Hilliard, the instant defendants have advised the Court of their intent to claim that the PA/PLO is a "foreign state" in proceedings in this Court, notwithstanding adverse determinations in another federal court (indeed, before several other federal courts) and Hilliard is thus perfectly apposite to the case at bar: First, the issues adjudicated in Ungar, Biton and Knox — defendants' claims to "foreign state" status under the FSIA and 18 U.S.C. §2337 — are identical to those before this Court. Indeed, the defendants are attempting not only to assert this defense in this matter, but also in two other matters in this Court; Shatsky v. Syrian Arab Republic, (D.D.C. 02 CV 2280

9

(RJL)) and Gilmore v. Palestinian Interim Self-Government Authority (D.D.C. 01 CV 00853 (GK)). In fact, the evidence submitted by defendants in the Shatsky and Gilmore actions in support of their Rule 12(b) motions consists arguments which are supported by of copies of the same affidavit and exhibits submitted by them in Ungar.

Since this action like, Biton, Ungar and Knox all "rais[e] the same issues of fact and law with respect to Palestinian statehood, sovereignty and immunity," the decisions in Biton, Ungar and Knox are per force dispositive of those issues in the instant action under the doctrine of collateral estoppel. So too, like Hilliard's claim to sovereign status and immunity, defendants' claims were "fully litigated" in Biton, Ungar and Knox. The PA/ PLO were fully and vigorously represented in Biton, Ungar and Knox by a battery of extremely capable and experienced counsel, as indicated in the captions of those decisions.[2]

Finally, in Biton, Ungar and Knox the disposition of the immunity claims was necessary to the final decisions. Indeed, the statehood and immunity claims were not merely "necessary to" but rather the main subject of the decisions in Ungar and Knox. Additionally, the immunity decision in Ungar was of course "necessary to" the entry of final judgment in that case.

All the conditions for collateral estoppel are therefore met, and like in Hilliard, the instant defendants are collaterally estopped from pursuing their baseless claims to "foreign state" status and sovereign immunity in the proceeding before this Court. Plaintiffs are therefore entitled to entry of summary judgment on those claims so that this case may proceed with the orderly and efficient administration of justice.

---

[2] In fact, Maher Hanania, counsel for the PA/PLO in this matter, represented the PA/PLO in the Biton matter as well. Ramsey Clark and Lawrence Schilling also represented the PA and PLO in the Ungar

10

## II. PARTIAL SUMMARY JUDGMENT ON GROUNDS OF COLLATERAL ESTOPPEL IS APPROPRIATE AND DESIRABLE

Summary judgment "is especially appropriate where the issues in dispute are purely legal. . . ." Amer. Family Mut. Ins. Co.v. Welton, 926 F.Supp. 811 (S.D. Ind. 1996); see also Walsh v. United States, 31 F.3d 696, 698 (8th Cir. 1994) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); Tri-State Mint, Inc. v. Riedel Environmental Services, 29 F.3d 424, 426 (8th Cir. 1994) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); Hulmes v. Honda Motor Co., 924 F.Supp. 673 (D.N.J. 1996) (motion presenting only questions of law is ripe for summary adjudication).

The question of whether collateral estoppel precludes a claim or issue is a purely legal question, to be determined by comparing a previous judicial decision (the substance of which obviously brooks no factual argument) with the claim or issue *currently* before the court. Since the application of collateral estoppel raises only purely legal questions, the federal courts frequently grant partial summary judgment and summary judgment on the basis of collateral estoppel. See United States v. TDC Mgmt. Corp., 288 F.3d 421 (D.C. Cir. 2002); Minneapolis Cnty. Dev. Agency v. Buchanan, 268 F.3d 562 (8th Cir. 2001); Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America, Inc., 32 F.3d 528 (11th Cir. 1994); Richey v. United States Internal Revenue Service, 9 F.3d 1407 (9th Cir. 1993); Goodson v. Sedlack, 212 F. Supp.2d 255 (S.D.N.Y. 2002); In re Treshman, 258 B.R. 613 (Bkrtcy. D.Md. 2001); United States v. Myers, 38 F.R.D. 194 (N.D.Cal. 1964).

---

matter.

Moreover, the federal courts commonly grant partial summary judgment in order to dispose of a defendant's affirmative defense. See, e.g., Fed. Deposit Ins. Corp. v. Giammettei, 34 F.3d 51, 54-55 (2d Cir. 1994) (holding and citing precedent for the rule that summary judgment may be utilized to eliminate an affirmative defense, and affirming the district court's grant of partial summary judgment disposing of defendants' affirmative defenses); Transmatic, Inc. v. Gulton Industries, Inc., 53 F.3d 1270, 1274-1275 (Fed. Cir. 1995) (affirming district court's grant of partial summary judgment dismissing defendant's affirmative defense); Int'l Ship Repair and Marine Services, Inc. v. St. Paul Fire and Marine Ins. Co., 944 F.Supp. 886, 891 (M.D.Fla. 1996)(using partial summary judgment to dispose of affirmative defenses).

Plaintiffs' motion for partial summary judgment disposing of defendants' immunity defenses on grounds of collateral estoppel is therefore well-founded and eminently appropriate and is in the interests of justice and judicial economy. Indeed, entry of partial summary judgment on grounds of collateral estoppel is especially proper and desirable in the instant case as the issues being raised have already been determined. Collateral estoppel is specifically designed to "promote[] judicial economy by preventing needless litigation." Southern Pacific, 740 F.2d at 1019 (D.C. Cir. 1984). Defendants' proposed immunity claims have not only been disposed of three times by three other federal courts, but the mere assertion to the Court that they will be raised yet again is indeed frivolous. In his opinion entering final judgment in Ungar, Judge Lagueux stated unequivocally that "there is no basis whatsoever for the PA or PLO to claim sovereign immunity." Ungar, 325 F. Supp.2d at 24 (emphasis added).

It would be an egregious waste of judicial resources precisely of the sort that the

12

doctrine of collateral estoppel is intended to prevent, for this Court to analyze and author yet another lengthy decision disposing of a claim for which there is "no basis whatsoever" in the first place, and which has been thoroughly analyzed and conclusively rejected by not only this federal court, but by two other federal courts determining this issue against the same defendants and therefore is now barred.

### III.  CONCLUSION

Plaintiffs' motion should be granted and the plaintiffs should be permitted to thereafter commence with discovery in accordance with a case management and scheduling order to be determined by the Court.

Dated: December 1, 2004

Respectfully submitted,

HEIDEMAN LEZELL NUDELMAN
 & KALIK, P.C.
1146 19th Street, N.W.
Fifth Floor
Washington, DC  20036
Telephone: 202-463-1818
Telefax: 202-463-2999
Email: attorneys@hlnklaw.com

By: /s/ Richard D. Heideman
    Richard D. Heideman (No. 377462)
    Noel J. Nudelman (No. 449969)
    Tracy Reichman Kalik (No. 462055)

PERLES LAW FIRM, P.C
Steven R. Perles (No. 326975)
Edward MacAllister
1615 New Hampshire Avenue, NW
Suite 200
Washington, DC  20009
Telephone: 202-745-1300
Telefax:    202-365-4815

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December 2004, a copy of the foregoing was served via the United States District Court for the District of Columbia's ECF system:

>Maher Hanania
>6066 Leesburg Pike, Suite 101
>Falls Church, VA 22041
>Telephone: (703) 778-2400
>Telefax: (703) 778-2407

and mailed, postage prepaid, to:

>Ramsey Clark, Esq.
>Lawrence W. Schilling, Esq.
>36 East 12th Street
>New York, NY  10023
>
>Counsel for the Defendants

/s/  <i>Tracy Reichman Kalik</i><br>Tracy Reichman Kalik