UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ESTATE OF ESTHER KLIEMAN, et al.,       )
                                        )
          Plaintiffs,                   )
                                        )
     v.                                 )          Civil Action No. 04-1173 (PLF)
                                        )
PALESTINIAN AUTHORITY, et al.,          )
                                        )
          Defendants.                   )
_____ )

OPINION

          The estate, survivors and heirs of Esther Klieman, a United States citizen, have

brought this action under Section 2333 of the Antiterrorism Act of 1991 ("ATA"), 18 U.S.C.

§§ 2331 et seq., and various tort theories, against the Palestinian Authority (the "PA"), also

known as the Palestinian Interim Self-Government Authority and the Palestinian National

Authority; the Palestine Liberation Organization (the "PLO"); Al Aqsa Martyrs Brigade ("Al

Aqsa"); Fatah; Tanzim; Force 17; Yasser Arafat, now deceased; Marwan Barghouti; Tamer

Rassam Salim Rimawi; Hussam Abdul-Kader Ahmad Halabi, also known as Abu Arav; Ahmed

Hamad Rushdie Hadib, also known as Ahmed Barghouti; and Annan Aziz Salim Hashash.[1]  On

March 30, 2006, the Court issued an Opinion and an Order denying defendants' first motion to

dismiss and granting plaintiff's partial motion for summary judgment.  See Klieman v.

_____

[1]     The ATA claim appears in Count One of the complaint.  The common law tort
theories, pled pursuant to 28 U.S.C. § 1367, are negligence, gross negligence, and intentional and
negligent infliction of emotional distress (Counts Two through Five), as well as similar causes of
action under Israeli law (Counts Six through Eight).  Plaintiffs also assert a claim for punitive
damages (Count Nine).

<u>Palestinian Auth'y</u>, 424 F. Supp. 2d 153 (D.D.C. 2006) ("<u>Klieman I</u>").  On December 29, 2006, the court issued an Opinion and Order holding that service of process was ineffective to establish personal jurisdiction over defendants and granting plaintiffs 30 days to perfect service, after which the action would be dismissed if service was not effected.  See Klieman v. Palestinian <u>Auth'y</u>, 467 F. Supp. 2d 107 (D.D.C. 2006) ("<u>Klieman II</u>").

To summarize, in <u>Klieman I</u> the Court held that: (1) collateral estoppel precluded the relitigation of the issues surrounding defendants' assertion of sovereign immunity and that sovereign immunity does not divest this Court of jurisdiction to hear this case, <u>see</u> <u>Klieman I</u> at 159; (2) judicial resolution of this case was not precluded by the political question doctrine, <u>see</u> <u>id</u>. at 162; (3) the attack alleged in the Complaint did not occur "in the course of" an armed conflict and therefore was not an "act of war" outside of the jurisdiction of the ATA, <u>see</u> <u>id</u>. at 167; and (4) whether the attack at issue met the definition of "international terrorism" in the ATA involved a disputed question of material fact which should not be decided by the Court in the context of a motion to dismiss.  <u>See</u> <u>id</u>.  In that Opinion , the Court also granted defendants leave to "raise additional jurisdictional defenses by motion."  <u>Id</u>. at 168.

In <u>Klieman II</u> the Court held that service of process on a researcher at the PLO offices in Washington, D.C., was ineffective to establish personal jurisdiction over the defendants.  <u>See</u> <u>Klieman II</u> at 115.  The Court granted the plaintiffs an additional 30 days from the date of the Opinion and Order to serve process upon the defendants.  <u>See</u> <u>id</u>.

This matter is now before the Court on defendants' third motion to dismiss.[2]

Defendants move to dismiss for lack of personal jurisdiction due to insufficient service of

process on both the individual and the organizational defendants under the Court's Opinion in

Klieman II.[3]   For the reasons discussed below, the Court concludes that the PLO and PA were

properly served but that the individual defendants and Fatah, Al Aqsa, Tanzim and Force 17 were

not properly served.   The Court thus dismisses the individual defendants and Fatah, Al Aqsa,

Tanzim and Force 17 from this case.

## I. BACKGROUND

The Court summarized the facts alleged in the complaint in each of its two earlier

opinions and will not do so again here.   See Klieman I at 155-56 and Klieman II at 110-11.

After the Court issued its second opinion, plaintiffs did not attempt to serve

process on any of the individual defendants.   Plaintiffs assert that they "served the Organizational

Defendants by mailing the service documents to the PLO/PA offices in Washington, DC by pre-

paid United States first class certified mail, return receipt requested" and "by personal service on

Afif Emile Safieh, head of the PLO Mission to the United States."   Opp. at 4.   Plaintiffs

---

[2]        The briefs submitted with respect to this motion include: Defendants' Motion for Dismissal of Plaintiff's Claims Pursuant to Fed.R.Civ.P. 4(m) and 12(b) ("Mot."); Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Third Motion to Dismiss ("Opp."); Defendants' Supplemental Memorandum of Points and Authorities in Support of their Third Motion to Dismiss ("Defs' Supp."); and Plaintiffs' Supplemental Memorandum of Points and Authorities in Opposition to Defendants' Supplemental Memorandum in Support of their Third Motion to Dismiss )("Pls' Supp.").

[3]        The PLO and the PA also argue, again, that there are insufficient "minimum contacts" to satisfy due process.   See Mot. at 2-6.   These arguments are also the subject of a pending motion for reconsideration, and will be addressed in a separate opinion.

submitted an Affidavit of Proof of Service from process server Faye N. Eisen, which appended

six certified mail return receipts, with respect to the PA, the PLO and the four other

organizational defendants.  See Opp., Ex. A at 6-12.  Peter Ormin of the PLO Mission in

Washington, D.C., signed all six certified mail return receipts, indicating that he received the

service documents for each organizational defendant at the PLO Mission on January 12, 2007.

See id.  Plaintiffs also filed six Affidavits of Process Server, with respect to the PA, the PLO and

the four other organizational defendants.  See Opp., Ex. B at 15-20.  The process server avers in

each Affidavit that he approached Mr. Safieh at his residence and "asked [Mr. Safieh] if he was

head of the PLO Mission" to which Mr. Safieh replied "yes."  See id.  The process server

informed Mr. Safieh that he (the process server) "had US District Court summons and related

documents for the Palestinian Liberation Organization, The Palestinian Authority, Al Aqsa

Martyrs Brigade, Fatah, Force 17, and Tanzim," after which Mr. Safieh replied, according to the

process server, "that he was authorized to accept them and took them in hand."  Id.  Mr. Safieh

flatly denies that he said this.  See Defs' Supp., Ex. A (Declaration of Afif Safieh) ¶¶ 12, 13 ("I

never told the man who served me with the papers that I was authorized to accept the papers"; "I

do not represent or serve as an agent for AAMB, Fatah, Force 17, or Tanzim.").

Plaintiffs aver that "the PA/PLO considers Mr. Safieh to be the United States

'represent[ative of] the [Palestinian] state in the making' and held him out to the public as such."

Opp. at 10.  Plaintiffs also submitted printed pages of the PLO Mission website, identifying the

PLO Mission as "the official voice of Palestine in Washington" and Mr. Safieh as "Head of the

PLO Mission in Washington."  See Opp., Ex. C at 22-26.  Plaintiffs assert that "[by] serving the

PA/PLO, the Plaintiffs served all of the Organizational Defendants because Fatah, Al Aqsa,

Tanzim and Force 17 form an unincorporated association with the PLO and PA."  Opp. at 6.

Defendants concede that Safieh "is authorized to receive service of process in matters concerning

the PLO" but deny that process was properly effected with respect to the PA and the four other

organizational defendants.  See Mot. at 4-5.[4]  Because plaintiffs did not serve the six individual

defendants named in the Complaint, defendants assert that these defendants are "entitled to

dismissal from the case."  Mot.  at 2.

## II. DISCUSSION

### A. Applicable Legal Standards

As the Court previously noted, plaintiffs bear the burden of establishing personal

jurisdiction over each defendant.  See GTE New Media Services, Inc. v. Ameritech Corp., 21 F.

Supp. 2d 27, 36 (D.D.C. 1998), remanded on other grounds sub nom GTE New Media Services,

Inc v BellSouth Corp., 199 F. 3d 1343 (D.C. Cir. 2000).  In order to meet its burden, plaintiffs

must allege specific facts on which personal jurisdiction can be based; it cannot rely on

conclusory allegations.  See id.  Nor can plaintiffs aggregate factual allegations concerning

multiple defendants in order to demonstrate personal jurisdiction over any single defendant.  See

Rush v. Savchuk, 444 U.S. 320, 331-32 (1980) (rejecting aggregation of co-defendants' forum

contacts in determining personal jurisdiction because "the requirements of International Shoe

must be met as to each defendant over whom a . . . court exercises jurisdiction").  Furthermore,

when considering personal jurisdiction, the Court need not treat all of the plaintiffs' allegations

---

[4]      New counsel for the PA and the PLO have represented to the Court that they do
not represent these four entities.  Counsel, however, have briefed this issue.  The Court will
consider the issue as briefed because it affects the jurisdiction of the Court, regardless of whether
or not these entities are represented by counsel.

as true.  Instead, the court "may [also] receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts."  <u>Jung v. Assoc. of Amer. Medical Colleges</u>, 300 F. Supp. 2d 119, 127 (D.D.C. 2004) (quoting <u>United States v. Philip Morris Inc.</u>, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)); <u>see also</u> <u>Brunson v. Kalil & Co.</u>, 404 F. Supp. 2d 221, 223 (D.D.C. 2005).

Before a court may exercise personal jurisdiction over a defendant, the procedural requirement of proper service of summons must be satisfied to assure notice to the defendant. <u>See</u> <u>Omni Capital Int'l v. Rudolph Wolff & Co.</u>, 484 U.S. 97, 104 (1987); <u>Cambridge Holdings Group v. Federal Insurance Co.</u>, 489 F.3d 1356, 1361 (D.C. Cir. 2007).  There must also be a constitutionally sufficient relationship between the defendant and the forum, and a basis for the defendant's amenability to service of summons.  <u>See</u> <u>Mwani v. Bin Laden</u>, 417 F. 3d 1, 8 (D.C. Cir. 2005); <u>Ungar v. Palestinian Authority</u>, 304 F. Supp. 2d 232, 249 (D.R.I. 2004).  These requirements stem from the Due Process Clause of the Constitution and are a restriction on judicial power as a matter of individual liberty.  <u>See</u> <u>Omni Capital Int'l v. Rudolph Wolff & Co.</u>, 484 U.S. at 104.

Plaintiffs now assert that the six organizational defendants were properly served pursuant to Rules 4(h)(1) and 4(e)(1) of the Federal Rules of Civil Procedure and Rules 4(c)(3) and 4(h) of the D.C. Rules of Civil Procedure.  <u>See</u> Opp. at 10.  According to Rule 4(h) of the Federal Rules of Civil Procedure, "a partnership or other unincorporated association that is subject to suit under a common name, must be served: (1) in a judicial district of the United States . . . in the manner prescribed by Rule 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any

other agent authorized by appointment or by law to receive service or process . . . ." FED. R. CIV.

P. 4(h).  Rule 4(e)(1) provides that one way service may be effected is by "following state law for

serving a summons in an action brought in courts of general jurisdiction in the state where the

district court is located or where service is made[.]"  FED. R. CIV. P. 4(e)(1).  Rule 4(c)(3) of the

D.C. Rules of Civil Procedure provides that service in Washington, D.C., upon an

unincorporated association as described in Rule 4(h) "may be effected by mailing a copy of the

summons, complaint and initial order to the person to be served by registered mail, return receipt

requested."  D.C. R. CIV. P. 4(c)(3).

### B. Analysis

#### 1. Individual Defendants

Plaintiffs acknowledge that the six individual defendants in this case have not

been served with process.  The Court granted the plaintiffs an additional 30 days from the date of

Klieman II to properly serve process upon the individual defendants.  The Court indicated that

the plaintiffs' failure to comply with this Order would result in the dismissal of the individual

defendants pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  Because plaintiffs

failed to serve the individual defendants, defendants argue that "the individual defendants

are . . . entitled to dismissal from the case in accordance with [Klieman II]'s direction, at p. 8."

Mot. at 2; see also Defs' Supp. at 5.  The Court agrees.  Moreover, Local Civil Rule 7(b)

provides that "an opposing party shall serve and file a memorandum of points and authorities in

opposition to the motion.  If such memorandum is not filed within the prescribed time, the court

may treat the motion as conceded."  L. CIV. R. 7(b).  Plaintiffs did not oppose defendants'

argument with regard to service on the individual defendants.  See generally Opp.  Nor did they

attempt to serve the individuals.  Accordingly, the Court will dismiss without prejudice all six

individual defendants from this case.  See FED. R. CIV. P. 4(m).

### 2.  The PLO and the PA

The Court previously held that the PLO and PA both qualify as unincorporated

associations under Rule 4(h)(1) of the Federal Rules of Civil Procedure.  See Klieman II at 113.

Accordingly, the PLO and PA may be served with process under Rule 4(h)(1) of the Federal

Rules of Civil Procedure "by delivering a copy of the summons and of the complaint to an

officer, a managing or general agent, or to any other agent authorized by appointment or by law

to receive service of process."  FED. R. CIV. P. 4(h)(1); see Gorman v. Ameritrade Holding Corp.,

293 F. 3d 506, 514 (D.C. Cir. 2002).  "Generally, service is sufficient when made upon an

individual who stands in such a position as to render it fair, reasonable and just to imply the

authority on his part to receive service."  Direct Mail Specialists, Inc. v. Eclat Computerized

Technologies, Inc., 840 F. 2d 685, 688 (9th Cir. 1988) (internal quotations and citations omitted);

see Estates of Ungar ex rel. Strachman v. Palestinian Authority, 153 F. Supp. 2d 76, 90 (D.R.I.

2001).  In Ungar, the district court found that the Chief Representative of the PLO in the United

States, whose biography identified him as the chief representative of both the PLO and the PA in

the United States and who spoke on behalf of both the PLO and the PA more than once, qualified

as a "general or managing agent of the PLO and the PA."  Estates of Ungar ex rel. Strachman v.

Palestinian Authority, 153 F. Supp. 2d at 90.  The Ungar court determined that it was "fair,

reasonable and just to imply his authority to accept service on behalf of the PLO and the PA,

notwithstanding his assertions to the contrary." Id. at 91.

        Plaintiffs in this case assert that they have accomplished service of process on the PA and the PLO under Rule 4(h)(1) by serving Afif Emile Safieh (the person in the same position as that considered in Ungar) at his residence in Washington, D.C.  See Opp. at 4, 10.[5] Plaintiffs filed six Affidavits of Process Server and submitted printed pages of the official PLO Mission website in support of this contention.  See Opp., Ex. B at 15-20; Opp., Ex. C at 22-27. Defendants concede that Mr. Safieh is the head of the PLO Mission and that he "is authorized to receive service of process in matters concerning the PLO."  Mot. at 5.  As in Ungar, where the court concluded that the chief representative of the PLO in the United States qualified as a general or managing agent of the PLO and the PA, Mr. Safieh, the current head of the PLO Mission in Washington, D.C., which claims to be the "official voice of Palestine in Washington," also qualifies as a general or managing agent of the PLO and the PA.  Thus, the Court concludes that plaintiffs have shown proper service of process and that it has personal jurisdiction over the PA and the PLO.  See Estates of Ungar ex rel. Strachman v. Palestinian Authority, 153 F. Supp. 2d at 90.

### 3. Fatah, Al Aqsa, Tanzim and Force 17

        Plaintiffs assert that they have properly served all six of the named organizational defendants as a single, unincorporated association under Rules 4(h)(1) and Rule 4(e)(1) of the Federal Rules of Civil Procedure and under Rules 4(c)(3) and 4(h) of the D.C. Rules of Civil

---

    [5]      The Court notes that plaintiffs also served the PA and PLO with process pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure and Rules 4(c)(3) and 4(h) of the D.C. Rules of Civil Procedure.  The Court need not address this method of service here because it concludes that service of process upon the PA and the PLO under Rule 4(h)(1) was sufficient.

Procedure.  See Opp. at 6, 12.  Although plaintiffs aver that the six organizational defendants qualify as a single, unincorporated association, the Court notes that plaintiffs did not sue one single unincorporated association.  Plaintiffs instead named six separate organizational defendants in their complaint.  The organizational defendants individually named in the complaint must be individually served with process.

Plaintiffs attempted to effect service according to Rule 4(c)(3) of the D.C. Rules of Civil Procedure by mailing to the PLO Mission copies of the summons and complaint that were individually addressed to each of the organizational defendants.  The certified mail return receipts indicate that the individual letters addressed to Fatah, Al Aqsa, Tanzim and Force 17 included the words "c/o Palestinian Liberation Organization" in the address.  See Opp., Ex. A at 8-13.  The PLO Mission, however, is not a proper mailing address for any of these four organizations.

Plaintiffs also attempted to effect service by serving Mr. Safieh on behalf of each of the six named organizational defendants.  The Affidavits of Process Server indicate that when the process server informed Mr. Safieh that he (the process server) had summons and complaint for all six organizational defendants, Mr. Safieh, according to the process server, "stated that he was authorized to accept them and took them in hand."  Opp., Ex. B at 15-20. As noted above, Mr. Safieh flatly denies that he said this.  See Defs' Supp., Ex. A (Declaration of Afif Safieh) ¶¶ 12, 13 ("I never told the man who served me with the papers that I was authorized to accept the papers"; "I do not represent or serve as an agent for AAMB, Fatah, Force 17, or Tanzim.").  Plaintiffs also have not shown that Mr. Safieh qualifies as a general or managing agent of any of these four organizations, or that he holds himself out as such.  Cf. supra at 8-9.

Plaintiffs have not satisfied their burden to show that they properly served each of these four defendants.  Because plaintiffs did not send copies of the summons and complaint directly to each organizational defendant and did not personally serve an agent for each defendant, service of process was not perfected with regard to defendants Fatah, Al Aqsa, Tanzim and Force 17.  Accordingly, the Court will dismiss without prejudice defendants Fatah, Al Aqsa, Tanzim and Force 17 from this case.[6]

For the foregoing reasons, the Court concludes that the PA and the PLO have been properly served, in accordance with the Court's Opinion in <u>Klieman II</u>, but that the individual defendants and Fatah, Al Aqsa, Tanzim and Force 17 have not been properly served.  An Order accompanying this Opinion will issue this same day.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  April 18, 2008

---

[6]       In light of this conclusion, the Court need not consider whether Fatah, Al Aqsa, Tanzim and Force 17 have sufficient minimum contacts with the United States to be haled into Court here – but at least with respect to some of these organizations, the Court doubts very much that plaintiffs would be able to establish that they do.