# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF ESTHER KLIEMAN,** *et al.*, <br><br>　　Plaintiffs, <br><br>　　v. <br><br>**THE PALESTINIAN AUTHORITY,** *et al.*, <br><br>　　Defendants. | Civil Action No. 04-1173 <br> (PLF/JMF) |

## MEMORANDUM OPINION

This case was referred to me for discovery. Currently pending and ready for resolution are 1) Plaintiffs' Motion for Issuance of Letters of Request ("Plains. First Mot.") [#107], 2) Plaintiffs' Motion for Issuance of Letters of Request ("Plains. Second Mot.") [#108], and 3) Plaintiffs' Motion to Extend the Deadline for the Completion of Fact Discovery [#112]. For the reasons stated below, the motions will be granted.

## BACKGROUND

Plaintiffs are the survivors and heirs of Esther Klieman, a United States citizen who was killed on March 24, 2002 near Neve Tzuf, Israel. Complaint [#1] ("Compl.") ¶ 1. Defendants are 1) the Palestinian Authority (also known as the Palestinian Interim Self-Government and the Palestinian National Authority) ("PA"), 2) the Palestinian Liberation Organization ("PO"), 3) the Al Aqsa Martyrs Brigade (also known as Martyrs of Al Aqsa) ("Al Aqsa"), 4) Fateh, 5) Tanzim, 6) Force 17, 7) Yasser Arafat, 8) Marwan Barghouti, 9) Tamer Rassam Salim Rimawi, 10) Hussam Abdul-Kader Ahemed Halabi, 11) Ahmed Hamad Rushdie Hadib, and 12) Anan Azis

Salim Hashash. Compl. ¶¶ 8-15. The suit is being brought under the Antiterrorism Act of 1991, 18 U.S.C. §§2331 *et seq.*[1] as well as under additional statutes. Id.

**DISCUSSION**

Plaintiffs move this Court, pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 ("Convention"), 28 U.S.C. § 1781, and Rule 28(b) of the Federal Rules of Civil Procedure, for issuance of Letters of Request directing third party witnesses located in Israel to appear for *de bene esse* depositions. Specifically, plaintiffs seek to depose 1) Fuad Shubaki, 2) Marwan Bin Khatib Barghouti, 3) Matityahu (Matthew) Kalman, and 4) Khaled Abu Toameh. See Plains. First Mot. at Exhibit 1; Plains. Second Mot. at Exhibit 1.

I.  Legal Standard

Rule 28 of the Federal Rules of Civil Procedure provides the following:

> (1) In General. A deposition may be taken in a foreign country:
> (A) under an applicable treaty or convention;
> (B) under a letter of request, whether or not captioned a "letter rogatory";
> (C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; or
> (D) before a person commissioned by the court to administer any necessary oath and take testimony.

Fed. R. Civ. P. 28(b).

On March 18, 1970, seventeen nations, including the United States and Israel, entered

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

2

into the Hague Convention.[2] Under the terms of the Convention, there are "certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 524 (1987). Specifically, "[i]n civil or commercial matters a judicial authority of the Contracting State may . . . request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." Convention, art. 1. Although the United States Code provided for a similar authority by permitting "the transmittal of a letter rogatory or request directly from the tribunal in the United States to [a] foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner,"[3] use of the procedures established by the Convention was not intended as mandatory. See Société Nationale, 482 U.S. at 538. Rather, "the text of the Evidence Convention, as well as the history of its proposal and ratification by the United States, unambiguously supports the conclusion that it was intended to establish optional procedures that would facilitate the taking of evidence abroad. Id. (internal citations omitted). Whether courts resort to the Convention procedures or the Federal Rules depends upon the facts of each case, "sovereign interests, and the likelihood that resort to those procedures will prove effective." Id. at 544.

II.     Analysis

Although plaintiffs move under three alternative theories for the issuance of letters of

---

[2] Office of the Legal Advisor, United States Dept. of State, Treaties in Force 261-262 (1986).

[3] 28 U.S.C. § 1781.

request, argument as to the appropriateness of the proposed action is made primarily pursuant to the terms of the Convention. According to plaintiffs, "[t]he particular facts of this case support the Hague Convention's Letter of Request mechanism in that '[w]hen discovery is sought from a non-party in a foreign jurisdiction, application of the Hague [Evidence] Convention, which encompasses principles of international comity, is virtually compulsory.'" Plains. First Mot. at 2 (internal quotations omitted); Plains. Second Mot. at 2 (internal quotations omitted). Defendants oppose plaintiffs' request on the grounds of relevance and delay.

   A.   <u>Relevance</u>

Plaintiffs' theory of the case is that Esther Klieman, an American citizen living and working in Israel, was killed by Tamer Rimawi, an Al Aqsa member who was convicted and jailed for the crime. <u>Plaintiffs' Reply to Defendants' Consolidated Opposition to Plaintiffs' Motion for Issuance of Letters of Request [DE 107] and [DE 108] [#111]</u> ("Plains. Reply"). Plaintiffs further claim, citing the following excerpts from a sworn statement given by Rimawi, that defendants are also directly and proximately responsible for Klieman's death:

>    10.   In 2002, I joined the Al Aqsa Martyrs Brigade, which is the armed wing of the Fattah movement in the West Bank. As all of the Palestinian military and security services work together, and really operate as one, I was told to go back to my old unit at the Palestinian Army and get a Kalashnikov rifle to use in my operations . . . While I was in the Al Aqsa Martyrs Brigade, my pay came directly from Fattah . . .
>
>    11.   In 2003, I received a telephone call from my officer in the Al Aqsa Martyrs Brigade instructing me to carry out an operation. I listened carefully and followed instructions. I was taken by car to a site overlooking the road going into Attar . . . I shot my rifle at the front window and all over the bus . . . my bullets went through one of the side upper windows and killed Esther Klieman, a civilian passenger on

4

           the bus.

12.      I am very sorry for what I did. I didn't want to kill Esther Klieman . . . but I did what I was instructed to do by the officers of the Al Aqsa Martyrs Brigade . . .

13.      Afterward, I went back to Ram Allah . . . I went to the Mukata, where I hid and stayed for many months. I saw Yasser Arafat and other leaders of the Palestinian Authority . . . From the Mukata I went out with my weapon, and with bullets I got at the Mukata, and did other operations . . .

Id., Ex A at 6-7; Compl. ¶ 1.

Each of the four individuals plaintiffs wish to depose are either members of the organizations plaintiffs claim were responsible for Klieman's death or have relevant information about those organizations.

      1.      <u>Shubaki and Barghouti</u>

Plaintiffs claim that Shubaki was the PA's main financier and has been linked, through various documents, to the activities of Al Aqsa. Plains. Reply at 10. Plaintiffs claim that Barghouti is alleged to have been the head of Al Aqsa. Id. Both men were convicted of engaging in terrorist activities and are currently incarcerated in an Israeli prison. Id. Plaintiffs seek to depose them as to "(a) the Palestinian Authority and Palestine Liberation Organization's support and funding of terrorism and/or terrorist organizations including, but not limited to, the Al Aqsa Martyrs Brigades; and (b) other facts and information related to the allegations asserted by the Plaintiffs in the above captioned civil action." Plains. First Mot., Ex. 1 at 3.

First, defendants claim generally that "the proposed deposition topics are general, vague and provide no indication that the depositions will produce any relevant information." Defendants' Consolidated Opposition to Plaintiffs' Motions for Issuance of Letters of Request

5

[DE 107] and [DE 108] ("Defs. Opp.") at 13.  Second, defendants claim that the proposed deposition topics "indicate that Plaintiffs have absolutely no idea whether these individuals actually possess any relevant information, and, instead, seek to engage in costly and burdensome discovery for the mere hope of locating a shred of relevant information." Id.  Finally, defendants argue that the information sought is likely to be duplicative of information plaintiffs already possess. Id. at 13-14.

Under Rule 26 of the Federal Rules of Evidence, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "[f]or good cause, the court may order discovery of *any* matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1) (emphasis added).  Furthermore, "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  In other words, any evidence that is relevant to plaintiffs' claims is discoverable.  In this case, plaintiffs seek to depose two individuals who are alleged to have played an important role in the activities not only of the PA, but specifically of Al Aqsa, the group plaintiffs allege is directly linked to Klieman's death.  As noted above, plaintiffs claim that Al Aqsa's terrorist activities were both directed and funded by the PA and the PLO.  Thus, rather than being general and vague, plaintiffs' proposed deposition topics state clearly and unequivocally the topics plaintiffs wish to discover.  Plaintiffs desire to depose the PA's main financier about the PA's and PLO's support and funding of the terrorist activities of Al Aqsa.  They also wish to depose the alleged head of Al Aqsa about those activities, including, I have to suppose, the terrorist activity that killed Klieman.  Surely, a discussion with those two men about the funding of terrorists, including defendants' financial and other sponsorship bears directly on

6

plaintiffs' claim that the defendants bear responsibility for Klieman's death.

Finally, that the information sought may be duplicative of information plaintiffs already possess is, in this case, outweighed by the importance of the evidence itself. The testimony that plaintiffs may be able to elicit from these men is not only clearly relevant to plaintiffs' claims, it is central to plaintiffs' claims and is, therefore, discoverable.

        2.        Kalman and Toameh

Plaintiffs further claim that both Kalman and Toameh, journalists who have "reported extensively on the Second Intifada," are "believed to have interviewed representatives of the PA, PLO, Fatah and the Al Aqsa Martyrs Brigades" and they therefore seek to depose them. Plains. Reply at 11. Specifically, plaintiffs seek to question them as to "(a) the Palestinian Authority and Palestine Liberation Organization's support and funding of terrorism and/or terrorist organizations including, but not limited to, the Al Aqsa Martyrs Brigades; and (b) statements made by other individuals including, but not limited to, employees, agents, representatives and officials of the Palestinian Authority and Palestinian Liberation Organization's support and funding of terrorism and/or terrorist organizations including, but not limited to, the Al Aqsa Martyrs Brigades." Plains. Second Mot., Ex. 1 at 3.

With respect to Kalman, defendants argue that the sole basis for plaintiffs' belief that Kalman has discoverable information is an article authored by him in 2002, which, according to defendants, does not indicate any knowledge of the incident that lead to Klieman's death. Defs. Opp. at 11-12. Further, defendants claim that the reporter's general knowledge of Al Aqsa is an insufficient basis to warrant the taking of his deposition. Id. at 12. With respect to Toameh, defendants argue that plaintiffs only recently identified him as an individual they wished to

7

depose and also that plaintiffs' basis for wishing to depose him, namely his having authored two articles in 2004 about "the Palestinian governments' general attempts to rein in actions of Palestinian militants, including those who described themselves as being part of the 'Al Aqsa Martyrs Brigades'" is far too attenuated to warrant the taking of his deposition. Id. at 12.

As with the proposed depositions of Shubaki and Barghouti, defendants' objections to the proposed depositions of Kalman and Toameh must be overruled. Based on the writings of these two reporters, it is not unreasonable for plaintiffs to seek to question them about the individuals they may have interviewed and the knowledge they may have gained as a result of their own investigations into the workings and structures of the PA, PLO, and Al Aqsa. Whether or not that evidence is admissible, it certainly might lead to the discovery of admissible evidence. For example, the two reporters may have heard the people they interviewed speak directly of the defendants' sponsorship of terrorist activities or, in particular, the terrorist activity that killed Klieman.

Furthermore, the Court disagrees with defendants' assertion that any knowledge Toameh may "have about the general subject matter is simply too peripheral and attenuated to warrant use of the Hague Convention."[4] That, as defendants note, the articles written by Toameh were written over two years after Klieman's death does not mean that it is impossible that he has relevant knowledge about either that incident specifically or about these organizations generally and how they are financed and supported by other entities, such as the defendants.

B. Cumulativeness

Defendants also argue that plaintiffs have already conducted lengthy depositions

---

[4] Defs. Opp. at 12.

regarding these same[5] general topics and that therefore any additional testimony on these topics would be cumulative:

> Plaintiffs' deposition notices listed the same general topics as those sought herein . . . noticing deposition topics including: (1) the relationship "between the [PA or PLO] and . . . (c) AL AQSA from 1999-2005; including how the [PA or PLO] provided training direction, personnel, shelter, documentation and/or other support to . . . (c) AL AQSA members, employees, or agents"; (2) "The relationship between the PA, PLO and/or AL AQSA from 1999 to present"; (3) "All monies disbursed . . . to . . . BARGHOUTI, . . . SHOUBAKI, . . . [and] AL AQSA"; (4) "The position, roles and responsibilities and tasks performed by [Shoubaki] held in the PA and/or PLO for the years 1999 through 2005"; (5) "Any and all facts learned or determined through any investigation by the PA, PLO and/or AL AQSA of the March 24, 2002 Attack"; and (6) as related to the individuals imprisoned for the incident, all money given them or their families, any weapons provided them, their positions within the PLO and PA, and any contact any individual associated with PA or PLO has had with them from 1999 through the date of the deposition).

Defs. Opp. at 14-15.

Specifically, defendants claim that the depositions plaintiffs now seek to take would be cumulative and duplicative of the depositions previously taken of 1) Jawad Amawi, 2) Hasan Abu Libdeh, 3) General Majed Faraj, and 4) Mazen Jadallah. Although, without seeing the deposition testimony and having a better understanding of the nature of these individuals' roles within their various organizations, the Court cannot deduce to a certainty the degree to which the testimony plaintiffs now seek would be duplicative, a review of these individuals' titles suggests that while there may be some duplication, it would not mitigate against issuing the letters of

---

[5] Contrary to defendants' previous assertion that plaintiffs' description of the deposition topics was too vague, defendants apparently now have a very clear understanding of the subject areas plaintiffs wish to explore.

9

request plaintiffs seek. Save for Mr. Amawi, these individuals appear to be mid to high-level officials within the PA: "Mr. Amawi is employed by the Palestinian Ministry of Detainees and Ex-Detainee Affairs; Mr. Abu Libdeh is the Minister of the National Economy for the Palestinian Authority; General Faraj is the head of the General Intelligence Agency of the Palestinian Authority; and Mr. Jadallah is an Assistant Deputy Minister in the Ministry of Finance of the Palestinian Authority." Defs. Opp. at 14 n.6.

With respect to Shubaki and Barghouti, they are alleged to have direct ties to Al Aqsa, the organization plaintiffs claim was directly responsible for Klieman's death. The testimony of Barghouti, as the alleged head of Al Aqsa, is particularly relevant and potentially central to plaintiffs' case. With respect to Kalman and Toameh, the two reporters, it is unclear what the breadth of their knowledge may be. Certainly, their focus and research into the Second Intifada and the activities of Al Aqsa are relevant to plaintiffs' claims. In sum, defendants have failed to show that the deposition testimony plaintiffs seek is unreasonably cumulative or duplicative. See Fed. R. Civ. P. 26(b)(2)(C)(I).

B.  Likelihood of Substantial Delay

Defendants argue that plaintiffs should have moved for the issuance of letters of request to depose these four individuals much earlier in the discovery process, noting that the discovery deadline has already been extended four times. Defs. Opp. at 16. Defendants also cite earlier delays encountered by the parties when attempting to negotiate previously issued letters of request with the Israeli Directorate of Courts. Id. Defendants contend that "a delay is particularly unjustified when the relevance of the evidence sought is not clearly articulated." Id.

First, a careful review of the docket in this case reveals that, while discovery has been

prolonged, such delay was not, as defendants imply, the result of any dilatory tactics on plaintiffs' part. The complaint was filed on July 13, 2004. See Compl. On September 9, 2004, defendants moved for a default judgment. See Plaintiffs' Motion for Entry of Default [#11]. On November 4, 2004, Judge Friedman stayed all discovery except as to defendant Arafat. See Minute Entry dated 11/4/04. One week later, on November 16, 2004, Judge Friedman stayed discovery completely. See Minute Entry dated 11/16/04. On June 20, 2008, after resolving numerous dispositive motions, Judge Friedman ordered that all fact discovery be completed by March 31, 2009. See Scheduling Order [#91]. On February 24, 2009, the parties *jointly* moved for an extension of fact discovery until September 30, 2009, which was granted by this Court on April 1, 2009. See Minute Order dated 4/1/09. On September 25, 2009, the parties once again *jointly* moved for an extension of discovery until March 25, 2009, which was granted by Judge Friedman on October 5, 2009. See Order [#99]. On March 10, 2010, the parties *jointly* moved for a third time to extend discovery, which was granted by Judge Friedman on March 15, 2010, thus extending discovery until September 30, 2010. See Minute Order dated 3/15/10. Finally, on September 14, 2010, the parties again *jointly* moved for an extension of discovery until March 31, 2011, which was granted by this Court by minute order. See Minute Order dated 9/20/10.

Second, although defendants argue that resorting to the procedures outlined in the Convention often do and have in this case resulted in delays, the clear relevance of the evidence sought outweighs any concerns of expediency.

C. Defendants' Proposal to Modify the Letters of Request

Defendants argue in the alternative that, if the Court grants plaintiffs' motion, it should amend the proposed letters of request directed at Kalman and Toameh, the two journalists, to

11

include a request for production of documents. Defs. Opp. at 17.  Defendants argue that the request is particularly appropriate in this instance because the deponents are journalists and in order to fully prepare for the deposition, defendants would need to examine the materials they collected during the course of their research, including any documents or notes from interviews they may have conducted prior to writing the articles cited by plaintiffs. Id. at 18.  Defendants add that their need to examine the journalists' documents is particularly "crucial when the subject of the deposition itself is the content of the articles." Id.  Plaintiffs oppose defendants' request for production of the journalists' documents on the grounds that defendants are merely trying to intimidate the journalists and deter them from providing relevant testimony. Plains. Reply at 11, 19 n.6.

For the same reasons the Court concluded that it is appropriate to allow plaintiffs to depose the two third-party journalists, the Court concludes that it is also appropriate to allow the discovery the defendants seek.  Plaintiffs cannot argue on the one hand that the depositions they seek should be compelled under Federal Rule of Civil Procedure 26(b)(1)'s relevance standard but that, on the other hand, the journalists' notes and other research documents, the very materials that would be the basis for that testimony, are not.  This information is clearly relevant and, aside from any privileges these journalists may assert in the future, is therefore discoverable.

        D.       <u>The Deadline for Completing Fact Discovery Will Be Extended</u>

As I have just indicated, I am convinced that the relevance of the testimony to be taken outweighs the interest in expediency.  Since arranging the depositions will take time, I will grant <u>Plaintiffs' Motion to Extend the Deadline for the Completion of Fact Discovery</u> [#112] and extend the discovery deadline until October 1, 2011.

E. <u>Outstanding Issues</u>

I am concerned about the squabbling in the papers over what has happened in discovery. That will now end. Instead, I am ordering counsel for the parties to meet and confer in person and to create a mutually agreed upon, detailed, and comprehensive plan for the conclusion of discovery. I expect the plan to speak to all outstanding discovery, whether it be dates for depositions or for the production of documents or responses to requests for admissions. Counsel will submit the plan to me for my approval with the understanding that the deadlines set in the plan are firm. Revisions will be permitted only due to circumstances beyond the parties' control, including delays in securing necessary approvals from the government of Israel.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE