# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF ESTHER KLIEMAN**, *et al.*,<br><br>      **Plaintiffs,**<br><br>      v.<br><br>**THE PALESTINIAN AUTHORITY**, *et al.*,<br><br>      **Defendants.** | **Civil Action No. 04-1173 (PLF/JMF)** |

## MEMORANDUM OPINION

This case was referred to me for discovery. Currently pending and ready for resolution are the following motions: 1) Plaintiffs' Motion for Issuance of Letter of Request [#146], 2) Plaintiffs' Motion for Issuance of Letter of Request [#147], 3) Plaintiffs' Motion to Extend the Deadline for the Completion of Fact Discovery [#148], 4) Plaintiffs' Motion and Memorandum in Support for an Order Compelling Discovery [#149], 5) Motion for Issuance of Letter of Request and Supporting Memorandum of Points and Authorities [#154], 6) Defendants' Cross-Motion for Entry of Protective Order [#158], and 7) Defendants' Motion for Leave to File a Sur-Reply in Support of Their Consolidated Opposition to Plaintiffs' Motions for Issuance of Letters of Request [DE 146] and [DE 147] [#167].

## BACKGROUND

Plaintiffs are the survivors and heirs of Esther Klieman, an American citizen who was killed in Israel on March 24, 2002. Estate of Klieman v. Palestinian Authority, 272 F.R.D. 253, 255 (D.D.C. 2011). Tamer Rimawi was convicted in Israel of her murder and plaintiffs' theory is

that the Palestinian Authority ("PA") and the Palestinian Liberation Organization ("PLO")

supported, financially and otherwise, the Al-Aqsa Martyrs Brigade ("Al-Aqsa"), the terrorist

group to which plaintiffs claim Tamer Rimawi belonged.

## DISCUSSION

I.    Plaintiffs' Motions for Issuance of Letters of Request [#146] & [#147]

    A.    Plaintiffs' Position

In these two motions, plaintiffs seek to take the *de bene esse* depositions of two

individuals: 1) Yitzhak Ya'akoboff, the Israeli police officer who interviewed Tamer Rimawi

about his involvement in the Klieman murder, [#146] at 3, and 2) Zafer Rimawi, the individual

Tamer Rimawi originally claimed recruited him into Al-Aqsa [#147] at 3.

In support of their motions, plaintiffs cite first to the deposition testimony of Hussam

Halabi, one of Tamer Rimawi's co-conspirators in the Klieman murder. Plaintiffs' Reply to

Defendant's Consolidated Opposition to Plaintiffs' Motion for Issuance of Letters of Request

[DE 146] and [DE 147] [#155] at 9-11.  During the deposition, upon being shown a statement he

had previously signed, Halabi again attested to the truthfulness of the statement. Id. at 10-11.  In

that statement, he explained that he and another man went with Tamer Ramawi, in a car driven

by a third man, to Deir el Sodath. Id. at 10.  According to Halabi, when they arrived at their

destination, Tamer Ramiwi shot his Kalachnikov rifle at an armored bus. Id.  Halabi stated

further that this operation, like others he testified about, was "written under the name of *Fatah*

*(Al Aqsa Martyrs Brigades*)." Id. at 10 (emphasis added).  Klieman was, of course, the person

killed as a result of Rimawi's shots at the bus.

Next, plaintiffs point to the testimony of Tamer Rimawi.  During the investigation into

the crime and the subsequent prosecution of the men who conspired to kill Klieman, Tamer

Rimawi said 1) that he was recruited into Al-Aqsa by (*inter alia*) Zafer Rimawi and 2) that he

was a member of Al-Aqsa when he killed Klieman. [#155] at 11-12.  However, when Tamer

Rimawi was deposed by plaintiffs in January 2012, he claimed that he was not a member of Al-

Aqsa and that his earlier statement that Zafer Rimawi [and William Ktahib Rimawi] recruited

him into Al-Aqsa was made solely to "to harm them." Id. at 12-13.  Plaintiffs are therefore now

concerned that Tamer Rimawi is retreating from his earlier statement that Zamer Rimawi and his

accomplices recruited Tamer Rimawi into Al-Aqsa and that the murder of Klieman was an Al-

Aqsa operation.

      B.    <u>Defendants' Position</u>

      In response, defendants also point to the testimony of Halibi, wherein he indicated that

Al-Aqsa is not a real phenomenon. [#167-1] at 3-4.  Defendants also point to Halibi's testimony

that Al-Aqsa is only a name, that it doesn't have a center, leadership, or headquarters, and that he

was not a member. Id. at 4.  Defendants therefore contend that Tamer Rimawi's recent statement

that he did not belong to Al-Aqsa should not have come as a surprise to plaintiffs because Halibi

had previously expressed that view. Id. at 4-5.

      C.    <u>Analysis</u>

      A simple evaluation of the potential testimony of Ya'akoboff and Zamer Rimawi

demonstrates its potential admissibility.  If plaintiffs introduce the statements Tamer Rimawi

gave first to the police officer and then to the Israeli court (that he was a member of Al-Aqsa and

that killing Klieman was an Al-Aqsa operation) in order to establish that Al-Aqsa was supported

by defendants thereby rendering defendants complicit in her murder, defendants could then

introduce Halibi's statement that Al-Aqsa does not exist.  Plaintiffs would then have to be permitted to show, by calling Zamer Rimawi to testify, that Al-Aqsa certainly did exist and that he recruited Tamer Rimawi into the organization to perform operations like the one that killed Klieman.  As to the latter testimony, while it may be fanciful to suppose that Zamer Rimawi would give testimony that would help plaintiffs succeed in getting a judgment against defendants, the fact that he was identified by Tamer Rimawi as the person who recruited him into Al-Aqsa surely meets the standard of relevance with respect to plaintiffs' case.

II.    Motion for Issuance of Letter of Request and Supporting Memorandum of Points and Authorities [#154]

    A.    Plaintiffs' Position

In this motion, plaintiffs seek to take the *de bene esse* deposition of Israeli prisoner Annan Aziz Salim Hashash, an alleged member of Al-Aqsa who was involved in the murder of Klieman. [#154] at 1.  Plaintiffs contend that his deposition is necessary to further establish his involvement in Klieman's murder and to clarify inconsistencies in Tamer Rimawi's testimony. Id. at 3.

    B.    Defendants' Position

Defendants insist that there is no real dispute about Hashash's involvement in the murder. Defendants' Opposition to Plaintiffs' Motion for Issuance of Letter or Request [DE 154] [#165] at 7.  Defendants note that both Halabi and Tamer Rimawi already gave deposition testimony in which they describe Hashash's involvement in the events that led up to Klieman's killing. Id. Therefore, defendants argue, there is no reason to believe that Hashash will have any information that will implicate the defendants. Id.

4

C.      Analysis

In a statement given by Hashash to the Israeli police following Klieman's murder, he

indicated 1) that he was a member of a military cell under Al-Aqsa, 2) that a man named Tarek

al-Zaal told him that Tamer Rimawi wanted to work with Hashash "in military events under the

Aqsa Martyrs Brigade," 3) that when Hashash indicated his willingness to do so, al-Zaal

introduced him to Tamer Rimawi, 4) that Rimawi offered Hashash the opportunity to join in an

attack against "Halmish Camp," and 5) that Hashash suggested that the firing be from a long

distance. Plaintiff's Reply to Defendants' Opposition to Plaintiffs' Motion for Issuance of Letter

of Request [#168] at 4.  According to Halabi, the night before the attack, the attackers agreed that

they would shoot at a military installation. Defendants' Opposition to Plaintiffs' Motion to

Extend the Deadline for the Completion of Fact Discovery [#156-2] at 10.  Halibi further

testified that, on the morning of the attack, when the co-conspirators arrived at that location, they

saw that it was abandoned. Id.  Rimawi corroborated in his deposition Hashash's testimony when

he confirmed that Hashash was one of the men who rode from Beit Rima to Dier As-Sudan,

where they got out of the car and walked to the site of the shooting.  Hashash's involvement is,

therefore, not in dispute.

However, defendants ignore that even though they contend that there is no such thing as

Al-Aqsa and that plaintiffs cannot connect defendants with Al-Aqsa, plaintiffs still have the right

to gather evidence that might support their theory.  Both the link between the killers and Al-Aqsa

and the link between defendants and Al-Aqsa are equally important in proving plaintiffs' theory

of the case.  Defendants cannot on the one hand insist that Al-Aqsa does not exist and then try to

preclude plaintiffs from establishing that it does and that Klieman's murder was an Al-Aqsa

operation.  The potential testimony of Hashash, one of Klieman's killers, regarding Al-Aqsa's involvement in the operation surely meets the standard of relevance.

Furthermore, defendants' insistence that plaintiffs have impermissibly delayed in seeking Hashash's testimony is incorrect.  According to defendants, although the complaint (filed in 2004) charged that Hashash was a fugitive who was being sheltered by defendants, Nachman Klieman, a representative of Esther Klieman's estate, later testified (on February 24, 2011) that he believed that the Israeli authorities had arrested and prosecuted Hashash for his involvement in Klieman's murder. [#165] at 1-2.  According to defendants, plaintiffs should have sought to obtain Hashash's deposition at the same time they requested other Letters of Request in March 2010 or March 2011. Id.

But, as plaintiffs point out, Nachman Klieman's testimony in 2011 was that, although he did not know where Hashash was, he believed that he had been convicted in Klieman's murder but did not recall whether Hashash was then in an Israeli prison. [#168] at 4.  Thus, Klieman's testimony is a slender reed upon which to rely for the proposition that plaintiffs' counsel knew at some point prior to March 2010 that Hashhash was in Israeli custody and available to them for possible deposition.  Even if plaintiffs did have that knowledge, the obvious relevance of his potential testimony outweighs any alleged delay caused by plaintiffs in securing it.

III.   Plaintiffs' Motion and Memorandum in Support for an Order Compelling Discovery
       [#149]

In this motion, plaintiffs seek an order compelling defendants to produce certain witnesses for deposition.  Specifically, plaintiffs seek to depose 1) Jabril Rajoub, 2) Yasser Abed Rabbo, 3) a 30(b)(6) designee from the PA, and 4) a 30(b)(6) designee from the PLO. [#149] at

2.

    A.    <u>Jabril Rajoub</u>

        1.    <u>The Parties' Positions</u>

Plaintiffs claim that Rajoub is a *de facto* managing agent of defendants and therefore should be compelled to provide deposition testimony.  Defendants counter that Rajoub is not even a PA employee and therefore not subject to deposition by notice to the PA.  The parties do, however, agree on some facts.

Both parties agree that Rajoub was 1) head of the Palestinian Security Services from January through July of 2002, 2) National Security Advisor to President Arafat from August 2003 through November 2004, and 3) a member of the Central Committee of Fatah and President of the Palestinian Olympic Committee as of January 13, 2011. [#149-1] at 8.  <u>See also</u> <u>Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion to Compel Discovery and Opposition to Defendants' Cross Motion for Entry of Protective Order</u> [#160-1] at 2 (August 11, 2009 Y-Net news report that Rajoub had been elected to the 21 person Central Committee of Fatah).

Both parties also agree that Rajoub made certain statements during interviews with Al Jazeera, a satellite television channel.  First, on February 26, 2004, while Rajoub was serving as National Security Advisor to Arafat, Rajoub stated that Al-Asqa was part of Fatah and that if there was a problem "within the Brigades" it would be dealt with internally.  <u>Memorandum of Law in Support of Defendants' Opposition to Plaintiffs' Motion to Compel Discovery and in Support of Defendants' Cross-Motion for Entry of a Protective Order</u> [#157-12] at 5.  He also opined that Al-Aqsa would not cause any problems within Fatah, and that Fatah could not be divided. <u>Id.</u>

On January 11, 2006, Rajoub stated during another interview with Al Jazeera that "it was Marwan Al-Barghouti who founded the Al-Asqa Brigades, according to a decision by Yasser Arafat." Id.  According to Rajoub, Marwan was the chief of staff of Al-Aqsa and he and Abu Ali Yatta headed the Fatah list of candidates, thus supporting Fatah's message of resistance and struggle. Id.

The parties do not agree, however, on the capacity in which Rajoub was serving at the time he made certain statements on a PA television broadcast on October 30, 2011.  Plaintiffs contend that Jaboul is under defendants' control because he was introduced by a moderator as President Abbas' representative and a member of the Fatah Central Committee. [#157-12] at 5. Defendants, however, provided the sworn declaration of Hussein el A'Raj, the Chief of Staff of President Abbas, in which he states that 1) Rajoub retired from the PA in 2006, 2) Rajoub has not held any position within the organization since 2006, 3) Rajoub did not represent President Abbas at the October 30, 2011 event, and 4) in addition to being head of the Palestine Olympic Committee, he was also head of the Palestinian Football Federation, both of which are non-governmental organizations. [#157-1] at 3.

2.    Analysis

Resolution of the dispute between the parties requires a careful parsing of several of the Federal Rules of Civil Procedure.

The first, Rule 32(a)(3), speaks to the admissibility of a deposition and states that "an adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent or designee under Rule 30(b)(6) or 31(a)(4)." Fed. R. Civ. P. 32(a)(3).  The second, Rule 31(a)(4), permits a party to depose "[a] public or

private corporation, a partnership, an association, or a governmental agency . . . by written questions in accordance with Rule 30(b)(6)." Fed. R. Civ. P. 31(a)(4).  The third, Rule 30(b)(6) permits a party to "name as the deponent a public or private corporation, a partnership, an association, or a governmental agency, or other entity." Fed. R. Civ. P. 30(b)(6).  Once the party does, "[t]he named organization must then designate one or more officers, directors, or managing agents . . . to testify . . . about information known or reasonably available to the organization." Id. Thus, an adverse party may seek and use the deposition of any person designated as an officer, director, managing agent or designee of its opponent.  Of course, any person can be deposed under Rule 30(a)(1) irrespective of her position or affiliation with a party. Fed. R. Civ. P. 30(a)(1).

It would follow, therefore, that plaintiffs could 1) serve a notice to take the deposition of Rajoub and then use international law, as best it could, to compel his attendance, or 2) serve a notice to take a Rule 30(b)(6) deposition of the defendants, specifying as the topic of the deposition, Rajoub's statements over the years.  In the latter case, defendants would have to designate an officer, director, or managing agent to speak to that topic.  But, what plaintiffs cannot do, for the Rules do not permit it, is insist that Rajoub be the person the defendants designate.  Thus, whether or not Rajoub is more than a spokesperson and can be deemed a *de facto* managing agent is irrelevant.[1]  There is nothing in the Federal Rules of Civil Procedure that compels defendants, the PA and the PLO, to produce a person who is not employed by them but is a member of the Central Committee of Fatah.

---

[1] The Chief Judge carefully explained these distinctions and the operation of these Rules in Simms v. Ctr. for Corr. Health & Policy Studies, 272 F.R.D. 36, 41 (D.D.C. 2011).

I appreciate that it is the customary and laudable practice of the lawyers who practice in this Court to have their corporate and organizational clients direct their officers and employees to appear for their individual depositions under Rule 30(a)(1).  While that is true, it does not change the fundamental distinction between compelling an individual's appearance at that individual's deposition by notice of deposition under Rule 30(a)(1) and a subpoena issued under Rule 45. Plaintiffs' insistence that this Court compel Rajoub to attend a deposition demands that the Court exercise a power it does not have-to compel a particular person to be the defendants' Rule 30(b)(6) designee-and must therefore be rejected.

B.    Abed Rabbo

Since December 2006, Rabbo has served as the Secretary General of the PLO's Executive Committee. [#157] at 12.  In a newspaper article dated October 17, 2000, Rabbo, then Palestinian Information Minister, is quoted as saying that Israel's withdrawing its troops to a certain point and the lifting of the military closure of the West Bank and the Gaza Strip were crucial conditions of any agreement between the Palestinians and the Israeli. [#157-17] at 3.  A second article, dated April 3, 2011, quoted the three Palestinian conditions necessary for stopping the violence of the 6 month old Intifada that Rabbo had presented to the European Union.  The conditions were to "stop all Jewish settlement activities in the Palestinian territories including Jerusalem; implement all signed agreements; and implement the Sharm El Shiekh understanding to end Israeli security and military measures imposed on Gaza and the West Bank." Id. at 5. Rabbo also indicated that these Palestinian conditions had been presented along with a Jordanian-Egyptian proposal to end the violence but that, if the situation in the Palestinian territories continued to deteriorate, it "would enlarge the circle of the Israeli aggression against

10

the Palestinian territories and increase the frustration among the Palestinian people." Id.

        1.       The Parties' Positions

Plaintiffs argue that these statements "clearly show that PA/PLO controlled the violence that was being instigated during the relevant time before and after the terrorist murder of Esther Klieman," that this is "strong evidence of scienter - i.e. that the PA/PLO themselves had a policy of using/supporting violence;" and that the statements "support Plaintiffs' theory of *respondeat superior* liability, as it shows that the Defendants' agents were acting within the scope of their employment or agency." [#149] at 11.  Defendants contend that Rabbo's statements were made in the context of peace negotiations and have no relevance to plaintiffs' case. [#157] at 11.

        2.       Analysis

Defendants' position is well-founded.  Rabbo's potential testimony, based on the above statements, does not meet the fundamental requirement of being likely to lead to relevant evidence.  Rabbo, speaking at that time as a representative for his government during peace negotiations, simply stated his government's conditions for such an agreement.  He then indicated that if peace could not be achieved by the acceptance of these conditions, to be followed by a final agreement, Israel would grow more aggressive in the territories and the Palestinians would grow more frustrated.  It is impossible to deduce from those statements any premise of *respondeat superior* liability for the acts of the men who murdered Klieman nearly two years after the first statement and nearly a year after the second.  Rabbo's statements cannot possibly make it more likely than not that defendants are liable for the acts that took Klieman's life.  No judge would admit them as proof of liability and they cannot serve as a premise for Rabbo's deposition.

C.     Rule 30(b)(6) Designees

Plaintiffs also demand that the PA and PLO designate Rule 30(b)(6) deponents who will
be asked to attest to the accuracy of the handwriting and signatures on various documents. [#149]
at 8-9.  As defendants correctly point out, however, since the defendants' 30(b)(6) depositions
have already been taken and plaintiffs never sought leave of court to take additional depositions,
their motion to compel in this regard must be denied.  See Fed. R. Civ. P. 30(a)(2)(A)(ii).

D.     Attorney's Fees

Plaintiffs also seek attorney fees for making their motion.  But, since plaintiffs have only
prevailed in part and since defendants' opposition to those portions were certainly substantially
justified, I see no grounds for an award of attorney's fees.

IV.   Plaintiffs' Motion to Extend the Deadline for the Completion of Fact Discovery [#148]

On March 3, 2011, I granted plaintiffs' applications for Letters of Request and plaintiffs'
motion to extend the discovery deadline until October 1, 2011. Klieman, 272 F.R.D. at 253.
Thereafter, I granted two unopposed motions to extend the discovery deadline–first to the last
day of 2011 and then to March 31, 2012.  See Minute Orders dated September 30, 2011 and
December 5, 2011.  Plaintiffs now seek another extension of the discovery deadline until July 1,
2012, but, this time, the PA and the PLO resist any further extensions.  See [#156].

As a result of the above analysis, I am now permitting additional discovery in the form of
depositions, which have as their particular focus whether Al-Aqsa exists and whether it was
complicit in the murder of Klieman.  Therefore, it will be necessary to extend the discovery
deadline and I have decided to do so, until the last day of this year.

While I appreciate that this is a lengthy extension, the parties' experience in securing the

other depositions I previously have ordered convinces me that the process of taking these depositions, given the need to coordinate with the Israeli government, is an understandably lengthy and complicated one.  I fear it will no be less so now that I am permitting plaintiffs to take the deposition of men convicted of terrorist acts.

I also appreciate that, in light of the factors identified in Rule 26(b)(2)(C)(iii) of the Federal Rules of Civil Procedure, all discovery, even of relevant evidence, is subject to the condition that its utility outweighs its cost and burden.  In this case, I am convinced that the potential testimony of Ya'akoboff (the Israeli police officer who interviewed Tamer Rimawi) and Hashash (one of Tamer Rimawi's co-conspirators) is relevant to plaintiffs' attempt to tie the actions of the killers to Al-Aqsa and then, in turn, to tie the actions of Al-Aqsa to the defendants. This discovery is crucial in making that link and therefore its burden and cost is outweighed by its importance.  I note also that this case is a most important attempt to ascertain, if possible, the complicity of the defendants in the murder of a human being in an area of the world that has been haunted by violence for generations.  While the parties' resources are not unlimited, defendants are governments and plaintiffs are willing to undergo the expense.  Thus, in my view, the additional discovery I am permitting and the necessary extension of the discovery deadline are justified.

V.    Remaining Motions

In light of the fact that the Court is denying plaintiffs' motion to compel the depositions of Rajoub and Rabbo, Defendants' Cross-Motion for Entry of Protective Order [#158] will be denied as moot.  Similarly, in light of the fact that the Court is granting plaintiffs' motion to take the *de bene esse* depositions of Ya'akoboff and Zafer Rimawi, Defendants' Motion for Leave to

<u>File a Sur-Reply in Support of Their Consolidated Opposition to Plaintiffs' Motions for Issuance</u>

<u>of Letters of Request [DE 146] and [DE 147]</u> [#167] will be also denied as moot.

## CONCLUSION

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE