UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ESTATE OF ESTHER KLIEMAN, *et al.*, )
                                    )
       Plaintiffs,                )
                                    )
    v.                            )    Civil Action No. 04-1173 (PLF)
                                    )
PALESTINIAN AUTHORITY, *et al.*,    )
                                    )
       Defendants.                )
_____ )


## OPINION

On April 10, 2012, Magistrate Judge John Facciola issued a memorandum order denying plaintiffs' motion to compel a nonparty news organization to produce subpoenaed audiovisual recordings and provide a deposition witness, and granting the news organization's motion to quash. This matter is now before the Court on plaintiffs' objection to the magistrate judge's decision. After careful consideration of the challenged order, the parties' memoranda, the relevant legal authorities, and the entire record in this case, the Court finds that the magistrate judge's conclusion that plaintiffs' subpoena violated the Federal Rules of Civil Procedure was neither clearly erroneous nor contrary to law.[1] The Court also finds, however, that the magistrate

---

      [1]     The papers reviewed in connection with this motion include the following: Plaintiffs' Motion for an Order to Compel the Production of Documents Subpoenaed from the BBC ("Pls.' Mot. Compel") [Dkt. No. 132]; Plaintiffs' Opposition to Non-Party BBC's Cross-Motion to Quash Subpoena and Reply to BBC's Opposition to Plaintiffs' Motion to Compel [Dkt. No. 134]; Non-Party BBC's Cross-Motion to Quash Subpoena [Dkt. No. 137]; Non-Party BBC's Reply in Support of its Cross-Motion to Quash [Dkt. No. 138]; Non-Party BBC's Notice of Filing Additional Exhibit [Dkt. No. 143]; Plaintiffs' Response to Non-Party BBC's Notice of Filing Additional [Dkt. No. 144]; Plaintiffs' Memorandum of Points and Authorities in Support of its Objection ("Pls.' Obj.") [Dkt. No. 169-1]; Non-Party BBC's Memorandum in Opposition to Plaintiffs' Objection ("BBC Opp.") [Dkt. No. 171]; Plaintiffs' Reply to Third-Party British Broadcasting Corporation's Opposition to Plaintiffs' Objection ("Pls.' Reply") [Dkt. No. 172];

judge erred in failing to consider whether the subpoena could be modified so as to comply with the applicable rules. Upon its own independent review, the Court finds that, with respect to a portion of the request, the subpoena may be so modified. It therefore sustains in part and overrules in part plaintiffs' objection.

I. BACKGROUND

The Court previously has described the factual background of this case, see Estate of Klieman v. Palestinian Auth., 424 F. Supp. 2d 153,155-56 (D.D.C. 2006); Estate of Klieman v. Palestinian Auth., 467 F. Supp. 2d 107, 110-11 (D.D.C. 2006), and therefore summarizes only the facts relevant to plaintiffs' objection.

Esther Klieman, an American citizen, was killed in Israel on March 24, 2002, when several individuals opened fire on the public bus on which she was traveling. The estate, survivors, and heirs of Esther Klieman subsequently brought this action under Section 2333 of the Antiterrorism Act of 1991 ("ATA"), 18 U.S.C. §§ 2331 et seq., and various tort theories against several defendants, most of whom since have been dismissed from this case. See Estate of Klieman v. Palestinian Auth., 547 F. Supp. 2d 8, 15 (D.D.C. 2008). The sole remaining defendants are the Palestinian Authority (the "PA") and the Palestine Liberation Organization (the "PLO").

Plaintiffs do not allege that leaders or officers of the PA or the PLO directly participated in the fatal shooting of March 24, 2002. Rather, plaintiffs' theory of liability against the PA and the PLO rests on the following assertions: (1) that members of the Al-Aqsa Martyrs Brigades ("Al-Aqsa") shot at the bus on which Klieman was traveling; (2) that Al-Aqsa is the

---

Plaintiffs' Notice of Filing Supplemental Authority in Support of Their Objection ("Pls.' Notice Supp. Auth.") [Dkt. No. 181]; Non-Party BBC's Response to Plaintiffs' Notice of Filing Supplemental Authority ("BBC's Response Supp. Auth.") [Dkt. No. 184].

military arm of Fatah; (3) that Fatah is funded by the PA and/or the PLO; and (4) that the PA and PLO provided weapons, instruments, permission, training, and funding to Al-Aqsa to support its terrorist activities. Pls.' Obj. at 3.

Plaintiffs assert that a documentary on the late PA/PLO leader Yasser Arafat, produced by the British Broadcasting Corporation (the "BBC") in 2003, provides clear evidence in support of their claims. In this documentary, according to plaintiffs, Fatah leader Abu Rumaileh "confirmed . . . that Fatah and Al Aqsa Martyrs Brigade are one and the same entity led by the then PA/PLO leader Yasser Arafat . . . and are indistinguishable from each other." Pls.' Obj. at 4. Plaintiffs also assert that "Al Aqsa Martyrs Brigade leader Zakaria Zubeidi confirmed that he received and carried out orders from PA/PLO leader Yasser Arafat." Id. at 5. Plaintiffs argue that these statements will establish the PA/PLO's liability for the attack that resulted in Klieman's death. Id. at 7.

In September 2011, plaintiffs served on the BBC's Washington, D.C. Bureau office a subpoena *duces tecum*, which sought the production of "[a]uthentic, complete and unedited" audiovisual copies of the following: (1) "the BBC program titled 'Arafat Investigated' which was broadcast by BBC on or about November 9, 2003" and (2) all recordings, including outtakes, which were prepared for that program and which relate to and include the interviews conducted with Ata Abu Rumaileh and Zakaria Zubeidi. Pls.' Obj. Ex. B, App. B at 1-2. In addition, plaintiffs also requested (3) that the BBC designate a knowledgeable deposition witness, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, who could testify on behalf of the BBC regarding the authenticity of the recordings, the manner in which they were created, copied and stored, and the manner in which recordings of these type were generally stored by the BBC. Id., App. A at 1.

The BBC refused to comply with the subpoena. On November 9, 2011, plaintiffs moved to compel; the BBC filed a cross-motion to quash on November 18, 2011.

Pursuant to this Court's June 20, 2008 Referral Order, Magistrate Judge Facciola reviewed the parties' cross-motions and issued a memorandum order denying the plaintiffs' motion to compel and granting the BBC's motion to quash. See Estate of Klieman v. Palestinian Auth., 861 F. Supp. 2d 1 (D.D.C. 2012). In his opinion, Judge Facciola cited the BBC's representation that the only person who could meet the qualifications of paragraph 3 of the subpoena was not within 100 miles of this Court. Id. at 2. Thus, he reasoned, the subpoena must be quashed pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, which protects nonparty individuals from being compelled to travel more than 100 miles to attend a deposition. Id.

Plaintiffs assert that Judge Facciola's decision is clearly erroneous and contrary to law. They assert that Rule 45's territorial restriction does not apply to requests for documents, and thus is irrelevant to the portion of the subpoena requesting documents. Pls.' Obj. at 17-18. Plaintiffs also contend that by virtue of the BBC's presence in the District of Columbia, the BBC is obligated, under Rule 30(b)(6), to "create" a deponent who can speak knowledgeably to the authenticity of the requested materials and the manner in which they were recorded and stored by the BBC. Id. at 13-17.

The BBC maintains that Judge Facciola's order should be upheld on the grounds set forth in his decision. BBC Opp. at 1-2. The BBC further argues that even if the subpoena does not violate Rule 45(c), it should be quashed on two independent grounds: that the materials are protected under the First Amendment by a "reporter's privilege," and that the materials would be inadmissible at trial. Id. at 2.

## II.  STANDARD OF REVIEW

When a party objects to a magistrate judge's determination with respect to a non-dispositive matter, the Court must modify or set aside all or part of the magistrate judge's order if it is "clearly erroneous" or "contrary to law."  FED. R. CIV. P. 72(a); see also LOC. CIV. R. 72.2(c).  The "clearly erroneous" standard "applies to factual findings and discretionary decisions," and is met when, "although there is evidence to support [a determination], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Am. Center for Civ. Justice v. Ambush, 794 F. Supp. 2d 123, 129 (D.D.C. 2011) (internal quotations omitted); see also Beale v. Dist. of Columbia, 545 F. Supp. 2d 8, 13 (D.D.C. 2008).  "The 'contrary to law' standard, by contrast, permits *de novo* review of a magistrate judge's legal conclusions."  Am. Center for Civ. Justice v. Ambush, 794 F. Supp. 2d at 129 (citing First Am. Corp. v. Al-Nahyan, 2 F. Supp. 2d 58, 60 (D.D.C. 1998)).

## III.  DISCUSSION

### A. *Territorial Restrictions on Discovery from Nonparties*

#### 1.  Territorial Restrictions on Deponents

Rule 30 of the Federal Rules of Civil Procedure provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court[.]"  FED. R. CIV. P. 30(a)(1).  If a party seeks to depose an organization, rather than a specific individual, "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."  FED. R. CIV. P. 30(b)(6).  Rule 30(b)(6) applies to any organization subject to a deposition subpoena, including nonparties.  Id. (providing that "[a] subpoena must advise a nonparty organization of its duty to make this designation").

5

Plaintiffs do not seek to depose any specific employee with personal knowledge of the contents or storage of the audiovisual recordings. Rather, plaintiffs request that the BBC designate a knowledgeable Rule 30(b)(6) deponent who can attest to "the authenticity of the Program and the Outtakes, and the manner in which they were created and stored by the BBC" in order to establish their admissibility in court as "business records." Pls.' Obj. at 8.

The BBC asserts that it does not employ any individual in or near Washington, D.C., who could serve as a deponent for this matter, and that every person who could serve as a deponent resides and works in the United Kingdom. BBC Opp. at 3-4. Judge Facciola accepted this representation. See Estate of Klieman v. Palestinian Auth., 861 F. Supp. 2d at 2. As the BBC is headquartered in the United Kingdom and produced the documentary there, and staffs only a news bureau in Washington, D.C., the Court finds that Judge Facciola did not err in doing so. Plaintiffs' request for a deposition therefore is foreclosed by Rule 45(c)(3), which provides that "the issuing court must quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person[.]" FED. R. CIV. P. 45(c)(3)(B)(ii).

Plaintiffs argue that "the subpoenaed witness for the Rule 30(b)(6) deposition is the BBC itself," not a particular person. Pls.' Obj. at 16. Therefore, they contend, "if the BBC does not have a knowledgeable custodian of records representative in Washington, . . . the BBC is required to *create* a witness or witnesses located within 100 miles of this Court with responsive knowledge." Pls.' Obj. at 12, 16 (emphasis in original). That argument was correctly rejected by the court in Price Waterhouse LLP v. First Am. Corp.:

> Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work. That the Rule focuses on the

> individual is supported by the fact that there is no such limitation regarding production by a nonparty of documents. . . .
>
> [A]llowing a subpoena served pursuant to Rule 30(b)(6) to evade the proscriptions of Rule 45(c) would render Rule 45 surplusage and subject nonparties to the same level of burdensome discovery that can be imposed upon a party. . . .
>
> . . .
>
> In essence, any contention that a subpoena served pursuant to Rule 30(b)(6) need not comply with the requirements of Rule 45(c) would ''fly in the face of the intent of Rule 45([c]) which is to 'protect nonparty witnesses from being inconvenienced by being compelled to travel inordinate distances to have their depositions taken.'''

Price Waterhouse LLP v. First Am. Corp., 182 F.R.D. 56, 63 (S.D.N.Y. 1998) (quoting Stanford v. Kuwait Airlines Corp., No. 85 Civ. 0477, 1987 WL 26829, at *3 (S.D.N.Y. Nov. 25, 1987)).

In sum, under Rule 45 this Court must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district. See Sokolow v. Palestine Liberation Org., No. 04 Civ. 397, 2012 WL 3871380, at *4 (S.D.N.Y. Sept. 6, 2012) (on very similar facts, denying request to require deposition where only knowledgeable witnesses resided in United Kingdom, but requiring production of affidavit by BBC after it was served with subpoena in New York); Krueger Invs., LLC v. Cardinal Health 110, Inc., No. CV 12-0618, 2012 WL 3264524, at *3 (D. Ariz. Aug. 9, 2012) (even if DEA arguably could be required to comply with Rule 30(b)(6) subpoena, Rule 45 "explicitly prohibits a subpoena requiring a non-party to travel more than 100 miles from its place of business to testify"); West Coast Life Ins. Co. v. Life Brokerage Partners, LLC, Civ. No. 08-CV-80897, 2010 WL 181088, at *2-3 (D. Del. Jan. 19, 2010) (quashing Rule 30(b)(6) subpoena issued to non-party whose employees worked over 100 miles from district); 1920 Enters., Inc. v. Hartford Steam Boiler Inspection, Civ. Action No. 06-3780, 2007 WL

7

1521019, at *2 (E.D. La. May 23, 2007) (same). A contrary rule would render Rule 45(c)'s protections meaningless in the context of Rule 30(b)(6) witnesses.

Alternatively, plaintiffs suggest that the subpoena could be modified to direct the deposition of a Rule 30(b)(6) witness in London. Pls.' Obj. at 12. While a decision whether to quash or to modify a subpoena is within a judge's discretion, Linder v. Nat'l Sec. Agency, 94 F.3d 693, 695 (D.C. Cir. 1996), "when appropriate, [the judge should] consider the possibility of modifying the subpoena rather than quashing [it]." Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984); see also Flanagan v. Wyndham Int'l, Inc., 231 F.R.D. 98, 102 (D.D.C. 2005) ("A court should be loathe to quash a subpoena if other protection of less absolute character is possible."); cf. Linder v. Nat'l Sec. Agency, 94 F.3d at 698 (noting that modification "is generally preferred to outright quashing," but finding that district court did not err in failing to consider modification of subpoena, where modification was not feasible).

The Court may not modify the subpoena by requiring a deposition in London, as it lacks authority to direct a deposition outside of this district – let alone in another country. The Federal Rules of Civil Procedure make clear that a deposition subpoena "must issue . . . from the court for the district where the deposition is to be taken." FED R. CIV. P. 45(a)(2)(B); see Price Waterhouse LLP v. First Am. Corp., 182 F.R.D. at 64 (refusing to modify subpoena such that deposition would take place in England); Sokolow v. Palestine Liberation Org., 2012 WL 3871380, at *4 (same). Thus, the portion of the subpoena seeking to depose a BBC witness must be quashed as violative of Rule 45.

2. Territorial Restrictions on Compelled Production of Documents

By contrast, the Federal Rules of Civil Procedure permit a party to subpoena *documents* regardless of where those documents are located, provided that the documents are

8

within the control of someone subject to the issuing court's jurisdiction.  See FED. R. CIV. P. 45(c) (1991) advisory committee's note ("[T]he person subject to the subpoena is required to produce materials in that person's control whether or not the materials are located within the district or within the territory within which the subpoena can be served."); see also 9A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2456, at 417 (3d ed. 2008) ("[E]ven records kept beyond the territorial jurisdiction of the district court issuing the subpoena may be covered if they are controlled by someone subject to the court's jurisdiction."). Because a subpoenaed person or entity that is directed only to produce documents need not appear in person at the place of production, FED. R. CIV. P. 45(c)(2)(A), Rule 45's protections against compelled travel do not apply to the production of documentary materials.

Accordingly, courts routinely enforce subpoenas for the production of documents, even where the requested documents are located over 100 miles from the district.  See Hay Group, Inc. v. E.B.S. Acquisition Grp., 360 F.3d 404, 412-13 (3d Cir. 2004) (Alito, J.); In re Auto. Refinishing Paint, 229 F.R.D. 482, 494-95 (E.D. Pa. 2005) (finding that subpoena requesting that nonparty's documents located in Belgium be produced in Washington, D.C., complied with Rule 45); Price Waterhouse LLP v. First Am. Corp., 182 F.R.D. at 61; Ghandi v. Police Dep't of City of Detroit, 74 F.R.D. 115, 120-23 (E.D. Mich. 1977).

A magistrate judge in the U.S. District Court for the Southern District of New York recently reviewed a nearly identical subpoena served on the BBC by a set of similarly situated plaintiffs.  See Sokolow v. Palestine Liberation Org., 2012 WL 3871380, at *1.  As in this case, the subpoena sought the "Arafat Investigated" video materials and a deposition by a knowledgeable Rule 30(b)(6) witness.  Like this Court, the magistrate judge concluded that the deposition request violated Rule 45(c)'s territorial restrictions, but that the documentary request

9

was not barred by these restrictions. The magistrate judge therefore required the production of the documents, and he also modified the subpoena to direct the BCC to produce an affidavit confirming the authenticity of the subpoenaed recordings and their maintenance as business records. Id. at *4. Such modification strikes this Court as consistent with Rule 45 and as a sensible and appropriate modification to the subpoena in order to permit plaintiffs to validate the authenticity of the requested documentary material.

### B. Reporter's Privilege

The Court turns now to another portion of Rule 45 that Judge Facciola did not have to reach, the provision directing an issuing court to "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." FED. R. CIV. P. 45(c)(3)(A)(iii). The BBC argues that the outtakes requested by plaintiffs are subject to the qualified reporter's privilege under the First Amendment for materials gathered or generated by journalists in the course of their reporting. See BBC Opp. at 2-3, 10.[2]

The reporter's privilege protects a journalist from being compelled to disclose his or her sources, or information obtained from those sources. See Clyburn v. News World Commc'ns, Inc., 903 F.2d 29, 35 (D.C. Cir. 1990); Zerilli v. Smith, 656 F.2d 705, 712-15 (D.C. Cir. 1981); Carey v. Hume, 492 F.2d 631, 636 (D.C. Cir. 1974). In Zerilli, the D.C. Circuit

---

[2] The BBC appears to concede that only the outtakes could possibly be privileged. See BBC Opp. at 10 (describing only outtakes as privileged). This appears to be the only sensible position that it could take, as any reporter's privilege protecting the documentary itself must be considered waived upon the documentary's public broadcast.

expressly recognized the existence of a reporter's privilege in the context of civil litigation.[3] It held:

> [W]hen striking the balance between the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources, we will be mindful of the preferred position of the First Amendment and the importance of a vigorous press. Efforts will be taken to minimize impingement upon the reporter's ability to gather news . . . Thus in the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege.

Zerilli v. Smith, 656 F.2d at 712 (internal citations omitted).

The party asserting the reporter's privilege bears the burden of showing that the privilege applies in the particular case. CFTC v. McGraw-Hill Co., 507 F. Supp. 2d 45, 50 (D.D.C. 2007); CFTC v. McGraw-Hill Companies, Inc., 390 F. Supp. 2d 27, 32 (D.D.C. 2005); Hutira v. Islamic Republic of Iran, 211 F. Supp. 2d 115, 120 n.4 (D.D.C. 2002). Once the party invoking the privilege demonstrates its applicability, the burden shifts to the party seeking the information to show that on "the specific facts of the case," its interest outweighs the public interest in protecting the journalist's sources and information. Blumenthal v. Drudge, 186 F.R.D. 236, 244 (D.D.C. 1999) (quoting Zerilli v. Smith, 656 F.2d at 712). When balancing these competing interests, a court must evaluate (1) the "civil litigant's need for the information," *i.e.*, whether "the information sought goes to 'the heart of the matter,'" and (2) whether the litigant seeking the information has exhausted reasonable alternative sources of information. Zerilli v. Smith, 656 F.2d at 713-14 (internal quotation omitted); see also Lee v. Dep't of Justice, 413 F.3d 53, 59-61 (D.C. Cir. 2005) (applying Zerilli test); In re Slack, 768 F. Supp. 2d 189,

---

[3] By contrast, the court has not recognized a reporter's privilege in the context of criminal prosecutions. See In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1145-50 (D.C. Cir. 2006).

194-95 (D.D.C. 2011) (same); In re Subpoena to Goldberg, 693 F. Supp. 2d 81, 85-87 (D.D.C. 2010) (same).[4]

In Zerilli, the D.C. Circuit addressed a request for the names of confidential sources, and many of the justifications articulated in that decision deal with protecting a journalist's ability to provide assurances of confidentiality to his or her sources. See Zerilli v. Smith, 656 F.2d at 711-12. The judges of this Court have recognized, however, that the reporter's privilege may protect both confidential and nonconfidential information gathered by reporters. See In re Slack, 768 F. Supp. 2d at 194 (expressing concern that a contrary rule "would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties") (quoting Gonzales v. Nat'l Broadcasting Co., Inc., 194 F.3d 29, 35 (2d Cir.1999)); Tripp v. Dep't of Defense, 284 F. Supp. 2d 50, 54 (D.D.C. 2003); In re Subpoena to Goldberg, 693 F. Supp. 2d at 85; Hutira v. Islamic Republic of Iran, 211 F. Supp. 2d at 121. But where the requested information is not confidential, as in this case, "the risk of debilitating a journalist's ability to gather information is considerably diminished." In re Slack, 768 F. Supp. 2d at 194. "Consequently, the showing needed to overcome a reporter's privilege when the information sought is nonconfidential is 'less demanding than the showing required where confidential materials are sought.'" Id. (quoting Hutira v. Islamic Republic of Iran, 211 F. Supp. 2d at 120); see also NLRB v. Mortenson, 701 F. Supp. 244, 248-49 (D.D.C. 1988).

---

[4] Not relevant here, the Zerilli court also noted that the litigant's interest in compelling disclosure will be heavier where the reporter himself is a party to the case. Zerilli v. Smith, 656 F.2d at 714.

1. The Requested Information Goes to the "Heart of the Matter"

The statements made by Al-Aqsa leader Zakaria Zubeidi and Fatah leader Ata Abu Rumaileh in the 2003 documentary about the relationship between Al-Aqsa, Fatah, and the PA/PLO bear directly on the nature of the relationships between those organizations in 2002. Plaintiffs point to the following statement recorded in the broadcast documentary, in which Rumaileh states that there is no distinction between the two organizations:

> [BBC interviewer]: So explain to me, Fatah and the Al-Aqsa Martyrs Brigade, are they part of the same organization? Are you separate, are you together, how close are you?
>
> Ata Abu Rumaileh (translation): Fatah has two sections: a military wing, led by the military and a political wing led by the politicians. But there is no difference between Fatah and the Al-Aqsa Martyrs Brigades.

Pls.' Obj., Ex. B at 21; see also Pls.' Reply at 12-13. Plaintiffs also draw the Court's attention to statements by Zubeidi about carrying out orders from Yasser Arafat:

> [BBC Interviewer]: When you captured the Governor of Jenin, did Yasser Arafat speak directly telling you to release him?
>
> Zakaria Zubaidi (translation): Yes.
>
> [Interviewer]: What did he say?
>
> Zakaria Zubaidi (translation): We don't question his decisions. They're carried out first, and discussed later.

Pls.' Obj., Ex. B at 18; see also Pls.' Reply at 13.

These excerpts from the broadcast documentary show that the requested information goes to the heart of plaintiffs' theory of liability, *i.e.*, that the PA-PLO supported and controlled Al-Aqsa during the relevant time period. Furthermore, plaintiffs have demonstrated that their need for the information is far from merely speculative. CFTC v. McGraw-Hill Co., 507 F. Supp. 2d at 50-51.

13

### 2. Plaintiffs Have Exhausted Reasonable Alternative Sources of Information

Plaintiffs also have shown that they cannot reasonably obtain the subpoenaed information from other sources. Rumaileh and Zubeidi reside outside of the United States and are not subject to this Court's jurisdiction. Plaintiffs' counsel has attested to unsuccessful efforts to track down and interview Zubeidi in the West Bank town of Jenin. See Pls.' Reply at 15-16. Although the BBC notes that plaintiffs have made no effort to request this Court's assistance to secure the testimony of either Zubeidi or Rumaileh, BBC Opp. at 14-15, the Court is not convinced that depositions of these individuals are available at all, let alone "reasonably" so. See Carey v. Hume, 492 F.2d at 639 ("[L]itigants [need not] be made to carry wide-ranging and onerous discovery burdens where the path is . . . ill-lighted.").

The BBC points to other evidence of the connection between the PA/PLO and Al-Aqsa, asserting that "[t]he underlying information is clearly obtainable from other sources." BBC Opp. at 16. The BBC argues that it is possible that plaintiffs will meet their evidentiary burden through different types of evidence, such as documents on the PA's website and reports issued by the PA, documents released by Israel, and court documents from the trial of Tamer Rimawi, who was convicted of murdering Ms. Klieman. Id. But the BBC does not point to reasonably available sources of statements or testimony from other Al-Aqsa or Fatah leaders about the nature of the relationship between the PA/PLO and Al-Aqsa. Such evidence may well be crucial to plaintiffs' ability to prove their case.

### 3. Plaintiffs Have Made the Requisite Showing to Overcome the Qualified Reporter's Privilege

The Court recognizes the vital function of newsgathering organizations and acknowledges the threats to journalists' safety and their ability to collect information if they are

perceived as readily handing over information to the courts. But the importance of this consideration is weaker where, as here, a reporter's source agrees to openly participate in a recorded interview, with the understanding that portions of the interview will be broadcast by a major news network. And in light of the relevance of the requested information to the contested issues in this case, the fact that this information is not confidential, and the lack of reasonable alternative sources, the Court concludes that plaintiffs have met their burden to overcome the reporter's privilege.

### C. Relevance or Admissibility?

Finally, the BBC contends that the subpoena should be quashed because the evidence sought would not be admissible at trial and therefore should not be compelled. BBC Opp. at 2-3. The BBC's argument, however, is completely undercut by the language of the Federal Rules of Civil Procedure, which permit parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). And the Rule expressly states that "[r]elevant information *need not be admissible* at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. (emphasis added); see also 9A WRIGHT & MILLER § 2459, at 439-41 (judge need not pass on admissibility of documents "if there is any ground on which they might be relevant"). The key inquiry is the *relevance* of the information to the issues in the case, not its eventual admissibility at trial. As the D.C. Circuit has noted:

> [T]he test of relevancy for purposes of discovery under Fed. R. Civ. P. 26(b)(1) is broader than the test for admissibility at trial, as the Rule specifically provides. Hence, a party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case.

15

Smith v. Schlesinger, 513 F.2d 462, 472-73 (D.C. Cir. 1975) (internal citations omitted).

Relevance under Rule 26 thus "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jewish War Veterans of the United States of America, Inc. v. Gates, 506 F. Supp. 2d 30, 41-42 (D.D.C. 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); see also Food Lion, Inc. v. United Food & Commer. Workers Int'l Union, AFL-CIO-CLC, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("Generally speaking, 'relevance' for discovery purposes is broadly construed.").

As discussed above, the information disclosed in the documentary is unquestionably relevant to plaintiffs' claims. Even if the statements made therein are eventually excluded as hearsay, they are nonetheless "reasonably calculated to lead to the discovery of admissible evidence," FED. R. CIV. P. 26(b)(1), since "hearsay, while inadmissible itself, may suggest testimony which properly may be proved." Nakajima v. General Motors Corp., 857 F. Supp. 100, 104-05 n.10 (D.D.C. 1994) (quoting FED. R. CIV. P. 26 advisory committee's note); see also 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2008, at 145-46 (3d ed. 2010) ("[T]he fact that the information sought is hearsay or is otherwise inadmissible at trial does not bar discovery if it is relevant to the subject matter of the action and there is a reasonable possibility that the information sought may provide a lead to other evidence that will be admissible."). The Court therefore rejects the BBC's contention that the purported inadmissibility of the requested information provides a basis for quashing plaintiffs' subpoena.

For the foregoing reasons, the Court will sustain in part and overrule in part plaintiffs' objection to Magistrate Judge Facciola's Memorandum Order. The section of Judge

Facciola's Memorandum Order quashing the portion of the subpoena requesting a Rule 30(b)(6) deposition will be upheld. As for the documents requested, the Memorandum Order will be modified so as to direct the BBC to produce the requested documentary material, accompanied by one or more affidavits attesting to the authenticity of the 2003 documentary and the outtakes.

An appropriate Order accompanies this Opinion.

/s/_____
PAUL L. FRIEDMAN
DATE: September 19, 2013   United States District Judge