## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF ESTHER KLIEMAN, *et al.*,     ) <br> ) <br> Plaintiffs,     ) <br> ) <br> v.     ) <br> ) <br> THE PALESTINIAN AUTHORITY,     ) <br>  *et al.*,     ) <br> ) <br> Defendants.     ) | C.A. No. 04-1173 (PLF) (JMF) |

## OPPOSITION OF DEFENDANT THE PALESTINIAN AUTHORITY TO PLAINTIFFS' "OBJECTION AND MOTION FOR RECONSIDERATION AND REVIEW [SIC] MAGISTRATE JUDGE'S ORDER OF SEPTEMBER 5, 2013 [DE 208] PURSUANT TO FED. R. CIV. P. 72(a)"

## INTRODUCTION

In considering Plaintiffs' Rule 72 Objection, it is critical to focus on what is <u>not</u> at issue in this Rule 72 process. Specifically, on June 6, 2012, after four years of fact discovery and thirty hours of a Rule 30(b) deposition of the PA through multiple designees, the Court, through Magistrate Judge Facciola, denied Plaintiffs' motion to compel a second Rule 30(b)(6) deposition of the Palestinian Authority, holding that "[a]s defendants correctly point out[1] . . . since the defendants' 30(b)(6) depositions have already been taken and plaintiffs never sought leave of court to take additional depositions, their motion to compel must be denied." DE 174

---

[1] *See* Defendant PA's Opposition to Plaintiffs' Motion to Compel at 2, 19-21 (March 26, 2012) (DE 157) (Plaintiffs' also have ignored Rule 30(a)(2)(A)(ii) requirement that a party seek leave of court before convening serial depositions of a party); Memorandum in Support of Plaintiffs' Cross-Motion for Protective Order at 16-21, 19-21 (March 26, 2012) (DE 158-1). At the time, Defendants opposed Plaintiffs' second Rule 30(b)(6) deposition on multiple grounds, including Plaintiffs' failure to seek leave of court. *Id.*

(citing Rule 30(b)(2)(A)(ii)).  A year later, Plaintiffs again noticed a second deposition of the PA through multiple designees in the Middle East without seeking leave of court, as to which the PA also moved for a protective order.  DE 193.  On May 15, 2013, the Court, through Magistrate Judge Facciola, granted the PA's motion, holding that Plaintiffs had violated both the Court's prior rulings and applicable rules.  DE 200.  Plaintiffs did not appeal the Magistrate Judge's June 6, 2012 or May 15, 2013 rulings pursuant to Rule 72 and, accordingly, those rulings are non-appealable, final and the law of this case.

As a result of the Court's May 5, 2013 ruling, and pursuant to Rules 26(c)(3) and 37(a)(5) of the Federal Rules of Civil Procedure, the Court was required to impose attorney's fees and costs on Plaintiffs unless they could somehow prove that their insistence on a second Rule 30(b)(6) deposition of the PA without first obtaining leave of court was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii).  In accordance with the rules, the Court, through Magistrate Judge Facciola, ordered Plaintiffs to show cause why the automatic sanctions should not be imposed, which Plaintiffs attempted to do.  DE 201.  Even without a filing by the PA correcting many inaccuracies in Plaintiffs' submission, Magistrate Judge Facciola, given his extensive familiarity with fact discovery in this case over the last five years, concluded that Plaintiffs did not meet their burden and, on September 5, 2013, directed the PA to file a petition for attorney's fees and expenses incurred in connection with its motion for protective order.  DE 208.

Plaintiffs now challenge the Court's September 5, 2013 finding that Plaintiffs failed to prove that their insistence on multiple depositions of the PA without leave of court was "substantially justified" within the meaning of Fed. R. Civ. P. 37(a)(5)(A)(ii).  Plaintiffs' Rule 72 Objection grossly misrepresents the factual and procedural record in this case.  It ignores contrary events and communications in the procedural record.  In addition, Plaintiffs surprisingly

1352365.1

misapprehend the governing legal standard for reviewing the Magistrate Judge's September 5, 2013 Order relying, as they do, on Advisory Committee comments regarding the pre-1970 version of Rule 37(a)(5). In simplest terms, Plaintiffs fail to sustain their burden to prove that the Magistrate Judge was "clearly erroneous" as to any factual finding in his September 5, 2013 Order or that his ruling was "contrary to law" applicable to the mandatory imposition of sanctions under Rule 37(a)(5), absent a showing of "substantial justification" by Plaintiffs. Their Rule 72 Objection should be denied.

In the final analysis, this Court should note that, over five years ago, it opened fact discovery in this case and set a fact discovery deadline of March 31, 2009. DE 91. On the same day, it referred this case to Magistrate Judge Facciola to to oversee such discovery. DE 92. The fact discovery period was subsequently extended nine times, until April 15, 2013.[2] In other words, Plaintiffs were given four years more to conduct fact discovery than this Court authorized in its June 20, 2008 Scheduling Order. During that time, the Magistrate Judge has meticulously supervised fact discovery in this case and, as the docket amply reflects, was actively involved in, and available to the parties for, any issue that arose in fact discovery. For Plaintiffs to suggest now that they "assumed" they did not need to go to the Magistrate Judge for leave to conduct a second deposition of the PA (after already deposing the PA for thirty hours and after having been denied the opportunity in June 2012), and to suggest they were not given every reasonable and appropriate opportunity to conduct fact discovery in this case, is utterly absurd. The bottom line is that, despite a far greater opportunity to conduct fact discovery than plaintiffs in most cases in this Court, Plaintiffs face the situation that the allegations in their nine-year old Complaint lack

---

[2] *See* DE 96, 99, Minute Order (March 15, 2010), Minute Order (September 20, 2010); DE 123; Minute Order (September 30, 2011); Minute Order (December 5, 2011); DE 174; DE 190.

admissible evidentiary support and, in fact, have been disproven throughout the discovery Plaintiffs have conducted.  The Court should deny Plaintiffs' Rule 72 Objection and authorize the Magistrate Judge to set a schedule for expert discovery.

<u>**RELEVANT FACTUAL BACKGROUND**</u>

In reaching his September 5, 2013 ruling, Magistrate Judge Facciola had the benefit of a detailed presentation of the relevant factual and procedural background relating to Plaintiffs' attempt to take a second Rule 30(b)(6) deposition of the PA without leave of court.  DE 193 at 6-18; DE 198 at 3-9.  For present purposes, the PA provides the following summary of those facts that relate to the allegations Plaintiffs have made in their Rule 72 Objection.

On December 30, 2009, Plaintiffs issued a sixteen-category notice of deposition to the PA pursuant to Rule 30(b)(6).  After thirty hours of examination of four designees, Plaintiffs completed the deposition of the PA in August 2010.  The last designee of the PA to be deposed was the head of the PA's General Intelligence Service ("GIS").

A year and a half after the completion of the deposition of the PA, on February 29, 2012, and with fact discovery scheduled to close on March 31, 2012 at the end of the seventh extension of the fact discovery deadline, Plaintiffs issued a second notice of deposition to the PA pursuant to Rule 30(b)(6), without seeking leave of court.  *See* DE 193 ¶ 2.  Contrary to Plaintiffs' assertion in the pending Rule 72 Objection, the categories in this second notice had not been included in, and were different than, those in the first notice.  Defendants objected to this second notice on multiple grounds, not just Plaintiffs' failure to seek leave of court.  Plaintiffs moved to compel the PA to sit for the second deposition.  DE 193 ¶ 2; *see* DE 149.  The PA opposed that motion and cross-moved for a protective order.  DE 157, 158.  Among the PA's several arguments against a second Rule 30(b)(6) deposition was the PA's clear and unequivocal

contention that Plaintiffs were required to seek leave of court for such a deposition.  DE 157 at 19-21; DE 158-1 at 19-21.  At the same time, Plaintiffs also moved for an eighth extension of the fact discovery period (i.e., until July 1, 2012) and, in doing so, referenced their pending motion to compel a second Rule 30(b)(6) deposition of the PA.  DE 148 ¶ 32 at 11-12.  Defendants opposed that motion as well.  DE 156.

On May 3, 2012, the Court held a hearing on all pending motions and took the motions under advisement.  DE 193 ¶ 2.  On June 6, 2012, the Court issued its rulings.  DE 173, 174. The Court denied Plaintiffs' attempt to conduct a second Rule 30(b)(6) deposition, as follows:

> Plaintiffs also demand that the PA and PLO designate Rule 30(b)(6) deponents who will be asked to attest to the accuracy of the handwriting and signatures on various documents.  [#149] at 8-9.  As defendants correctly point out, however, since the defendants' 30(b)(6) depositions have already been taken and plaintiffs never sought leave of court to take additional depositions, their motion to compel in this regard must be denied."  See Fed. R. Civ. P. 30(a)(2)(A)(ii).

DE 174 at 12.  In light of its ruling, the Court did not need to reach the PA's other grounds for opposing Plaintiffs' second Rule 30(b)(6) deposition.

With respect to Plaintiffs' extension motion, the Court refused to grant a general extension of the fact discovery period.  DE 174 at 12-13.  Rather, the Court granted an extension for the limited purpose of conducting certain specific depositions that were the subject of Hague Convention Letters of Request.  Id.  The Court gave Plaintiffs until December 31, 2012 to conduct those specific depositions, which was five months longer than Plaintiffs had sought.  Id. A second Rule 30(b)(6) deposition of the PA was not one of the depositions permitted.

As of June 6, 2012, therefore, Plaintiffs unequivocally knew the following facts, and were not at liberty later to "assume" otherwise:

- Rule 30(a)(2)(A)(ii) requires a party seeking a second Rule 30(b)(6) deposition to obtain leave of court.

1352365.1

- Magistrate Judge Facciola had denied Plaintiffs' attempt to take a second Rule 30(b)(6) deposition of the PA, including during the new eighth extension period, because Plaintiffs had failed to seek leave of court.

- The PA recognized, and repeatedly argued, that Rule 30(a)(2)(A)(ii) precluded Plaintiffs from taking a second Rule 30(b)(6) of the PA without first obtaining leave of court.

Beginning in November 2012, Plaintiffs sent PA counsel a series of letters in which Plaintiffs construed its previous document requests as having required the PA to search for and produce certain categories of documents, including documents from the files of the PA's General Intelligence Service and Preventive Security Service ("PSS"). DE 193 ¶¶ 4-9, at 4-7. The PA objected to Plaintiffs' position, including on the grounds of timeliness in light of the Court's June 6, 2012 ruling. However, in order to preempt new discovery issues from arising before the December 31, 2012 deadline, but expressly preserving their objections, the PA agreed to undertake an additional search for potentially responsive documents. *See* Exhibit 1 (November 29, 2012 letter from PA counsel).

In a November 27, 2012 letter, Plaintiffs suddenly indicated that, in addition to their demand for additional documents, they "would like to take the 30(b)(6) deposition of a witness knowledgeable about these files, during the upcoming December [Hague Convention] depositions that we have scheduled in Jerusalem" during the week of December 16-20, 2012. DE 193 ¶ 10, at 7. In the same letter, Plaintiffs served the PA with "[a] supplemental notice to take the 30(b)(6) deposition of the PA *on this subject*." *Id.* (emphasis added). The category for designation in the Notice sought designees:

> [k]nowledgeable about and capable of attesting to the digital/electronic files and related files from the Palestinian Authority's Preventive Security Service ("PSS") (including from both PSS headquarters and relevant PSS branch offices) and the Palestinian Authority's General Intelligence Service ("GIS") (including form [sic] both GIS headquarters and relevant GIS branch offices) for the following individuals: [Halabi], [Tamer Rimawi], [Hadib], [Hashash], [Zafer Rimawi] and [William Khatib].

6

*See* Exhibit 2 (November 27, 2012 Notice of Deposition).  In a meet and confer teleconference and letter on December 7, 2012, the PA addressed Plaintiffs' new document demands and Rule 30(b)(6) deposition notice.  *See* Exhibit 3 (December 7, 2012 letter).  In that letter, the PA expressly noted that it had objections to the timeliness and propriety of the notice of deposition but suggested that "[l]eaving aside the timeliness and propriety of [the Notice]" it was "premature to engage in further discussions regarding the issue of such a supplemental Rule 30(b)(6) deposition of the PA unless and until any responsive non-privileged GIS or PSS documents are identified" pursuant to the PA's voluntary additional search.  *Id.*

Five days later, the PA informed Plaintiffs that, during the additional search, documents had been identified that would need to be reviewed for responsiveness, privilege and potential production.  The PA suggested that, under the circumstances, it made sense to reschedule the Hague Convention depositions scheduled for the week of December 16-20, 2012 in Jerusalem. DE 193 ¶¶ 14-15.  *See* Exhibit 4 (December 13, 2012 letter).  On the issue of Plaintiffs' request for an additional Rule 30(b)(6) deposition of the PA regarding any possible supplemental document production, PA counsel stated as follows:

> With respect to the issue of the Rule 30(b)(6) deposition of the PA that you recently noticed, and following up on my letter to you dated November 29, 2012, I indicated [during the December 12, 2012 meet and confer teleconference] that it was likely that the PA would be tending a designee to testify regarding aspects of any GIS documents that might be produced.  <u>I did not make a definitive statement that a designee would have to be tendered, particularly since I do not know yet what documents, if any, will actually be produced.</u>  I indicated that, for several reasons, such a Rule 30(b)(6) deposition could not be held next week in conjunction with the two prisoner depositions and, <u>if ultimately held</u>, would most likely need to be scheduled in January 2013. . . An agreed order could be submitted to the Court seeking authorization to take the Rule 30(b)(6) deposition out of time, i.e., after the December 31, 2012 fact discovery cut-off.  The two prisoner depositions could be included in that proposed order if you wish to reschedule them for January 2013 as well.  I suspect Magistrate Judge Facciola would approve and enter such an agreed order.

*Id.* (emphasis added).  Accordingly, with substantial uncertainty regarding whether additional documents would be produced, whether any need would exist for deposition testimony regarding such documents and whether alternative discovery means other than a deposition could address any such need, the PA did not, as Plaintiffs seems to suggest, commit on December 13, 2012 to a second Rule 30(b)(6) deposition of the PA and certainly not without leave of court.

In accordance with the PA's observation that a court order would be necessary, Plaintiffs sent a proposed draft order to the PA on December 14, 2012, which did not include an accurate statement of the PA's communicated positions.  Accordingly On December 18, 2012, the PA sent a revised draft order to Plaintiffs that reflected the PA's positions, including with respect to the issue of another Rule 30(b)(6) deposition.  *See* Exhibit 5 (December 18, 2012 email).  DE 193 ¶ 17.  The PA's revised draft order indicated, among other things, that such a deposition was only a possibility, that it had not been determined yet if the deposition was "necessary" and that "each side preserv[ed] all of their rights and positions regarding the need for and permissibility of the supplemental Rule 30(b)(6) deposition of the PA."  *Id.*  Contrary to Plaintiffs' repeated misrepresentation in their Rule 72 Objection, at no time during these communications (including in the December 12, 2012 meet and confer teleconference or the December 13, 2012 letter) did the PA ever represent to Plaintiffs that the PA had agreed to sit for another Rule 30(b)(6) deposition.  The PA also never stated, or led Plaintiffs to believe, that any possible additional Rule 30(b)(6) deposition of the PA could be taken without leave of court.  In fact, it was the PA that noted that a court order would be required.

Accordingly, as of December 18, 2012, Plaintiffs unequivocally knew the following facts, and were not at liberty later to "assume" otherwise:

1352365.1

- Rule 30(a)(2)(A)(ii), which had not been amended since the Court's June 6, 2012 Order, still required a party seeking a second Rule 30(b)(6) deposition to obtain leave of court.

- The PA had not promised to sit for a second Rule 30(b)(6) deposition.

- The PA was expressly "preserving all of [its] rights and positions regarding the need for and permissibility of the supplemental Rule 30(b)(6) deposition of the PA" which Plaintiffs had requested.

- The PA repeatedly stated, and Plaintiffs acknowledged, that whatever agreement the parties might ultimately reach regarding a second Rule 30(b)(6) deposition required an order from the court – i.e., "leave of court."

After December 18, 2012, circumstances changed significantly and contributed ultimately to the PA's need to file a Motion for Protective Order on April 10, 2013.  First, Plaintiffs' rejected the PA's revised version of the agreed order, countering with an alternative version on December 20, 2012 that was not acceptable to the PA.  DE 193 ¶ 17 at 10.  Second, without the required pre-filing communication with the PA pursuant to Local Rule 7(m), Plaintiffs filed a motion on December 21, 2012 for a ninth extension of the fact discovery period until April 30, 2013, including purportedly "reserv[ing] the right to seek additional discovery and request a further extension of the fact discovery period beyond the herein requested April 30, 2013 deadline . . . ."  DE 186 at 5; *see* DE 193 ¶ 2.  Notably, Plaintiffs did not mention in that motion, let alone seek leave from the Court to conduct, a second Rule 30(b)(6) deposition of the PA.  *Id.*  The PA opposed Plaintiffs' motion for a ninth extension of the fact discovery period, demonstrating in detail that Plaintiffs' request for a general extension of discovery was entirely inappropriate.  DE 187.

Notwithstanding Plaintiffs' attempt, after five years, unjustifiably to expand the scope of fact discovery, the PA wrote to Plaintiffs on January 24, 2013 regarding Plaintiffs' previous request for another Rule 30(b)(6) of the PA, stating as follows:

*          *          *

9

> (Possible Supplemental Rule 30(b)(6) Regarding Any GIS Documents In A
> Supplemental Production).  We will be happy to discuss with you whether, and
> under what circumstances, a supplemental Rule 30(b)(6) deposition of defendant
> PA might be necessary in light of any supplemental production of GIS documents
> that occurs this week.

*See* Exhibit 6 (January 24, 2013 letter); *see* DE 193 ¶ 19.  In a January 30, 2013 letter, the PA

reiterated the request for a meet and confer discussion regarding the issue of a second Rule

30(b)(6) deposition, as follows:

> Finally, as you know, in your letters dated November 27, 2012 and December 6,
> 2012, you indicated your desire to conduct a supplemental Rule 30(b)(6)
> deposition of the PA regarding any responsive, non-privileged documents in the
> files of the GIS or PSS.  Once again, <u>leaving aside the timeliness and propriety of
> Plaintiffs Supplemental Rule 30(b)(6) Notice of Deposition of the PA dated
> November 27, 2012</u>, we remain willing to discuss with you the reasons and bases
> you believe exist for such a deposition, as well as the specific subject matter for
> which you seek a designee regarding such documents.

*See* Exhibit 7 (January 30, 2013 letter) (emphasis added).  Plaintiffs subsequently acknowledged

the need for the parties to conduct further meet and confer discussions regarding such a

deposition.  *See* Exhibit 8 (January 31, 2013 letter); *see* DE 193 ¶ ¶ 20-22.

On February 6, 2013, the parties filed a joint motion seeking the Court's approval for

conducting Hague Convention depositions of two prisoners in Jerusalem on March 4-5, 2013,

further reflecting Plaintiffs' understanding that they could not proceed further without leave of

court in light of the December 31, 2012 close of fact discovery.  DE 189; *see* DE 193 ¶ 23.

Meanwhile, on February 11, 2013, the Court ruled on Plaintiffs' request for a ninth

extension of the fact discovery period.  DE 190.  The Court granted Plaintiffs a very limited

extension, as follows:

> In sum, I will only permit the depositions of 1) Z. Rimawi, 2) Hashash, and 3)
> Ya'akoboff.  These depositions must be completed by April 15, 2013, for on that
> day, all discovery in this case will end.  A point of clarification.  If any of the
> other discovery identified in the above chart [i.e., other Hague Convention
> depositions] can be concluded by that deadline, the parties are permitted to do so.

DE 190 at 8; *see* DE 193 ¶¶ 24-25.  The Court did not permit Plaintiffs to conduct any other discovery after December 31, 2012, including any supplemental Rule 30(b)(6) deposition of the PA, for which Plaintiffs did not even seek leave in its extension motion.  Plaintiffs never appealed Magistrate Judge Facciola's February 11, 2013 ruling pursuant to Rule 72.

Notwithstanding the Court's ruling, Plaintiffs sent an email to the PA on February 11, 2013 raising again the issue of a second Rule 30(b)(6) deposition of the PA.  Specifically, Plaintiffs asked PA counsel to "advise when your office is available for a 30(b)(6) deposition for someone from the PA's General Intelligence Service ("GIS"), General Personnel Counsel ("GPC") and Preventive Security Services ("PSS") who is knowledgeable about, *inter alia*, the GIS, GPC and PSS, and the documents produced and/or withheld in this case."  Plaintiffs had suddenly expanded its request to include a designee from the PA's General Personnel Council and now sought designees to testify about the entities (i.e., GIS, GPC and PSS) themselves, in addition to the documents the PA had produced on January 30, 2013.  Plaintiffs' greatly expanded request for a second Rule 30(b)(6) deposition of the PA was confirmed when, on February 26, 2013, Plaintiffs served the PA with an amended version of the November 27, 2012 notice of deposition and unilaterally set the deposition for April 10, 2013 at the David Citadel Hotel in West Jerusalem.  *See* Exhibit 9 (February 26, 2013 letter).

The PA immediately objected to Plaintiffs unilaterally setting a Rule 30(b)(6) deposition, noted the expanded scope of the notice and requested and convened a meet and confer teleconference with Plaintiffs on February 28,:

> As we previously indicated and offered, and as you have previously acknowledged, there is a need for a meet and confer on the issue of this possible deposition, and that discussion would extend well beyond simply the issue of available dates.  Leaving aside for the moment the timeliness of the original notice or this new amended notice (particularly in light of the Court's [February]

11, 2013 Order), there is a significant issue over whether and to what extent any
of the noticed topics are necessary and appropriate.

*See* Exhibit 10 (February 26, 2013 letter).

During the February 28 meet and confer teleconference, the PA reiterated its arguments

regarding the untimeliness and impropriety of Plaintiffs' notice and engaged on many other

issues implicated by the new notice. *See* DE 193 ¶ 27. Plaintiffs effectively refused to engage in

the meet and confer discussion and stated that they "plan to convene the deposition as noticed"

and that "[i]f the PA does not intend to show up . . . the PA will have to file a motion for

protective order." *Id.* Under the circumstances, PA counsel said that the PA "will file a motion

for protective order" but would "still consider whether to produce a designee" notwithstanding

Plaintiffs' refusal to provide any necessary details regarding their request. *Id.*

Following the March 4-5, 2013 depositions in Jerusalem (which further undermined

Plaintiffs' allegations in the Complaint (*see* DE 193 ¶¶ 28-31)) and in another attempt to resolve

Plaintiffs' continued insistence on a second Rule 30(b)(6) deposition, the PA sought an

additional meet and confer teleconference with Plaintiffs regarding their expanded February 26,

2013 notice of deposition. *See* Exhibit 11 (March 27, 2013 letter); *see* DE 193 ¶ 32. The PA

also served Plaintiffs with a set of objections to the February 26, 2013 notice of deposition. *Id.*

Plaintiffs responded on March 29, 2013, confirming their unjustified position that "absent a court

order" they intended to convene a multi-designee Rule 30(b)(6) deposition of the PA in

Jerusalem on April 10, 2013. *See* Exhibit 12 (March 29, 2013 letter). That meet and confer

teleconference occurred on April 3, 2013. DE 193 ¶ 33. During the meet and confer, Plaintiffs

refused to withdraw the Rule 30(b)(6) notice of deposition and reiterated their intent to convene

the deposition unless the PA obtained a court order precluding the deposition. Plaintiffs refused

to provide the PA with Plaintiffs' legal support for their position that the filing of a motion for

protective order did not obviate the need to appear for the deposition pending the Court's ruling. *See* Exhibit 13 (April 3, 2013 letter).  The PA sought such clarification because Plaintiffs' position was contrary to this Court's published rulings, including rulings from Magistrate Judge Facciola.[3]  Plaintiffs even disputed the PA's same-day summary of the meet and confer teleconference, albeit acknowledging the PA's stated intent to file a motion for protective order if Plaintiffs attempted to go forward with the deposition.  *See* Exhibit 14 (April 4, 2013 letter).

Without seeking leave of court to convene a second Rule 30(b)(6) of the PA on April 10, 2013 in Jerusalem, and despite the PA's stated intent to file a motion for protective order to prevent the deposition, Plaintiffs insisted upon convening the deposition as noticed.  In light of Plaintiffs' threat to seek sanctions  against the PA for failing to appear at the deposition (Ex. 14), the PA had no choice but to file a motion for protective order, which it did on Friday, April 5, 2013, five days before the scheduled deposition.  DE 193.  In its motion, the PA presented many grounds for opposing the deposition, including the lack of need for such a deposition and the improper scope of the noticed categories.  Plaintiffs' failure to seek leave of court was only one of the grounds the PA presented.

Accordingly, as of April 5, 2013, five days before the noticed deposition, Plaintiffs unequivocally knew the following facts, and were not at liberty later to "assume" otherwise:

- Rule 30(a)(2)(A)(ii), which had not been amended since the Court's June 6, 2012 Order, still required a party seeking a second Rule 30(b)(6) deposition to obtain leave of court.

- The PA had served objections to Plaintiffs' notice of deposition, had repeatedly stated its intent not to appear for the deposition on April 10, 2013 as noticed and had filed a motion for protective order preventing the deposition.

---

[3] *See United States ex rel. McBridge v. Haliburton Co.*, 272 F.R.D. 235, 242 (D.D.C. 2011); *Amobi v. D.C. Dep't of Corr.*, 257 F.R.D. 8, 10-11 (D.D.C. 2009).

13

- One of the grounds the PA had included in its motion for protective order was Plaintiffs' failure to seek leave of court to conduct a second Rule 30(b)(6) deposition of the PA.

- Under well-established case law in this Court, the filing of a motion for protective order obviated the deponent's appearance at the deposition pending a ruling on the motion.

Despite this knowledge, Plaintiffs still did not seek leave of court regarding the deposition. Instead, knowing that the PA did not intend to appear at the deposition, Plaintiffs traveled to Jerusalem, purportedly convened the deposition and placed a statement of alleged "non-appearance" on the record. A week later, Plaintiffs' filed their opposition to the PA's motion for protective order and cross-moved for sanctions against the PA, including accusing the PA of "hiding" documents – an allegation which the Court later found lacked any basis. DE 194. The PA opposed Plaintiffs' cross-motion. DE 198. On May 15, 2012, the Court, through Magistrate Judge Facciola, granted the PA's motion for protective order and denied Plaintiffs' cross-motion. DE 200. The Court found that Plaintiffs had failed to seek leave of court to conduct the deposition and that the PA's non-appearance was proper given the filing of its motion for protective order. DE 200 at 2. The Court also commented that it felt "blindsided" by Plaintiffs' tactics regarding the deposition. *Id.* Given its ruling, the Court did not reach the other arguments the PA had presented in support of its request for a protective order. Finally, the Court ordered "that, in accordance with Rule 37(a)(5) of the Federal Rules of Civil Procedure, plaintiffs show cause in writing by May 24, 2013, why they should not pay the PA's reasonable expenses in making their motion for a protective order as it pertains to the PA's not appearing at the deposition." *Id.* at 3. Plaintiffs never appealed Magistrate Judge Facciola's May 15, 2013 ruling pursuant to Rule 72.

On May 24, 2013, Plaintiffs attempt to show cause why it should not pay the PA's reasonable expenses in having to file its motion for a protective order. DE 201. Then, as now,

14

Plaintiffs falsely claim that they were somehow misled into thinking that the PA would be appearing in Jerusalem for the deposition as noticed on April 10, 2013.  They also ignored the obligations imposed upon them by Rule 30(a)(2)(A)(ii) and the Court's June 6, 2012 and February 11, 2013 rulings, all of which exist independent of whatever communications they claim occurred between the parties.  The Court did not ask the PA to file a response, so the PA did not have the opportunity to correct Plaintiffs' misrepresentations of the record in their filing.

On September 5, 2013, the Court ruled that Plaintiffs had not met their burden of showing that their position regarding the second Rule 30(b)(6) deposition of the PA was "substantially justified" within the meaning of Rule 37(a)(5)(A)(ii) and ordered the PA to file a petition for attorney's fees incurred in preparing its motion for protective order.  DE 208.

The Court said that it was "not persuaded by plaintiffs' argument."  DE 208 at 8.  The Court found Plaintiffs' accusation that the PA had misled Plaintiffs by allegedly "chang[ing] its position" (which the foregoing record indicates was a false accusation by Plaintiffs) entirely irrelevant, as follows:

> That the PA initially agreed to a 30(b)(6) deposition and then changed its position has no bearing on whether plaintiffs were substantially justified in opposing the motion for protective order.  As I specifically stated in my June 6, 2012 Memorandum Opinion, plaintiffs had an obligation to seek leave of the Court prior to noticing any additional 30(b)(6) depositions.  [#173] at 12.  Thus, plaintiffs' argument they didn't think it necessary to seek leave of the Court because the deposition topics had not been previously explored ignores my previous holding that they had to seek my permission before taking a second 30(b)(6) deposition of the defendants.

*Id.*

The Court then identified, succinctly and simply, the inherent fallacy of Plaintiffs' position:

> To put it simply, there were two stop signs in this case: 1) the order that permitted certain depositions but set a deadline for discovery, which meant that there could

1352365.1

> be no further discovery unless permitted by the Court ; and 2) the unequivocal command of Federal Rule of Civil Procedure 30(a)(2)(A)(ii), applied in my June 6, 2012 Memorandum Opinion, that leave of court is required to take a second deposition of the same deponent.  Plaintiffs drove through both of them.

*Id.* at 8-9.  The Court also found Plaintiffs' tactics to have been unreasonable and unjustified given the history of fact discovery in the case:

> Indeed, as counsel in this case are well aware, the Court stood ready to resolve any discovery controversy brought to its attention.  A phone call with counsel would have permitted the Court to either suggest a way to resolve their controversy or permit the Court to rule on it, if it could not otherwise be resolved.  That plaintiffs' counsel never made that call before getting on a plane to take a deposition in Jerusalem is mystifying.  The Court would have expect him to do that [i.e., call Chambers] if the deposition was on K Street.  Plaintiffs' precipitous action thus forced the defendants to seek a protective order, and I cannot find that plaintiffs' opposition to defendants' motions was substantially justified.

*Id.* at 9.[4]  Plaintiffs then initiated this Rule 72 process.  DE 212.

## ARGUMENT

In their Rule 72 Objection, Plaintiffs misapprehend the standard of review, fail to prove that Magistrate Judge Facciola's September 5, 2013 Memorandum Order was in any way contrary to law, and fail to identify any factual finding by Magistrate Judge Facciola that was clearly erroneous.  In the process, Plaintiffs, who have shown no hesitation to request sanctions against Defendants[5] but feign surprise at the mandatory imposition of sanctions on them pursuant to Rule 37(a)(5), repeat the same inaccurate and incomplete summary of the factual and

---

[4] In the same Memorandum Order, the Court denied Plaintiffs' motion for sanctions against the PA for allegedly "hiding" documents, finding that "the Court never ordered defendants to make the December 2012 and January 2013 productions," that "while preserving their objections to certain discovery, defendants voluntarily produced documents," that, "[w]hile proving once again that no good deed ever goes unpunished, defendants' doing so cannot possibly be deemed sanctionable under Rule 37" and that "there is not a shred of evidence supporting" Plaintiffs' allegations that the PA knowingly withheld documents.  DE 208 at 7.  Plaintiffs did not appeal those findings and that ruling pursuant to Rule 72, and they are now final for purposes of this case.

[5] It should be noted that, in five years of fact discovery, Defendants did not have a single discovery order entered against them finding them in violation of any discovery rule.

1352365.1

procedural record that they presented to Magistrate Judge Facciola.  The PA respectfully submits that Magistrate Judge Facciola's September 5, 2013 ruling impose sanctions against Plaintiffs was consistent with, and required by, Rule 37(a)(5) and that his factual finding regarding Plaintiffs' failure to prove "substantial justification" for their position was precisely accurate and certainly not clearly erroneous.  For these reasons, Plaintiffs' Objections must be dismissed and the September 5, 2013 Memorandum Order should be upheld in its entirety.

## STANDARD OF REVIEW

Plaintiffs correctly state in their Rule 72 Objection that this Court reviews the rulings of a magistrate judge on a non-dispositive, pre-trial motion under a "clearly erroneous or contrary to law" standard.  DE 212-1 at 12.  However, Plaintiffs fail to note how that standard has been interpreted by this Court or explain whether they are arguing that Magistrate Judge Facciola's September 5, 2013 Memorandum Order was "clearly erroneous" or "contrary to law" or both.

Under Rule 72(a) and Local Rule 72.2, a party may seek reconsideration of a magistrate judge's determination in a discovery dispute.  Upon review, "the magistrate judge's decision is entitled to great deference" and will not be disturbed "unless found to be 'clearly erroneous or contrary to law.'"  *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998)).  The "clearly erroneous" standard "applies to factual findings and discretionary decisions," and is met when, "although there is evidence to support [a determination], the reviewing court on the entire evidence is left with the *definite and firm conviction that a mistake has been committed*."  *Am. Cr. for Civ. Justice v. Ambush*, 794 F. Supp. 2d 123, 129 (D.D.C. 2011) (internal quotations omitted) (emphasis added); *see also Beale v. Dist. of Columbia*, 545 F. Supp. 2d 8, 13 (D.D.C. 2008).  "The 'contrary to law' standard, by contrast, permits *de novo*

1352365.1

review of a magistrate judge's legal conclusions." *Am. Center for Civ. Justice*, 794 F. Supp. 2d at 129 (citing *First Am. Corp. v. Al-Nahyan*, 2 F. Supp. 2d 58, 60 (D.D.C. 1998)).

Plaintiffs have failed to meet this high burden.

## I.    PLAINTIFFS FUNDAMENTALLY MISSTATE FED. R. CIV. P. 37(a)(5) AND HAVE NO BASIS FOR ARGUING THAT MAGISTRATE JUDGE FACCIOLA'S SEPTEMBER 5, 2013 MEMORANDUM ORDER WAS "CONTRARY TO LAW"

As noted above, Plaintiffs' Rule 72 Objection do not identify whether they are arguing that Magistrate Judge Facciola's Memorandum Order was "clearly erroneous" or "contrary to law." Plaintiffs appear to be arguing the latter when they claim that Magistrate Judge Facciola ignored the "extreme reluctance to employ sanctions" that is "built into Fed. R. Civ. P. 37(a)(5). *See* 212-1 at 13. However, Plaintiffs' argument is based on a fundamental misapprehension of the Rule and its Advisory Comments.

Plaintiffs claim that the "Advisory Comments to Rule 37" state that 'only a handful of reported cases include an award of expenses, and the Columbia Survey found that in only one instance out of 50 motions decided under Rule 37(a) did the court award expenses.' DE 212-1 at 13. But this note appears in the Notes to the 1970 Amendment to the Federal Rules of Civil Procedure and refers to the state of the rule *before* it was amended to make an award of sanctions mandatory. Plaintiffs simply omit the rest of the Notes, which continue as follows: "It appears that the courts do not utilize the most important available sanction to deter abusive resort to the judiciary." In the next paragraph, the Notes explain the likely impact of the proposed amendment to make sanctions presumptive: "The proposed [and ultimately adopted] change provides in effect that expenses should ordinarily be awarded *unless a court finds that the losing party acted justifiably in carrying his point to court*" (emphasis added).

Indeed, Magistrate Judge Facciola has previously explained the significance of the Advisory Committee Notes to the 1970 Amendments to Rule 37 in previous cases:

> The Rule was specifically amended in 1970 to encompass a presumption that sanctions should be awarded unless one of the conditions in the Rule is met "to encourage judges to be more alert to abuses occurring in the discovery process."  Fed. R. Civ. P. 37, Advisory Committee Notes to 1970 Amendments; *see also D.L. v. District of Columbia*, 256 F.R.D. 239, 242 (D.D.C. 2009) (noting that attorney's fees were not only warranted but required under the Rule); *Cobell v. Norton*, 226 F.R.D. 67, 90 (D.D.C. 2005) ("[T]he language of the Rule itself is mandatory, dictating that the Court must award expenses upon granting a motion to compel disclosure unless one of the specified bases for refusing to make such an award is found to exist.").

*Covad Communs. Co. v. Revonet, Inc.*, 262 F.R.D. 1, 2 (D.D.C. 2009).  Thus, contrary to Plaintiffs' erroneous argument, Rule 37(a)(5), since 1970, has included imposed a presumption that sanctions should be awarded unless the party being sanctioned can prove its position was substantially justified.  Plaintiffs' citation to the portion of the Advisory Committee Notes describing the state of the rule before it was amended, as well as a Supreme Court case from 1941, has no relevance to the Rule as it has stood for over forty years.

Accordingly, Plaintiffs' contention that Magistrate Judge Facciola "ignored this facet of the Rule when he sanctioned Plaintiffs," DE 212-1 at 13, is totally wrong.

Plaintiffs also misinterpret what is required under the "substantially justified" exception to sanctions being awarded under Rule 37(a)(5).  While correct in stating that "substantially justified" means "justified to a degree that could satisfy a reasonable person . . . in both law and fact," DE 212-1 at 13, Plaintiffs fail to note that a discovery position which lacks legal and factual support is not justified, let alone substantially justified.  *McNamara v. Picken*, Civil Action No. 11-1051 (ESH/JMF), 2013 U.S. Dist. LEXIS 78477, at *2 (D.D.C. June 4, 2013)

19

(citing *Covad Communs. Co. v. Revonet, Inc.*, 262 F.R.D. 1, 4 (D.D.C. 2009)) ("If there was no legal support given for the objection, then the objection is not justified.").[6]

Quite simply, Plaintiffs have no basis for arguing that any part of Magistrate Judge Facciola's September 5, 2013 Memorandum Order was "contrary to law."

## II. PLAINTIFFS FAIL TO PROVE THAT MAGISTRATE JUDGE FACCIOLA'S FACTUAL FINDING REGARDING PLAINTIFFS' LACK OF SUBSTANTIAL JUSTIFICATION FOR THEIR POSITION WAS "CLEARLY ERRONEOUS."

Plaintiffs also fail to prove that Magistrate Judge Facciola's factual findings were "clearly erroneous." In order to overturn the Magistrate Judge's Memorandum Order, Plaintiffs must provide the Court with a "definite and firm conviction that a mistake has been committed." *Am. Ctr. for Civ. Justice*, 794 F. Supp. 2d at 129. Plaintiffs have not and cannot do so.

First, Plaintiffs claim that they were "substantially justified" in requesting another Rule 30(b)(6) deposition of Defendant The Palestinian Authority ("PA"). DE 212-1 at 13-17. Plaintiffs base this claim on what they describe as their "reasonable belie[f]" that the Court's June 6, 2012 Memorandum Order, which stated unequivocally that Plaintiffs were required to seek leave of Court to take additional depositions, applied only "to 30(b)(6) depositions on previously known and examined issues." *Id.* at 14. The law and history of this case clearly hold otherwise.

Rule 30(a)(2)(A)(ii) states that a party must obtain leave of court to take a deposition if "the deponent has already been deposed in the case." In June and August 2010 and February

---

[6] Plaintiffs also cite to a case in which a court exercised its discretion not to award fees under Rule 37 based on its conclusion that "such an award would be 'otherwise unjust.'" *Lohrenz v. Donnelly*, 187 F.R.D. 1, 10 (D.D.C. 1999). However, the court found in that case that neither party had a firm basis for its position. The court found that the plaintiffs acted sloppily while the defendant urged the court "to accept a legal argument that has been specifically rejected by controlling case law from the Supreme Court and the Court of Appeals for the District of Columbia Circuit." *Id.* at 10-11.

1352365.1

2011, Plaintiffs convened the Rule 30(b)(6) depositions of four witnesses designated by

Defendant PA and one witness designated by Defendant PLO.  By the time Plaintiffs completed

these depositions, they had conducted more than thirty hours of examinations.  On February 29,

2012, Plaintiffs noticed additional Rule 30(b)(6) depositions of both the PA and the PLO

concerning handwriting issues.  Due to these new notices of deposition, the parties fully briefed

whether an organization constitutes a "deponent" under Rule 30(a)(2)(A)(ii), with Defendants

citing law stating that "[t]he policy against permitting a second deposition of an already-deposed

deponent is equally applicable to depositions of individuals and organizations."  DE 157 at 19-20

(citing *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa.

2008)).[7]  The Court agreed with Defendants and issued its June 6, 2012 Memorandum Order

precluding Plaintiffs from taking additional Rule 30(b)(6) depositions of the PA and the PLO.

---

[7] *See also Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001)
(holding that "[b]ecause this second Rule 30(b)(6) subpoena was issued…without leave of the court, it
was invalid."); *Burdick v. Union Sec. Ins. Co.*, No. 07-cv-4028, 2008 U.S. Dist. LEXIS 99994, at *11-12
(C.D. Cal. Dec. 3, 2008) (agreeing "with the reasoning and decisions of those courts which have held that
the prior judicial approval requirement applies to deposition notices and subpoenas issued to corporations
pursuant to Rule 30(b)(6)," and holding that plaintiff's second 30(b)(6) notice issued without leave of the
court was invalid); *Appleton Papers, Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 U.S. Dist.
LEXIS 111768, at *8-9 (E.D. Wis. Sept. 2, 2009) ("The defendants contend that they had no obligation to
obtain leave of court to conduct a second set of Rule 30(b)(6) depositions.  In their view, Rule 30(a)(2)(B)
does not apply to Rule 30(b)(6) depositions, especially where the second deposition relates to different
topics than the first.  The argument ignores the text, history, and purpose of the 1993 Amendment to Rule
30."); *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC*, No. 07-2388-DJW, 2008 U.S. Dist. LEXIS
75489, at *8 (D. Kans. Aug. 21, 2008) ("[L]eave of court *is required* before a party may take a second
Rule 30(b)(6) deposition of a corporation or other entity.  This conclusion is based on the plain meaning
of Rule 30(a)(2)(A)(ii)…There is nothing in the text of Rule 30 that supports the conclusion that Rule
30(b)(6) depositions should be treated differently from depositions of individuals.  Indeed, by using the
generic word 'deponent,' the drafters must have intended to include not only individuals but also
corporations and other organizations and entities within the rule that leave of court is required for a
second deposition."); *In re Sulfuric Acid Antitrust Litig.*, No. 03-cv-4576, 2005 U.S. Dist. LEXIS 17420,
at *12 (N.D. Ill. Aug. 19, 2005) ("There is nothing in the text, history, or purpose of Rule 30 that supports
the conclusion that 'for purposes of' the prior judicial approval requirement for successive depositions,
Rule 30(b)(6) depositions should be treated differently from depositions of individuals.'").

After all of the briefing and the Court's June 6, 2012 Memorandum Order, Plaintiffs could not have "reasonably believed" that they did not have to seek leave of court to take another Rule 30(b)(6) deposition of Defendant PA.  Subsequent rulings by the Court, including the Court's February 11, 2013 ruling, should have reinforced the need for leave of court.

Plaintiffs also attempt to argue that they were substantially justified in their insistence on convening the April 10, 2013 deposition despite the PA's Motion for Protective Order because of a December 13, 2012 letter from the PA which Plaintiffs partially quote and certainly misconstrue.  DE 212-1 at 15-17.  As demonstrated above, Plaintiffs' claim that there were somehow misled by the PA is false.  Plaintiffs do not accurately characterize or completely recount the record of the parties' communications.  Moreover, Plaintiffs' selective reliance on a letter sent four months before the filing of the PA's Motion for Protective Order as "justification" for insisting on the April 10, 2013 deposition and getting on a plane to Jerusalem despite the pendency of the PA's motion is absurd.  Indeed, as demonstrated above, at several milestones after the December 13, 2012 letter from the PA, the record of what Plaintiffs knew (or should have known) belies any legitimate, truthful contention that Plaintiffs were "misled" into thinking that they could convene the April 10, 2013 deposition without leave of court and in the face of the PA's pending motion.

However misguided Plaintiffs' argument regarding the positions the PA was taking, the issue is ultimately irrelevant, as Magistrate Judge Facciola concluded:  "That the PA initially

1352365.1

agreed to a 30(b)(6) deposition and then changed its position has no bearing on whether Plaintiffs were substantially justified in opposing the motion for protective order."  DE 208 at 8.[8]

Magistrate Judge Facciola's holding is correct for at least two reasons.  First, even when counsel for the PA initially stated in December 2012 that the PA would "likely" tender a designee to testify about certain documents but made "no definitive statement that a designee would have to be tendered," it did so in conjunction with an acknowledgement that the parties would need to seek an order from the Court in order to conduct the deposition after the deadline for completion of fact discovery.  The PA could not supersede the plain language of Rule 30(a)(2)(A)(ii) or somehow obviate the Court's requirement, made plain in its June 6, 2012 Memorandum Order, that Plaintiffs were required to seek leave of Court to conduct additional depositions.  Nor could the PA *sua sponte* extend the discovery deadline.  That is why counsel for the PA proposed a consent order that the parties could submit to the Court – an order that Plaintiffs refused to sign.

Second, following production of certain documents in January 2013, counsel for the PA made clear that it would not produce a designee based on Plaintiffs' subsequently amended and overly broad deposition notice based on a host of objections, including the fact that Plaintiffs did not obtain leave of Court.  At that point, Plaintiffs were fully on notice that they had failed to seek leave of Court to take an additional deposition of the PA, and they had the opportunity to attempt to correct that error and prevent the PA from incurring the cost of moving for a protective order.  Instead, Plaintiffs chose to fight the issue and move for sanctions.

---

[8] As noted above, the PA was not invited by the Court to respond to Plaintiffs' May 24, 2013 Show Cause filing and thus did not have the opportunity to rebut Plaintiffs' erroneous assertion that the PA had "changed its position."  The foregoing record reflects that the PA consistently and repeatedly articulated its position to Plaintiffs – namely, that Plaintiffs would have to seek and obtain consent from the Court before conducting another Rule 30(b)(6) deposition.

1352365.1

Finally, Plaintiffs claim that they submitted their Rule 30(b)(6) deposition notice without Court action "in good faith."  DE 212-1 at 17-18.  The law is clear, however, that "good faith" does not mean "substantially justified":

> In opposing the motion for fees, plaintiff/counter-defendant ("McNamara") frequently argues that he opposed the discovery and the motion to compel in "good faith." Opposition to Motion for Fees [#81].  That is, of course, not the standard for objecting to discovery requests, for it would justify objections made with a good heart but an empty head.  Instead, the court must be convinced that, viewed objectively, there was legal support for the objection. *See Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) (a party meets the "substantially justified" standard where there is a "genuine dispute" or "if reasonable people could differ" as to the appropriateness of the motion to compel).

*McNamara v. Picken*, Civil Action No. 11-1051 (ESH/JMF), 2013 U.S. Dist. LEXIS 78477, at *2-3 (D.D.C. June 4, 2013).  Here, Plaintiffs' alleged "good faith" lacked substantial justification because a Court order, the plain language of Rule 30(a)(2)(A)(ii), and the law interpreting that Rule combined to preclude Plaintiffs from seeking another Rule 30(b)(6) deposition of the PA without first seeking and obtaining leave of court.  Simply put, there was no legal basis for Plaintiffs to oppose the PA's Motion for Protective Order.

Plaintiffs were neither "substantially justified" nor acting in objective good faith when they decided to move forward with the April 10, 2013 deposition without leave of court and in the face of the PA's Motion for Protective Order.  The reality is that, after five long years of fact discovery, the Plaintiffs had just completed the last of their fact discovery depositions in Jerusalem on March 4 and 5, 2013.  Those depositions, like all of the others Plaintiffs had taken in the case, did not yield admissible evidence supporting Plaintiffs' case and, in fact, resulted in testimony that directly disproved Plaintiffs' allegations.  As the PA demonstrated to the Court, the centerpiece of Plaintiffs' case – that the shooting of Esther Klieman was committed by the "Al Aqsa Martyrs Brigades" with the alleged support of Defendants – crumbled in the deposition

1352365.1

record.  *See, e.g.*, DE 198 at 31-33; DE 202 at 26-29 (detailing testimony undermining Plaintiffs'

allegations regarding the "Al Aqsa Martyrs Brigades").  With fact discovery set to close on April

15, 2013, Plaintiffs decided that their only play left was to manufacture a circumstance to move

for case-dispositive sanctions against Defendants.  That is why Plaintiffs convened a deposition

they knew the PA would not attend, falsely accused the PA of hiding documents and filed a

cross-motion for sanctions against the PA in response to its Motion for Protective Order.  DE

194.  Knowing the full record in this case, Magistrate Judge Facciola granted the PA's motion

for protective order regarding the deposition, determined that there was "not a shred of evidence"

to support Plaintiffs' allegation that the PA "hid" documents and denied Plaintiffs the case-

dispositive sanctions to save their case.  For Plaintiffs to claim now that the positions they took,

particularly in forcing the PA into the position of having to move for a protective order and

convening the April 10, 2013 deposition they knew the PA would not be attending, were

"substantially justified" strains credulity.

**<u>CONCLUSION</u>**

Despite an ample opportunity to show cause, Plaintiffs did not satisfy their burden to

show that the position they took regarding a second Rule 30(b)(6) deposition of the PA was

"substantially justified."  In the absence of such a showing, Magistrate Judge Facciola correctly

imposed sanctions on Plaintiffs as required by Rule 37(a)(5).  For the reasons set forth above, the

PA requests that the Court overrule Plaintiffs' Rule 72 Objection and award the PA such other

and further relief as the Court deems just and proper.  A proposed Order is attached hereto.

1352365.1

Dated:  October 7, 2013                    Respectfully submitted,


                                           /s/Richard A. Hibey
                                           Richard A. Hibey (#74823)
                                           Mark J. Rochon (#376042)
                                           Charles F. B. McAleer, Jr. (#388681)
                                           Timothy P. O'Toole (#469800)
                                           MILLER & CHEVALIER CHARTERED
                                           655 15th St., N.W. Suite 900
                                           Washington D.C. 20005-6701
                                           (202) 626-5800 (telephone)
                                           (202)626-5801 (facsimile)
                                           Email: rhibey@milchev.com
                                                   mrochon@milchev.com
                                                   cmcaleer@milchev.com
                                                   totoole@milchev.com

                                           *Attorneys for Defendants The Palestinian Authority
                                           and The Palestine Liberation Organization*

1352365.1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 7th day of October, 2013, a true and genuine copy of

the foregoing was filed by ECF, which automatically provided service to the following:

> Richard D. Heideman (No. 377462)
> Noel Jason Nudelman (No. 449969)
> Tracy Reichman Kalik (No. 462055)
> HEIDEMAN NUDELMAN & KALIK, P.C.
> 1146 19th Street, N.W. 5th Floor
> Washington, DC 20036
> (202) 463-1818
> Email: rdheideman@heidemanlaw.com
>         njnudelman@heidemanlaw.com
>         trkalik@hnklaw.com
>
> Steven R. Perles (No. 326975)
> Edward MacAllister (No. 494558)
> PERLES LAW FIRM, P.C.
> 1146 19th Street, N.W. 5th Floor
> Washington, DC 20036
> (202) 955-9055
> Email: sperles@perleslaw.com
>         EMacAllister@perleslaw.com
>
> *Attorneys for Plaintiffs*
>
>                 /s/Richard A. Hibey
>                 Richard A. Hibey

1352365.1