**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Estate of Esther Klieman, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 04-1173 (PLF) (JMF) |
| | ) | |
| The Palestinian Authority, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
"OBJECTION AND MOTION FOR REVIEW AND RECONSIDERATION OF
MAGISTRATE'S ODER [DE 208] PUSUANT TO FED. R. CIV. P. 72(a)"**

## PRELIMINARY STATEMENT

On September 19, 2013, Plaintiffs filed an Objection and Motion for Reconsideration and Review of the Magistrate Judge's Memorandum and Order of September 5, 2013, [DE 208], which ordered reimbursement by Plaintiffs of the expenses incurred by the Defendants in seeking a Protective Order against Plaintiffs' Deposition Notice seeking a Fed. R. Civ. P. 30(b)(6) deposition of the PA. Defendants filed an opposition to Plaintiffs' objection and motion on October 7, 2013. [DE 215].

The Memorandum and Order issued by the Magistrate Judge should be set aside as erroneous and contrary to federal law.  The Magistrate Judge incorrectly applied the standard of Fed. R. of Civ. P. 37(a)(5) when he permitted Defendants to collect expenses, including attorney's fees, that Defendants claim they have incurred in making their motion for a protective order.

Fed. R. Civ. Pro. P. 37(a)(5) states that when a protective order is granted, a court must *not* order sanctions in the form of reimbursement of the expenses incurred in making such a motion *if* one of the following occurred (emphasis added in italics):

(i)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii)   other circumstances make an award of expenses unjust.

Here, what occurred prior to the Plaintiffs seeking both documents and the noticed deposition, when taken in full context, makes it abundantly clear that Plaintiffs acted in good faith in attempting to obtain the requested and promised documents and the subsequently sought

Rule 30(b)(6) discovery.  Plaintiffs' actions were intended to avoid taking the Court's time to review the dispute between the parties or otherwise prematurely seek court review, intervention and action. As such, Plaintiffs met the requirements of Fed. R. Civ. P. 37(a)(5)(i) and (ii), which precludes sanctions from being awarded.

This Court reviews the rulings of a Magistrate Judge on a non-dispositive, pre-trial motion under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Local R. Civ. P. 72.2(c). These facts, considered within the full context of the case along with mitigating circumstances, show the Magistrate Judge's Memorandum and Order levying sanctions against Plaintiffs of the expenses incurred by the PA in seeking a Protective Order should be reversed.

Plaintiffs state the following in response to Defendants' Opposition.

A. **Contrary to Defendants' Allegations, Plaintiffs' November, 2012 Request for Production of Documents was Not an Attempt to "Unjustifiably…Expand the Scope of Discovery."**

Defendants claim that Plaintiffs' November, 2012 Request for Production of Documents was an attempt to "unjustifiably…expand the scope of fact discovery." Yet, an objective view of the abundant facts indicates otherwise. Indeed, the documents requested were responsive to the First Request for Production of Documents issued in January, 2009 ("January 2009 Requests"). Defendants chose to withhold these documents. It was not until November 2012, well after Magistrate Judge Facciola's June 2012 denial of Plaintiffs' motion to compel a second Rule 30(b)(6) deposition, that Plaintiffs became aware of the existence of these possibly additional documents which were responsive to the initial request, at which point Plaintiffs immediately issued a Request to the Defendants to produce documents that Plaintiffs alleged to be within the

scope of knowledge of the Defendants but unknown to the Plaintiffs. In no way did Plaintiffs attempt to expand the scope of discovery. Quite to the contrary; to seek discovery related to late-disclosed documents which are responsive to the January 2009 Requests and relevant to the core of Plaintiffs' cause of action cannot be considered an *expansion* of discovery.

Plaintiffs' underlying cause of action is critical to understanding the discovery dispute. Plaintiffs allege that Defendants Palestine Liberation Organization ("PLO") and Palestinian Authority ("PA") are liable for the murder of Esther Klieman. This murder occurred when one or more assassins belonging to the Al Aqsa Martyrs Brigade opened fire on an Egged public transportation bus in which Ms. Klieman was travelling. Plaintiffs allege that Al Aqsa Martyrs Brigade is the military arm of Fatah and that Fatah is both funded and supported by the Defendants. DE 1 at ¶¶ 10, 11, 40.

In Plaintiffs January 2009 Requests, Request for Production No. 21, requested: "any and all documents including any personnel file, that relate or refer to: Hussam Halabi, Tamer Rimawi, Ahmed Hadib, and Annan Hashash." ("Perpetrators"). In November, 2012, nearly four years later, Plaintiffs independently discovered that Defendants may have failed to produce documents from, *inter alia*, the PA's General Intelligence Service ("GIS"), which could possibly contain relevant information about the Perpetrators and the allegations in the Complaint. The GIS is a PA intelligence agency that upon information and belief maintains files on persons of interest such as the Perpetrators.

Upon learning from a third party of the existence of the possible relevant GIS documents to the instant action, and without involving the Court, Plaintiffs immediately (i) sought from the Defendants the previously withheld documents and (ii) requested the deposition of a Rule 30(b)(6) witness who could testify about these previously undisclosed GIS documents.

Crucial to the pending Motion is the fact that Plaintiffs did not learn of the existence of the GIS files/documents from the Defendants, although Plaintiffs aver that Defendants were indeed obligated to disclose same to Plaintiffs in response to Plaintiffs January 2009 Requests. Notwithstanding this specific request, Defendants did not produce *any* GIS documents relating to any of the Perpetrators; Plaintiffs only independently learned of these relevant documents as a result of counsel working on another case against these same Defendants.  Defendants' failure to disclose these documents until after the expiration of discovery justifies Plaintiffs' attempts to take discovery about them.

After this fortuitous discovery, Plaintiffs on November 16, 2012, inquired of Defendants whether they had searched the files of GIS in relation to this action and whether the GIS had any documents responsive to the Plaintiffs' written discovery requests. See November 16, 2012 Letter, attached as Exhibit B to DE 212. No response was immediately provided by the Defendants.  Thus, as ordered by the Court and as required by the FRCP, Plaintiffs first reached out to counsel for the PA in an attempt to cooperatively resolve this controversy before filing a motion.

The record clearly shows that for years, Defendants failed to produce certain documents relevant to Plaintiffs' causes of action in response to a specific discovery request. Upon later becoming independently aware of the existence of these documents, Plaintiffs re-requested production of such documents and deposition of a Rule 30(b)(6) witness. With these facts in mind, Defendants' claim that Plaintiffs "unjustifiably" attempted to "expand the scope of discovery" is absurd. It is not an expansion of discovery to seek information regarding clearly relevant information that should have been disclosed in 2009.  The existence and information within these GIS files should have been disclosed by Defendants pursuant to Plaintiffs' January

2009 Requests; and Defendants should not be permitted to benefit from their own act of hiding documents; and then, as will be shown further below, of making it appear that they would cooperatively produce a 30(b)(6) witness as to the documents, and then withdrawing their proffered cooperation.

**B.** **Defendants did Represent that Defendants would Likely Sit for Another Rule 30(b)(6) Deposition.**

Upon discovering the potential existence of the late-disclosed documents, Plaintiffs and Defendants engaged in cooperative dialogue, as the Court had previously ordered the parties to do. Both sides of the dialogue plainly contemplated that these previously undisclosed documents would now be produced. In that context, Plaintiffs also for the first time inquired of the Defendants regarding the taking of a Rule 30(b)(6) deposition related and limited to the previously undisclosed documents and only then noticed Defendants for a Rule 30(b)(6) deposition to be taken in Jerusalem, Israel on November 27, 2012. This request, the notice and the proposed deposition date were well within the then-current discovery deadline.

At the time of this particular Rule 30(b)(6) notice, Defendants gave no indication that they would oppose the deposition on any grounds. Indeed, after a conference between the parties when Defendants proposed that they would review the requested documents, Defendants stated in a December 13, 2012, letter that "it was likely that the PA would be tendering a designee to testify regarding aspects of any GIS documents that might be produced."  See December 13, 2012, Letter, attached as Exhibit C of DE 212.  Thus, the record is clear that Plaintiffs proactively engaged Defendants in an effort to avoid burdening the Court.

Plaintiffs were entitled to rely on Defendants' numerous indications that they would sit for a 30(b)(6) deposition on the subject of the newly produced documents. Moreover, Defendants advised Plaintiffs that they would be producing said documents by December 31, 2012 but did

6

not do so until January 31, 2013, after which Plaintiffs needed to translate and review the documents.  Only later, after the convenient expiration of discovery, did the Defendants advise they objected to the previously discussed deposition.  Defendants' gamesmanship should not be rewarded.

### C.  Plaintiffs submitted their Rule 30(b)(6) Deposition Request in Good Faith, Reasonably Believing that Court Action was not Required

The Court's Memorandum Opinion dated June 6, 2012, in its Order, stated that Plaintiffs were required to seek leave of Court to take additional depositions:

> since the defendants' 30(b) (6) depositions have *already been taken* and plaintiffs never sought leave of court to take additional depositions, their motion to compel in this regard must be denied (emphasis added).

*Estate of Klieman v. Palestinian Authority*, No. 04-CIV-1173, WL 2048253, at *6 (D.D.C. June 6, 2012).

The Plaintiffs reasonably believed this particular ruling applied directly but only to 30(b)(6) depositions on previously known and examined issues. Not until five months after this ruling did the existence of the late-disclosed GIS documents, which discussed an issue important to this case, became known to the Plaintiffs. And not until almost eight months after the Court's June 6, 2012, ruling did Defendants produce these documents.

Plaintiffs reasonably believed that new limited discovery was warranted and proper on the newly discovered and previously withheld documents and that the Court's June 6, 2012, ruling only applied to issues then pending before the Court—not to these subsequently identified and late-disclosed documents.

Furthermore, the Court also had earlier ordered that the parties should first attempt to work out discovery matters cooperatively without involvement of the Court. Dkt. # 91 (stating

"Counsel are required to confer in good faith in an effort to resolve all discovery disputes before bringing this dispute to the Court"). Based upon Defendants' representations, Plaintiffs reasonably and justifiably believed that Defendants were intending to produce a designee regarding a 30(b)(6) deposition on these newly discovered documents.

Defendants claim it was "absurd" for Plaintiffs to assume they need not request approval from the judge for this second deposition. But the facts show that Plaintiffs' submission of the 30(b)(6) request without first seeking prior court action to allow said deposition was made in good faith.  It was Defendants' omissions in failing to respond to Plaintiff's 2009 discovery requests that caused the sudden 2012 disclosure on a critical issue that caused Plaintiffs to engage in a cooperative dialogue regarding those documents.  This cooperative process included a discussion regarding the 30(b)(6) deposition.  Based upon Defendants' representations and seeming cooperativeness, Plaintiffs noted a 30(b)(6) deposition,  which Defendants responded to by writing they would likely produce a designee. The language of the Rule shields Plaintiffs from the unusual punishment of the attorneys' fee sanctions when their conduct, as here, is based in good faith.

   D.  **Defendants Inaccurately Claim Plaintiffs "Suddenly Expanded" its Rule 30(b)(6) Deposition Request on February 11, 2013.**

 After becoming aware of the possibility of the existence of the late-disclosed documents, Plaintiffs on November 27, 2012, informed Defendants that they were requesting such documents and "would like to take the 30(b)(6) deposition of a witness knowledgeable about these files, during the upcoming December depositions that we have scheduled in Jerusalem." In this same letter, Plaintiffs served the PA with a supplemental notice to take the 30(b)(6) deposition of the PA on this subject. The category for designation in the Notice sought designees

8

[k]nowledgeable about and capable of attesting to the digital/electronic files and related files from the Palestinian Authority's Preventive Security Service ("PSS") (including from both PSS headquarters and relevant PSS branch offices) and the Palestinian Authority's General Intelligence Service ("GIS") (including [from]both GIS headquarters and relevant GIS branch offices) for the following individuals: [Halabi], [Tamer Rimawi], [Hadib], [Hashash], [Zafer Rimawi] and[William Khatib].

On February 11, 2013, Plaintiffs once again asked Defendants to "advise when your office is available for a 30(b)(6) deposition for someone from the PA's General Intelligence Service ("GIS"), General Personnel Counsel ("GPC") and Preventive Security Services ("PSS") who is knowledgeable about, *inter alia*, the GIS, GPC and PSS, and the documents produced and/or withheld in this case."

Defendants claim this second communication regarding a 30(b)(6) deposition constituted a sudden expansion of Plaintiffs November 27, 2012 deposition request, which they did not object to. Defendants' later objection, which became the basis of the motion for a protective order, ignore the glaring reality that the GIS files at issue are connected to the PSS and GPC and had not been produced by the Defendants, although covered by Plaintiffs 2009 Request. In some instances, information in the GIS files on a particular individual or event may only be placed in the proper context by examining additional information on the same individual or event as retained in the files by the PSS or GPC. Because of the interrelatedness of the PA offices referred to as GIS, PSS and GPC, deposing an individual with knowledge about how all three entities operate is required and reasonably calculated to permit Plaintiffs to obtain a fuller understanding of the relevance of the late-disclosed documents. Furthermore, the Defendants for the first time also produced documents from the General Personnel Council ("GPC"), which also informed the Plaintiffs regarding the existence of possible GPC documents relating to this action.

Rather than "suddenly expanding" their request, Plaintiffs request for a designee constituted a narrow focus on obtaining and understanding of the new disclosed GIS files alone, all of which were produced in response to Plaintiffs' 2009 discovery requests. Defendants' initial cooperativeness and willingness to produce a 30(b)(6) witness both confirms this and demonstrates that Plaintiffs' request for a deposition was based in good faith and substantially justified. Therefore, Fed. R. Civ. P. 37(a)(5) precludes the burden of sanctions as ordered by Magistrate Judge Facciola.

**E. Plaintiffs Decision to Request a 30(b)(6) Deposition Met the "Substantially Justified" Standard of Rule 37(a)(5).**

Fed. R. Civ. Pro. P. 37(a)(5)(v) states that when a protective order is granted, a court must *not* order sanctions in the form of reimbursement of the expenses incurred in making such a motion *if* "the opposing party's nondisclosure, response, or objection was substantially justified."

The key element of this sanctions exception under Rule 37(a)(5), "substantially justified", has been interpreted by courts in this circuit to mean "justified to a degree that could satisfy a reasonable person. . . in both law and fact." *Act Now to Stop War and end Racism Coalition v. District of Columbia*, 286 F.R.D. 117, 128 (D.D.C. 2012) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). If a reasonable person could differ in their views on the discovery dispute, then the behavior of the party that led to the dispute is considered "substantially justified" under Rule 37. *Parsi v. Daioleslam*, 286 F.R.D. 73, 77 (D.D.C. 2012) (citing *Pierce*, 487 U.S. at 565). Furthermore, if there is a genuine discovery dispute, it was substantially justified. *In re Subpoenas to Folliard*, 2012 WL 907763 *4 (D.D.C. 2012) (citing *Pierce*, 487 U.S. at 565). It is important to note that substantially justified does not mean "justified to a high degree." *Covad*

*Communications Co. v. Revonet, Inc.*, 262 F.R.D. 1, 4 (D.D.C. 2009) (citing *Pierce*, 487 U.S. at 565).

Courts have interpreted Rule 37(a) in a manner that permits denial of the apportionment of "expenses if it makes a finding of *substantial justification* as to any party's position or if 'other circumstances make an award of expenses unjust.' " *E.g.*, *Lohrenz v. Donnelly*,187 F.R.D. 1, 10 (D.D.C. 1999). The Supreme Court has also stated, "a party only meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Alexander v. F.B.I.*,186 F.R.D. 144, 147 (D.D.C. 1999). The "substantially justified" standard is a "forgiving one." *Boca Investerings P'ship v. United States*, 1998 WL 647214, at *2 (D.D.C. 1998).

Plaintiffs were more than "substantially justified" in renewing their November 2012 request for the 30(b)(6) deposition without first receiving specific approval to do so by the Court. The Plaintiffs reasonably believed the prior ruling applied to 30(b)(6) depositions on previously known and examined issues and that new limited continuing discovery was warranted and proper on the withheld documents and would not be barred by the Court's June 6, 2012 ruling on issues then pending before the Court.  Plaintiffs formed this belief based on the fact that the language of the Court in its June 2012 Order related to previously sought depositions. It could not apply to the parties in November 2012 because the events leading to the request for a 30(b)(6) deposition were not known to the Court or the parties at that time.

Because the deposition request at issue involved documents which Defendants failed to produce until the end of January 2013, Plaintiffs were substantially justified in believing they could rely upon Defendants letter that they would likely produce a designee and that the Court's

June, 2012 ruling did not apply to the specific request for a designee limited to the documents being late produced by the Defendants.

In addition, the long standing failure or refusal of the Defendants to produce these previously requested documents in response to a January 9, 2009 discovery request led Plaintiffs to reasonably believe that additional discovery on these documents, including a 30(b)(6) deposition, was proper and would be granted without contest.  Defendants' initial compliant responses, upon which Plaintiffs reasonably relied in assessing their obligation for cooperation, buttressed this reasonable belief.

Indeed, as recently as December of 2012, Defendants indicated they were amenable to allowing a 30(b)(6) deposition pertaining to the newly produced documents. In a December 13, 2012 letter, Defendants stated:

> With respect to the issue of the Rule 30(b)(6) deposition of the PA that you recently noticed, and following up on my letter to you dated November 29, 2012, I indicated that it was likely that the PA would be tendering a designee to testify regarding aspects of any GIS documents that might be produced. I did not make a definitive statement that a designee would have to be tendered, particularly since I do not yet know what documents, if any, will actually be produced. I indicated that, for several reasons, such a Rule 30(b)(6) deposition could not be held next week in conjunction with the two prisoner depositions and, if ultimately held, would most likely need to be scheduled in January 2013.

Exhibit C of DE 212.

In keeping with the Court's order to the parties to cooperate, it should reasonably be interpreted, and therefore deemed to have been substantially justified when viewed in context and under the totality of the circumstances, that Plaintiffs were not required to seek leave for the specifically sought 30(b)(6) deposition on the Defendants previously withheld and newly produced documents.

In fact, this discovery dispute did not arise until Defendants dramatically changed their position <u>after</u> the Court's February 11, 2013 order allowing completion of discovery by April 15, 2013.  The Court's February order can be found in relevant part at DE 190 at 1-3.

Defendants continued to withhold the late-disclosed documents even after Plaintiffs' November 2012 demands for production until January 30, 2013.  This proved tactically convenient as it enabled Defendant to subsequently argue that the previously withheld documents were not produced until after the December 31, 2012 discovery deadline and accordingly to argue that no further discovery on these January 2013 produced documents should be ordered.  The court should not permit the Defendants to benefit from their own misconduct. Defendants' agreement to produce the late-disclosed documents and name a designee for a 30 (b)(6) deposition does not square with their later refusal to allow any discovery on the documents.

Even with this stonewalling, in keeping with its obligations to this Court, Plaintiffs met and conferred with counsel for the PA in an effort to agree with Defendants on a stipulation as to issues involving the authenticity and admissibility of these late-produced important documents, but Defendants wholly refused. This later refusal is particularly egregious considering Defendants created and produced them from the Defendants' own files.

In light of the Defendants' immediate agreement to produce the previously undisclosed GIS documents and initial cooperativeness regarding a November 2012 deposition the limited purpose of examination relating to the late produced documents, Plaintiffs' reasonable meet the "substantially justified" standard under Rule 37(a)(5), which precludes the imposition of attorney's fees.  Additionally, Plaintiffs' reasonable interpretation of the Court's June 2012

Order—that it applied only to foregoing depositions and discovery efforts—does not detract from this conclusion.

## **<u>CONCLUSION</u>**

This Court reviews the rulings of a Magistrate Judge on a non-dispositive, pre-trial motion under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Local R. Civ. P. 72.2(c).

Plaintiffs, in re-noticing the Rule 30(b)(6) deposition previously issued for November 2012 and reissued for April 5, 2013, did so after extensive cooperative communications, including a meet and confer conference, with the Defendants. In addition, Plaintiffs took into account not only their written communications, but the actions of the Defendants themselves which necessitated the sought deposition and the words of the Defendants that they would "likely" produce such a deponent.

Under the totality of the circumstances, and considering the applicable factors to be weighed and considered by the Court, the Plaintiffs should not be subject to the harsh penalty of Defendants' attorneys' fee expenses, caused by their unilaterally filing for a protective order.  At all times, Plaintiffs acted in good faith through their comprehensive attempts to secure the documents which were late produced by the Defendants. These factors, in addition to Defendants' earlier pledge that they would likely produce a designee, resulted in Plaintiffs being "substantially justified" in believing application to the court for an order was not required prior to seeking the limited 30(b)(6) deposition from a designee competent to testify about the newly produced documents.

This entitles Plaintiffs to relief from the Order, found at D.E. 208, as same is clearly erroneous and/or contrary to law when viewed in the totality of the circumstances, and

considered under the applicable Rule, making said award unjust and thereby entitling the

Plaintiffs to relief from the Order of the Magistrate Judge.

Dated:  October 17, 2013                    Respectfully submitted,

                                            */s/Richard D. Heideman*
                                            */s/ Tracy Reichman Kalik*
                                            Richard D. Heideman (No. 377462)
                                            Noel J. Nudelman (No. 449969)
                                            Tracy Reichman Kalik (No. 462055)
                                            HEIDEMAN NUDELMAN & KALIK, P.C.
                                            1146 19th Street, N.W.,Fifth Floor
                                            Washington, DC 20036
                                            Telephone: 202-463-1818
                                            Telefax: 202-463-2999

                                            PERLES LAW FIRM, P.C
                                            Steven R. Perles (No. 326975)
                                            Edward MacAllister (No. 494558)
                                            Telephone: 202-955-9055
                                            Telefax: 202-955-3806
                                            *Counsel to the Plaintiffs*

## CERTIFICATE OF SERVICE

        I hereby certify that on this day, October 17, 2013, a copy of the foregoing was served on the
following counsel via the Court's electronic ECF filing system:

        Chas McAleer, Esq.
        Mark J. Rochon, Esq.
        Richard A. Hibey, Esq.
        Timothy O' Toole, Esq.
        Lamia R. Matta, Esq.
        MILLER & CHEVALIER CHTD
        655 Fifteenth St. N.W., Suite 900
        Washington, D.C.  20005

*Counsel for Defendants*

                                            */s/ Richard D. Heideman*