**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Estate of Esther Klieman, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 04-1173 (PLF) (JMF) |
| | ) | |
| The Palestinian Authority, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
RECONSIDERATION OF COURT'S DECEMBER 29, 2006 AND APRIL 24, 2008
INTERLOCUTORY ORDERS ON PERSONAL JURISDICTION**

**RELEVANT PROCEDURAL HISTORY**

In May 2006, Defendants the Palestinian Authority ("PA") and the Palestinian Liberaion

Organization ("PLO") moved to dismiss this case for lack of personal jurisdiction. [DE 55].

Plaintiffs filed their Opposition to Defendants' Motion to Dismiss on July 18, 2006. [DE 57], and

on December 29, 2006, the Court denied Defendants' motion [DE 63 and 64], holding that "both

the PA and the PLO have sufficient minimum contacts within the United States to permit suit

here consistent with the Due Process Clause of the Constitution." [DE 64 at 8].

In July 2007, Defendants moved for reconsideration of the personal jurisdiction ruling.

[DE 77]. Plaintiffs opposed this Motion for Reconsideration in September 2007. [DE 79]. In

April 2008, the Court denied Defendants' Motion for Reconsideration, again finding personal

jurisdiction over the Defendants. [DE 83].

In June of 2011, the Supreme Court announced a new "essentially at home" standard in

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011). For two and a half

years following the issuance of this new standard, Defendants continued to engage in active

litigation in this case. On February 5, 2014, Defendants moved for reconsideration of this Court's interlocutory orders on personal jurisdiction, basing their motion upon a newly decided Supreme Court case, *Daimler A.G. v. Bauman*, No. 11-965 (Jan. 14, 2014), which is premised upon the standard established in 2011 in *Goodyear* but which the Defendants contend constitutes an "intervening change in controlling law" requiring reconsideration. [DE 233 at 1]. Plaintiffs are filing this pleading in opposition to Defendants' Motion for Reconsideration.

## **<u>INTRODUCTION</u>**

Six years ago, this Court held that it has personal jurisdiction over Defendants. Opinion (April 18, 2008) [DE 83]. Defendants' February 5, 2014 Motion contends that *Daimler* constitutes an "intervening change in controlling law" and posits that "continuous and systematic contacts with the forum are not sufficient [under the due process clause] for the exercise of general jurisdiction absent a showing that the defendant is essentially 'at home' in the forum." Motion for Reconsideration at 1 [DE 233].

Fed. R. Civ. P. 54(b) governs reconsideration of orders that do not constitute a final judgment in a case. *E.g.*, *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Federal courts in this jurisdiction have held had that Fed. R. Civ. P. 54(b) permits revision of orders "as justice requires." *Singh v. George Washington Univ.*, 383 F. Supp. 99, 101 (D.D.C. 2005)(ci*ting Cobell* 224 F.R.D. at 272). Courts have generally held that revision is limited to "when the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Id.* (*quoting Cobell*, 224 F.R.D. at 272). The court's discretion to grant a Fed. R. Civ. P. 54(b) motion is "'subject to the caveat that, where

litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006)(*quoting Singh*, 383 F. Supp. 2d at 101).

Defendants' motion for reconsideration fails to meet the applicable standard for five separate reasons. *First,* Defendants, as a foreign political entity or entities, are not considered "persons" under the Fifth Amendment's Due Process Clause.[1]  *Second*, Defendants are simply incorrect that *Daimler* constitutes a change in "controlling law."  *Daimler* involved a U.S. State's exercise of general jurisdiction over a foreign corporation under the Fourteenth Amendment, and was largely based on concerns about interfering with international commerce which are inapplicable in this case; *Daimler* did not consider the very different public policy issues involving  the United States' exercise of jurisdiction over foreign terrorist organization that target Americans, so it does not apply here. *Third*, Defendants repeatedly waived their "essentially at home" defense, by litigating this case for two and a half years on the merits even after the Supreme Court announced the new "essentially at home" standard established in *Goodyear*,  more than two years prior to *Daimler*.  *Fourth*, even if the Court finds that it may lack general personal jurisdiction, the uncontroverted evidence establishes that Defendants have the minimum contacts necessary to justify specific jurisdiction.  *Fifth*, the jurisdictional issue and the merits are intertwined, so in the event of a factual dispute about  jurisdiction, the facts must be presented to the jury.

---

[1] Although Defendants do not discuss which "due process" clause they invoke, it is the Fifth Amendment that would apply, because Defendants are being sued under a federal statute, and the due process clause of the Fourteenth Amendment applies only to the states. *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d, 8065) *on reconsideration in part*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005) *aff'd*, 538 F.3d 71 (2d Cir. 2008) (applying Fifth Amendment in suit under Anti-Terrorism Act); *see generally* 1993 Advisory Committee Notes to Fed. R. Civ. P. 4(k)("constitutional limitations on the exercise of territorial jurisdiction by federal courts over persons outside the United States" "arise from the Fifth Amendment rather than from the Fourteenth Amendment").

## I.  DEFENDANTS DO NOT HAVE CONSTITUTIONAL DUE PROCESS RIGHTS

Defendants are not "persons" within the meaning of the Fifth Amendment thus the holdings of *Daimler* and *Goodyear* are utterly irrelevant to this case.  *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 99 (D.C. Cir. 2002).

A long line of cases holds that, because they are not "persons," States of the Union, executive agencies, foreign governments, political subdivisions, and municipalities have no rights under the Due Process Clause of the Fifth Amendment. *See South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966) (States of the Union are not "persons" within the ambit of the Fifth Amendment); *In re Scott Cable*, 259 B.R. 536, 543 (D. Conn. 2001) ("Government entities have no right to due process under the Fifth Amendment's due process clause."); *City of East St. Louis v. Circuit Court for Twentieth Judicial Circuit, St. Clair County, Ill.*, 986 F.2d 1142, 1144 (7th Cir. 1993) ("Municipalities cannot challenge state action on federal constitutional grounds because they are not 'persons' within the meaning of the Due Process Clause."); *Puerto Rico Public Housing Admin. v. U.S. Dept. of Housing & Urban Development*, 59 F. Supp. 2d 310, 325 (D.P.R. 1999) (agencies were "intrinsically part of the Commonwealth of Puerto Rico," and thus "non-persons" under the Fourteenth Amendment); *City of Sault Ste. Marie, Mich. v. Andrus*, 532 F. Supp. 157, 167-68 (D.D.C. 1980); *El Paso County Water Imp. Dist. No. 1 v. International Boundary and Water Com'n*, 701 F. Supp. 121, 123-24 (W.D. Tex.1988).

Defendants are foreign political entities performing functions that stand outside the U.S. Constitution. In *Palestine Information Office v. Shultz*, 674 F. Supp. 910, 916-17 (D.D.C. 1987), *aff'd*, 853 F.2d 932 (D.C. Cir. 1988), the District Court held that a "foreign political entity" such

as the PLO "has no due process rights under our Constitution."[2] In *Mendelsohn v. Meese* a district court agreed with the U.S. government's view that the PLO is "a foreign power with no constitutional rights" and likened it to a "foreign state" which "'lies outside the structure of the Union.'" 695 F. Supp. 1474, 1480-1481 (S.D.N.Y. 1988) (*citing Principality of Monaco v. Mississippi*, 292 U.S. 313, 330 (1934)). *Mendelsohn* continued, "[t]he same is true of the PLO, an organization whose status, while uncertain, lies outside the constitutional system. It has never undertaken to abide by United States law or to "accept the constitutional plan." *Id.* at 1481 (*citing Principality of Monaco*, 292 U.S. at 330). No foreign entity of its nature could be expected to do so."*Id*. As foreign political entities, the PA and PLO are simply not "persons" within the meaning of the Fifth Amendment, and so do not have Due Process rights.

If a State of the Union—does not have due process rights, then a foreign political entity such as the PA or PLO does not either. *See Price,*294 F.3d at 99; *accord TMR Energy Ltd. v. State Property Fund of Ukraine,* 411 F.3d 296, 299–303 (D.C. Cir. 2005) (extending *Price* to agents of foreign states). The D.C. Circuit explained that, "we are unwilling to interpret the Due Process Clause as conferring rights on foreign nations that States of the Union do not possess. Neither the text of the Constitution, Supreme Court decisions construing the Due Process Clause, nor long standing tradition provide a basis for extending the reach of this constitutional provision for the benefit of foreign states." *Price,* 294 F.3d at 99; *see also Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399-400 (2d Cir. 2009).

While every court that has examined the sovereignty of the PA and PLO has appropriately held that Defendants are not foreign sovereigns, undoubtedly they are the kind of

---

[2] On appeal, the D.C. Circuit affirmed. It held that the appellants—a group of U.S. citizens and resident aliens—had no constitutional right "to represent the PLO." *Palestine Info. Office v. Shultz*, 853 F.2d 932, 941 (D.C. Cir. 1988). It allowed that as "American citizens," appellants had limited due process rights (which were not violated), *id.* at 942, but it did not disturb the District Court's holding that a foreign political entity has no constitutional rights.

entities that stand "outside the structure of the Union." *Principality of Monaco,* 292 U.S. at 330; *see also Frontera*, 582 F.3d at 399 (*quoting Principality of Monaco*).

### A.   The Palestine Liberation Organization

The Palestinian Liberaion Organization ("PLO") holds itself out as "the embodiment of the Palestinian national movement,"[3] and as the representative of the Palestinian people, with special organizational status at the United Nations. The PLO Constitution provides for an elected National Assembly (Art. 5), an Executive Committee headquartered in Jerusalem (Art. 17), a Palestine National Army (Art. 22), a Palestine National Fund (Art. 18), and Departments such as a Department for Political and Information Affairs.  *Id.*

The PLO was granted non-member observer status at the United Nations in 1974, when PLO Chairman Yasser Arafat addressed the General Assembly, describing the PLO as "a national liberation movement, comprising all the Palestinian factions, organizations and capabilities." U.N. Doc. A/PV.2282 ¶ 60 (1974). "Over the next decade, the PLO provided municipal services to Palestinians in the West Bank and other refugee-dominated areas. By the early 1980s, these activities had put into place an extensive rival bureaucratic structure" in Gaza and the West Bank. *Ungar v. Palestine Liberation Organization*, 402 F.3d 274, 286 (1st Cir. 2005). The PLO has applied for member-state status at the United Nations which has not been granted.  However, the United Nations recently upgraded its status  further evidencing its foreign political entity status, existence outside the structure of the Union, and ineligibility for  the claimed protections under the U.S. Constitution.

In 1993, after many years of violence, the State of Israel and the PLO reached an

---

[3] *See* "About the Palestinian Liberation Organization," at website of Permanent Observer Mission of the State of Palestine to the United Nations. (available at http://palestineun.org/about-palestine/palestine-liberation-organization/).

agreement in which the PLO recognized the mutual right of the State of Israel to "live in mutual dignity and security and achieve a just, lasting and comprehensive peace settlement and historic reconciliation through the peace process." Isr.-P.L.O., 32 I.L.M. 1525 at 1525.  In the same agreement, Israel recognizes the PLO team as "representing the Palestinian people." Out of the process of establishing the agreements arose the PLO's creation  of the Palestinian Authority ("PA") as part of the PLO and which operates as a foreign political entity.  The State of Israel and the PLO have since entered into a series of bilateral agreements. These facts make the PLO the kind of entity that stands "outside the structure of the Union." In fact, two cases have so held specifically. In *Palestine Information Office,* this Court held that because the PLO is a "foreign political entity," it simply "has no due process right under our Constitution or Laws." 674 F. Supp. at 919.  The district court in *Mendelsohn* held the same.  The court explained: "A 'foreign state lies outside the structure of the Union.' The same is true of the PLO, an organization whose status, while uncertain, lies outside the constitutional system. It has never undertaken to abide by United States law or to 'accept the constitutional plan.' No foreign entity of its nature could be expected to do so." 695 F. Supp. at 1481 (quoting *Principality of Monaco*, 292 U.S. at 330).

### B.  The Palestinian Authority

Similarly, the PA is not entitled to due process protection.  The Palestinian Authority as noted was created by an agreement between the PLO and the State of Israel pursuant to the Agreement on Gaza Strip and Jericho Area, entered into on May 4, 1994. The Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip, entered into on September 28, 1995, currently defines the PA's powers.

The Interim Agreement established executive, legislative and judicial functions for the PA, transferred specified "powers and responsibilities" from the Israeli military government and

to the PA, and provided that "Israel shall continue to exercise powers and responsibilities not so transferred." Art 1.1; *see Ungar*, 402 F.3d at 291. Among its powers and responsibilities, the PA can "sue and be sued and conclude contracts." Art. 9.2. Under the Interim Agreement, the PA provides many government-type services, including local policing and civil authority over traditional matters such as agriculture, banking, employment, environmental protection, unclaimed property, health, labor, zoning, postal services, social welfare, telecommunications, transportation, water and sewage. Interim Agreement Annex III. Defendants have also acknowledged that they are "performing core governmental functions." *Sokolow v. Palestine Liberation Organization*, 583 F. Supp. 2d, 451, 457 (S.D.N.Y. 2008).

As discussed above, the PA is the kind of foreign political entity that courts have routinely held does not have due process rights. *See, e.g., City of East St. Louis*, 986 F.2d at 1144; *City of Sault Ste. Marie*, 532 F. Supp. at 167-68; *El Paso County Water Imp. Dist. No. 1*, 701 F. Supp. at 123-24.  Defendants have repeatedly argued that they constitute a foreign sovereign.  And while the courts have repeatedly correctly rejected that assertion, it is clear that the PA and PLO are or act as a foreign political entity that is not protected by the Due Process Clause of the U.S. Constitution.  *See e.g. Knox v. Palestine Liberation Org*., 306 F. Supp. 2d 424, 431 (S.D.N.Y. 2004) (holding that that PLO and PA are not entitled to sovereign immunity because there does not exist a state of Palestine which meets the legal criteria for statehood applicable); *Ungar,* 402 F.3d at 282–92; *Gilmore v. Palestinian Interim Self–Gov't Auth.,* 422 F. Supp. 2d 96, 100–102, 2006 WL 711264, at *3–5 (D.D.C. 2006); *Estates of Ungar v. Palestinian Auth.,* 315 F. Supp. 2d 164, 174–87 (D.R.I. 2004); *Biton v. Palestinian Interim Self–Gov't Auth.,* 310 F. Supp. 2d 172, 180–81 (D.D.C. 2004) ("*Biton I* ").  Notwithstanding its lack of foreign

sovereign status, it is abundantly clear and held by all U.S. court decisions to date that the PA is

a foreign political entity.  As such, it falls outside the protections of the U.S. Constitution.

## II.    *DAIMLER* DID NOT ANNOUNCE A CHANGE IN "CONTROLLING LAW"— *GOODYEAR* ANNOUNCED  THE STANDARD CITED BY DEFENDANTS, WHICH IS NONETHELESS INAPPLICABLE TO THIS CASE

In order for the Court to reconsider its decision under Rule 54(b) as the Defendants have

requested, there must be a change in controlling law for this particular case.  However, *Daimler*

and *Goodyear* do not constitute a change in "controlling law." Defendants' brief simply *assumes*

that *Daimler* and *Goodyear* apply here. They do not. *First*, *Daimler* and *Goodyear* applied the

Fourteenth Amendment, not the Fifth Amendment, which imposes fewer limits on the exercise

of personal jurisdiction by the United States than the Fourteenth Amendment imposes on the

States. *Second*, in *Daimler* and *Goodyear* the factual context surrounding the personal

jurisdiction question —whether a foreign defendant's contacts in the context of an international

commercial case with the forum sufficed—is distinctly different from that found in this case,

whether the contacts of violator of U.S. criminal statutes regarding  international terrorism would

suffice. *Third*, *Daimler* expressly left for another day the means by which this Court obtained

personal jurisdiction over defendants—service of an agent within the territorial jurisdiction of the

United States. In reality, Defendants are asking this Court to make new law extending *Daimler*

and *Goodyear* to a very different situation. Such a request is not an appropriate basis for seeking

reconsideration of an already determined issue in this case.

Finally, *Daimler* and *Goodyear* analyzed only whether a court could assert general

jurisdiction over a foreign defendant and Plaintiffs have set forth a theory of specific jurisdiction

in this case, which is explained below.  *Supra* IV. at p. 26.

      **1.**    ***Daimler* and *Goodyear* Concerned Fourteenth Amendment Rights,**
                **Not Fifth Amendment Rights**

Even if Defendants have Due Process protections (and they do not for reasons discussed above), *Daimler* would not "control" the personal jurisdictional analysis before this Court. *Daimler* and *Goodyear* were decided under the Fourteenth Amendment. The Fifth Amendment allows for the exercise of personal jurisdiction over a foreign defendant that repeatedly commits acts of international terrorism against U.S. citizens.  "[A]n inquiry into fairness under the Due Process Clause of the Fifth Amendment tends to focus on the same factors considered under the minimum contacts test, but often applied with more flexibility than under the Fourteenth Amendment analysis." Wright & Miller, *Federal Practice and Procedure* § 1068.1.

In the terrorism context, the federal courts have upheld the exercise of personal jurisdiction over defendants with even fewer contacts with the United States than the Defendants have in this case. "'[S]o long as [an] actor's efforts are 'purposefully directed' toward residents of another [forum],' the Supreme Court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Mwani v. Osama Bin Laden*, 417 F.3d 1, 12-13 (D.C. Cir. 2005) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). In *United States v. Yousef*, 327 F. 3d 56, 111-12 (2d Cir. 2003), the court upheld personal jurisdiction against a Fifth Amendment Due Process challenge, and found that the United States could prosecute foreign individuals who bombed a Philippine Airlines flight en route from Manila to Japan—even though no U.S. national was injured. The Court held such because the act of terrorism was a "test run" in furtherance of a conspiracy to "inflict injury on [the United States] and its people and influence American foreign policy." *Id.* at 112.

In *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011), the Second Circuit rejected a Fifth Amendment due process challenge to a prosecution of individuals who conspired

to sell arms "with the understanding that they would be used to kill Americans and destroy US property, because "the aim therefore was to harm U.S. citizens and interests and to threaten the security of the United States." The fact that the "sting operation" leading to the defendants' arrest took place "entirely outside the United States and involv[ed] solely foreign citizens" did not deprive the United States courts of jurisdiction. *Id*. The court explained: "For non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests." *Id*.[4]

It makes sense that the courts apply a more expansive approach to jurisdiction under the Fifth Amendment than under the Fourteenth Amendment. Both amendments protect defendants against the burdens of litigating in a distant or inconvenient forum, but only the Fourteenth "ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1271 (6th Cir. 1984) (internal quotation marks and citation omitted); *accord Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 294 (3d Cir. 1985) (the Fourteenth Amendment "reflects territorial limitations on the power of an individual state. Those strictures of Fourteenth Amendment due process analysis which attempt to prevent encroachment by one state upon the sovereignty of another do not apply with equal force to the adjudication of a federal claim in a federal court.") (footnote omitted); Wright & Miller, *Federal Practice and Procedure* § 1068.1 ("When a federal court adjudicates a federal question claim, it exercises the sovereign power of the United States and no federalism problem is presented. The Fourteenth Amendment function of protecting the several states' status as coequal sovereigns seemingly

---

[4] *See also In re Terrorist Attacks on September 11, 2001*, 538 F.3d at 93-94 (observing that "primary participants" in "terrorist attacks on citizens of the United States" have been held repeatedly to have engaged in "purposeful direction" at the United States).

ought to be of no relevance to the parallel analysis under the Due Process Clause of the Fifth

Amendment…."). However, the Fifth Amendment is concerned with the exercise of "sovereign

power of the United States" and the Due Process clause is interpreted to protect against any

resulting encroachments by the United States.

The federal government's interests stretch broadly in many areas that are off limits to the

States, including foreign policy, national security, and international law enforcement. All of

these paramount interests are present in any case brought under the Anti-Terrorism Act ("ATA"),

such as this one. "Congress has the authority to enforce its laws beyond the territorial boundaries

of the United States." *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (*citing Foley

Bros., Inc. v. Filardo*, 336 U.S. 281, 284-285 (1949); *Benz v. Compania Naviera Hidalgo, S. A.*,

353 U.S. 138, 147 (1957)). "Congress, however, clearly intended the ATA have extraterritorial

application; 18 U.S.C. § 2333 provides civil remedies for victims of 'international terrorism' and

18 U.S.C. § 2331 explicitly defines that term to include acts which occur primarily outside the

territorial jurisdiction of the United States." *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 431

(E.D.N.Y. 2009).  Congress has explicitly recognized international terrorism as "a serious and

deadly problem that threatens the vital interests of the United States." Pub. L. No. 104-132 §

301(a)(1)& 7, 110 Stat. 1250 (1996), *reprinted in* 18 U.S.C. § 2339B, note.  By statutory

requirement, underlying every civil ATA claim is the violation of a U.S. criminal statute

regarding the fight against international terrorism.  The personal jurisdiction analysis relevant to

the foreign corporations in *Daimler* and *Goodyear* is not relevant to the very different

Defendants in this case.

Blindly extending Fourteenth Amendment decisions to those arising under the Fifth

Amendment would make the prosecution of international terrorists much more difficult and

would contravene an explicit Congressional policy. Many of the terrorists on the FBI's most wanted terrorists list committed their crimes outside the territory of the United States, but fall squarely within the jurisdiction of the United States, because they target U.S. citizens or U.S. interests. For example, Ali Atwa and Mohammed Ali Hamadei are wanted for hijacking a commercial airliner en route from Athens to Rome, during which a United States citizen was murdered; Ibrahim Salih Mohammed Al-Yacoub is wanted for conspiracy to kill U.S. citizens by bombing the Khobar Towers in Saudi Arabia; Abdullah Ahmed Abdullah is wanted for murdering U.S. nationals in Africa; Ramadan Abdullah Mohammad Shallah is wanted for serving in the "Palestinian Islamic Jihad," headquartered in Syria; and Faouzi Mohamad Ayoub is wanted for using a false U.S. passport to gain entry into Israel for the purpose of conducting a terrorist bombing there. *See generally* FBI's Most Wanted Terrorists. If the narrower concepts embodied in the Fourteenth Amendment applied to the Fifth Amendment, these and similar prosecutions would be called into question.

In *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54, 59 (D.D.C. 2003), this Court observed that many federal criminal statutes expressly contemplate "the assertion by a United States court of jurisdiction over a foreign national for terrorist activities committed abroad, irrespective of the number and nature of that individual's other 'contacts' with the United States. It logically follows that if federal courts may constitutionally exercise criminal jurisdiction over such individuals, the Constitution should be no bar to those same federal courts, in a civil action for damages, exercising civil in personam jurisdiction over those same individuals for the same acts."

### 2. *Daimler* Arose in a Different Factual Context, and the Difference Matters

*Daimler* (and *Goodyear*) is inapposite here because, among other reasons, it dealt with the due process rights of foreign corporations engaged in *commerce*, whereas the instant Defendants are neither corporations nor international commercial actors. *Daimler* aimed to ensure "greater predictability" in suits against corporations through "[s]imple jurisdictional rules," and the Supreme Court expressly cited the "concern that unpredictable applications of general jurisdiction based on activities of U.S.-based subsidiaries could discourage foreign investors." *Daimler* at 760, 763 (citations omitted). The Court explained that other nations do not approve of the exercise of general jurisdiction over "corporations" outside their "principal place of business," and that the difference between U.S. law and foreign law in this regard had led to "international friction," according to the branch of government responsible for foreign relations. 134 S. Ct. at 763.

*Daimler*'s goals of protecting and providing predictability to foreign business corporations potentially interested in investing in the U.S., or engaging in U.S.-based commerce, are irrelevant to non-corporate, foreign political entities such as the PA and PLO. This reasoning has no place in deciding whether to exercise jurisdiction over entities engaged in terrorism rather than commerce. *Daimler* did not seek to provide "greater predictability" to terrorists, and creating "[s]imple jurisdictional rules" for terrorists or their sponsoring organizations is not practicable, since terrorists do not often form corporations or announce their principal places of business. Indeed, the national security concerns in this case must take the Court in the opposite direction from the one taken in *Daimler*:

> The legislative history of the ATA, Executive Orders signed by two United States Presidents, and the participation by the United States in international treaties and an international task force, establish this country's profound and compelling interest in combating terrorism at every level…. Section 2333(a) of United States

> Code Title 18 was first introduced in the wake of *Klinghoffer v. Palestine Liberation Org.*, 739 F. Supp. 854 (S.D.N.Y.1990), in which heirs of an American national killed in a terrorist attack in the Mediterranean sued the Palestinian Liberation Organization….

*Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 443 (E.D.N.Y. 2008); *accord Wultz v. Bank of China Ltd.*, 2012 WL 5378961, at *7 (S.D.N.Y. 2012) (The United States has a profound and compelling interest in combating terrorism at every level….").

Exposing corporations to open-ended and unpredictable general jurisdiction in every state in which a corporation "engages in a substantial, continuous, and systematic course of business" concerned the *Daimler* Court. The Court said this approach would reach far beyond the paradigm all-purpose forums for general jurisdiction of a corporation's place of incorporation and principal place of business. *Daimler* at 760-762. This concern is not present in *Klieman* as the Defendants are foreign political entities that committed acts of terrorism against American citizens, rather than corporations engaged in economic activities. Furthermore, the operating offices of the PLO/PA in the United States are in New York City and Washington, D.C. As such, being subjected to general jurisdiction in the District of Columbia based on the systematic and continuous contacts of the Defendants in Washington, D.C. does not subject the PA to open-ended jurisdiction in other venues across the country.

### 3. *Daimler* Did Not Address the Method of Service By Which Jurisdiction Attached In This Case

Plaintiffs obtained jurisdiction over the Defendants by properly serving an agent of the PA and PLO in this forum, as permitted by 18 U.S.C. § 2334(a) ("Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent") and Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant…when authorized by a federal statute."). Accordingly, the PLO and PA may be and were served with process under Rule 4(h)(1) of the Federal Rules of Civil

Procedure "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1); *see Gorman v. Ameritrade Holding Corp.*, 293 F. 3d 506, 514 (D.C. Cir. 2002).

Plaintiffs mailed the service documents to the PLO/PA offices in Washington, D.C. by pre-paid United States first class certified mail, return receipt requested and also executed service by personal service delivered upon Afif Emile Safieh, head of the PLO Mission to the United States (DE 72 at 4), which claims to be the "official voice of Palestine in Washington." The physical presence of a corporation's agent, suitable for service of process in the forum, has long been held to "subject[] the foreign corporation to the general jurisdiction of the [local] courts in matters to which [the forum's] tenuous relation would not otherwise extend." *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.* 486 U.S. 888, 892-93 (1988).

As this Court has previously concluded, "plaintiffs have demonstrated that agents of the PLO and of the PA have engaged in sufficient relevant activities, including activities in the United States such as speechmaking and participation in other public appearances, to show that these two defendants have the requisite minimum contacts with the United States, and that the exercise of personal jurisdiction over each of them comports with "traditional notions of fair play and substantial justice." (DE 85 at 3).

*Daimler* expressly left open the question whether and how service of process on an agent within the territory for general jurisdiction would comport with due process. 134 S. Ct. at 759 ("we need not pass judgment on invocation of an agency theory in the context of general jurisdiction"). However, to the extent the *Daimler* Court provided guidance on the agency question, it does not help Defendants as *Daimler* left intact the rule that an individual defendant

whose only contact with a forum State is a one-time visit will be subject to general jurisdiction if served with process during that visit. 134 S. Ct. at 753,754 (*citing Burnham v. Superior Court*, 495 U.S. 604 (1990)).

*Burnham* is instructive. In that case, the defendant was served with process while in California for a weekend trip. The Supreme Court upheld the California courts' exercise of general jurisdiction, explaining "[t]he distinction between what is needed to support novel procedures and what is needed to sustain traditional ones is fundamental . . . . The short of the matter is that jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'" *Burnham*, 495 U.S. at 619. As noted above, exercising general jurisdiction by serving a suitable agent "doing business" in the jurisdiction is a traditional procedure dating back to the nineteenth century. While *Daimler* rejected the Ninth Circuit's *test* for identifying a suitable agent, it left open what the correct test might be.

Therefore, as it is clear that *Daimler* does not present a change in controlling law applicable to the personal jurisdiction analysis in this case, there is no sound basis on which to justify reconsideration, and accordingly the Court should deny Defendants' motion.

### III. DEFENDANTS HAVE REPEATEDLY WAIVED THEIR OBJECTION TO PERSONAL JURISDICTION

#### A. Contrary to Defendants' suggestion that *Daimler* announced a new rule, the "essentially at home" standard was established over 2½ years ago in *Goodyear*

Although the "essentially at home" standard does not apply to this case for the reasons discussed above, it was not, contrary to Defendants' claim, established in *Daimler*. Rather, this "new" rule was established in two cases decided on the same day in June 2011. *Goodyear,* 131 S. Ct. 2846; *Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). *Goodyear* established that under the Fourteenth Amendment: "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations…when their affiliations with the State are so 'continuous and systematic' as to render them *essentially at home* in the forum State." *Goodyear*, 131 S. Ct. at 2851 (emphasis added). This rule expressly guided the *Daimler* Court:

> In Goodyear Dunlop Tires Operations, S. A. v. Brown, 564 U. S. ___, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011), we addressed the distinction between general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction. As to the former, we held that a court may assert jurisdiction over a foreign corporation "to hear any and all claims against [it]" only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive "as to render [it] essentially at home in the forum State." Id., at ___, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796, 803.  *Instructed by Goodyear, we conclude Daimler is not "at home" in California, and cannot be sued there for injuries plaintiffs attribute to MB Argentina's conduct in Argentina.*

*Daimler,* 134 S. Ct. at 751 (2014) (emphasis added).  The *Daimler* Court further described *Goodyear* as the "pathmarking opinion", 134 S. Ct. at 760, and repeated that "the Court made plain in *Goodyear* and repeats here [that] general jurisdiction requires affiliations 'so "continuous and systematic" as to render [the foreign corporation] essentially at home in the forum State,'" *i.e.*, comparable to a domestic enterprise in that State." *Daimler* at 758 n.11 (*quoting Goodyear* 131 S. Ct. at 2851).

Every argument Defendants make in their Motion to Reconsider is based upon the "essentially at home" formulation created and enunciated in 2011 in *Goodyear*. The *Goodyear* Court explained that "[a] corporation's continuous activity of some sorts within a state[]…is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear*, 131 S. Ct. at 2856. Instead, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations…when their affiliations with the State are so 'continuous and systematic' as to render them *essentially at home* in the forum State." *Id.* at 2851 (emphasis added). The Court even explained that a corporation "is fairly regarded at home" in a place "equivalent" to an "individual's domicile," and held that "petitioners are in no sense at home in North Carolina." *Id.* at 2857.

And, in a case decided the same day, the Court cited *Goodyear* for the proposition that "incorporation or principal place of business" "indicates general submission to a State's powers." *J. McIntyre Machinery, Ltd.* 131 S. Ct. at 2787.[5] "Citizenship or domicile—or, by analogy, incorporation or principal place of business for corporations—also indicates general submission to a State's powers." *Id.* (*citing Goodyear*).

Following *Goodyear*, federal district courts have uniformly and repeatedly held that "[a] corporation is 'essentially at home' both where it is incorporated and where its principal place of business is located."[6] Recognizing the change in law, many litigants took prompt steps to seek to

---

[5] The concurrence in *Daimler* acknowledged that it was *Goodyear*, that added "the phrase 'essentially at home' to our prior formulation of the rule," *Daimler AG*, 134 S. Ct. at 769, and criticized the majority for announcing in *Daimler* another "new rule that in order for a foreign defendant to be subject to general jurisdiction, it must not only possess continuous and systematic contacts with a forum State, but those contacts must also surpass some unspecified level when viewed in comparison to the company's 'nationwide and worldwide' activities. *Daimler AG*, 134 S. Ct. at 770. It is the "essentially at home" rule that Defendants seek to use in this case, not the tweak identified by Justice Sotomayor.

[6] *Abelesz v. OTP Bank*, 692 F.3d 638, 653-659 (7th Cir. 2012); *Monistere v. Losauro*, CIV.A. 13-22, 2013 WL 6383886, *3 (E.D. La. Dec. 4, 2013)("[Defendants] are both incorporated in Florida and both have their principal place of business in Florida. It is clear that Defendants are not subject to general personal jurisdiction in Louisiana

Footnote continued on next page

obtain the benefit of the newly announced standard.[7]  Litigants did not "wait and see" how

*Goodyear* was applied and interpreted in other cases, as these Defendants appear to have done

---

Footnote continued from previous page

based on their domicile, incorporation, or principal places of business."); *Hershman v. Muhlenberg Coll.*, 3:13CV00594 RNC OP, 2013 WL 5929849, *2 (D. Conn. Nov. 4, 2013)("Muhlenberg is not 'essentially at home' anywhere except Pennsylvania, its state of incorporation, principal place of business, and site of its only campus."); *Chavez v. Dole Food Co., Inc.*, 947 F. Supp. 2d 438, 443 (D. Del. 2013)("Chiquita's activity in Delaware does not come close to rising to the level of the principal place of business, that 'quintessential paradigm' for general jurisdiction. Indeed, while Chiquita's contacts with Delaware are regular, and may be economically substantial, they are not not of the 'at home' variety."); *but see In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.*, 2:11-MD-2226-DCR, 2012 WL 3842271,*2 (E.D. Ky. Sept. 5, 2012)(rejecting argument that under *Goodyear*, "a corporation could only be subject to general jurisdiction in the state where it is incorporated or where it maintains its principal place of business").

[7] For example, in *Holocaust Victims of Bank Theft v. Magyar Nemzeti Bank*, 807 F. Supp. 2d 699 (N.D. Ill. 2011), the defendants promptly sought reconsideration of a prior order denying their motion to dismiss for lack of personal jurisdiction, *Id.* at 704, and then petitioned for mandamus on the ground that the banks' contacts with the United States did not meet *Goodyear*'s "essentially at home" test. *Abelesz*, 692 F.3d at 653-59; *see also Lindsey v. Cargotec USA, Inc.*, 4:09CV-00071-JHM, 2011 WL 4587583 (W.D. Ky. Sept. 30, 2011)(requesting supplemental briefing on personal jurisdiction in light of *Goodyear*); *Russell v. SNFA*, 2013 IL 113909, 987 N.E.2d 778, 784 *cert. denied*, 134 S. Ct. 295, 187 L. Ed. 2d 152 (U.S. 2013)(directing reconsideration of earlier jurisdictional decisions in light of *Goodyear*); *see also CML-NV Civic Ctr., LLC v. Gowan Indus., L.L.C.*, 2:11-CV-00120-PMP, 2011 WL 6752406, *6 (D. Nev. Dec. 23, 2011)("Quite recently, the Supreme Court significantly altered its viewpoint regarding the importance of where a corporation is 'at home' . . . in holding that general jurisdiction for actions against a corporation could not be based on continuous activity in a state unrelated to the claim alleged that did not reflect the corporation being 'at home' in that state."); *Eastman Chem. Co. v. AlphaPet Inc.*, CIV.A. 09-971-LPS-CJ, 2011 WL 6004079, , *14 n.16 (D. Del. Nov. 4, 2011)("[T]he U.S. Supreme Court recently clarified that general jurisdiction over foreign corporations is proper if and only if [they are] essentially at home in the forum") (emphasis added); *King v. Gen. Motors Corp.*, 5:11-CV-2269-AKK, 2012 WL 1340066,*6 n.2 (N.D. Ala. Apr. 18, 2012)(finding that general jurisdiction was absent where defendant was "in no sense 'home'" in the forum); *Niagra Bottling, LLC v. Orion Packaging Sys., LLC*, EDCV 12-00498 VAP, 2012 WL 1747398,*4 (C.D. Cal. May 14, 2012)(holding that general jurisdiction was lacking where there was "no evidence from which to conclude realistically that [the defendant was] so at home in [the forum] that it could be haled into court here for its conduct anywhere in the world"); *Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1375 (N.D. Ga. 2013)(rejecting assertion of general jurisdiction where the defendant's "contacts are not continuous and systematic enough to render [it] 'at home' in this forum"); *Afremov v. Jarayan*, CIV. 11-313 SRN/SER, 2012 WL 1049739, *8 (D. Minn. Mar. 28, 2012)(holding that general jurisdiction was lacking where there was "no factual basis to conclude" that the defendant could "be 'fairly regarded as at home'" in the forum); *Trident Steel Corp. v. Reitz*, 4:11CV1040 TIA, 2012 WL 1279937, *4 (E.D. Mo. Apr. 16, 2012)(granting motion to dismiss for lack of personal jurisdiction where contacts "[did] not rise to the level of rendering [the defendant] essentially at home" in the forum); *Robert Bosch LLC v. ADM 21 Co., Ltd.*, 2:10-CV-01930-RLH, 2011 WL 2619335,*3 (D. Nev. July 1, 2011)(holding that general jurisdiction was lacking where defendants' forum contacts "[did] not rise to the level that would render them essentially at home" in the state); *Gilbarco Inc. v. Tronitec, Inc.*, 1:11-CV-352, 2012 WL 1020244,*4 (M.D.N.C. Mar. 26, 2012)(holding that general jurisdiction was lacking where defendant's contacts with the forum did not "reach[] the level of being at home"); *Encore Med., L.P. v. Kennedy*, 861 F. Supp. 2d 886, 892 (E.D. Tenn. 2012)(holding that the exercise of general jurisdiction was "inappropriate" where the plaintiff's allegations did "nothing to suggest" that the defendants' contacts "render[ed] them essentially at home" in the forum); *Red Strokes Entm't, Inc. v. Sanderson*, 3:12-CV-0008, 2012 WL 1514892, *7 (M.D. Tenn. May 1, 2012)(holding that general jurisdiction was lacking where "the record [did] not show that [the defendant's] forum contacts" rendered her "essentially at home" in the forum); *Smith v. Teledyne Cont'l Motors, Inc.*, 840 F. Supp. 2d 927, 929 (D.S.C. 2012)(holding that for general jurisdiction to exist, "it must be shown that a party's presence in the

Footnote continued on next page

while at the same time continuing the ongoing litigation.  Rather, the conduct of the Defendants, in the instant action, can only lead to the conclusion that they recognized that *Goodyear* was now the standard applied by the Supreme Court and failed to seek any relief from this Court with appropriately filed timely motions to request that, to the extent *Goodyear* applied, it be considered and ruled on by the courts adjudicating both the instant action and in other courts where similar actions against the PLO and the PA are pending on behalf of various victims of terrorism.  The Defendants are believed to have filed no such motions in any of those pending cases accusing the Defendants of violations under the Anti Terrorism Act in this or their other pending cases.  Obviously, the Defendants have, at the very least, sat on their hands since *Goodyear*, presumably because they have always known that the PLO and the PA are indeed at home in the District of Columbia, where they maintain an office and personnel for their operations and ongoing presence in the United States.

Thus, Defendants' motion, which is based on the "essentially at home" standard announced by *Goodyear*, should have been brought in 2011 and therefore must be denied.

---

Footnote continued from previous page

forum state is so continuous and systematic that it may be deemed 'at home' there"); *Irving v. Revera, Inc*., No. 10-cv-153, 2011  WL 5329726, at *6 (D. Vt. Nov. 4, 2011) (holding that defendants were not subject to general jurisdiction where the plaintiff failed to demonstrate they were "essentially at home" in the forum); *Project Honey Pot v. John Does*, 1:11CV15 LMB/JFA, 2012 WL 1854184,*5 n.5 (E.D. Va. May 21, 2012)("[G]eneral jurisdiction would clearly be improper, as no plausible claim can be made that [the defendants'] affiliations with the State are so continuous and systematic as to render them essentially at home"); *Amazon.com, Inc. v. Nat'l Ass'n of Coll. Stores, Inc.*, 826 F. Supp. 2d 1242, 1253 (W.D. Wash. 2011)(holding that general jurisdiction was lacking where plaintiff did not "meet its burden to demonstrate that [the defendant's] contacts are so continuous and systematic as to render [it] essentially at home" in the forum).

**B.     Defendants' motion for reconsideration should be denied, because Defendants repeatedly waived their objection to personal jurisdiction by submitting to the Court's personal jurisdiction in the two and half years since the Supreme Court decided *Goodyear***

Defendants' request for reconsideration of the Court's decision under Rule 54(b) does not excuse the Defendants from failing to raise the "essentially at home" defense when it first became available to them.  A party waives the defense of personal jurisdiction if that defense is not raised when first available or known to the party.  *See Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981) "Personal jurisdiction, unlike subject-matter jurisdiction, can … be purposely waived or inadvertently forfeited. 'Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.'" *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Accordingly, "[t]he actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id*. at 704-705.

Indeed, as the D.C. Circuit has expressly held, once a defendant has elected not to timely contest personal jurisdiction, its prior waiver is binding and irrevocable even when it is certain that the defendant could otherwise successfully challenge personal jurisdiction:

> In the case before us, it is ***evident*** that the District Court would not have personal jurisdiction over the warden at the Lewisburg FCI … But this ***need not detain us***, inasmuch as the government failed in its answer to interpose as defenses either improper venue or lack of personal jurisdiction over the warden. It is, of course, elementary that a defense of improper venue or lack of personal (as opposed to subject matter) jurisdiction is waived unless the defense is asserted by a pre-answer motion (i.e., Rule 12(b)) or in a responsive pleading, i.e., the answer or a timely amendment thereto.

*Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 (D.C. Cir. 1988) (emphasis added); *accord*

*Kabbani v. International Total Services*, 1991 WL 251863 at *1 (D.D.C. 1991) ("Even if the

Court assumes, arguendo, that defendant's objection to personal jurisdiction has merit, it cannot grant defendant's motion because it was not timely made. ").

Moreover, because the limit on personal jurisdiction is an "individual right" belonging to the defendant, rather than inherent limitations on the court's power, "the court is powerless to dismiss the suit for lack of personal jurisdiction" once the defendant has submitted to the court's jurisdiction by declining to timely contest it. *O'Brien v. R.J. O'Brien & Associates*, 998 F.2d 1394, 1399 (7th Cir. 1993); *accord Pusey*, 938 F.2d at 501 n.4 ("[A] party's waiver operates not only to cut off his right to raise the defense, but the court's power to invoke it.").

A "litigant's 'substantial delay' in challenging personal jurisdiction through a motion to dismiss merits a finding of forfeiture." *China Nat. Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 593 (S.D.N.Y. 2012) (footnote omitted); *see King v. Taylor*, 694 F.3d 650, 658-61 (6th Cir. 2012) (forfeiture of service of process defense by litigating for one year without pressing the defense). In *China National*, the court held that the defendant had preserved its personal jurisdiction defense because it had moved to dismiss "within days" of a change in controlling law.  882 F. Supp 2d at 593; *see also PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 459 (5th Cir. 2001) (acknowledging the "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections"); *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co*., 203 F.3d 835 (table) at *3 (10th Cir. 2000) (citations and brackets omitted)(After a "lengthy participation in…litigation, [a] defendant may not pull its personal jurisdiction defense out of the hat like a rabbit." )

The guidelines imposed by courts on jurisdictional waiver are quite clear.  Yet, the Defendants waited more than two and a half years since *Goodyear*, during which time they have

participated actively in the conduct of the case.  This delay is unjustified and amounts to a waiver. If Defendants believed that *Goodyear* provided a basis for reconsideration, which it does not for the reasons described above, a motion should have been filed in an expedited manner.

This, in fact, occurred in numerous other cases across the nation at a much earlier time. *See, e.g.*, *Waterfall Homeowners Ass'n v. Viega, Inc.*, 2012 WL 5944634 at *3 (D.Nev. Nov. 26, 2012) (German Viega Defendants ask the Court to reconsider its ruling that there is personal jurisdiction over them in Nevada based upon agency jurisdiction.); *Russell v. SNFA*, 2011 IL App (1st) 93012-B, 965 N.E.2d 1, 3 *aff'd*, 2013 IL 113909, 987 N.E.2d 778 ("The Illinois Supreme Court directed us to reconsider our opinion in this case in light of two opinions subsequently decided by the United States Supreme Court: J. *McIntyre Machinery, Ltd. v. Nicastro*, ⸺ U.S. ⸺, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ⸺ U.S. ⸺, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011).")

Different defendants in numerous other cases invoked *Goodyear*, rather than waiting until *Daimler*. In fact, the PA/PLO represented by the same counsel that has been representing them in this case clearly had knowledge of *Goodyear* as they specifically cited *Goodyear* for the "essentially at home" test to object to personal jurisdiction in a brief to the United States Supreme Court on August 19, 2011.  *Mohamad v. Rajoub*, 2011 WL 3664462, *17 (August 19, 2011) (*quoting Goodyear*: "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.")[8]

In light of the numerous other motions for reconsideration filed across the country in immediate response to the 2011 *Goodyear* ruling, the failure of Defendants' delay in filing a

---

[8] *Goodyear* was also cited by these same Defendants in *Livnat v. Palestinian Authority*, Civ. No. 13-498 (E.D. Va.), DE 6 at 19-20.

Motion for Reconsideration in this action until 2014 amounts to a waiver and therefore,

Defendants' Motion for Reconsideration should be denied.

###### C. Continuing the litigation process for two and a half years without asserting the "essentially at home" requirement established in *Goodyear* (all the while conducting discovery and litigating on the merits), Defendants waived any personal jurisdiction challenge.

A review of the docket shows that since *Goodyear* was announced, Defendants (1) filed

four Joint Motions for Extension of Time to Complete Discovery  (DE 95, DE 98, DE 102, DE

105), (2) chose not to oppose Plaintiff's Motion for Extension of Time to Complete Discovery on

9/20/2011 (DE 131), (3) opposed a Motion for Issuance of Letters of Request on 12/14/2010 (DE

109), (4) consented to the taking of the March 2010 Hague Depositions. (DE 130 at 2), (5)

discussed the process of coordinating schedules for participants in upcoming depositions (DE

130 at 2), (6) participated in the 11/20/2011 deposition of Ahmed Hamed Hadib in Jerusalem

(DE 156-3), (7) participated in the 11/21/2011 deposition of Hussam Abdul Kader Ahmed

Halabi in Jerusalem (DE 156-2), (8) participated in the 1/24/2012 deposition of Tamer Rimawi

in Jerusalem (DE 156-1), (9) participated in the 1/25/2012 deposition of Marwan Barghouti in

Jerusalem (DE 156-4), (10) provided a declaration of Yasser Abed Rabbo dated 3/12/2012 (DE

157-16), and *inter alia* (11) provided a declaration of Hussein el A'raj dated 3/24/2012 (DE 157-

1). All of these actions occurred after the rule announced in Goodyear, after they cited *Goodyear*

in a brief they filed in another matter before the Supreme Court.

Yet, now, using *Daimler* as a pretext as if it established the "essentially at home" test, the

Defendants seek dismissal.  It is well-established that such extensive litigation constitutes a

waiver and submission to jurisdiction, even when the defendant did not make an earlier Rule

12(h) waiver. *See, e.g.*, *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 59 (2d Cir. 1999) (defendant

"forfeited its defense of lack of personal jurisdiction by participating in extensive pretrial

proceedings and forgoing numerous opportunities to move to dismiss during the four-year interval that followed its inclusion of the defense in its answer").

Under these circumstances, the lengthy delay which would severely prejudice the Plaintiffs[9] should they be required to now go back and conduct a general jurisdiction inquiry, combined with Defendants' extensive activity in this case, represents a submission to the Court's jurisdiction. Defendants' failure to timely move for reconsideration post-*Goodyear* while continuing to litigate this case amounted to a waiver of the personal jurisdiction defense based on the "essentially at home" standard.

## IV.   THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANTS UNDER THE FIFTH AMENDMENT

### A.   Should the Court find *Daimler* applies and that it cannot assert general personal jurisdiction, Plaintiffs contend the Court possesses specific personal jurisdiction.

Should the Court find that *Daimler* applies and that there are insufficient contacts to meet the *Daimler* test, then at trial, Plaintiffs will prove that Defendants' conduct supports an assertion of specific jurisdiction by the Court.

In late summer and early fall of 2000, Defendants concluded that they were unable to achieve their political goals through U.S. sponsored negotiations (which collapsed at Camp David in July 2000 and which Defendants blamed upon the U.S. and the State of Israel), Defendants proceeded with an attempt to achieve their political goals through terrorist violence and an influence campaign.  Plaintiffs have alleged that Defendants launched and conducted a terror campaign, which lasted for several years, explicitly aimed at influencing the policy of the United States government and its allies, including the State of Israel, in favor of and/or in

---

[9] *See Miller v. Jones*, 779 F. Supp. 207, 210-11 (D. Conn. 1991) (when a defendant makes a belated challenge to personal jurisdiction there is a "fear of prejudice against a plaintiff who, owing to delay, might … no longer have evidence of personal jurisdiction.").

deference to Defendants' political aims and demands asserted as foreign political entities. The

Defendants and their leaders made statements directed to and against the United States, which

link Defendants' terrorist campaign to its attempt to influence and impact U.S. policy and

actions, and conditioned its cessation of terror and the sponsorship of terrorist activities upon a

change in U.S. policy and actions in such a manner as to favor Defendants in achieving its

political goals.

Such assertions and evidence go, of course, to the merits of Plaintiffs' case. Plaintiffs

must prove at trial under the ATA that Defendants' conduct appeared to be intended "to

intimidate or coerce a civilian population," or "to influence the policy of a government by

intimidation or coercion". *See* 18 U.S.C. §2331(1)(B).

By proving these facts, Plaintiffs will also establish facts relevant to the exercise of

specific personal jurisdiction—namely that Defendants engaged in actions consciously designed

to affect United States policy. "'[S]o long as [an] actor's efforts are 'purposefully directed'

toward residents of another [forum],' the Supreme Court has 'consistently rejected the notion

that an absence of physical contacts can defeat personal jurisdiction there.'" *Mwani v. Osama

Bin Laden*, 417 F.3d 1, 12-13 (D.C. Cir. 2005) (*quoting Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 476 (1985)). "Iraq's conduct had a direct effect in the United States and was

consciously designed to affect United States policy. …It is reasonable that defendants be held to

answer in a United States court for acts of terrorism against United States citizens." *Daliberti v.

Republic of Iraq*, 97 F. Supp. 2d 38, 54 (D.D.C. 2000); *Sisso v. Islamic Republic of Iran*, 448 F.

Supp. 2d 76, 90 (D.D.C. 2006); *Morris v. Khadr*, 415 F. Supp. 2d 1323 (D. Utah 2006).

Specific jurisdiction can exist regardless of whether the terrorist attack at issue occurred

on U.S. soil. In determining whether minimum contacts exist, a court looks to "the relationship

among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, at 1121

(2014) (*quoting Keeton v. Hustler Magazine, Inc.,* 465 U. S. 770, 775 (1984), *quoting Shaffer v.*

*Heitner*, 433 U. S. 186, 204 (1977)).   The court's focus should be whether the exercise of

jurisdiction is "reasonable under the circumstances of the particular case." *Fort Knox Music Inc.*

*v. Baptiste*, 203 F.3d 193, 196-197 (2d Cir. 2000). Where, as here, "the defendant has substantial

contacts with the forum the court may accept a more attenuated relation between the defendant's

contacts with the forum and the plaintiff's cause of action." *Del Pointe v. Universal City*

*Development Partners, Ltd*., 2008 WL 169358 at *10 (S.D.N.Y. Jan. 16, 2008). Specific

jurisdiction thus may be exercised where a claim "arises out of *or relates to* defendants'

contacts" with the United States. *Chew v. Dietrich*, 143 F.3d at 29 (*quoting Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (emphasis added, alterations

omitted)). "The question is whether a defendant has followed a course of conduct directed at the

society or economy existing within the jurisdiction of a given sovereign, so that the sovereign

has the power to subject the defendant to judgment concerning that conduct." *J. McIntyre Mach.*,

131 S. Ct. at 2789.

   At trial, the evidence will show that Defendants were engaged in an organized terrorist

campaign from 2000 to 2004, directed at their goal of gaining political and military control of

Gaza and the West Bank by terrorizing the civilians of a democratic population. Plaintiffs have

alleged that the terrorist campaign was controlled from the top and executed by, among others,

Defendants' own security forces and terrorists and/or their organizations committed to and

engaged in terrorist attacks in furtherance of the goals of the Defendants.  Simultaneously with

their campaign of terror, Defendants conducted a U.S.-based publicity campaign to communicate

the goal of "ending the violence by ending the occupation" in an effort to influence the policy of the United States. These facts establish specific jurisdiction.

> **i. The Relationship Between Defendants' "Overall Activity" Within the United States and the ATA Claim Satisfies Minimum Contacts**

Where, as here, a defendant's contacts with the jurisdiction are substantial, a defendant may be subject to specific personal jurisdiction even if its conduct within the forum is merely "related to" the claim. *See Chew v. Dietrich*, 143 F.3d at 29; *SEC v. Straub*, 921 F. Supp. 2d at 254 & n.6; *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127-28 (2d Cir. 2002) ("while these [New York] contacts may not have directly given rise to the plaintiff's cause of action, they certainly 'relate to' it"). Indeed, the existence of in-forum "effects" is not a prerequisite to the constitutional exercise of personal jurisdiction over a defendant. *Licci v. Lebanese Canadian Bank, SAL*, 732 F. 3d 161, 173 (2d Cir. 2013).

The PLO and the PA purposely engaged in numerous activities that resulted in both entities having a "continuous and systematic presence within the United States". *Sokolow v. Palestine Liberation Organization*, WL 1345086 at *3 (S.D.N.Y. 2011), including the fully operational and staffed office for the PLO and the PA in Washington DC. Defendants' substantial presence in the United States included extensive public relations activities throughout the United States, ranging from interviews and speeches to attending and participating in various public events and activities designed to promote their views and achieve their political goals. *Id.* at 4.

> **ii. The Relationship Between these Activities and the Litigation is Plain.**

An element of any claim under the Anti-Terrorism Act is that defendants' conduct "appeared to be intended" "to influence the policy of a government by intimidation or coercion." 18 U.S.C. § 2331(1)(B).  Plaintiffs intend to prove that the terrorist attacks of the Second Intifada

and accordingly the attack in this case appeared to be intended to influence the policy of the United States and Israeli governments in favor of acceding to Defendants' political goals and demands. In tandem with their campaign of terror and violence in Israel, Defendants' extensive public relations activities in the United States appeared intended to pressure the United States into persuading Israel to withdraw and "end the occupation" of Gaza and the West Bank, based upon the coercive threat that absent withdrawal from those territories, the violence would continue and/or escalate.

To be sure, the terrorist attacks occurred in the State of Israel. But Defendants' U.S. conduct was important to achieving the goals of their terrorism campaign. Indeed, history has proven that horrific and heinous terrorist attacks can at times assist the perpetrators and their sponsors in achieving its political goals where those goals are communicated to the governments and democratic populations it is meant to influence.  A campaign of terrorism targeting, on the one hand the citizens of and people visiting or working or living in the State of Israel, and on the other hand the democratic population of the United States has been both a strategy, a tactic, a goal and a means of the Defendants accomplishing their political goals and aims through its attempt to influence the policies of the government of the United States.

Even assuming that Defendants' two permanent U.S.based offices, large staffs, and extensive activities across the United States were "not sufficient to establish general jurisdiction" under *Daimler*, they are highly relevant to the overall jurisdictional calculus. Here, Defendants' publicity and lobbying campaign inside the United States was an integral part of their overall campaign to achieve their political objectives and included their sponsorship and support of their terrorism campaign.  Since Defendants' extensive contacts with the United States were directly

"related to" plaintiffs' ATA claims, minimum contacts are met and this court has personal

jurisdiction over the Defendants.

    **B.**    **To the extent that the Court finds the facts in the record insufficient to establish specific jurisdiction, then Plaintiffs are entitled to additional jurisdictional discovery, including expert testimony.**

      Plaintiffs' claim against Defendants cannot be dismissed for lack jurisdiction without the

Court's first "looking beyond the pleadings." *Phoenix Consulting Inc. v. Republic of Angola*,

216 F.3d 36, 40 (D.C. Cir. 2000).  The Court must conduct some fact finding before it can

properly decide whether plaintiffs' claims against Defendants fit within the ATA's 28 U.S.C. §

2333.

      "When the defendant has thus challenged the factual basis of the court's jurisdiction, the

court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by

the plaintiff and disputed by the defendant. Instead, the court must go beyond the pleadings and

resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the

motion to dismiss." *Phoenix Consulting Inc.*, 216 F.3d at 40 (*citing* to *Jungquist v. Sheikh Sultan*

*Bin Khalifa Al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997); *Foremost-McKesson, Inc. v. Islamic*

*Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990)).

     Jurisdictional discovery "is appropriate when the existing record is 'inadequate' to

support personal jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.,* 395 F.3d

1275, 1283 (Fed.Cir.2005) (*quoting GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d

1343, 1350–51 (D.C.Cir.2000)) (emphasis added).   "This Circuit's standard for

permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems.,*

*Inc.,* 268 F.Supp.2d 1, 15 (D.D.C.2003), and jurisdictional discovery is available when a party

has "at least a good faith belief" that it has personal jurisdiction. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1090 (D.C.Cir.1998).

In this case, while much factual discovery has been done, there are still outstanding discovery disputes to be resolved by the Court including but not limited to whether the Defendants must search their GIS files and turn over all martyr's files which reference the Al Aqsa Martyrs Brigade and also whether the BBC shall be compelled to turn over its documentary "Arafat Investigated" and outtakes.  In accordance with the Scheduling Order, [DE 91], entered by this Court, this discovery, along with the extensive expert discovery in which the parties will engage  once fact discovery has been completed will demonstrate that the terrorist attack in this case, particularly when viewed in the context of the Defendants' sponsorship and support of the Second Intifada, appeared to be intended to influence the policy of the United States and Israeli governments in favor of acceding to Defendants' political goals and demands.

Expert discovery and testimony will show that in tandem with their campaign of terror and violence in Israel, Defendants' extensive public relations activities in the United States simultaneously appeared intended to pressure the government of the United States into persuading the State of Israel to withdraw its security forces from  Gaza and the West Bank, notwithstanding the threat and actuality of the reign of terror launched from Gaza and the West Bank upon the State of Israel and based upon the coercive threat that absent withdrawal from those territories, the violence would continue.  This expert discovery is also important in enabling the parties to provide the Court the relevant personal jurisdiction evidence.  In this case, Plaintiffs have made extensive factual allegations, which the Court must accept as true, would prove that the Palestinian Authority and Palestinian Liberation Organization sponsored acts of international terrorism in an effort to affect United States foreign policy.

However, should the Court reach this issue and question whether personal jurisdiction can be found, the Plaintiffs should be entitled to conduct additional jurisdictional discovery including relevant expert discovery.

## V.     IF THE COURT DOES NOT REJECT THE JURISDICTIONAL CHALLENGE, IT MUST DEFER THE FACT ISSUES TO TRIAL

The existence of specific personal jurisdiction over Defendants in this case is intertwined with the substantive merits of Plaintiffs' claims under the ATA—*i.e.*, whether Defendants' terrorism campaign (of which the attacks at issue in this case were a part) aimed to influence United States government policy within the meaning of ATA, 18 U.S.C. §2331(1)(B)(ii). Thus, as proof that Defendants' conduct was aimed at the United States will also establish specific personal jurisdiction over the Defendants (even if entities such as the PA and PLO have Due Process rights, which is also disputed), this Court should defer the determination of fact issues to trial.

Because facts relating to the Defendants' efforts to influence U.S. government policy are intertwined with the merits of the case, these latest jurisdictional arguments, if not rejected by the Court for all the reasons set forth earlier in this Opposition, should accordingly be disposed of at trial. "When the jurisdictional facts are intertwined [with the facts as to merits issues], it is usually preferable that…jurisdictional determination be made at trial, so that a plaintiff may present the case in a coherent, orderly fashion and without the risk of prejudicing the case on the merits." 2 Moore's *Federal Practice* 12.31[5] & n.14.2 (2013 ed.); *cf.* 5C Wright & Miller *Federal Practice and Procedure* §1350 (3d ed. 2010) ("If…a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial.").

## CONCLUSION

Wherefore, for the reasons set forth above and for those cited by the Court on December 29, 2006 and April 24, 2008; and particularly considering the prior determination of this Court as to jurisdiction, the length of time that has elapsed subsequent thereto during which extensive proceedings have been held; the failure of the Defendants to raise the instant issues upon the decision of the Supreme Court in *Goodyear* and the subsequent waiver resulting therefrom, and for each and all of the other reasons set forth above, this Court should deny Defendants' Motion for Reconsideration and hold that it had and continues to have personal jurisdiction over the Defendants.

Dated:  March 21, 2014                                  Respectfully submitted,

*/s/Richard D. Heideman_____*
*/s/ Tracy Reichman Kalik_____*
Richard D. Heideman (No. 377462)
Noel J. Nudelman (No. 449969)
Tracy Reichman Kalik (No. 462055)
HEIDEMAN NUDELMAN & KALIK, P.C.
1146 19th Street, N.W., Fifth Floor
Washington, DC 20036
Telephone: 202-463-1818
Telefax: 202-463-2999


*/s/ Steven R. Perles_____*
*/s/ Edward MacAllister_____*
PERLES LAW FIRM, P.C
Steven R. Perles (No. 326975)
Edward MacAllister (No. 494558)
1146 19th Street, N.W., Fifth Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax: 202-955-3806

*Counsel to the Plaintiffs*