UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ESTATE OF ESTHER KLIEMAN, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 04-1173 (PLF) |
| PALESTINIAN AUTHORITY, et al., | ) ) ) | |
| Defendants. | ) ) | |

OPINION

      Esther Klieman, an American schoolteacher, was killed in a terrorist attack in Israel in 2002.  Her estate, survivors, and heirs have brought this action under Section 2333 of the Antiterrorism Act ("ATA"), 18 U.S.C. §§ 2331 *et seq.*, and various tort theories, against the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO"), as well as several other organizations and individuals alleged to have engaged in or otherwise supported terrorist activities in or near Israel.  The PA and the PLO are the sole remaining defendants in this case.

      In 2006, the Court determined that it could exercise general personal jurisdiction over the PA and PLO based on their "continuous and systematic" contacts with the United States.  The Court denied defendants' motion for reconsideration of that decision in 2008.  In light of the Supreme Court's recent decision in Daimler AG v. Bauman, 134 S. Ct. 746 (2014), the PA and the PLO again move for reconsideration of this Court's rulings on personal jurisdiction.  Upon consideration of the parties' papers, the relevant legal authorities, the oral

arguments of counsel, and the entire record in this case, the Court will grant defendants' motion to reconsider. Due to the intervening change in the law, this Court concludes that it cannot exercise general personal jurisdiction over the PA and the PLO. The Court also finds insufficient bases for the exercise of specific personal jurisdiction. The Court therefore will dismiss the PA and the PLO from this action and will dismiss the case.[1]

I. BACKGROUND

On March 24, 2002, terrorists with machine guns attacked a public bus near Neve Tzuf, an Israeli settlement in the West Bank. Esther Klieman, an American schoolteacher, was shot and killed. In the aftermath, Al Aqsa Martyrs Brigade, an organization designated as a

---

[1] The papers considered in connection with the pending motion include: Defendants' second motion to dismiss for lack of jurisdiction ("Defs.' Second Mot. to Dismiss") [Dkt. No. 55]; defendants' motion for reconsideration of decision on personal jurisdiction ("Defs.' First Recons. Mot.") [Dkt. No. 77]; defendants' motion for reconsideration of 2006 and 2008 orders on personal jurisdiction ("Defs.' Mot.") [Dkt. No. 233]; plaintiffs' memorandum in opposition to defendants' second motion for reconsideration ("Pls.' Opp.") [Dkt. No. 240]; defendants' reply to plaintiffs' memorandum in opposition to defendants' second motion for reconsideration ("Defs.' Reply") [Dkt. No. 244]; plaintiffs' notice of supplemental authority [Dkt. No. 247]; defendants' response to plaintiffs' notice of supplemental authority [Dkt. No. 248]; plaintiffs' second notice of supplemental authority [Dkt. No. 250]; plaintiffs' supplemental brief in opposition to defendants' second motion for reconsideration ("Pls.' Supp. Mem.") [Dkt. No. 256]; defendants' response to plaintiffs' supplemental brief ("Defs.' Supp. Mem.") [Dkt. No. 257]; defendants' supplemental brief on U.S. fundraising as a basis for specific personal jurisdiction ("Defs.' Supp. Mem. on Fundraising") [Dkt. No. 260]; plaintiffs' supplemental brief in response to defendants' supplemental brief on U.S. fundraising as a basis for specific personal jurisdiction ("Pls.' Supp. Mem. on Fundraising") [Dkt. No. 261]; plaintiffs' third notice of supplemental authority [Dkt. No. 265]; defendants' response to plaintiffs' third notice of supplemental authority [Dkt. No. 266]; plaintiffs' response to defendants' response to plaintiffs' third notice of supplemental authority [Dkt. No. 267]; plaintiffs' fourth notice of supplemental authority [Dkt. No. 270]; defendants' response to plaintiffs' fourth notice of supplemental authority [Dkt. No. 272]; plaintiffs' fifth notice of supplemental authority [Dkt. No. 273]; defendants' response to plaintiffs' fifth notice of supplemental authority [Dkt. No. 275]; plaintiffs' response to defendants' response to plaintiffs' fifth notice of supplemental authority [Dkt. No. 277]; plaintiffs' sixth notice of supplemental authority [Dkt. No. 279]; and defendants' response to plaintiffs' sixth notice of supplemental authority [Dkt. No. 280].

Foreign Terrorist Organization by the U.S. Department of State, claimed responsibility for the attack.  Compl. ¶ 32.  By the time plaintiffs' complaint was filed in 2004, two individuals — Tamar Rassem Salim Rimawi and Hussam Abdul-Kader Ahmad Halabi — had been arrested, tried, and convicted of Klieman's murder in an Israeli court.  Id. ¶ 28.  A third suspect, Ahmed Hamad Rushdie Hadib, had been arrested and indicted, while a fourth suspect, Annan Aziz Salim Hashash, remained at large.  Compl. ¶ 30.

Klieman's estate, survivors, and heirs brought this action against thirteen individuals and organizations under Section 2333 of the ATA, 18 U.S.C. §§ 2331 *et seq.*, and various tort theories.  The original defendants can be broken into four categories:  (1) the four alleged perpetrators named above; (2) three additional individuals allegedly involved in the attack; (3) four organizations, Al Aqsa, Fatah, Tanzim, and Force 17, accused of directly supporting the attack; and (4) the Palestinian Authority and the Palestine Liberation Organization.  Plaintiffs accuse the PA and the PLO of not only failing to take effective measures to prevent terrorist attacks, but of providing weapons, funding, and other support to the organizations and individuals responsible for the attack.  Compl. ¶¶ 31-49.

The procedural history of this case spans a decade.  It is summarized here as relevant.  On March 30, 2006, the Court issued an Opinion and Order denying defendants' first motion to dismiss and granting plaintiffs' partial motion for summary judgment.  See Estate of Klieman v. Palestinian Auth., 424 F. Supp. 2d 153 (D.D.C. 2006) ("Klieman I").  Defendants then moved to dismiss for lack of personal jurisdiction due to inadequate service of process and insufficient contacts to satisfy due process.  Estate of Klieman v. Palestinian Auth., 467 F. Supp. 2d 107, 110 (D.D.C. 2006) ("Klieman II").  On December 29, 2006, the Court issued an Opinion and Order holding that plaintiffs' service of process was ineffective and granting plaintiffs thirty

days to perfect service.  Id. at 110.  But the Court rejected the PA's and the PLO's arguments that they lacked sufficient contacts with the United States for the exercise of personal jurisdiction.  Id.

Defendants then filed a third motion to dismiss based on insufficient service of process, as well as a motion for reconsideration of the Court's personal jurisdiction decision.  On April 18, 2008, the Court found that only the PA and the PLO had been properly served, and it therefore dismissed all other defendants from the case.  See Estate of Klieman v. Palestinian Auth., 547 F. Supp. 2d 8, 11 (D.D.C. 2008) ("Klieman III").  In a separate Memorandum Opinion and Order, the Court denied the defendants' motion for reconsideration of this Court's decision on personal jurisdiction.  Memorandum Opinion and Order at 1, 3, April 24, 2008 [Dkt. No. 85].  The Court explained that the contacts the PA and the PLO allegedly had with the United States, including speechmaking and participation in other public appearances, were sufficient for the Court to exercise personal jurisdiction, and that doing so "comport[ed] with traditional notions of fair play and substantial justice."  Id. at 3.  In so holding, the Court aligned itself with other U.S. courts finding general personal jurisdiction over the PA and the PLO.  See, e.g., Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, 88 (D.R.I. 2001) (concluding that the PA's and the PLO's contacts with the United States, including maintaining an office in Washington, D.C., engaging in fundraising and public speaking engagements, and hiring a U.S. lobbying firm were sufficient to exercise personal jurisdiction); see also Biton v. Palestinian Auth., 310 F. Supp. 2d 172, 175, 179-80 (D.D.C. 2004) (concluding that the PA's contacts with the United States — such as maintaining offices and bank accounts in the United States and employing a lobbying firm to develop a U.S. public relations campaign — were sufficient to exercise personal jurisdiction).

Defendants have filed another motion for reconsideration of this Court's personal jurisdiction decisions in light of the Supreme Court's recent decision in Daimler AG v. Bauman, 134 S. Ct. 746 (2014). Defs.' Mot. at 12. In response, plaintiffs argue that (1) the defendants waived their objection to the Court's previous findings of personal jurisdiction, (2) the Court can exercise general jurisdiction over defendants despite Daimler, (3) this Court can exercise specific personal jurisdiction in the alternative, and (4) plaintiffs at the least are entitled to jurisdictional discovery before the Court decides whether it has jurisdiction. These arguments are addressed in turn.

## II.  DISCUSSION

### A.  Motions for Reconsideration

Motions for reconsideration are not specifically addressed in the Federal Rules of Civil Procedure. While the most analogous rule is Rule 60, which provides relief from a final judgment or order, motions to reconsider interlocutory orders are not governed by Rule 60(b), but rather, such determinations "are within the discretion of the trial court." Keystone Tobacco Co. v. U.S. Tobacco Co., 217 F.R.D. 235, 237 (D.D.C. 2003); see also Bean v. Soberano, No. 04-1713, 2008 WL 239833, at *1 (D.D.C. Jan. 24, 2008); America v. Preston, No. 03-1807, 2007 WL 8055550, at *1 (D.D.C. Feb. 12, 2007); FED. R. CIV. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Notwithstanding the broad discretion of a court to reconsider its own interlocutory decisions, however, and "in light of the need for finality in judicial decision-making," district courts should only reconsider interlocutory orders "when the movant

demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." In re Vitamins Antitrust Litig., No. 99-1097, 2000 WL 34230081, at *1 (D.D.C. July 28, 2000).

Defendants argue that Daimler AG v. Bauman, 134 S. Ct. 746 (2014), was such an intervening change in the law. The Court agrees. In Daimler, Argentine residents sought jurisdiction in California over DaimlerChrysler Atiengesellchaft ("Daimler"), a German corporation, based on the California contacts of Daimler's U.S. subsidiary. Id. at 750-51. The Supreme Court rejected plaintiffs' arguments, however, holding that Daimler's U.S. subsidiary, its continuous business operations, and commercial sales accounting for 2.4% of Daimler's worldwide sales were insufficient to support general jurisdiction. Id. at 751-52, 760-62. Applying the "essentially at home" test first articulated in Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846 (2011), the Supreme Court iterated that a court may not exercise general jurisdiction over a foreign corporation unless "[the corporation's] affiliations with the [forum] are so 'continuous and systematic' as to render them essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. at 754 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. at 2851); see also Alkanani v. Aegis Def. Servs. LLC, 976 F. Supp. 2d 13, 29 (D.D.C. 2014) (holding that, under Daimler, a court must consider whether a foreign corporation's contacts are "so extensive, so constant, and so prevalent that they render the defendant 'essentially at home' in the forum").

Prior to the Supreme Court's decisions in Goodyear and Daimler, courts in this Circuit exercised general jurisdiction over a foreign corporation if its "contacts with the District [were] so continuous and systematic that it could [have] foresee[n] being haled into a court in the District of Columbia." AGS Int'l Servs. S.A. v. Newmont USA Ltd., 346 F. Supp. 2d 64, 74

6

(D.D.C. 2004). In rendering its 2006 and 2008 personal jurisdiction decisions in this case, the Court thus did not consider whether the PA's and the PLO's U.S. contacts were "so 'continuous and systematic' as to render them essentially at home" in the United States. Daimler and Goodyear therefore constitute an intervening change in the law and reconsideration of those prior decisions is warranted.

### B. Waiver of the Personal Jurisdiction Defense

The Court must first address plaintiffs' threshold argument that defendants have waived their personal jurisdiction defense by failing to file a motion for reconsideration immediately after the Supreme Court first articulated the "at home" test in Goodyear. The Court concludes that they have not.

Defendants persistently have objected to personal jurisdiction throughout this case, including by filing two motions near the commencement of the action and a prior motion for reconsideration. This Court issued decisions in 2006 and in 2008 denying defendants' motions and holding that it could exercise personal jurisdiction over the defendants. Plaintiffs therefore had ample notice of defendants' objection to personal jurisdiction throughout the litigation of this case.[2] And, unlike a responsive pleading or a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, motions for reconsideration may be filed at any time prior to the final judgment. See FED. R. CIV. P. 54(b). Tellingly, the Court has not

---

[2] Judge Kessler's recent decision finding the PA and the PLO waived personal jurisdiction in another pending case is inapposite because the PA and the PLO failed to move to dismiss the case for lack of personal jurisdiction until after the conclusion of discovery and summary judgment briefing. See Gilmore v. Palestinian Interim Self-Gov't Auth., No. 01-0853, 2014 WL 2865538, at *3-5 (D.D.C. June 23, 2014).

identified, and plaintiffs do not cite, any case denying a motion for reconsideration because of a delay in identifying intervening case law.

Furthermore, defendants have not acted with undue delay nor have the plaintiffs been unfairly prejudiced by any delay. Although the "at home" language first appeared in the Supreme Court's 2011 decision in Goodyear, the reach of this language was not immediately clear. See US ex rel. Barko v. Halliburton Co., 952 F. Supp. 2d 108, 115-16 (D.D.C. 2013) (Gwin, J., sitting by designation) (declining to apply the Goodyear "at home" test outside of the stream of commerce context); see also 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1067.5 (3d ed. Supp. 2013) ("If the Goodyear opinion stands for anything . . . it simply reaffirms that defendants must have continuous and systematic contacts with the forum in order to be subject to general jurisdiction."). It was only after the Supreme Court issued its decision in Daimler that the scope of Goodyear's "at home" test was appreciated. And there is no indication that plaintiffs have been prejudiced because, since Goodyear was decided, the activity in this case largely has been confined to discovery matters initiated by plaintiffs.

### C. Personal Jurisdiction

#### 1. Legal Standard

The plaintiffs bear the burden of establishing a *prima facie* showing that the Court has personal jurisdiction over the PA and the PLO. See Mwani v. Bin Laden, 417 F.3d 1, 6-7 (D.C. Cir. 2005); First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). In order to meet this burden, plaintiffs "must provide sufficient factual allegations, apart from mere conclusory assertions, to support the exercise of personal jurisdiction over the defendant." Howe v. Embassy of Italy, No. 13-1273, 2014 WL 4449697, at *2 (D.D.C. Sept. 11, 2014); see also First Chicago Int'l v. United Exch. Co., 836 F.2d at 1378 ("Conclusory

statements . . . do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction."); Alkanani v. Aegis Def. Servs., 976 F. Supp. 2d at 22 (plaintiff has the burden of establishing a factual basis for a court's exercise of personal jurisdiction and for alleging facts connecting defendant with the forum).

In determining if plaintiffs have met their burden, the Court need not accept all of the plaintiffs' allegations as true. Jung v. Assoc. of Am. Med. Colls., 300 F. Supp. 2d 119, 127 (D.D.C. 2004). It "may receive and weigh affidavits and other relevant matter [outside of the pleadings] to assist in determining the jurisdictional facts." Id. (quoting United States v. Philip Morris Inc., 116 F. Supp. 2d. 116, 120 n.4 (D.D.C. 2000)); see also Alkanani v. Aegis Def. Servs., 976 F. Supp. 2d at 22. But all factual discrepancies must be resolved in the plaintiffs' favor. Crane v. N.Y. Zoological Soc., 894 F.2d 454, 456 (D.C. Cir. 1990).

Plaintiffs assert that defendants have sufficient contacts with the United States for purposes of establishing personal jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure, which functions as a federal long-arm statute. See Simon v. Repub. of Hungary, No. 10-1770, 2014 WL 1873411, at *30 (D.D.C. May 9, 2014). Rule 4(k)(2) provides that:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2). This Rule thus "allows a district court to acquire jurisdiction over a foreign defendant which has insufficient contacts with any single state but has 'contacts with the United States as a whole.'" In re Vitamins Antitrust Litig., 94 F. Supp. 2d 26, 31 (D.D.C. 2000) (Hogan, J.) (citing Advisory Comm. Note to 1993 Amendment). As there is no dispute that some of plaintiffs' claims arise under federal law, and neither party asserts that the defendants

9

are subject to jurisdiction in any state's courts of general jurisdiction, the only question before the Court is whether jurisdiction over the defendants may be exercised consistent with the Constitution and laws of the United States.  See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982); Biton v. Palestinian Auth., 310 F. Supp. 2d at 177.

The Due Process Clause of the Fifth and Fourteenth Amendments requires that, in order to be subject to the jurisdiction of a court, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); see Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014).  "The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.'"  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. at 317); see also Gordon v. Holder, 826 F. Supp. 2d 279, 290 (D.D.C. 2011), aff'd, 721 F.3d 638 (D.C. Cir. 2013).

2.  General Personal Jurisdiction

On reconsidering defendants' U.S. contacts in light of Daimler, the Court concludes that it cannot exercise general personal jurisdiction over the PA and the PLO.[3]  As

---

[3] Plaintiffs also claim that the Court should exercise general jurisdiction because plaintiffs served defendants' agents, and "serving a suitable agent 'doing business' in the jurisdiction" has been used to uphold general jurisdiction.  Pls.' Opp. at 17.  But personal jurisdiction requires *both* proper service and minimum contacts that comport with due process; proper service alone is insufficient to meet the due process requirements.  Mwani v. bin Laden, 417 F.3d at 8 ("[S]ervice of process does not alone establish personal jurisdiction.  As the

noted in this Court's 2008 decision, plaintiffs allege that the PA and the PLO engage in speechmaking and participate in other public appearances in the United States, as well as public relations activities associated with the D.C. office of the PLO Mission to the United States. Memorandum Opinion and Order at 3, April 24, 2008 [Dkt. No. 85].  In addition, this Court considered the PA's and PLO's contacts identified in two other cases, Ungar v. Palestinian Auth., 153 F. Supp. 2d 76, and Biton v. Palestinian Auth., 310 F. Supp. 2d 172, when conducting its personal jurisdiction analysis.  Klieman II, 467 F. Supp. 2d at 113.  The contacts of the PA and the PLO identified in those cases include:  maintaining a PLO office in Washington, D.C.; conducting fundraising activities and other public speaking engagements; hiring a lobbying firm to develop a public relations campaign; entering into commercial contracts in the United States; and maintaining bank accounts in New York.  Ungar v. Palestinian Auth., 153 F. Supp. 2d at 88; Biton v. Palestinian Auth., 310 F. Supp. 2d at 179-80.

In Goodyear and in Daimler, the Supreme Court clarified that, for general personal jurisdiction, "minimum contacts" are those "so continuous and systematic as to render [the foreign entity] essentially *at home* in the forum State."  Daimler AG v. Bauman, 134 S. Ct. at 754, 758 n.11 (emphasis added) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. at 2851) (internal quotation marks omitted).[4]  Defendants' alleged contacts —

---

Supreme Court said . . . '[b]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant.'").

[4]     The plaintiffs argue that Goodyear and Daimler are not controlling because both cases were decided under the Fourteenth Amendment.  See Pls.' Opp. at 10-13.  The minimum contacts analysis, however, is the same under the Fifth Amendment and the Fourteenth Amendment.  See, e.g., Securities and Exchange Commission v. Straub, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) ("[B]ecause the language of the Fifth Amendment's due process clause is identical to that of the Fourteenth Amendment's due process clause, the same general principles guide the minimum contacts analysis."); see also GSS Grp. Ltd v. Nat'l Port Auth., 680 F.3d 805, 816-17 (D.C. Cir. 2012) (applying Goodyear when considering minimum contacts under the

11

including those previously identified by this Court and the decisions it cited, see supra at 10-11 — do not suffice to render the PA and the PLO "essentially at home" in the United States. The PA is based in the West Bank and the Gaza Strip. See Defs.' Mot. at 12. Although not recognized as a sovereign government by the United States, it governs a portion of the West Bank. See Safra v. Palestinian Auth., No. 14-0669, 2015 WL 567340, at *8 (D.D.C. Feb. 11, 2015). The PLO likewise is based in the West Bank and operates embassies and missions around the world. See Defs.' Mot. at 12. Defendants' activities in the United States represent a tiny fraction of their overall activity during the relevant time period, and are a smaller proportion of their overall operations than Daimler's California-based contacts. Defs.' Reply at 3.[5] The fact that defendants maintain a small office in Washington does not save plaintiffs' argument. Daimler AG v. Bauman, 134 S. Ct. at 761 n.18 (noting that exercising general jurisdiction based on the presence of a local office "should not attract heavy reliance today").[6]

---

Fifth Amendment). The Court similarly rejects plaintiffs' contention that defendants are foreign political entities not entitled to constitutional protections. Pls' Opp. at 4-6. This issue was resolved by the Court's earlier decisions that defendants are not foreign states entitled to sovereign immunity, Klieman I, 424 F. Supp. 2d at 159, but rather are foreign organizations protected by the Due Process Clause. Klieman II, 467 F. Supp. 2d at 113; see also GSS Grp. Ltd v. Nat'l Port Auth., 680 F.3d at 809-10.

[5]   Defendants claim, and plaintiffs do not dispute, that the PLO employed approximately 1,300 people at their global embassies, missions, and delegations between 1998 and 2004, but employed no more than twelve staff members at the Washington, D.C. office during that time. See Defs.' Reply at 3, 6. According to defendants, the Washington, D.C. PLO office accounted for 0.037 percent of the PA's total expenditures. Id. at 6.

[6]   Defendants assert that many of these contacts are exempted for personal jurisdiction purposes under the "government contacts" exception. See Defs.' Supp. Mem. at 3 ("[U]nder the well-established government contacts exception, Plaintiffs cannot rely on speech intended to lobby the federal government as a jurisdictional contact."); see also Alkanani v. Aegis Def. Servs., 976 F. Supp. 2d at 25; Savage v. Bioport, Inc., 460 F. Supp. 2d 55, 62 (D.D.C. 2006). The Court need not resolve this question, however, because these contacts nonetheless are insufficient for the exercise of general personal jurisdiction under Goodyear and Daimler.

The Court disagrees with the recent application of Daimler to the Palestinian Authority in Sokolow v. Palestine Liberation Org., No. 04-397, 2014 WL 6811395 (S.D.N.Y. Dec. 1, 2014). There the court concluded that, because the record did not indicate where the Palestinian Authority's employees worked, "[t]his record is therefore insufficient to conclude that either defendant is 'at home' in a particular jurisdiction other than the United States." Id. at *2. But that is not the question Daimler requires courts to ask. It is not defendants' burden to demonstrate a "home" outside the United State, but the plaintiffs' burden to present a *prima facie* case that defendants are "at home" in the United States. See supra at 6, 8-9; see also Safra v. Palestinian Auth., 2015 WL 567340, at *9 (holding same and noting that plaintiffs "must [also] overcome the common sense presumption that a non-sovereign government is at home in the place they govern"). Plaintiffs in this case have failed to do so.

3. Specific Personal Jurisdiction

Where general jurisdiction is unavailable, a court nevertheless may hear a suit that "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). A court's exercise of specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. at 2851 (quoting Arthur T. von Mehren & Donald T. Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 HARV. L. REV. 1121, 1136 (1966)); see Walden v. Fiore, 134 S. Ct. at 1121 (whether a forum state may assert specific jurisdiction depends on "the relationship among the defendant, the forum, and the litigation," and "defendant's suit-related conduct must [have] a substantial connection with the forum State"). If the activities giving rise to the suit occurred

abroad, jurisdiction is proper only if the defendant has "purposefully directed" its activities towards the forum and if defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 474 (1985); Williams v. Romarm, SA, No. 13-7022, 2014 WL 2933222, at *5, *7 (D.C. Cir. July 1, 2014) (concluding that plaintiffs' failure to allege any conduct by defendant that was purposefully directed towards the forum compelled a finding of no specific jurisdiction); cf. Mwani v. bin Laden, 417 F.3d at 13 (concluding that specific jurisdiction was proper when defendants "purposefully directed" their activities at the United States and the litigation resulted from injuries to the plaintiffs "that 'arise out of or relate to' those activities").

In their opposition to defendants' motion for reconsideration, plaintiffs assert that the March 24, 2002 attack "arises out of" defendants' contacts with the United States. See Pls.' Opp. at 26-33. But because the Court had difficulty discerning the precise nature of this asserted connection, the Court directed the plaintiffs to file a supplemental memorandum before oral argument clearly explaining their theory of specific jurisdiction and permitted defendants to respond. See Memorandum Opinion and Order, June 27, 2014 [Dkt. No. 253]. Upon careful consideration of the plaintiffs' arguments and supplemental papers, the Court concludes that it may not exercise specific jurisdiction in this case.

There appear to be three facets to plaintiffs' theory of specific jurisdiction. *First*, plaintiffs assert that, while engaged in the terror campaign in Israel, defendants simultaneously conducted a publicity campaign in the United States intended to pressure the United States government to persuade Israel to withdraw from Gaza and the West Bank. The defendants' alleged support for Ms. Klieman's attackers "relates" to defendants' activities in the United States because both activities were motivated by the same political goal. See Pls.' Supp. Mem.

at 6 ('[I]t is not necessary that the terrorist attack which killed Esther was *caused by* the Defendants' U.S. contacts to assert specific jurisdiction; both the U.S. contacts and Defendants' terrorism result from the same cause: the PA/PLO's political goals."). Plaintiffs' theory is tenuous at best, and this broad reading of the phrase "relates to" has no support in the relevant case law. Courts typically require that the plaintiff show some sort of causal relationship between a defendant's U.S. contacts and the episode in suit. See Walden v. Fiore, 134 S. Ct. at 1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."); Alkanani v. Aegis Def. Servs., LLC, 976 F. Supp. 2d at 27 (noting that "[s]ome courts have interpreted the phrase 'arise [from]' [under D.C.'s long-arm statute] as endorsing a theory of 'but-for' causation, while other courts have required proximate cause to support the exercise of specific jurisdiction," but holding that "at a minimum [arise from] means that the claim raised must 'have a discernible relationship' to the defendant's business transacted in the district"). Plaintiffs have failed to allege anything of the kind.[7]

*Second*, plaintiffs argue that defendants supported terrorists, such as those individuals and organizations behind the March 2002 attack, in order to persuade U.S. policymakers to pressure Israel to withdraw from the contested areas. See Pls.' Supp. Mem.

---

[7] Related to this argument is plaintiffs' suggestion at oral argument that defendants had engaged in U.S.-based fundraising. Following oral argument in this case, therefore, the Court ordered supplemental briefing regarding U.S. fundraising as a basis for specific personal jurisdiction. Order at 2, July 28, 2014 [Dkt. No. 258]. Having reviewed the supplemental filings, the Court agrees with defendants that plaintiffs have not alleged, provided any *prima facie* showing, nor developed any facts through discovery that either the PA or the PLO engages in fundraising in the United States. See Defs.' Supp. Mem. on Fundraising at 2-5. Moreover, defendants provided a declaration from the head of the PLO's U.S. mission office attesting to the absence of any fundraising activities. Id. at 2 (citing Declaration of Ambassador Maen Areikat ¶ 11 [Dkt. No. 244-2]).

15

at 4-6.  Plaintiffs' proposed narrative is difficult to follow; they appear to speculate that the PA and the PLO believed that American policymakers would blame Israel for increased terrorist attacks by Palestinian organizations and thus pressure Israel to withdraw from contested areas. See id.  Plaintiffs argue that defendants' conduct therefore was "purposefully directed" at the United States.  See, e.g., Mwani v. bin Laden, 417 F.3d at 4, 14 (concluding that a terrorist act directed at the United States embassy abroad was sufficient for the exercise of personal jurisdiction over foreign defendants, as defendants "purposefully direct[ed] their terror at the United States," and therefore could "reasonably anticipate being haled into court" here).

        Plaintiffs' theory, however, lacks plausibility and is divorced from the factual allegations in the complaint.  Plaintiffs' complaint does not contain any allegations that the PA and PLO supported terrorist attacks to cause the United States to pressure Israel to withdraw from contested areas.  And plaintiffs' new theory is undermined by the allegation that the United States government, rather than blame Israel for the attacks, "repeatedly demanded from [d]efendants . . . PA and PLO that they take effective measures to prevent every terrorist attack by" the individuals responsible for Esther Klieman's death.  Compl. ¶ 38.  Moreover, despite the fact that discovery has been ongoing for many years, plaintiffs do not point to any evidence supporting their theory, nor do they suggest that jurisdictional discovery would reveal facts to support this theory.  See Pls.' Supp. Mem. at 10.

        *Third*, plaintiffs argue that specific personal jurisdiction is proper because "injury to Americans was a foreseeable result" of defendants' conduct abroad.  See Pls.' Supp. Mem. at 8.  Such a foreseeability test has been rejected by the Supreme Court repeatedly, and most recently in Walden v. Fiore, where the Court held that a defendant's actions outside of the forum do not create sufficient contacts with the forum simply because the defendant directed his

16

conduct at plaintiffs that he knew were residents of the forum state. Walden v. Fiore, 134 S. Ct. at 1125 ("Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis."); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 295 ("'Foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.").

Plaintiffs' attempt to analogize this case to Calder v. Jones, 465 U.S. 783 (1984), is unavailing. In Calder, the Supreme Court held that a court in California could properly exercise specific jurisdiction over two Florida journalists where California was "the focal point both of the story and of the harm suffered." Id. at 788-89. But the facts in this case are readily distinguishable. Plaintiffs have not made any *prima facie* showing that defendants' alleged conduct — providing support for terrorist organizations in Israel — focused on the United States, or that the resulting harm was disproportionately suffered in the United States. And, as noted, exercising specific jurisdiction because the victim of a foreign attack happened to be an American would run afoul of the Supreme Court's holding that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." Walden v. Fiore, 134 S. Ct. at 1123 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. at 475).[8]

---

[8] The Court recognizes plaintiffs' concern that this holding may appear inconsistent with the aims of the Antiterrorism Act, which was designed to ensure that Americans harmed by international terrorist acts would have an adequate forum for civil actions against the responsible entities. See Goldberg v. UBS AG, 660 F. Supp. 2d 410, 420-22 (E.D.N.Y. 2009); Strauss v. Credit Lyonnais, S.A., 249 F.R.D. 429, 443-46 (E.D.N.Y. 2008). But as the D.C. Circuit has pointed out, a "statute cannot grant personal jurisdiction where the Constitution forbids it." Price v. Socialist People's Libyan Arab Jamahirya, 294 F.3d 82, 95 (D.C. Cir. 2002). The Court is confident, however, that courts are able to exercise specific personal jurisdiction in ATA cases

*D. Plaintiffs' Request for Jurisdictional Discovery*

Plaintiffs request jurisdictional discovery to "demonstrate that the terrorist attack in this case . . . appeared to be intended to influence the policy of the United States and Israeli governments in favor of acceding to Defendants' political goals and demands." See Pls.' Opp. at 32. Such jurisdictional discovery "lies within the district court's discretion," Goodman Holdings v. Rafidain Bank, 26 F.3d 1143, 1147 (D.C. Cir. 1994), and is appropriate "if it could produce facts that would affect [the court's] jurisdictional analysis." Al Maqaleh v. Hagel, 738 F.3d 312, 325-26 (D.C. Cir. 2013). Jurisdictional discovery is not appropriate, however, "in the absence of some specific indication regarding what facts additional discovery could produce." Id. The plaintiffs therefore must "demonstrate with plausible factual support amounting to more than speculation or conclusory statements that discovery will uncover sufficient evidence" to establish personal jurisdiction. Simon v. Repub. of Hungary, 2014 WL 1873411, at *41; see, e.g., El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996), abrogated on other grounds by Samantar v. Yousuf, 560 U.S. 305 (2010) (plaintiff was entitled to jurisdictional discovery based upon evidence of specific transactions by defendant bank in the forum).

Plaintiffs seek the following information in jurisdictional discovery:

(1) The extent of Defendants' activities within the United States and this jurisdiction to attempt to influence the foreign policy and public opinion in the United States to pressure Israel to change its public policies vis-à-vis the PA, including, but not limited to, information on the consultants, lobbyists and other professionals retained for this purpose.

(2) The financial investment of the Defendants' commercial contracts with US companies which allow the Defendants to raise revenue in the United States to support the operating budgets of the Defendants, which funded the joint public relations and terrorism campaign. As

---

with a sufficient nexus with the United States. See, e.g., In re Terrorist Attacks on September 11, 2001, 714 F.3d 659, 673-75 (2d Cir. 2013).

>demonstrated above, funds from the Defendants are then used to support terrorism, including the very terrorists who murdered Esther Klieman.

Pls.' Supp. Mem. at 10.

Even if the plaintiffs did obtain any such evidence through additional discovery — discovery that is limited to seeking information about defendants' public advocacy and fundraising activities in the United States — the plaintiffs would be unable to meet their burden of showing either general or specific personal jurisdiction under Daimler and Walden. See Safra v. Palestinian Auth., 2015 WL 567340, at *9, *13. Jurisdictional discovery therefore is unwarranted and plaintiffs' request will be denied. See Williams v. Romarm, SA, 756 F.3d 777, 786 (D.C. Cir. 2014) (affirming denial of jurisdictional discovery when plaintiffs' requested discovery would not enable plaintiffs "to account for the tenuous connection" between defendant and the forum); Savage v. Bioport, Inc., 460 F. Supp. 2d at 62-63 (denying jurisdictional discovery where "[a]dditional discovery of [defendant]'s contacts will not affect the jurisdictional outcome").

## III.  CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration of the 2006 and 2008 interlocutory orders on personal jurisdiction will be granted.  In light of the intervening change in law, the Court concludes that it cannot exercise general jurisdiction over the PA and the PLO because their contacts with the United States are not so continuous or systematic as to render them "essentially at home" in this forum.  The Court also finds that it cannot exercise specific jurisdiction over the defendants because the suit does not arise out of or relate to defendants' contacts with the United States.  The PA and the PLO therefore will be dismissed from this case pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Because the PA and the PLO were the sole remaining defendants, this case will be dismissed with prejudice and all currently pending motions will be denied as moot.  An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
DATE:  March 3, 2015                                    United States District Court