# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF ESTHER KLIEMAN, et al., | |
| Plaintiffs, | Civil Action No. 04-1173 (PLF) |
| v. | **REDACTED** |
| THE PALESTINIAN AUTHORITY, et al., | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone:     (202) 457-6000
Facsimile:     (202) 457-6315

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

     I.    Plaintiffs Have Received Sufficient Jurisdictional Discovery From Defendants to Litigate Both PSJVTA Factual Predicates ...................................... 3

          A.    Defendants Have Produced Substantial Jurisdictional Discovery ............. 3

          B.    Plaintiffs Concede That They Have Sufficient Discovery to Litigate the Applicability of the Payments Predicate. .............................. 4

          C.    Plaintiffs Concede That the Additional Discovery They Seek on the U.S. Activity Predicate Is Cumulative of Discovery Already Produced ................................................................................................ 4

     II.    Plaintiffs Are Not Entitled to Cumulative Jurisdictional Discovery That Would Not Materially Affect the Court's Jurisdictional Analysis ....................... 6

     III.    Plaintiffs Seek Information That Is Inviolate Under the Functional Immunity Accorded to the Palestine UN Mission .............................................. 14

          1.    Palestine's UN Mission Has Functional Immunity Under the UN Charter and the Headquarters Agreement ....................... 14

          2.    Plaintiffs' Cases Discuss Immunity from Suit, not Immunity for the Private Meetings and Internal Workings of the UN Mission ...................................................................... 17

          3.    The Activities of the UN Mission Are Squarely Within the Mission's Mandate Under the United Nations ............................ 21

CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES[1]

**Page(s)**

**Cases**

*Brzak v. UN*,
   597 F.3d 107 (2d Cir. 2010)....................................................................................16

*Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*,
   287 F.R.D. 130 (E.D.N.Y. 2012) ..............................................................................3

*Cook v. RHP Prop. NH, LLC*,
   Case No. 13-2165, 2014 U.S. Dist. LEXIS 603 (D. Md. Jan. 2, 2014)...................11

*Draper, Inc. v. MechoShade Sys.*,
   Case No. 10-cv-1443, 2012 U.S. Dist. 11243 (S.D. Ind. Jan. 30, 2012) ..................6

*Erwin-Simpson v. Berhad*,
   985 F.3d 883 (D.C. Cir. 2021) ...................................................................................6

*Farouki v. Petra Int'l Banking Corp.*,
   683 F. Supp. 2d 23 (D.D.C. 2010) ............................................................................7

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
   529 F.3d 1087 (D.C. Cir. 2008) .................................................................................6

*Gilmore v. Palestinian Interim Self-Government Auth.*,
   422 F. Supp. 2d 96 (D.D.C. 2006) ..........................................................................18

*Giraldo v. Drummond Co.*,
   808 F. Supp. 2d 247 (D.D.C. 2011) ........................................................................16

*Goodman Holdings v. Rafidian Bank*,
   26 F.3d 1143 (D.C. Cir. 1994) ..................................................................................6

*\*GTE New Media Servs. Inc. v. Bell South Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) .................................................................................6

*Gunn v. Wild*,
   Case No. 17-cv-00072, 2017 U.S. Dist. LEXIS 234282 (D. Nev. June 15,
   2017) ..........................................................................................................................5

---

[1] Authorities upon which Defendants' counsel chiefly rely are marked with asterisks per LCvR 7(a).

*Khadim Alkanani v. Aegis Def. Servs., LLC,
    286 F.R.D. 67 (D.D.C. 2012) ................................................................................... 7

Estate of Klieman v. Palestinian Auth.,
    424 F. Supp. 2d 153 (D.D.C. 2006) ....................................................................... 18

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione,
    937 F.2d 44 (2d Cir. 1991) ............................................................................... 18, 19

Latvian State Cargo & Passenger S.S. Line v. McGrath,
    188 F.2d 1000 (D.C. Cir. 1951) ............................................................................. 18

*Lewis v. Mutond,
    Case No. 16-cv-1547, 2021 U.S. Dist. LEXIS 182747 (D.D.C. Sept. 24, 2021) ............... 5, 10

Mwani v. Bin Laden,
    417 F.3d 1 (D.C. Cir. 2005) ..................................................................................... 6

*NBC-USA Hous., Inc. v. Donovan,
    774 F. Supp. 2d 277 (D.D.C. 2011) .......................................................................... 5

Shafi v. Palestinian Auth.,
    686 F. Supp. 2d 23 (D.D.C. 2010) .......................................................................... 18

In re Terrorist Attacks,
    Case No. 03-MDL-01570, 2019 U.S. Dist. LEXIS 121935 (S.D.N.Y. July 22,
    2019) ..................................................................................................................... 17

In re Terrorist Attacks,
    No. 03-mdl-1570, 2020 U.S. Dist. LEXIS 166886 (S.D.N.Y. Aug. 27, 2020) ...................... 16

*Toumazou v. Turkish Republic of N. Cyprus,
    71 F. Supp. 3d 7 (D.D.C. 2014) (Friedman, J.), aff'd, 2016 U.S. App. LEXIS
    787 (D.C. Cir. Jan. 15, 2016) ............................................................................. 6, 7

Estates of Ungar v. Palestinian Auth.,
    153 F. Supp. 2d 76 (D.R.I. 2001) ........................................................................... 18

Estates of Ungar v. Palestinian Auth.,
    315 F. Supp. 2d 164 (D.R.I. 2004) ......................................................................... 19

Ungar v. Palestinian Auth.,
    No. 18-302 (S.D.N.Y. Sept. 12, 2005) ..................................................................... 15

United States v. Afrasiabi,
    No. 21-cr-0046 (E.D.N.Y.) ..................................................................................... 21

- iii -

*United States v. PLO,
    695 F. Supp. 1456 (S.D.N.Y. 1988)................................................................15, 19, 20

Van Aggelen v. UN,
    311 F. App'x 407 (2d Cir. 2009) .................................................................................16

Waldman v. PLO,
    925 F.3d 570 (2d Cir. 2019)...................................................................................16, 17

Ward v. Ford Motor Co.,
    93 F.R.D. 579 (D. Colo. 1982) .....................................................................................3

Williams v. Romarm, SA,
    756 F.3d 777 (D.C. Cir. 2014)..................................................................................6, 10

**Statutes**

*18 U.S.C. § 2334..............................................................................................1, 4, 10

22 U.S.C. § 4309a............................................................................................20, 21

**Rules**

Fed. R. Civ. P. 12(b)(2)..................................................................................................2

**Other Authorities**

CEIRPP Programme of Work, UN Doc. A/AC.183/2020/1 (Feb. 7, 2020),
    available at https://www.un.org/unispal/document/palestinian-rights-
    committee-programme-of-work-for-2020-a-ac-183-2020-1/ ................................................22

Permanent Observer Mission of the African Union, 2014 U.N. Jur. Y.B. 328 ...........................16

Permanent Observer Mission of the Org. of the Islamic Conf., 1999 U.N. Jur.
    Y.B. 409 ....................................................................................................................16

State of Palestine in the United Nations, A/RES/67/19 (Nov. 29, 2012), available
    at: https://undocs.org/en/A/RES/67/19; .......................................................................19

Statement of Sen. Leahy, Cong. Rec.—Sen., S627, 116th Cong. (Jan. 28, 2020) ......................16

United Nations, A/52/250 (July 13, 1998), available at:
    https://undocs.org/en/A/RES/52/250 ..........................................................................19

U.N. G.A. Res. 3236, A/RES/3236 (XXIX) (Nov. 22, 1974) ......................................................23

U.N. G.A. Res., State of Palestine in the UN (Nov. 29, 2012), available at
    https://undocs.org/en/A/RES/67/19 ...........................................................................21

*U.N. Juridical Yearbook, Chapter VI, § A(13) (2000) ......................................................14, 15, 16

U.N. Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in General Assembly Work, Sessions When It Assumes 2019 Group of 77 Chairmanship* (Oct. 16, 2018), available at: https://www.un.org/press/en/2018/ga12078.doc.htm. ...........................................................19

U.N. Secretary-General, *Status of Palestine in the United Nations*, U.N. Doc. A/67/738 (Mar. 8, 2013), available at https://www.un.org/unispal/document/auto-insert-  182149/ ........................................................................................................................................22

Defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") (together, "Defendants"), by and through their undersigned counsel, hereby oppose Plaintiffs' Motion for an Order to Compel Jurisdictional Discovery from the Defendants ("Motion" or "Motion to Compel") (Dkt. 315).

## INTRODUCTION

The Promoting Security and Justice for Victims of Terrorism Act of 2019 ("PSJVTA") purports to create "deemed consent" jurisdiction over Defendants under two factual predicates: (1) if Defendants make payments after April 18, 2020, to persons (after having been "fairly tried" or "pleading guilty") imprisoned for (or to families of those who died while committing) "any act of terrorism" resulting in the death or injury of a U.S. national.  18 U.S.C. § 2334(e)(1)(A) (the "Payments Predicate"); and (2) if Defendants, on or after January 4, 2020, maintain "any office" or other physical facility in the United States, or engage in "any activity" while "physically present in the United States."  18 U.S.C. § 2334(e)(1)(B) & (e)(3) (the "U.S. Activity Predicate").  The PSJVTA, however, allows that certain activities will not trigger personal jurisdiction over Defendants, including: (a) any office used, or activity conducted, in the United States "exclusively for the purpose of conducting official business of the United Nations"; (b) any "activity undertaken exclusively for the purpose of meetings with officials of the United States or other foreign governments"; and (c) all "personal or official activities" that are conducted "ancillary" to the expressly exempt activities .  18 U.S.C. § 2334(e)(3)(A)-(F).

On December 2, 2021, this Court allowed jurisdictional discovery "so long as it is narrowly tailored" to "the narrow issues encapsulated in the predicates established by the PSJVTA."  Mem. Op. & Order, Dkt. 298 ("Dec. 2 Order"), at 2 (citing Plaintiffs' Position Statement from the Sept. 9, 2020 Joint Status Report, Dkt. 296, at 3-4).  Plaintiffs' requests were to be "constrained" to the

"easily identifiable issues" found in the PSJVTA's "predicate requirements." *Id.* (quoting Plaintiffs' Position Statement from the Sept. 9, 2020 Joint Status Report, Dkt. 296, at 3-4).

Over the past nine months, Plaintiffs have sought, and Defendants have produced, substantial discovery regarding both the Payments and U.S. Activity Predicates of the PSJVTA. Notably, Defendants have produced to these Plaintiffs the entirety of the jurisdictional discovery record generated in a parallel proceeding—*Shatsky v. PLO*, Case No. 18-cv-12355-MKV-DCF (S.D.N.Y.) ("*Shatsky*")—where the plaintiffs are litigating the same PSJVTA issues that are before the Court in this case.  The *Shatsky* jurisdictional discovery record contains seven depositions— including five 30(b)(1) depositions concerning the U.S. Activity Predicate, and four days of 30(b)(6) deposition testimony concerning the Payments Predicate—and thousands of pages of documents concerning both Predicates.  Additionally, Defendants have provided sworn answers to interrogatories, and responses to requests for admission, in this case relating to both the Payments and U.S. Activity Predicates of the PSJVTA.

Plaintiffs fail to explain why the jurisdictional discovery produced to date—which is sufficient to litigate the PSJVTA jurisdictional issues in *Shatsky*, and on which the plaintiffs there have based their opposition to Defendants' Rule 12(b)(2) motion to dismiss—is not equally sufficient to litigate the identical jurisdictional issues in this case.  Nor have Plaintiffs provided a non-speculative reason why the additional discovery Plaintiffs propose would affect this Court's jurisdictional analysis, as required by the D.C. standards governing jurisdictional discovery.

Jurisdictional discovery in this case has come to an appropriate end, and Plaintiffs have obtained more than sufficient jurisdictional discovery to litigate the PSJVTA factual predicates. There is no reason to order more cumulative, burdensome, and expensive discovery that will not impact the Court's jurisdictional analysis.  Plaintiffs' Motion to Compel should be denied.

## ARGUMENT

### I.   Plaintiffs Have Received Sufficient Jurisdictional Discovery From Defendants to Litigate Both PSJVTA Factual Predicates.

#### A.   Defendants Have Produced Substantial Jurisdictional Discovery.

Despite the limited nature of the jurisdictional discovery permitted by the Court's Dec. 2 Order, Plaintiffs have overburdened Defendants with 72 document requests, 50 requests for admission, and 19 interrogatories. Defendants responded not only with thousands of documents, sworn interrogatory answers, and responses to requests for admission, but also by producing the entire *Shatsky* jurisdictional discovery record, heeding the admonition that "[e]ach plaintiff should not have to undertake to discover[] anew the basic evidence that other plaintiffs have uncovered." *Ward v. Ford Motor Co.,* 93 F.R.D. 579, 580 (D. Colo. 1982). Further, by making the *Shatsky* jurisdictional discovery available to Plaintiffs, Defendants have established "an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay." *See Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012) (citations omitted).

Plaintiffs have obtained more than sufficient jurisdictional discovery to litigate the factual predicates under the PSJVTA. This is clear from the fact that *Shatsky* raises the identical PSJVTA issues as this case, and the parties there are currently litigating the PSJVTA issues on the same jurisdictional discovery record produced in this case. The *Shatsky* plaintiffs recently submitted their PSJVTA briefing, including 284 exhibits—many of which were materials produced by Defendants in jurisdictional discovery. *See Shatsky,* Dkt. 130, 131, 132, and 135.

#### B.   Plaintiffs Concede That They Have Sufficient Discovery to Litigate the Applicability of the Payments Predicate.

While Plaintiffs' Memorandum in Support of their Motion to Compel ("Pls. Br.") addresses the PSJVTA's Payments Predicate [Pls. Br. at 2, 4], Plaintiffs do not seek any additional

information concerning that predicate.  Thus, Plaintiffs have conceded that they have sufficient discovery to litigate the applicability of the Payments Predicate.  Plaintiffs allude to the stipulation they proposed on the Payments Predicate [Pls. Br. at 4], but omit that Defendants rejected that stipulation because: (i) it was superfluous in light of the ample discovery Defendants already had produced on that issue; and, (ii) it improperly asked Defendants to concede legal points embedded in the Payment Predicate, including that Israeli legal proceedings are "fair", and whether certain underlying events constitute acts of "terrorism", both as defined in the PSJVTA.  *See* Dkt. 315-14.

      C.      **Plaintiffs Concede That the Additional Discovery They Seek on the U.S. Activity Predicate Is Cumulative of Discovery Already Produced.**

Plaintiffs devote over three pages of their brief (at 12-15) to explaining how, in their view, the *Shatsky* jurisdictional discovery record already establishes the U.S. Activity Predicate—thus conceding that they have received sufficient jurisdictional discovery on that Predicate.  Pls. Br. at 12 (arguing that *Shatsky* deposition transcripts "have proven that Defendants' U.S.-based office and activities are not used or undertaken exclusively for U.N. official business") (emphasis added); *id.* at 12-13 (arguing that *Shatsky* deposition testimony demonstrates that "the relevant 18 U.S.C. 2334(e)(3) exceptions do not apply" to posts and tweets by UN Observer Mission); *id.* at 13-14 (arguing that *Shatsky* deposition testimony demonstrates that "the relevant 18 U.S.C. 2334(e)(3) exceptions do not apply" to certain meetings); *id.* at 14 (Redacted

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████).

Plaintiffs also concede that the additional discovery they seek on the U.S. Activity Predicate is entirely cumulative, in that they seek only "more" of what they already have received.

*Id.* at 15 (arguing that "[t]his Court may reasonably deduce from this testimony . . . there are <u>more</u> instances of such activity").  Jurisdictional discovery is designed to be limited, not cumulative. "[W]here there is no showing of how jurisdictional discovery would help plaintiff discover <u>anything new</u>, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'"  *NBC-USA Hous., Inc. v. Donovan,* 774 F. Supp. 2d 277, 295 (D.D.C. 2011) (citation omitted and emphasis added).  *See also Lewis v. Mutond,* Case No. 16-cv-1547, 2021 U.S. Dist. LEXIS 182747, at *12-13 (D.D.C. Sept. 24, 2021) (denying jurisdictional discovery where plaintiff "fail[ed] to show that additional discovery could cure this case's jurisdictional problems"); *Gunn v. Wild,* Case No. 17-cv-00072, 2017 U.S. Dist. LEXIS 234282, at *25 (D. Nev. June 15, 2017) ("The Court, however, denies Plaintiff's motion for jurisdictional discovery, the purpose of which appears to be to obtain only more cumulative information regarding Defendant's contacts with Nevada.").

The issue is not whether Defendants (or Plaintiffs for that matter) can unilaterally determine the sufficiency of jurisdictional discovery.  *See* Pls. Br. at 16-17.  The issue, rather, is whether Plaintiffs have confined themselves to the "the narrow issues encapsulated in the predicates established by the PSJVTA" that the Court allowed (Dec. 2 Order at 2) and whether Defendants have produced discovery sufficient to litigate the applicability of those PSJVTA Predicates.  There should be no question that Defendants have done so, given that the *Shatsky* plaintiffs are able to litigate the same PSJVTA issues on the same jurisdictional discovery record. This Court thus can appropriately declare the substantial discovery produced by Defendants to be sufficient to litigate the personal jurisdiction issues.  "Courts have discretionary power under the Federal Rules and inherent power to limit and control jurisdictional discovery, and they should exercise that authority to ensure that jurisdictional discovery does not conflict with the purposes

and protections of personal jurisdiction" and "become an expansive and expensive foray through [a defendant's] files."  *Draper, Inc. v. MechoShade Sys.,* Case No. 10-cv-1443, 2012 U.S. Dist. 11243, at *3-4 (S.D. Ind. Jan. 30, 2012).

**II.**    **Plaintiffs Are Not Entitled to Cumulative Jurisdictional Discovery That Would Not Materially Affect the Court's Jurisdictional Analysis.**

Plaintiffs do not demonstrate how the cumulative discovery they seek would materially affect the Court's ability to assess jurisdiction under the U.S. Activity Predicate (the only predicate addressed in their Motion) given the existing record.  Plaintiffs' failure or refusal to do so alone warrants denial of their Motion to Compel because Circuit precedent allows only "precisely focused discovery aimed at addressing matters relating to personal jurisdiction."  *GTE New Media Servs. Inc. v. Bell South Corp.,* 199 F.3d 1343, 1352 (D.C. Cir. 2000) (emphasis added). Embedded in these limitations is the Circuit's requirement that Plaintiffs demonstrate "what facts additional discovery could produce that would affect [the] jurisdictional analysis."  *Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (citation omitted).  *See also Erwin-Simpson v. Berhad,* 985 F.3d 883, 892 (D.C. Cir. 2021) ("Because 'we do not see what facts additional discovery could produce that would affect our jurisdictional analysis,' the district court did not abuse its discretion in dismissing the case without granting discovery.") (quoting *Goodman Holdings v. Rafidian Bank,* 26 F.3d 1143, 1147 (D.C. Cir. 1994)).   "'[M]ere conjecture or speculation' is not enough." *Williams v. Romarm, SA,* 756 F.3d 777, 786 (D.C. Cir. 2014) (quoting *FC Inv. Grp. LC v. IFX Markets, Ltd.,* 529 F.3d 1087, 1094 (D.C. Cir. 2008)).  *See also Toumazou v. Turkish Republic of N. Cyprus,* 71 F. Supp. 3d 7, 18 (D.D.C. 2014) (Friedman, J.) (request for jurisdictional discovery requires plaintiffs to demonstrate with "plausible factual support amounting to more than speculation or conclusory statements" that discovery "could produce facts that would affect [the

court's] jurisdictional analysis") (internal quotations and citations omitted), *aff'd,* 2016 U.S. App. LEXIS 787, at *3-4 (D.C. Cir. Jan. 15, 2016).

Judges of this court accordingly deny motions to compel additional jurisdictional discovery "[w]hen a plaintiff fails to show jurisdictional discovery would help uncover relevant information" because "it would be inappropriate to subject [defendants] to the burden and expense of [such] discovery" if a plaintiff cannot show that it would impact the court's jurisdictional analysis. *Khadim Alkanani v. Aegis Def. Servs., LLC,* 286 F.R.D. 67, 70 (D.D.C. 2012) (citations omitted). When discussing the governing standards, Plaintiffs' brief only cites one case involving jurisdictional discovery (the rest involve merits discovery), and that case makes clear that a plaintiff requesting jurisdictional discovery has the burden to establish that "'such discovery will enable [plaintiff] to show that the court has personal jurisdiction over the defendant.'" *Farouki v. Petra Int'l Banking Corp.,* 683 F. Supp. 2d 23, 28 (D.D.C. 2010) (citation omitted) (denying motion to compel except as to narrowed discovery with "relevance to the jurisdictional issues presented").

Throughout the meet and confer process, Defendants repeatedly invited Plaintiffs to explain how their additional requests would materially affect the jurisdictional analysis, but Plaintiffs declined to do so arguing that their rationale was self-evident. For example, in Defendants' September 17, 2021 correspondence, Defendants invited Plaintiffs to "provide a non-speculative reason why the additional discovery Plaintiffs propose would affect the jurisdictional analysis [Dkt. 315-21 at 3]," but on September 22, 2021, Plaintiffs declined, stating "there is no mystery about the relation of our requests in this case to the jurisdictional predicates of the PSJVTA [Dkt. 315-22 at 2]."

Even now, Plaintiffs do not offer any non-speculative reason why the additional discovery sought in their seven categories (six of which are numbered) [Pls. Br. 6-8] would materially affect the jurisdictional analysis.  Consistent with their conclusory approach, Plaintiffs also merely characterize but do not quote Defendants' written discovery objections [*id.* at 8], contrary to LCvR 30.4.[2]  Because specificity matters, we next examine Plaintiffs' seven categories of sought-after cumulative discovery, and demonstrate that they would not materially affect the jurisdictional analysis, and are entirely cumulative for multiple reasons.

**Certain requests substantively duplicate other discovery to which Defendants have already responded.**  For example, Plaintiffs' Category 2 [Pls. Br. at 7] (Request for Production Nos. 34 and 45-49 of Plaintiffs' First Set of Requests for Production of Documents and Electronically Stored Information Regarding Jurisdictional Discovery ("RFP") [Dkt. 315-2]) duplicates a *Shatsky* discovery request for "calendars of Defendants' US-based employees." Defendants already have responded by producing calendars for Palestine's UN Chief of Mission Ambassador Riyad Mansour, Deputy Chief of Mission Ambassador Abdelhady-Nasser, and UN Mission Public Affairs Director Nadia Ghannam.  Those calendars reflect their public activities undertaken on behalf of the Palestinian UN Mission.[3]  Defendants confirmed that they are unaware of any other calendars of the official activities of their UN Mission personnel, and further that the

---

[2] LCvR 30.4 requires that motions to compel "identify and quote each interrogatory or request in full immediately preceding the answer, response or objection thereto."  Contrary to Plaintiffs' unsupported assertion, Defendants did not make "boilerplate" objections to Plaintiffs' written discovery requests, but instead provided detailed General Objections to the requests, including citations to relevant legal authority, and then as to each request, Defendants made specific objections.  *See* Dkt. 315-5.

[3] *See* Klieman-JD00541-54 (Ambassadors Mansour and Abdelhady-Nasser's calendars); Exhibit 4 to the deposition testimony of Ms. Ghannam (Shatsky-JD02026-65).  In addition, Defendants produced (on August 2, 2021) privilege logs for the non-public activities of the two Ambassadors.

UN Mission personnel are Defendants' only personnel based in the United States.  *See* Dkt. 315-21 at 4.

Category 6 (Request for Admission Nos. 21-22 of Plaintiffs' First Set of Requests for Admission Regarding Jurisdictional Discovery ("RFA") [Dkt. 315-4]) [Pls. Br. at 7], which also duplicates a *Shatsky* discovery request, seeks "activities and/or labor performed by Defendants' U.S.-based employees."   Defendants have already produced a chart in response to *Klieman* Interrogatory 7 [Redacted]

[Redacted]

In their Category 5 [Pls. Br. at 7](RFP No. 33), Plaintiffs seek media communications made on or after January 4, 2020 that are not otherwise in the public domain. [Redacted]

[Redacted]

Category 1 (RFP Nos. 20, 39-40; RFA Nos. 23, 48; Interrogatory Nos. 9-10 of Plaintiffs' First Set of Interrogatories Regarding Jurisdictional Discovery ("ROG") [Dkt. 315-3]) seeks "financial records," including Defendants' "expenditures."  Pls. Br. at 6. [Redacted]

[Redacted]

Redacted

**Certain requests relate to activities that are expressly exempted from PSJVTA jurisdiction.**  Plaintiffs acknowledge, as they must, that the PSJVTA contains jurisdictional exemptions for certain activities and locations.  Pls. Br. at 11-12; *see* 18 U.S.C. § 2334(e)(3). Plaintiffs nonetheless expressly, and improperly, seek discovery concerning Defendants' activities that cannot support jurisdiction under these PSJVTA exemptions, including documents related to: (i) any office used, or activity conducted, in the United States "exclusively for the purpose of conducting official business of the United Nations"; (ii) any "activity undertaken exclusively for the purpose of meetings with officials of the United States or other foreign governments"; and (iii) any "personal or official activities" conducted "ancillary" to exempt activities.  18 U.S.C. § 2334(e)(3)(A)-(F); *see* Pls. Br. at 7 (Category 6's proposed modification of RFA Nos. 21-22 and 46 would require "Defendants provide a list of all specific activities performed by Defendants' U.S.-based employees that Defendants maintain are exempted from PSJVTA jurisdiction"). Plaintiffs also seek information that temporally falls outside of the PSJVTA.  For example, Plaintiffs' Category 4 [Pls. Br. at 7] and RFP No. 19 inexplicably seek documents going back to May 17, 2018—well before the January 4, 2020, start date for the PSJVTA's U.S. Activity Predicate.

Because the locations and activities cannot support PSJVTA jurisdiction, they cannot materially alter the Court's jurisdictional analysis, they are not proper subjects for jurisdictional discovery, but instead are an "unwarranted fishing expedition."  *Romarm*, 756 F.3d at 786.  *See also Lewis,* 2021 U.S. Dist. LEXIS 182747, at *14 (where plaintiffs' existing allegations do not support personal jurisdiction and where plaintiff has failed to "identify[] specific ways to

supplement his allegations . . . any discovery on this matter would be outside the scope of these already-existing allegations—essentially, a fishing expedition”).

**Certain requests seek information that Defendants already have confirmed does not exist.**  For example, Plaintiffs continue to press RFP 34 and 45-49, as amended in their Category 2 [Pls. Br. at 7] even though Defendants confirmed during the meet-and-confer process that they were not aware of any official-activity calendars for Palestinian UN Mission personnel beyond those already produced.  *See* Dkt. 351-21 at 4.

**Certain requests seek information about publicly reported activities that are equally accessible to Plaintiffs.**  For example, President Abbas’ visit to the United Nations, discussed under Plaintiffs’ Category 3 [Pls. Br. at 7], is a matter of public knowledge with substantial print and video media coverage of his movements and statements.  Jurisdictional discovery on matters equally accessible to Plaintiffs is inappropriate.  *Cook v. RHP Prop. NH, LLC*, Case No. 13-2165, 2014 U.S. Dist. LEXIS 603, at *6-7 (D. Md. Jan. 2, 2014) (“Further, as Defendants point out any information that Cook would seek in discovery is publicly available or would be duplicative of the affidavit.  Jurisdictional discovery would be unnecessary and wasteful.”)

Certain requests are entirely cumulative because they seek information about activities that Plaintiffs describe as “similar” or additional to those about which they already have received abundant discovery.  [Redacted] Notably, Plaintiffs do not argue that this discovery is not sufficient to litigate the PSJVTA issues; they simply assert that they want “more instances” of these types of activities.  *Id.* at 15.

Certain requests replicate discovery requests that the *Shatsky* plaintiffs abandoned following that Court's admonition that the original requests were grossly overbroad for purposes of jurisdictional discovery.  With their Categories 1-7 [Pls. Br. at 6-8], Plaintiffs essentially seek *every* expenditure and activity on or after January 4, 2020, undertaken by Palestine's UN Mission or its employees, including expenditures and activities that fall within the PSJVTA's enumerated exceptions.  *See, e.g.,* RFP No. 20 (seeking "[a]ll records of any transfer or money made on or after January 4, 2020 ... to any person in the United States"); RFP No. 40 (seeking "[a]ll documents concerning any expenses paid or reimbursed ... in connection with activities by a Defendant or on behalf of a Defendant or for the benefit of any Defendant in the United States"); RFA No. 47, as modified in Plaintiffs' Category 7 [Pls. Br. at 8] ("list every instance in which an employee of the Defendants participated in an event either from a location in the U.S. or that was marketed to a U.S. audience ..., including any such event disclosed in the jurisdictional discovery depositions conducted in the *Shatsky* case").

These discovery requests largely mirror discovery requests originally propounded by the *Shatsky* plaintiffs[4], which the *Shatsky* court characterized as "grossly overbroad and abusive" and "direct[ed] the plaintiffs to go back and pare back your discovery and limit it to jurisdictional discovery."  Hearing Tr., *Shatsky v. PLO*, No. 18-cv-12355 (MKV) (DCF), Dkt. 81, at 12:02; 13:13-15 (S.D.N.Y. Apr. 29, 2021) ("*Shatsky* Hearing").  Specifically, the *Shatsky* court found that a request seeking "every document generated by a mission or every document generated by activities in the United States is overly broad, grossly over broad."  *Id.* at 28:10-12.  And, when

---

[4] *Compare* RFP Nos. 19-20, 33-34, 39-42, 45-49; ROG Nos. 9-11; RFA Nos. 21-23, 46-48 (Dkt. 315-2, 315-3, 315-4) *with Shatsky* RFP Nos. 10-11, 26-27, 28(b); ROG Nos. 6(c); and RFA Nos. 45, 65 (*Shatsky* Dkt. 65-1, 65-2, 65-3, 71-1, 71-2).

the *Shatsky* plaintiffs went back and revised their discovery consistent with that court's order, they abandoned or significantly narrowed the requests.

Plaintiffs' seven categories of additional discovery do not meaningfully narrow the requests to which Defendants objected as overbroad.  For example, in Plaintiffs' Category 1 [Pls. Br. at 6], Plaintiffs purport to withdraw RFP Nos. 21-24 (which sought "[a]ll records of any payment," "[a]ll records of all wire transfers," "[a]ll invoices or bills for any phone or electronic device," and "[a]ll invoices or bills for any internet service or cable service"); yet, they continue to pursue RFP No. 20, which duplicates these requests and broadly seeks "all records of any transfer of money ...  [T]his includes payroll records, bank records, reimbursement records, gift records, invoices, checks and electronic payment records, accounting records, receipts, correspondence concerning gifts, and any documents concerning any payment of any kind."  Dkt. 315-2.  As noted above, Defendants already have provided abundant discovery concerning their U.S. activities; and, as noted below, these requests also invade the functional immunity of Palestine's UN Mission.

**Certain requests seek information that is outside the scope of the PSJVTA predicates.**
For example, Plaintiffs' Category 4 [Pls. Br. at 7] and RFP No. 19 request any purported instructions given by Defendants since May 17, 2018 to limit or alter activities within the United States.  First, this Category temporally goes back well before the January 4, 2020, start date for the PSJVTA's U.S. Activity Predicate.  Second, Plaintiffs have made no non-speculative showing that any such instructions exist, or that if they did they would materially alter the Court's jurisdictional analysis based on the existing record.

III.   **Plaintiffs Seek Information That Is Inviolate Under the Functional Immunity Accorded to the Palestine UN Mission.**

While additional "U.S. activity" discovery is impermissibly cumulative for reasons discussed above, nearly all of Plaintiffs' additional discovery requests relate to activities of Palestine's UN Mission, or to activities of Palestinian President Abbas as a UN invitee, that are protected from discovery under UN functional immunity.  Notwithstanding that immunity and without waiving it, Defendants produced substantial jurisdictional discovery about the activities of Palestine's UN Mission, including depositions of three senior Mission diplomats, as well the calendars of the two most senior diplomats.  Redacted

Because Plaintiffs' requests for additional discovery are cumulative and do not materially affect the jurisdictional analysis, the Court does not need to reach functional immunity to hold that Defendants have provided sufficient jurisdictional discovery about the UN Mission and UN invitees.  If the Court chooses to reach that issue, however, then functional immunity provides an additional basis for denying additional discovery.  That is because functional immunity protects "from legal process" the "words spoken or written or any act performed in the exercise of [Palestine's UN] observer functions."  U.N. Juridical Yearbook, Chapter VI, § A(13) (2000).

1.     **Palestine's UN Mission Has Functional Immunity Under the UN Charter and the Headquarters Agreement.**

This Court should reject Plaintiffs' baseless argument that the functional immunity that has protected Palestine's UN Mission **for decades**, does not exist.  Palestine is an "invited entity" to the United Nations.  Accordingly, the United Nations Office of Legal Affairs has determined that

- 14 -

Palestine's UN Mission and UN diplomats enjoy functional immunity as they perform their duties. The United States and the federal courts defer to the United Nations on this important issue.

As explained by the UN Office of Legal Affairs, Palestine's UN Mission and diplomats benefit from "widely accepted" "functional privileges and immunities [that] flow by necessary intendment from the Charter of the United Nations and the Headquarters Agreement, without which the invited entity would not be in a position to carry out its functions."  U.N. Juridical Yearbook, Chapter VI, § A(13) (2000).  Those "[f]unctional privileges and immunities certainly extend to immunity from legal process in respect of words spoken and written or any act performed in the exercise of the observer functions."  *Id*.  As a result, "[a]ny measure which might impede the maintenance of [Palestine's UN Mission] facilities" or "its ability to discharge its official functions" would "contravene" the UN Charter, the UN Headquarters Agreement, and "the relevant General Assembly resolutions."  *Id.*

Federal courts agree that Palestine, through its UN Mission, "is an invitee of the United Nations under the Headquarters Agreement and its status is protected by that agreement."  *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988).  Courts of the United States are "obligat[ed] … to refrain from impairing the function of the PLO Observer Mission to the United States."  *Id*.  The United States endorsed the analysis in *United States v. PLO* and warned courts of the "political and legal quagmire" that could result from infringing upon the Palestinian UN Mission's protected status.  U.S. Statement of Interest, *Ungar v. Palestinian Auth.*, No. 18-302, at 25-27 (S.D.N.Y. Sept. 12, 2005).  *See also Shatsky* Hearing at 12:14-21 (authorizing Defendants to object to "questions that … invade functional immunity" during depositions of Mission personnel).

Functional immunities are not limited to Palestine's official business within the UN's New York Headquarters; they extend to all "words spoken and written or any act performed in the exercise of the observer functions" by Palestine's UN Mission.[5] UN Juridical Yearbook, Chapter VI, § A(13) (2000). *See Van Aggelen v. UN*, 311 F. App'x 407, 409 (2d Cir. 2009) (applying functional immunity under the UN Charter and the Convention on the Privileges and Immunities of the United Nations ("CPIUN") to all "acts performed" within UN employee's "official capacities"); *Brzak v. UN*, 597 F.3d 107, 113 (2d Cir. 2010) (applying CPIUN functional immunity to "acts that the defendants performed in the exercise of their United Nations functions.").

For example, *In re Terrorist Attacks*, No. 03-mdl-1570, 2020 U.S. Dist. LEXIS 166886, *260, 269 (S.D.N.Y. Aug. 27, 2020), held that a former diplomat could refuse questions about his "decision-making performed in the exercise of official functions" under residual immunity.  Both functional and residual immunity ask whether the actions implicate an official function and were "performed in the exercise of the [official] functions in question."  *Id.* at *262 (cleaned up); *Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 248 (D.D.C. 2011) (applying immunity to information "relating to acts taken in his official capacity as a government official" or "obtained in his official capacity as a government official").  *See also* Statement of Sen. Leahy, Cong. Rec.—Sen., S627, 116th Cong. (Jan. 28, 2020) (clarifying, after "[h]aving been part of the negotiation that resulted in" the PSJVTA's ancillary activities exemption, that "engag[ing] in public advocacy and civil society activities" qualifies as ancillary); *Waldman v. PLO,* 925 F.3d 570, 574-75 (2d Cir.

---

[5] This functional immunity analysis is not a Palestine-only doctrine; it applies to all observer missions:   "It has been the consistent view of the Organization that a permanent observer delegation, as an invitee to meetings of United Nations organs, is entitled to enjoy in that capacity certain functional immunities necessary for the performance of official functions vis-à-vis those organs."  Permanent Observer Mission of the African Union, 2014 U.N. Jur. Y.B. 328; Permanent Observer Mission of the Org. of the Islamic Conf., 1999 U.N. Jur. Y.B. 409.

2019) ("The Observer Mission is not considered to be within the jurisdiction of the United States ....

Nothing in *Klinghoffer* suggests that the PLO's engaging in activities unrelated to its observer status

transforms the PLO's Observer Mission into an office or other facility for the PLO 'within the

jurisdiction of the United States.'") (citation omitted).  The activities of a mission to the United

Nations—which negotiates and interacts with representatives of the entire world—and the

underlying rationale and strategy for those activities, are among the most sensitive of all

governmental information.  *See, e.g.*, *In re Terrorist Attacks*, Case No. 03-MDL-01570, 2019 U.S.

Dist. LEXIS 121935, at *241 (S.D.N.Y. July 22, 2019) ("[C]onsulates and diplomatic missions

have a strong interest in maintaining the confidentiality of their records.").

President Abbas' 2020 trip to speak with the UN Security Council, as an invitee of the

United Nations, is equally protected as an "exercise" of Palestine's "observer functions."

Plaintiffs' requests for his flight records, hotel information, and vehicle records, and other travel-

related records invade functional immunity.  Further, information about that trip is a matter of

public knowledge with substantial print and video media coverage of his movements and

statements, and Plaintiffs have not demonstrated that additional non-public information would

materially affect the jurisdictional analysis.

### 2.    Plaintiffs' Cases Discuss Immunity from Suit, not Immunity for the Private Meetings and Internal Workings of the UN Mission.

Plaintiffs profoundly misunderstand functional immunity.  As discussed above, functional

immunity prevents courts from interfering with the official functions of UN invitees, which

includes, but is not limited to, their private meetings and internal documents and communications.

UN functional immunity is different from other types of immunities that might shield defendants

from lawsuits unrelated to the work of the United Nations.  Every case cited by Plaintiffs deals

with those other types of immunities—which Defendants have not relied on in connection with jurisdictional discovery in this suit.

Plaintiffs rely on *Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153, 158-59 (D.D.C. 2006), to claim that this Court has rejected functional immunity.  But that decision discusses <u>sovereign</u> immunity from suit, which only applies to foreign states recognized by the United States, not to UN functional immunity for UN observer-function activities.  *Id*.  Most of the other cases Plaintiffs cite also address sovereign immunity and not the functional immunity of the UN Mission.[6]

Plaintiffs also cite to the Second Circuit's decision in *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*, 937 F.2d 44, 48 (2d Cir. 1991), which rejected an argument that the Palestine Liberation Organization was "immune from suit" under the Headquarters Agreement.  In this case, Defendants <u>do not claim immunity from suit</u>, but rather that UN functional immunity applies to the work of the UN Mission—the "words spoken and written" and the "act[s] performed" by Mission personnel.  In any case, many of Plaintiffs' arguments regarding the PSJVTA are irrelevant under *Klinghoffer*'s holding that the UN Mission is not in the United States—the touchstone for the PSJVTA's U.S. Activity Predicate:

> [T]he Headquarters Agreement effectively removes control over the UN Headquarters and related areas from the jurisdiction of the United States.  In other words, the PLO's participation in the UN is dependent on the legal fiction that the UN Headquarters is not really United States territory at all, but is rather neutral ground over which the United States has ceded control.

---

[6] *See Gilmore v. Palestinian Interim Self-Government Auth.*, 422 F. Supp. 2d 96, 101 (D.D.C. 2006) (rejecting assertion of "sovereign immunity"); *Shafi v. Palestinian Auth.*, 686 F. Supp. 2d 23, 24 (D.D.C. 2010) (dismissing Alien Tort Statute claim for lack of a sovereign defendant); *Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000, 1003 (D.C. Cir. 1951) (deferring to Executive Branch decisions on recognition of foreign states).  Plaintiffs' citation to *Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 91 (D.R.I. 2001), is puzzling since that case follows the *Klinghoffer* district court on service of process, which is not at issue here.

*Klinghoffer*, 937 F.2d at 51.  In an amicus brief, the United States agreed that the "Observer Mission in New York" did not "fall within the terms of the" PSJVTA's predecessor (ATCA), notwithstanding that ATCA applied to all offices "in the jurisdiction of the United States."  U.S. Brief, *Klieman v. Palestinian Auth.*, No. 15-7034, at 6 (D.C. Cir. Feb. 15, 2019).

Importantly, the status of the PLO's UN Mission has also evolved significantly since *Klinghoffer*.  The UN enhanced the PLO's observer status in 1998, granting it the right to participate in General Assembly debate, and in 2012, the UN granted Palestine "Non-member Observer State" status,[7] which allowed Palestine to take a far more active part in the UN, including recently chairing the Group of 77.[8]

Plaintiffs also argue that this Court cannot recognize any rights of Non-Member Observers because they are not mentioned in the UN Charter.  But they cite to a case about sovereign and diplomatic immunity, *Estates of Ungar v. Palestinian Auth.*, 315 F. Supp. 2d 164, 185 (D.R.I. 2004), neither of which is at issue here.  When it comes to functional immunity, Plaintiffs are wrong because, as shown above, "functional privileges and immunities flow by necessary intendment from the Charter of the United Nations and the Headquarters Agreement."  U.N. Juridical Yearbook, Chapter VI, § A(13) (2000).

The leading case on the application of the treaty-based rights of Palestine's UN Mission is *United States v. PLO*, which has been accepted as binding law by the United States.  That case

---

[7] UN G.A. Res 67/19, State of Palestine in the United Nations, A/RES/67/19 (Nov. 29, 2012), available at: https://undocs.org/en/A/RES/67/19; UN G.A. Res. 52/250, Participation of Palestine in the work of the United Nations, A/52/250 (July 13, 1998), available at: https://undocs.org/en/A/RES/52/250.

[8] UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in General Assembly Work, Sessions When It Assumes 2019 Group of 77 Chairmanship* (Oct. 16, 2018), available at: https://www.un.org/press/en/2018/ga12078.doc.htm.

explains how "the United Nations has, from its incipiency, welcomed various non-member observers to participate in its proceedings," including the Palestinian Mission, which "is present at the United Nations as its invitee."  695 F. Supp. at 1458-59.  When the UN's right to invite Palestinians was challenged, the "court upheld the presence of a PLO representative in New York." *Id*.  Since that time, Palestine "has maintained its Mission to the United Nations without trammel, largely because of the Headquarters Agreement" and the U.S. "has, for fourteen years, acted in a manner consistent with a recognition of the PLO's rights in the Headquarters Agreement."  *Id*. at 1459, 1466.  Those rights come "not only from the language of the Headquarters Agreement but also from forty years of practice under it."  *Id*. at 1465.

The court further explained that the UN's ability to invite permanent observers "could not be effectively exercised without the use of offices" and this "limits the application of United States law not only with respect to the entry of aliens, but also their residence."  *Id*. at 1465-66.  "The Headquarters Agreement thus contemplates a continuity limited to official United Nations functions and is entirely consistent with the maintenance of missions to the United Nations. The exemptions of Section 13 are not limited to members, but extend to invitees as well."  *Id*.  It concluded that "the language, application and interpretation of the Headquarters Agreement lead us to the conclusion that it requires the United States to refrain from interference with the PLO Observer Mission in the discharge of its functions at the United Nations."  *Id*. at 1468.

Finally, Plaintiffs cite to 22 U.S.C. § 4309a, a statute that undermines their own claims.  It explicitly acknowledges the United States' "obligation" under the Headquarters Agreement to allow any individuals "authorized by the United Nations to conduct official business" to obtain "facilities in order to conduct such activities within or in proximity to the United Nations Headquarters District."  § 4309a(a)(1) (emphasis added).  The statute reserves the ability for

"reasonable regulation including regulation of the *location* and *size* of such facilities."   *Id.* (emphasis added).  This reservation applies to all UN missions, is of extremely limited scope, and has nothing to do with immunity of the papers and private meetings of UN missions.

Plaintiffs also assert that an employee of Iran's UN Mission was indicted for public advocacy, implying that this has something to do with UN functional immunity.  But that indictment itself says nothing about the defendant being a member of Iran's UN mission, and nothing about immunity, only that Iran funneled the improper payments through the Iranian UN Mission.  *See* Indictment [Dkt.6], Affidavit [Dkt. 16], Motion [Dkt. 44], *United States v. Afrasiabi*, No. 21-cr-0046 (E.D.N.Y.).  The defendant admitted he was not an employee or "diplomat" of the UN mission (though that status might have granted immunity) averring he was only an "outside consultant" for Iran.  *Id.*  Nor does the indictment ever refer to Section 4309a (though Plaintiffs imply this), but instead relates only to the Foreign Agents Registration Act (FARA).  And FARA does not apply to UN missions, nor has the government ever contended otherwise.  The United States is well aware of the activities of Palestine's UN Mission, but does not claim that the Mission has exceeded its UN mandate, has failed to register under FARA, or that it has broken any laws.  U.S. Br. (Dkt. 53), No. 20-3374, *Fuld v. PLO* (S.D.N.Y.).

### 3.    The Activities of the UN Mission Are Squarely Within the Mission's Mandate Under the United Nations.

The "observer" and "official" activities of Palestine's UN Mission include public outreach and advocacy of the type cited by Plaintiffs.  Illustratively, Palestine through the Mission participates in the UN Committee on the Exercise of the Inalienable Rights of the Palestinian People ("CEIRPP").[9]  The official business of the CEIRPP is to work "on diplomatic efforts and

---

[9] Note that the UN recognized Palestine as a non-member State in 2012.  U.N. G.A. Res., *State of Palestine in the UN*, A/RES/67/19 (Nov. 29, 2012), available at https://undocs.org/en/A/RES/67/19.  Accordingly, the UN Protocol and Liaison Service has stated

initiatives to support the achievement without delay of an end to the Israeli occupation that began

in 1967 and of the two-State solution" and to work with governments, "permanent missions in

New York and around the world," and "international conferences and events involving Member

States, civil society organizations and regional organizations," to "continue to mobilize the

international community to stay steadfast in its support for the inalienable rights of the Palestinian

people."  CEIRPP Programme of Work, UN Doc. A/AC.183/2020/1 (Feb. 7, 2020), available at

https://www.un.org/unispal/document/palestinian-rights-committee-programme-of-work-for-

2020-a-ac-183-2020-1/.  Outreach to civil society, regional organizations, and the international

community to support the rights of the Palestinian people is an important UN function, and one

which the UN expects the Palestine's UN Mission to participate.



---

"In accordance with paragraph 2 of resolution 67/19, Palestine has been treated as a non-member observer *State* by the Secretariat since the adoption of the resolution.  Accordingly, the publication on permanent missions prepared by the Protocol and Liaison Service entitled 'Permanent Missions to the United Nations' (the Blue Book) now lists Palestine under category II as a Non-member State having received a standing invitation to participate as observer in the sessions and the work of the General Assembly and maintaining permanent observer mission at Headquarters."  U.N. Secretary-General, *Status of Palestine in the United Nations*, U.N. Doc. A/67/738, ¶ 2 (Mar. 8, 2013), available at https://www.un.org/unispal/document/auto-insert-  182149/.

A.      <span style="background:black; color:white;">Redacted</span>

Ex. 1 at 92.  The Mission's public advocacy for the Palestinian people is not "propaganda," but instead goes to the heart of one of the longest-standing UN issues, the Question of Palestine.  U.N. G.A. Res. 3236, A/RES/3236 (XXIX) (Nov. 22, 1974).

Other UN organs, missions, and observers engage in exactly the same kinds of official activities as Palestine's UN Mission, including communications through social media.  American news media regularly interview UN Ambassadors on issues important to the United Nations.  CNN recently interviewed the UN Ambassador from Morocco; it also covered a New York press conference given by China's UN Ambassador.[10]  NBC interviewed Iran's UN Ambassador, and Reuters interviewed Ethiopia's UN representative.[11]  The Saudi Arabian UN Ambassador spoke with an English-language Chinese news service about the Israeli-Palestinian issue earlier this year.[12]  UN missions of all kinds are encouraged to frequently talk with civil society organizations and university and student groups.[13]

This Court should find that functional immunity prevents Plaintiffs from obtaining discovery about the private meetings and internal documents of the UN Mission and reject Plaintiffs' extremely limited ideas about what constitutes an official UN activity.

---

[10] *See* Declaration of Amy Brown Doolittle (D.D.C. Oct. 14, 2021) ("Doolittle Decl."), ¶¶ 3, 5.

[11] *See* Doolittle Decl., ¶¶ 4, 7.

[12] *See* Doolittle Decl., ¶ 9, Ex. 7.  *See also id.*, ¶¶ 3-11 (examples of representatives from UN missions discussing UN business, including the Palestinian question, with news media from the United States and other countries).

[13] *See* Doolittle Decl., ¶¶ 18-21 (examples of representatives from UN missions conducting official UN business by engaging in discussions, lectures, and other events with US educational institutions on a variety of topics important to the United Nations).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied in its entirety.


October 14, 2021                                      Respectfully submitted,



                                                     _/s/ Gassan A. Baloul_
                                                     Gassan A. Baloul (DC Bar 1034245)
                                                     gassan.baloul@squirepb.com
                                                     Mitchell R. Berger (DC Bar 385467)
                                                     mitchell.berger@squirepb.com
                                                     2550 M Street, N.W.
                                                     Washington, D.C. 20037
                                                     Telephone: (202) 457-6000
                                                     Facsimile:  (202) 457-6315

                                                     _Attorneys for Defendants_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2021, a true and correct copy of the foregoing was served via electronic mail on the following counsel:

HEIDEMAN NUDELMAN & KALIK P.C.
Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
5335 Wisconsin Ave, Suite 440
Washington, DC 20015
Telephone: 202-463-1818
Telefax: 202-463-2999
rdheideman@hlnklaw.com
njnudelman@hnklaw.com
rkalik@hnklaw.com

PERLES LAW FIRM, P.C.
Steven R. Perles
Edward B. MacAllister
1050 Connecticut Ave., N.W.
Suite 500
Washington, D.C. 20036
Telephone: (202) 955-9055
emacallister@perleslaw.com
sperles@perleslaw.com

/s/ *Gassan A. Baloul*
Gassan A. Baloul