**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Estate of Esther Klieman, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 04-1173 (PLF) |
| The Palestinian Authority, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
FOR AN ORDER TO COMPEL JURISDICTIONAL DISCOVERY FROM
THE DEFENDANTS**

i

# **TABLE OF CONTENTS**

**I.     INTRODUCTION**..................................................................................................1

**II.    ARGUMENT**........................................................................................................3

      **A.     Defendants' Discovery Responses Remain Deficient**........................................3

      **B.     Defendants' Cumulative Objections Skirt Their Requirements Under the Rules and Relies on Inapposite Precedent** ................................................................................................6

      **C.     Defendants' Claimed "Functional Immunity" Has No Basis in US Law.**................................................................................8

**CONCLUSION** ........................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alkanani v. Aegis Def. Servs., LLC*,
  286 F.R.D. 67 (D.D.C. 2012)......................................................................................... 8
*Brown v. D.C.*,
  No. CV 10-2250 (PLF), 2021 WL 1439741 (D.D.C. Apr. 16, 2021)............................ 7
*Brzak v. United Nations*,
  597 F.3d 107 (2d Cir. 2010)........................................................................................... 9
*Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc.*,
  287 F.R.D. 130 (E.D.N.Y. 2012) ............................................................................. 1, 8
*Cook v. RHP Prop. NH, LLC*,
  2014 U.S. Dist. LEXIS 603, at *6-7 (D. Md. Jan. 2, 2014).......................................... 8
*DL v. D.C.*,
  251 F.R.D. 38 (D.D.C. 2008)..................................................................................... 4, 7
*Erwin-Simpson v. AirAsia Berhad*,
  985 F.3d 883 (D.C. Cir. 2021) ...................................................................................... 8
*Est. of Klieman v. Palestinian Auth.*,
  424 F. Supp. 2d 153 (D.D.C. 2006) .............................................................................. 9
*Farouki v. Petra Int'l Banking, Corp.*,
  683 F. Supp. 2d 23 (D.D.C. 2010) ................................................................................ 8
*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
  529 F.3d 1087 (D.C. Cir. 2008) .................................................................................... 8
*Fontaine v. Permanent Mission of Chile to United Nations*,
  No. 17 CIV. 10086 (AT), 2020 WL 5424156 (S.D.N.Y. Aug. 18, 2020) .................... 9
*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
  103 F.3d 1007 (D.C. Cir. 1997) .................................................................................... 8
*Giraldo v. Drummond Co.*,
  808 F. Supp. 2d 247 (D.D.C. 2011) .............................................................................. 9
*Goodman Holdings v. Rafidain Bank*,
  26 F.3d 1143 (D.C. Cir. 1994) ...................................................................................... 8
*GTE New Media Servs. Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) .................................................................................... 7
*Gunn v. Wild*,
  2017 U.S. Dist. LEXIS 234282, at *25 (D. Nev. June 15, 2017) ................................. 7
*Hoellen v. Annunzio*,
  468 F.2d 522 (7th Cir. 1972) ....................................................................................... 12
*Le v. Diligence, Inc.*,
  312 F.R.D. 245 (D. Mass. 2015).................................................................................... 6
*Lewis v. Mutond*,
  2021 U.S. Dist. LEXIS 182747, at *12-13 (D.D.C. Sept. 24, 2021)............................. 7

*Mwani v. bin Laden*,
    417 F.3d 1 (D.C. Cir. 2005) .................................................................................................. 8
*NBC-USA Hous., Inc., Twenty-Six v. Donovan*,
    774 F. Supp. 2d 277 (D.D.C. 2011) ................................................................................... 7, 8
*Rising v. Brown*,
    313 F. Supp. 824 (C.D. Cal. 1970) ..................................................................................... 12
*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014) ............................................................................................ 8
*Van Aggelen v. United Nations*,
    311 F. App'x 407 (2d Cir. 2009) ........................................................................................... 9
*Ward v. Ford Motor Co.*,
    93 F.R.D. 579 (D. Colo. 1982) ......................................................................................... 1, 8
*Williams v. Romarm, SA*,
    756 F.3d 777 (D.C. Cir. 2014) .............................................................................................. 8

## **Statutes**

18 U.S.C. § 2334(e)(3) ............................................................................................... 2, 3, 5, 7, 11
22 U.S.C. § 5202 ................................................................................................................. 10, 11
PL 115-253 ............................................................................................................................... 10

## **Rules**

Fed. R. Civ. P. 26(b) .................................................................................................................. 1

Fed. R. Civ. P. 37(a) .................................................................................................................. 1

## **Other Authorities**

Restatement (Third) of Foreign Relations Law § 469 (1987) ............................................ 9

COME NOW the Plaintiffs, by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 26(b) and 37(a) respectfully submit this reply brief in response to the Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel (D.E. 321) ("Opp.") and in support of Plaintiffs' Motion for an Order to Compel Jurisdictional Discovery from the Defendants. (D.E. 315) ("Motion to Compel")

## I.      INTRODUCTION

The Defendants' Opposition is riddled with the same circular logic, meritless objections, and mischaracterizations of law and fact that the Defendants have advanced in their persistent refusals to respond to many of Plaintiffs' timely and proper discovery requests. The Defendants acknowledge that the language of The Promoting Security and Justice for Victims of Terrorism Act of 2019 ("PSJVTA") will decide this matter but attempt to sway the Court with their unilateral determinations. Plaintiffs are entitled to more jurisdictional discovery than what Defendants decide is "sufficient to litigate" the issues. Opp. at 5. By the same token, nor does what the *Shatsky* plaintiffs decide is "sufficient to litigate" determine Defendants' obligations to Plaintiffs in this case.[1] Opp. at 5.

Throughout their brief in support of the Motion to Compel, Plaintiffs have emphasized the word "exclusively", which circumscribes the scope of the discovery exclusion upon which Defendants found their opposition and is the touchstone of this

---

[1] Defendants correctly cite two cases that illustrate they are *required at minimum* to produce to Plaintiffs the same information that have been produced to plaintiffs in a separate but similar action. Opp. at 3 (*citing Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982); *Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012)). However, the Defendants' implication that such a production sets the bar for sufficiency in this case is not supported by these or any other cases cited in the Opposition.

1

controversy. Memorandum in Support of the Motion to Compel ("Support Brief") (D.E. 315-1) at 11, 12, 17. All of the discovery requests at issue[2] seek information or documents to ascertain whether the Defendants' office and activities are *exclusively* used or undertaken for official United Nations business, as required by the PSJVTA. *See* 18 U.S.C. § 2334(e)(3)(A), (B), (D).

Tellingly, neither in their Opposition nor throughout the discovery process have the Defendants ever asserted that (a) their U.S. office and activities are *exclusively* used or undertaken for official UN business, (b) they have produced all information and documents that would allow the Plaintiffs or this Court to assess whether their U.S. office and activities are *exclusively* used or undertaken for official UN business, or (c) that they are not required to produce all information and documents that would allow the Plaintiffs or this Court to assess whether their U.S. office and activities are *exclusively* used or undertaken for official UN business.

Instead, they object on the grounds that they have given Plaintiffs "enough" discovery, that what is sought is not discoverable, and that they enjoy a "functional immunity." The cases cited by the Defendants, Opp. at 5-6, are either decisions on motions to permit jurisdiction discovery—which has already been granted in this case— or decisions which granted a motion to compel, to the extent that they sought relevant information.  The Opposition makes clear that the Defendants' discovery responses are deficient, that their objections are without merit, and that Plaintiffs' Motion to Compel must be granted.

---

[2] Defendants have now responded to the Supplemental Discovery Requests raising many of the same objections in their responses to the supplemental requests. Should they prove deficient, Plaintiffs will file a motion to compel in due course.

## II.     ARGUMENT

### A.     Defendants' Discovery Responses Remain Deficient

The Defendants' Opposition begins by wildly overstating the number of discovery requests at issue. Opp. at 3 ("Plaintiffs have overburdened Defendants with 72 document requests, 50 requests for admission, and 19 interrogatories."). This is misleading. Plaintiffs have reduced the scope of their Initial Discovery Requests, to 17 document requests, 6 requests for admission, and 3 interrogatories, which can be summarized in the following seven categories of requests below.

The Defendants' responses regarding these outstanding discovery requests inadvertently illustrates the deficiencies in their productions as follows:

1.     <u>Requests pertaining to Defendants' relevant financial records</u> (RQPDs Nos. 20-24, 39-40; ROGs Nos. 9-10; and RFAs Nos. 23, and 48). Defendants explain that they have reimbursed certain expenses incurred by their UN Non-Member Observer Representative Dr. Riyad Mansour. Opp. at 9-10. Defendants do not provide any information about any other expenditure that would help Plaintiffs and this Court assess whether their U.S. office and activities are exclusively used or undertaken for official UN business, and object to doing so based on meritless objections. *Id.* at 13. At the very least, Defendants should be required initially to furnish all monthly statements dating back to January 4, 2020 from any bank accounts they have used in the U.S., so that Plaintiffs can review the nature of their transactions, which will determine whether the scope of activity falls outside of the "[e]xception for certain activities and locations" subsection of the PSJVTA. *See* 18 U.S.C. § 2334(e)(3).  For example, financial records will reveal any

expenditures made by the Defendants towards activities to influence US policy and public opinion, which are not UN official business. Support Brief at 19-20.

2. <u>Requests for calendars of Defendants' U.S.-based employees</u> (RQPDs Nos. 34, and 45-49). Defendants continue to assert that they are "not aware of any official-activity calendars for Palestinian UN Mission personnel beyond those already produced." Opp. at 8, 11. Defendants should be required to produce any calendars of *unofficial* activities of Palestinian UN Mission personnel or confirm that none exist, which they have not done.

3. <u>Requests related to the U.S. activities and travel of Palestinian Authority President Mahmoud Abbas</u> (RQPDs Nos. 41-42; and ROG No. 11). Plaintiffs seek to discover President Abbas' activities during any disclosed or undisclosed trips to the United States since January 4, 2020, but Defendants have repeatedly ducked these questions by pointing out that information about parts of one trip are in the public record. Opp. at 11. While Plaintiffs are entitled to discover information about everything that President Abbas did during that one trip, in addition to the publicly disclosed information, they are also entitled to discovery whether President Abbas took any other trips to the U.S. since January 4, 2020 and, if so, everything he did during those trips.

4. <u>Request regarding any instructions given on or after May 17, 2018 to any natural or legal person to limit U.S. activities</u> (RQPD No. 19). Defendants suggest that the scope of Plaintiffs' requests may not precede January 4, 2020. Opp. at 10, 13. The PSJVTA does not confine discovery to the date of its passage, and information prior to its passage may be relevant, particularly requests that seek to ascertain institutional policies relevant to legal issues that are central to the case. *See e.g.*, *DL v. D.C.*, 251 F.R.D. 38, 44 (D.D.C. 2008). Moreover, it is hardly speculative for Plaintiffs seek discovery on whether

4

Defendants undertook any efforts to modify their behavior after or in anticipation of the passage of the PSJVTA, which would illuminate how the Defendants are using their UN Non-member Observer Mission in practice.

5. <u>Request regarding Defendants' communications with media outlets </u>(RQPD No. 33). Plaintiffs narrowed this request to seek only those relevant communications that *were not in the public domain*, *see* Support Brief Ex. S, but Defendants' response irrelevantly points out that Plaintiffs already have those communications which are *in the public domain*. Opp. at 9. Plaintiffs are entitled to uncover relevant evidence about Defendants' nonpublic communications with U.S. media, as these types of communications typically stem from different motives—like influencing U.S. policy. *See* Support Brief at 19-20.

6. <u>Requests regarding activities and/or labor performed by Defendants' U.S.-based employees</u> (specifically RFAs Nos. 21-22, and 46). Where Plaintiffs proposed that Defendants provide a list of all specific activities performed by Defendants' U.S.-based employees, including those that Defendants maintain are exempted from PSJVTA jurisdiction, Defendants refer to a chart produced in Response to Interrogatory 7. Opp. at 9. While this chart includes a column titled Job Description, the entries within this column are either conclusory references to "Official UN activities" or other vague descriptors such as Support/Administrative." *See* Support Brief Ex. J. Plaintiffs are entitled to more specific information in these job descriptions, which would provide guidance to the applicability of 18 U.S.C. § 2334(e)(3).

7. <u>A more complete response to RFA No. 47</u>. Deposition transcripts from the *Shatsky* matter revealed that Defendants did not initially respond fully to this request in

this case. This request sought every single public appearance since January 4, 2020 by Defendants' employees which targeted U.S. audiences, which as discussed *infra* at 12 is not official business of the United Nations. Since the filing of Plaintiffs' Motion to Compel, Defendants have provided responses to Plaintiffs' Supplemental Discovery Requests that have cited to *Shatsky* deposition transcripts. However, Defendants still have not confirmed or provided an answer that can reasonably assure Plaintiffs that they have fully responded to this request.

**B.    Defendants' Cumulative Objections Skirt Their Requirements Under the Rules and Relies on Inapposite Precedent**

The Defendants conclude their Opposition by highlighting the fundamental difference of opinion between the parties, calling for this Court to "reject Plaintiffs' extremely limited ideas about what constitutes an official UN activity." Opp. at 23. This issue also previews what we expect the Defendants will argue in a motion to dismiss after the close of discovery, as they have done in similar cases. *See e.g.*, *Shatsky v. PLO*, 1:18-cv-12355, D.E. 116 at 23-24 (S.D.N.Y. filed Aug. 20, 2021).

Defendants' refusal to produce any more information regarding their activities in the U.S.—aside from what they have determined is "sufficient"—conflicts with Plaintiffs' right to seek discovery on alternate factual theories for addressing the legal issues of the case. *See e.g.*, *Le v. Diligence, Inc.*, 312 F.R.D. 245, 248 (D. Mass. 2015) (granting motion to compel to permit plaintiff to "pursue alternate theories of his case").

Defendants characterize Plaintiffs outstanding discovery requests as "more" of what they have already received, but this is plainly not true. Opp. at 4. Specifically, the Defendants point out that Plaintiffs possess evidence of social media posts and tweets, certain meetings, and remarks at colleges and universities and media appearances which

6

were all made or conducted in the United States by the employees of Defendants' UN Non-member Observer Mission. *Id.* As laid out above, what the Plaintiffs continue to seek through discovery are financial records, calendars and activities of Defendants' UN Non-member Observer Mission employees that have *not* been produced, information about the Defendants' President's activities in the United States, Defendants' internal policies and procedures related to the passage of the laws at issue, non-public communications with U.S. media outlets, and detailed job descriptions for Defendants' UN Non-member Observer Mission employees. *See supra* at 3-6. Access to this information will finally determine whether the Defendants' U.S.-based offices and activities are used and undertaken *exclusively* for official UN business, as required by 18 U.S.C. § 2334(e)(3).

Defendants' "cumulative" objection attempts to shift their burden, which is to prove Plaintiffs' requests are burdensome, overly broad, vague, outside the scope of discovery, or otherwise fall within the limitations on discovery in Rule 26(b)(2)(C), onto Plaintiffs. *See e.g., Brown v. D.C.*, No. CV 10-2250 (PLF), 2021 WL 1439741, at *4 (D.D.C. Apr. 16, 2021). But Defendants have not met their burden, which requires affidavits or evidence which reveals the nature of the burden, *Id.* including "specific estimates of staff hours needed to comply." *DL*, 251 F.R.D. at 46.

Tellingly, the Defendants do not cite a single case in which a motion to compel was denied on the grounds of being "cumulative." *See* Opp. at 1-13. Defendants' cases are either decisions on motions to permit jurisdiction discovery³—which has already

---

³ *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 774 F. Supp. 2d 277, 295 (D.D.C. 2011); *Lewis v. Mutond,* Case No. 16-cv-1547, 2021 U.S. Dist. LEXIS 182747, at *12-13 (D.D.C. Sept. 24, 2021); *Gunn v. Wild,* Case No. 17-cv-00072, 2017 U.S. Dist. LEXIS 234282, at *25 (D. Nev. June 15, 2017); *GTE New Media Servs.*

(footnote continued on next page)

been granted in this case[4]—decisions to *grant* motions to compel to the extent that they sought relevant information,[5] or decisions that stand for the proposition that defendants should produce to each plaintiff what they produce to other plaintiffs in identical cases.[6] The burden of a party seeking an order authorizing jurisdictional discovery is different from that on the party seeking jurisdictional discovery, which has already been granted. Plaintiffs have already demonstrated to the Court the need for jurisdictional discovery in this case, thus the standards argued by Defendants from *NBC-USA Housing, Inc., Twenty-Six*, 774 F. Supp. 2d 277, *Lewis v. Mutond*, and *Gunn v. Wild*, *see* Opp. at 5, are inapplicable. Now that the Court has granted jurisdictional discovery in this case, D.E. 298, Plaintiffs are not required to demonstrate more than the sought-after-information is relevant to the issues to be decided. *See e.g.*, *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).

### C. Defendants' Claimed "Functional Immunity" Has No Basis in US Law.

The Defendants' Opposition "functional immunity" theory—long used in this case to withhold relevant documents and frustrate the discovery process—is wholly lacking in support under U.S. law. In responding to the cases that Plaintiffs cite, Opp. at

---

(footnote continued from previous page)
*Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1352 (D.C. Cir. 2000); *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005); *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 892 (D.C. Cir. 2021); *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994); *Williams v. Romarm, SA*, 756 F.3d 777, 786 (D.C. Cir. 2014); *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008); *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 18 (D.D.C. 2014) (Friedman, J.); *Cook v. RHP Prop. NH, LLC*, Case No. 13-2165, 2014 U.S. Dist. LEXIS 603, at *6-7 (D. Md. Jan. 2, 2014).

[4] Memorandum Opinion and Order, *Klieman, v. Palestinian Authority*, 1:04-cv-01173, D.E. 298 (D.D.C. filed Dec. 2, 2020).

[5] *Alkanani v. Aegis Def. Servs., LLC*, 286 F.R.D. 67, 70 (D.D.C. 2012) (granting motion to compel tax records as evidence of activity that would satisfy a jurisdictional predicate); *Farouki v. Petra Int'l Banking, Corp.*, 683 F. Supp. 2d 23, 28 (D.D.C. 2010) (granted motion to compel the production of evidence relevant to a jurisdictional factual predicate); *Draper, Inc. v. MechoShade Sys.,* Case No. 10-cv-1443, 2012 U.S. Dist. 11243, at *3-4 (S.D. Ind. Jan. 30, 2012).

[6] *Ward*, 93 F.R.D. at 580; *Charter Oak Fire Ins. Co.*, 287 F.R.D. at 134.

8

17-21, Defendants claim that their asserted "functional immunity is different from other types of immunities that might shield defendants from lawsuits unrelated to the work of the United Nations," Opp. at 17. Ironically, Defendants rely on these other types of immunities.[7] The only two cases Defendants cite regarding UN immunities, in support of their functional immunities argument, deal with the absolute immunity enjoyed by the United Nations itself (not its Members or, in the Defendants case, non-members), and the functional immunity enjoyed by UN officials (again not its Members or non-members).[8] Thus the Defendants have not identified a case in which a court has extended the immunities enjoyed by the UN and its officials to UN *Members* (and in the Defendants case *non-members*).

Indeed, the Defendants are unable to support their claim that they or—for that matter—any other "persons invited by the United Nations" enjoy functional immunity, because in the capacity as an invitee, "they enjoy no privileges or immunities." Restatement (Third) of Foreign Relations Law § 469 (1987) reporter's note 8 (1987). Member states that are accredited nations in the U.S. can and do invoke their "sovereign immunity" in defense of U.S. lawsuits against their Permanent Missions to the UN. *See e.g.*, *Fontaine v. Permanent Mission of Chile to United Nations*, No. 17 CIV. 10086 (AT), 2020 WL 5424156, at *3 (S.D.N.Y. Aug. 18, 2020). But the Defendants are not an accredited nation in the U.S., and do not enjoy sovereign immunity, as this Court has already made clear in this case. *Est. of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153,

---

[7] *In re Terrorist Attacks*, No. 03-mdl-1570, 2020 U.S. Dist. LEXIS 166886, *260, 269 (S.D.N.Y. Aug. 27, 2020) (diplomatic immunity); *Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 248 (D.D.C. 2011) (foreign official sovereign immunity)

[8] *Van Aggelen v. United Nations*, 311 F. App'x 407, 409 (2d Cir. 2009); *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010).

9

158–59 (D.D.C. 2006). And because Defendants are not an accredited member of the UN, they cannot assert a functional immunity defense.

Nor do the two cases cited by the Defendants regarding their status as a UN non-member Observer Mission support their functional immunity argument. First, the Defendants' purported "leading case," *United States v. PLO*,[9] only holds that the U.S. cannot close the Defendants' UN Non-member Observer Mission. 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988) ("In sum, the language of the Headquarters Agreement, the long-standing practice under it, and the interpretation given it by the parties to it leave no doubt that it places an obligation upon the United States to refrain from impairing the function of the PLO Observer Mission to the United Nations."). *United States v. PLO* only discusses the issue of immunity to affirm that the Defendants *do not* enjoy immunities that other foreign persons or bodies might enjoy. *Id.* at 1459 ("does not have the benefits of diplomatic immunity").

Second, the Defendants also cite *Waldman v. PLO,* which turns on whether a factual predicate of the Anti-Terrorism Clarification Act ("ATCA") is satisfied by the existence of the Defendants' UN Non-member Observer Mission. 925 F.3d 570, 574-75 (2d Cir. 2019). But the ATCA does not ask whether the Defendants are using the Mission *exclusively* for official UN business. ANTI-TERRORISM CLARIFICATION ACT OF 2018, PL 115-253, October 3, 2018, 132 Stat 3183 (October 3, 2018).[10] Rather, the

---

[9] Defendants assert that *United States v. PLO* "has been accepted as binding law by the United States," but they do not provide support for that statement. Opp. at 19.

[10] "[I]n the case of a defendant benefiting from a waiver or suspension of section 1003 of the Anti-Terrorism Act of 1987 (22 U.S.C. § 5202) after the date that is 120 days after the date of enactment of this subsection—(i) continues to maintain any office, headquarters, premises, or other facilities or establishments within the jurisdiction of the United States; or (ii) establishes or procures any office, headquarters, premises, or other facilities or establishments within the jurisdiction of the United States."

ATCA predicate in question assessed whether the Defendant "procures any office, headquarters, premises, or other facilities or establishments within the jurisdiction of the United States . . . ." *Id.* The resolution of that issue in *Waldman* is irrelevant to the questions of whether Defendants' activities fall outside of 18 U.S.C. § 2334(e)(3), as they will because Defendants' office and activities are not *exclusively* used or undertaken for official United Nations business, as required by the PSJVTA.

Aside from these decisions, which do not bear on the issues at hand, Defendants rely almost exclusively on a nonbinding opinion of the UN Legal Advisor endorsing an implicit "immunity from legal process in respect of words spoken and written or any act performed in the exercise of the observer functions." Opp. at 14-19 (citing UN Juridical Yearbook, Chapter VI, § A(13) (2000)). But Defendants do not explain how to reconcile their aggressive reading of this opinion with the text of the UN Charter, which explicitly reaches only "Members"—not "Members and Non-Member Observers", or with applicable U.S. legislation and case-law, or with the General Assembly Resolution which defines with specificity the exact types of functions that Defendants may perform as an Observer, such as raising points of order during debates of the General Assembly or co-sponsoring draft resolutions. *See* Annex to G.A. Res. 52/250, *Participation of Palestine in the work of the United Nations* (July 13, 1998). That document does not support Defendants' claim that their "functional immunity" exists or protects them from discovery in this case.

Defendants' reading of this opinion is out of step with every other opinion of the UN's legal advisor on this topic, including one addressed to the PLO itself, which limits the assertion of functional immunity to "immunity from legal process in respect of words

11

spoken or written and all acts performed by members of the delegation in their official capacity *before relevant United Nations organs.*" *Legal Basis for the Observer Status of the Palestine Liberation Org.*, 1979 U.N. Jur. Y.B. 169, 170 (emphasis added).

Even if the Defendants are exempted from producing certain evidence of their activities, which for the reasons stated above they are not, Defendants propose no limiting principle as they echo their witnesses' unsubstantiated claims that *any* activity related to *anything* of interest to the UN constitutes official business of the UN and therefore protected from legal process by functional immunity. Opp. at 21-23. Courts have held that a deliberative body's "official business" simply does not include self-promoting public relations activities by its members. *See Hoellen v. Annunzio*, 468 F.2d 522, 526 (7th Cir. 1972) (Congress); *Rising v. Brown*, 313 F. Supp. 824, 826–27 (C.D. Cal. 1970) (same). Contrary to Defendants' position, the UN's Legal Advisor has never opined that self-promotion by a non-member observer is official business of the United Nations, which that office has defined as the "performance of official duties on behalf of the United Nations," attending to "the business of the Organization," or "an official act." *See, e.g., Area of Service and Legal Status of Legal Advisers Appointed Under the Regular Programme of Technical Assistance and Assigned to the ECAFE Region*, 1968 U.N. Jur. Y.B. 194-95; *Conditions Under Which Officials and Representatives of Members of International Organizations Are Admitted to and Reside in the United States*, 1985 U.N. Jur. Y.B. 148.

## CONCLUSION

For the reasons set forth *infra*, and in Plaintiffs' Support Brief, Plaintiffs' Motion for an Order to Compel Jurisdictional Discovery from the Defendants should be granted

*in toto* and the Defendants should be compelled to produce the materials pursuant to Plaintiffs' properly noticed and timely issued discovery requests.

Dated: October 21, 2021                     Respectfully submitted,

                                                              */s/Tracy Reichman Kalik*

Richard D. Heideman (No. 377462)
Noel J. Nudelman (No. 449969)
Tracy Reichman Kalik (No. 462055)
Joseph H. Tipograph (No. 997533)
HEIDEMAN NUDELMAN & KALIK, P.C.
5335 Wisconsin Ave., Suite 440
Washington, DC 20015
Phone: (202) 463-8018
Telefax: 202-463-2999

PERLES LAW FIRM, P.C
Steven R. Perles (No. 326975)
Edward MacAllister (No. 494558)
816 Connecticut Avenue
12th Floor
Washington, DC 20006

Telephone: 202-955-9055
Telefax: 202-955-3806
*Counsel to the Plaintiffs*