## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ESTATE OF ESTHER KLIEMAN, et al.,

                          Plaintiffs,

     v.

THE PALESTINIAN AUTHORITY, et al.,

                         Defendants.

Civil Action No. 04-1173 (PLF)

## DEFENDANTS' REPLY BRIEF REGARDING
## THE CONSTITUTIONALITY OF THE PSJVTA

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 4

I.    Exercising Personal Jurisdiction Over Defendants Would Violate Due Process ............... 4

    A.    The Conduct Specified by the PSJVTA Does Not Support a Presumption that Defendants Knowingly and Voluntarily Submitted to Jurisdiction ................ 5

    B.    The PSJVTA Does Not Provide Any Government Benefit or Gratuity to Defendants That Is Conditioned on Consent to Jurisdiction. ................................ 9

    C.    Defendants Have Not Knowingly and Voluntarily Consented to Personal Jurisdiction in This Case ................................................................ 15

        1.    The Payments Predicate Cannot Manufacture "Consent" to Personal Jurisdiction ................................................................ 15

        2.    The U.S. Activities Relied Upon by Plaintiffs Fail to Demonstrate Implied Consent to Personal Jurisdiction ................................... 19

II.    The Judiciary, Not Congress, Must Decide Whether Defendants' Conduct Demonstrates Knowing and Voluntary "Consent" to Personal Jurisdiction. .................. 20

III.    The Government's Purported Distinction Between Facial and As-Applied Challenges Does Not Affect the Result in This Case. ...................................... 22

CONCLUSION............................................................................................................. 25

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Ass'n of Cosmetology Sch. v. DeVos*,
   258 F. Supp. 3d 50 (D.D.C. 2017) ........................................................................24

*Armstrong v. Pomerance*,
   423 A.2d 174 (Del. 1980) ......................................................................................10

*Bank Markazi v. Peterson*,
   578 U.S. 212 (2016) .........................................................................................21, 22

*Bucklew v. Precythe*,
   139 S. Ct. 1112 (2019) ..........................................................................................24

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
   527 U.S. 666 (1999) ...................................................................................... *passim*

*Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*,
   551 U.S. 449 (2007) ..............................................................................................22

*Fuld v. PLO*,
   578 F. Supp. 3d 577 (S.D.N.Y. 2022) ........................................................... *passim*

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
   843 F.3d 958 (D.C. Cir. 2016) ..............................................................................16

*Hess v. Pawloski*,
   274 U.S. 352 (1927) .........................................................................................5, 10

*Hodge v. Talkin*,
   799 F.3d 1145 (D.C. Cir. 2015) ............................................................................24

*Hovey v. Elliott*,
   167 U.S. 409 (1897) ................................................................................................6

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) ...................................................................................... *passim*

*Estate of Klieman v. Palestinian Auth.*,
   923 F.3d 1115 (D.C. Cir. 2019) ..............................................................12, 16, 17

*Laker Airways v. Sabena*,
   731 F.2d 909 (D.C. Cir. 1984) ..............................................................................19

*Leonard v. USA Petroleum Corp.*,
    829 F. Supp. 882 (S.D. Tex. 1993) ...................................................................10

*Linde v. Arab Bank, PLC*,
    384 F. Supp. 2d 571 (E.D.N.Y. 2005) .............................................................18

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) ......................................................................3, 22

*Mallory v. Norfolk Southern Railway Co.*,
    143 S. Ct. 2028 (2023) ......................................................................... *passim*

*Marbury v. Madison*,
    5 U.S. (1 Cranch.) 137 (1803) ........................................................................21

*In re Mid-Atl. Toyota Antitrust Litig.*,
    525 F. Supp. 1265 (D. Md. 1981) ...................................................................10

*Nyambal v. IMF*,
    772 F.3d 277 (D.C. Cir. 2014) .......................................................................18

*Penn. Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*,
    243 U.S. 93 (1917) ..........................................................................................10

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*,
    831 F.3d 500 (D.C. Cir. 2016) .......................................................................24

*Shatsky v. PLO*,
    955 F.3d 1016 (D.C. Cir. 2020) .....................................................................16

*Shatsky v. PLO*,
    No. 02-2280, 2017 WL 2666111 (D.D.C. June 20, 2017)...............................16

*Shatsky v. PLO*,
    No. 18-cv-12355, 2022 WL 826409 (S.D.N.Y. Mar. 18, 2022) .............. *passim*

*Sokolow v. PLO*,
    590 F. Supp. 3d 589 (S.D.N.Y. 2022)..................................................... *passim*

*Sokolow v. PLO*,
    607 F. Supp. 3d 323 (S.D.N.Y. 2022) ...................................................3, 6, 9, 19

*Triple Up Ltd. v. Youku Tudou Inc.*,
    No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018) ............................18

*Volkart Bros. v. M/V Palm Trader*,
    130 F.R.D. 285 (S.D.N.Y. 1990) ...................................................................1, 6

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016)........................................................................................17

*Wellness Int'l Network v. Sharif*,
    575 U.S. 665 (2015).................................................................................................4

**Statutes**

22 U.S.C. § 5202........................................................................................................14

Promoting Security and Justice for Victims of Terrorism Act of 2019, Pub. L. No.
    116-94, § 903, 18 U.S.C. § 2334 (Dec. 20, 2019) ........................................... *passim*

Taylor Force Act, Pub. L. No. 115-141, tit. X, § 1004, 22 U.S.C. § 2378 (Mar. 23,
    2018) ...................................................................................................................18, 19

**Other Authorities**

Carnegie Endowment for Int'l Peace, *Palestinian Prisoner Payments* (2021),
    https://carnegieendowment.org/specialprojects/breakingtheisraelpalestinestatu
    squo/payments.................................................................................................16, 17

*Cessation of Operations of the Office of the General Delegation of the Palestine
    Liberation Organization Located in Washington, DC*, 83 Fed. Reg. 46990
    (Sept. 17, 2018).................................................................................................13

93 Corpus Juris Secundum *War and National Defense* § 69 (2023) ............................14

DOJ OLC, *Application of the Anti-Terrorism Act of 1987 to Diplomatic Visit of
    Palestinian Delegation*, 2022 WL 16859386 (Oct. 28, 2022)................................14

DOJ OLC, *Statutory Restrictions on the PLO's Washington Office* (Sept. 11,
    2018) ...................................................................................................................13

U.S. State Dep't, *Closure of the PLO Office in Washington* (Sept. 10, 2018),
    https://2017-2021.state.gov/closure-of-the-plo-office-in-
    washington/index.html........................................................................................13

Jim Zanotti & Jennifer K. Elsea, Cong. Rsch. Serv., R46274, *The Palestinians
    and Amendments to the Anti-Terrorism Act: U.S. Aid and Personal
    Jurisdiction* (Mar. 18, 2020) .........................................................................13, 14

## INTRODUCTION

To establish that Defendants implicitly consented to personal jurisdiction under the PSJVTA, Plaintiffs must identify some "actions of the [Defendants]" that "amount to a legal submission to the jurisdiction of the court." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee* ("*Bauxites*"), 456 U.S. 694, 704-05 (1982).  Applying this standard, courts have identified two common scenarios in which a defendant's conduct may give rise to valid, implied consent to personal jurisdiction.  Plaintiffs and the Government fail to identify how any alleged conduct by Defendants of the type specified under the PSJVTA satisfies either of these scenarios or constitutes valid consent to personal jurisdiction in this case.

First, as the Supreme Court explained in *Bauxites*, a court may infer consent or submission to jurisdiction if the defendant's conduct supports the presumption that the defendant is subject to jurisdiction in the forum.  *Id.* at 705-09 (discussing the so-called "*Hammond Packing* presumption").  In this scenario, however, implied consent or submission cannot be grounded in conduct that would not support a "jurisdictional finding." *Volkart Bros. v. M/V Palm Trader*, 130 F.R.D. 285, 289 (S.D.N.Y. 1990) (applying *Bauxites*).  Defendants' alleged conduct, as relied upon by Plaintiffs, fails this test because the courts have uniformly held that those *same* activities— Defendants' limited diplomatic activities in the U.S. and social welfare payments made in Palestine—are *insufficient* to support the exercise of personal jurisdiction under the Due Process Clause.  In light of that precedent, Defendants' decision to continue engaging in the same, jurisdictionally-insufficient conduct cannot support the presumption they knowingly and voluntarily submitted to jurisdiction in the United States.

Second, a court may also infer consent or submission to jurisdiction from a defendant's acceptance of a government benefit that the forum has conditioned on consent to jurisdiction.  In this scenario, the defendant's acceptance of the government benefit signals its implied agreement

to submit to jurisdiction in the forum.  The Supreme Court recently reaffirmed this exchange-of-benefits framework in *Mallory*, upholding a business-registration statute that required out-of-state corporations to consent to personal jurisdiction in Pennsylvania "*in exchange for*" the "*benefit*" of access to the State's markets.  *Mallory v. Norfolk Southern Railway Co.*, 143 S. Ct. 2028, 2033, 2041-44 (2023) (emphasis added).  But contrary to the conclusory hand-waving by Plaintiffs and the Government, nothing in the PSJVTA offers any "benefit" for Defendants to accept or reject, in exchange for their consent to jurisdiction.  *Mallory* is therefore of no use to them in this case.[1]

Rather than grounding "deemed consent" to personal jurisdiction in either of these two common (and constitutional) scenarios, Plaintiffs and the Government instead assert that "consent" can be anything that Congress says it is—regardless of whether the specified activities can constitutionally support the inference that Defendants knowingly and voluntarily submitted to jurisdiction in the United States.  In their view, "fair warning" and a "reasonable relationship" to a government objective are all that is needed to validate a statute deeming "consent" to jurisdiction, even if Defendants have expressly objected to the exercise of personal jurisdiction in this case for nearly two decades.

No court has accepted their position, and for good reason.  If Congress could simply decree that *any* conduct—even conduct previously held *insufficient* to support the exercise of personal jurisdiction under the Due Process Clause—shall be "deemed consent" to jurisdiction, then that "would effectively mean that there are *no* due process limitations on the exercise of personal jurisdiction." *Fuld v. PLO*, 578 F. Supp. 3d 577, 590 (S.D.N.Y. 2022).  Personal jurisdiction could

---

[1] *Mallory* also reaffirmed the vitality of *Bauxites* and its application of the *Hammond Packing* presumption for evaluating implied submission to jurisdiction.  *See* 143 S. Ct. at 2038-39, 2044 & nn.5, 8, 10.

be imposed by legislative fiat, even in the absence of "minimum contacts" or "knowing and voluntary" consent. *Livnat*, on which the Government relies (Gov't Br. at 4), expressly rebuts the Government's formulation of the test and makes clear that "fair warning" and a "reasonable relationship" are necessary but not alone sufficient to satisfy due process standards for personal jurisdiction. *Livnat v. Palestinian Auth.*, 851 F.3d 45, 48 (D.C. Cir. 2017). In addition, a defendant's conduct must establish "meaningful contacts, ties, or relations" with the forum (*id.*)— either, as in *Livnat*, by "minimum contacts" with the forum or, as here, by "knowing and voluntary" consent to jurisdiction. *See* Gov't Br. at 4 (conceding "knowing and voluntary" is the test for consent to jurisdiction, in addition to "fair warning").

Every court to consider the issue has rightly rejected the argument that "fair warning" and a "reasonable relationship" alone are sufficient to establish consent or submission to jurisdiction, because that test would shatter the carefully-drawn line between valid "consent" and the improper imposition of jurisdiction as a "penalty." *See Fuld*, 578 F. Supp. 3d at 590-92; *Sokolow v. PLO*, 590 F. Supp. 3d 589 (S.D.N.Y. 2022), *recon. denied*, 607 F. Supp. 3d 323 (S.D.N.Y. 2022); *Shatsky v. PLO*, No. 18-cv-12355, 2022 WL 826409 (S.D.N.Y. Mar. 18, 2022); *see also Bauxites*, 456 U.S. at 705-06 (distinguishing between valid "consent" and the improper imposition of jurisdiction as a "punishment").

Notably, the Government itself does not argue that Defendants' activities *as alleged in this case* constitute implied consent to personal jurisdiction. *See* Gov't Br. at 2 n.1 ("[T]he government takes no position here as to whether the PA and PLO have taken actions that fall within the deemed consent provisions, nor does the government take any position as to whether any such actions were knowing and voluntary under the specific facts of this case"). While the Government instead mischaracterizes Defendants' position as an across-the-board facial attack, this Court need only

conclude that Defendants' activities alleged by Plaintiffs in this case are insufficient to support the exercise of personal jurisdiction. This Court should follow the unanimous decisions in *Fuld*, *Sokolow*, and *Shatsky* on an identical factual record, and hold that the PSJVTA as applied to Defendants is unconstitutional.

## **ARGUMENT**

**I.      Exercising Personal Jurisdiction Over Defendants Would Violate Due Process.**

To satisfy the Due Process Clause, consent to personal jurisdiction must be "knowing and voluntary"—as both Plaintiffs and the Government concede. *See* Pls.' Br. at 12, 18; Gov't Br. at 2, 4, 9; *see also Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015) ("emphasizing" that consent to jurisdiction must be "knowing and voluntary"). In *Bauxites*, the Supreme Court cataloged a "variety of legal arrangements" that "have been taken to represent express or implied consent" to personal jurisdiction. *Bauxites*, 456 U.S. at 703-04; *accord Mallory*, 143 S. Ct. at 2039. Because implied consent "is not a doctrine commonly associated with the surrender of constitutional rights," courts must "indulge every reasonable presumption against waiver." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 681-82 (1999).

As Defendants explained in their opening brief, courts have identified two common scenarios in which a defendant's conduct may serve as a reasonable proxy for consent or submission to jurisdiction. In the first scenario (the so-called "*Hammond Packing* presumption"), the nature of the defendant's specific activities must be sufficient to support a "presumption of fact" that the defendant submitted to jurisdiction in the forum. *See, e.g.*, *Bauxites*, 456 U.S. at 705-09 (inferring consent from defendant's refusal to comply with jurisdictional discovery orders regarding its contacts with the United States); *Sokolow*, 590 F. Supp. 3d at 595-97 (applying the same principles to find consent lacking under the PSJVTA). In the second scenario, consent arises

from the defendant's choice to accept a benefit or "gratuity" provided by the forum, which the forum has conditioned on consent to jurisdiction. *See, e.g.*, *Mallory*, 143 S. Ct. at 2037-38 (addressing consent to jurisdiction under business-registration statutes); *Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927) (inferring consent to jurisdiction from defendant's use of public roads). The defendant's acceptance of a benefit from the forum signifies its implicit agreement to submit to the forum's jurisdiction on which the benefit is conditioned.

In both scenarios, a court may infer a defendant's consent to jurisdiction from its own conduct, which "amount[s] to a legal submission to the jurisdiction of the court." *Bauxites*, 456 U.S. at 704-05. The PSJVTA, by contrast, does not give rise to valid "consent" to personal jurisdiction because, as explained below, none of Defendants' alleged conduct of the type specified in the PSJVTA serves as a reasonable proxy for consent to jurisdiction. Although Plaintiffs and the Government resist that conclusion, they fail to offer any viable framework for distinguishing between valid implied "consent" and the improper imposition of personal jurisdiction on *non-consenting* defendants.

### A.    The Conduct Specified by the PSJVTA Does Not Support a Presumption that Defendants Knowingly and Voluntarily Submitted to Jurisdiction.

Defendants' alleged conduct of the type specified by the PSJVTA cannot give rise to implied consent under the first scenario outlined above (the *Hammond Packing* presumption), because it does not support the presumption that Defendants knowingly and voluntarily submitted to jurisdiction in the United States. In *Bauxites*, the Supreme Court focused on the nature of the defendant's specific conduct to distinguish between valid consent to jurisdiction, and "mere assertions of power" by the forum to impose jurisdiction on nonconsenting defendants. *See* 456 U.S. at 705. To give rise to valid consent, the Court explained, the defendant's conduct must be sufficient to support the presumption that it has submitted to jurisdiction in the forum. *Id.* at 705-

09 (discussing the *Hammond Packing* presumption). Consent cannot be inferred from conduct wholly unrelated to the jurisdictional inquiry. *See id.* at 705-06 (distinguishing the Court's prior decision in *Hovey v. Elliott*, 167 U.S. 409 (1897)). Rather, "there must be some indication, either from the record or from the nature of [the defendant's specific conduct], *supporting a jurisdictional finding*." *Volkart Bros.*, 130 F.R.D. at 289 (emphasis added). Inferring consent "is reasonable," in other words, "only where the defendant's statements or conduct actually signal approval or acceptance" of the court's jurisdiction, and thereby serve as a reasonable "proxy" for consent. *Fuld*, 578 F. Supp. 3d at 586-87.

Plaintiffs cannot satisfy that standard in this case because none of Defendants' alleged conduct upon which they rely would support a jurisdictional finding. Plaintiffs allege that Defendants "consented" to personal jurisdiction by engaging in the same conduct that the courts— including this Court—have previously held *insufficient* to support the exercise of jurisdiction under the Due Process Clause. Following the Supreme Court's decision in *Daimler*, courts have uniformly held that the same conduct at issue in this case—Defendants' limited diplomatic activities in the United States and alleged "martyr" payments made in Palestine—fails to establish a sufficient connection between Defendants, the United States, and the type of ATA claims at issue to satisfy due process. *See* Defs.' Opening Br. at 11-16. In light of those holdings, Defendants' decision to continue engaging in the same conduct cannot serve as a reasonable proxy for their implied agreement to submit to jurisdiction in the United States, because as a matter of due process such conduct has no jurisdictional consequences. *See Fuld*, 578 F. Supp. 3d at 587; *Sokolow*, 590 F. Supp. 3d at 595-97; *Sokolow*, 607 F. Supp. 3d at 326; *Shatsky*, 2022 WL 826409, at *4-5.

Plaintiffs and the Government misconstrue this argument, asserting the courts' prior jurisdictional holdings are "irrelevant" because consent provides a "stand-alone basis for personal

- 6 -

jurisdiction, regardless of whether specific or general jurisdiction have otherwise been established."  Gov't Br. at 3, 8, 13; *see also* Pls.' Br. at 12, 16.  No one disputes that consent and minimum-contacts analysis can provide separate bases for personal jurisdiction over a defendant, but the question in this case is what type of conduct by a defendant can support an inference that the defendant knowingly and voluntarily submitted to jurisdiction in the forum.  The type of conduct relied upon by Plaintiffs in this case cannot support a reasonable inference of consent, because the courts have already held that by engaging in such conduct, Defendants do *not* subject themselves to jurisdiction in the United States.  Plaintiffs and the Government offer no reason, other than legislative say-so, why Defendants' alleged activities of the type specified by the PSJVTA—which have been held to lack jurisdictional consequence—can constitutionally support an inference that Defendants knowingly and voluntarily agreed to submit to jurisdiction.  And the imposition of jurisdiction by fiat is the hallmark of legislatively-coerced or imposed jurisdiction—as opposed to "knowing and voluntary" consent to jurisdiction.

The Supreme Court made precisely this point in *College Savings Bank*, distinguishing between a defendant's knowing and voluntary choice to submit to jurisdiction and mere assertions of power by the forum to subject a defendant to jurisdiction.  *See* Defs.' Opening Br. at 20-21; *College Savings Bank*, 527 U.S. at 679-82.  "There is a fundamental difference," the Court explained, between a defendant's "altogether voluntary" decision to consent to jurisdiction, and "Congress's expressing unequivocally its intention" to subject the defendant to jurisdiction if it engages in specified activity—without the defendant's consent.  527 U.S. at 680-81.  Plaintiffs and the Government attempt to distinguish *College Savings Bank*, arguing that different standards apply to state sovereign immunity and personal jurisdiction.  *See* Gov't Br. at 15-16; Pls.' Br. at 13, 23, 35-36.  But *College Savings Bank* itself made clear that the Court was applying broader

constitutional principles.   Relying on the "classic description of an effective waiver of a *constitutional right*," the Court explained that it must "indulge every reasonable presumption against waiver" of state sovereign immunity because "constructive consent is not a doctrine commonly associated with the surrender of *constitutional rights*."  527 U.S. at 681-82 (emphases added).  As Judge Furman noted in *Fuld*, "the principles underlying *College Savings Bank* are not specific to the Eleventh Amendment, but rather apply to constitutional rights broadly."  *Fuld*, 578 F. Supp. 3d at 588.

Indeed, portions of Plaintiffs' own brief acknowledge (perhaps inadvertently) that, although phrased in terms of "consent," the PSJVTA in fact seeks to legislatively-impose personal jurisdiction if Defendants continue to engage in the same conduct previously held insufficient to satisfy the Due Process Clause.  According to Plaintiffs, "Congress enacted the PSJVTA to *provide personal jurisdiction* over the PA and PLO *for certain specific conduct*—again—in direct response to the D.C. Circuit's decision in this case and the Second Circuit's similar decision in *Sokolow*."  Pls.' Br. at 10 (emphasis added).   Plaintiffs' description does not even purport to hinge on Defendants' knowing and voluntary *consent* to personal jurisdiction.   Rather, Plaintiffs baldly admit that the PSJVTA seeks to "provide personal jurisdiction" over Defendants based on the same, constitutionally-inadequate conduct addressed in prior decisions.  *Id.*; *see also id.* at 1, 20, 22, 28 (repeatedly asserting the PSJVTA was designed to "restore" the "pre-*Daimler* jurisdictional landscape").

If Congress had the authority "to exact constructive waivers" of jurisdictional defenses "through the exercise of Article I powers," there would be no limit to the types of activities that could give rise to implied consent to jurisdiction.  *College Savings Bank*, 527 U.S. at 683; *see also id.* at 679-82 (holding that mere notice of Congress's intent to subject a defendant to jurisdiction

if it "voluntarily" engages in "federally regulated conduct" is insufficient to establish implied consent to jurisdiction).  Congress and state legislatures could circumvent modern due-process doctrine simply by enacting statutes—like the PSJVTA—declaring that engaging in the same conduct already held insufficient to satisfy the Due Process Clause "shall be deemed consent" to personal jurisdiction.  *See* Defs.' Opening Br. at 33-34.  Accepting that interpretation "would effectively mean that there are *no* due process limitations"—other than the "reach of the legislative imagination"—"on the exercise of personal jurisdiction."  *Fuld*, 578 F. Supp. 3d at 590-91.

For that reason, every court to consider the issue has rejected Plaintiffs' and the Government's assertion that continuing to engage in the same, constitutionally-inadequate conduct can give rise to "deemed consent" to personal jurisdiction under the PSJVTA.  *Id.*; *see also Sokolow*, 607 F. Supp. 3d at 326; *Shatsky*, 2022 WL 826409 at *4-5.  Defendants' alleged conduct of the type specified by the PSJVTA does not support the presumption that Defendants knowingly and voluntarily submitted to personal jurisdiction, as it is precisely the same conduct previously held insufficient to support the exercise of jurisdiction.  Accordingly, under *Bauxites* and *College Savings Bank*, the "deemed consent" provisions of the PSJVTA reflect the unlawful imposition of personal jurisdiction on non-consenting defendants, rather than valid, knowing and voluntary consent.

### B.    The PSJVTA Does Not Provide Any Government Benefit or Gratuity to Defendants That Is Conditioned on Consent to Jurisdiction.

Knowing and voluntary consent to jurisdiction may also arise from a defendant's acceptance of a benefit or "gratuity" from the forum that is conditioned on consent to personal jurisdiction.  *See* Defs.' Opening Br. at 21-25.  By accepting a government benefit conditioned on consent to jurisdiction, the defendant enters a "bargain" with the forum whereby it consents to personal jurisdiction in exchange for permission to engage in conduct that the forum could

otherwise prohibit.  *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex. 1993); *see also College Savings Bank*, 527 U.S. at 686-87 (acceptance of federal funds conditioned on consent to jurisdiction); *Hess*, 274 U.S. at 354-57 (acceptance of privilege of driving on public roadways); *In re Mid-Atl. Toyota Antitrust Litig.*, 525 F. Supp. 1265, 1278 (D. Md. 1981) (acceptance of privilege of doing business in the state); *Armstrong v. Pomerance*, 423 A.2d 174, 176 & n.4 (Del. 1980) (acceptance of benefits afforded to corporate directors under state law).  The defendant's acceptance of a government benefit conditioned on consent signals its implied agreement to submit to personal jurisdiction in the forum.

The Supreme Court reaffirmed the rationale of these "exchange" cases less than one month ago in *Mallory*.  *See* 143 S. Ct. at 2037-38.  Like several of the cases discussed in Defendants' opening brief (at 22-23), *Mallory* addressed whether due process "prohibits a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there."  *Id.* at 2033.  The Court rebuffed a challenge to Pennsylvania's business registration statute, which requires out-of-state corporations to consent to personal jurisdiction "*in exchange for* status as a registered foreign corporation, and the *benefits* that entails."  *Id.* (emphasis added).  By accepting the privilege of registering to do business in the State, the Court held that the defendant agreed to "both the benefits and burdens shared by domestic corporations"—including consent to jurisdiction in the State.[2]  *Id.* at 2037.  Consistent with Defendants' arguments in this case, the Court explained that "state laws requiring consent to suit *in exchange for* access to [the State's]

_____

[2] The Court's specific holding in *Mallory* is quite narrow.  A majority of the Justices agreed only on a statement of the case and a single holding that the Court's prior decision in *Pennsylvania Fire*—which upheld a similar business-registration statute—"controls this case" and remains good law.  *See Mallory*, 143 S. Ct. at 2032-33 (section I), 2037-38 (section III-B); *see also Penn. Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917).  Justice Alito, the fifth Justice in the majority, expressed concerns that business-registration statutes may violate the dormant Commerce Clause.

markets" are one of the "variety of legal arrangements" that can give rise to implied consent to jurisdiction. *Id.* at 2041 n.8 (plurality opinion) (emphasis added); *see also id.* at 2041 (explaining the statute "gave the company the right to do business in-state *in return for* agreeing to answer any suit against it," and "the company had taken full advantage of its opportunity to do business in the Commonwealth" (emphasis added)); *id.* at 2044 (implied consent may arise from "accepting an in-state benefit with jurisdictional strings attached").

Plaintiffs and the Government mischaracterize Defendants' reciprocity or exchange-of-benefits argument, asserting that Defendants are wrong to argue that implied consent arises "only where there is an exchange or bargain." Gov't Br. at 4, 14; *see also* Pls.' Br. at 24 (claiming Defendants "argue that constructive consent cannot be imposed where the defendant is not the beneficiary of some privilege or benefits in exchange for submission to the [forum's] jurisdiction"). As Defendants explained in their opening brief, the acceptance of a benefit conditioned on consent is merely one common scenario in which the courts have found valid, knowing and voluntary consent to jurisdiction. *See* Defs.' Opening Br. at 2, 25. "[E]xpress or implied consent" may arise from a "variety of legal arrangements," including "signing a contract with a forum selection clause," "[f]ailing to comply with certain pre-trial court orders," or "accepting an in-state benefit with jurisdictional strings attached." *Mallory*, 143 S. Ct. at 2044 & n.10 (plurality opinion). An exchange-of-benefits obviously is not required when a defendant expressly consents to jurisdiction, or takes some action in the litigation itself demonstrating its submission to the court's jurisdiction. But Defendants are not aware of a single case finding implied consent based on a defendant's choice to engage in non-litigation-related activities in the *absence* of some benefit conferred upon the defendant in exchange for its consent. And, critically, Plaintiffs and the Government have not identified any such case either.

Both Plaintiffs and the Government also attempt to shoehorn the PSJVTA into this line of reciprocity cases, asserting the PSJVTA satisfies due process because it "allow[s] the PA and PLO to operate in the U.S. with the condition of submitting to personal jurisdiction." Pls.' Br. at 14; *see also* Gov't Br. at 17 n.7. The problem with this argument is that nothing in the PSJVTA allows Defendants to "operate in the U.S." or waives the prohibitions on Defendants' activities under the Anti-Terrorism Act of 1987. Put simply, the PSJVTA fails to offer any "benefit" for Defendants to accept or reject, in exchange for their consent to jurisdiction.

As Defendants explained in their opening brief, the 1987 ATA imposes a "wide gauged restriction" on Defendants' activities that was expressly designed to deny Defendants the "benefit" of "operating in the United States." *See* Defs.' Opening Br. at 29 (quoting 22 U.S.C. § 5201(b) and *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988)). Unlike its predecessor statute (the ATCA), the PSJVTA does not ground Defendants' purported consent to jurisdiction on their acceptance of a waiver from the 1987 Act's prohibitions. *See id.* at 29-31. Nothing in the PSJVTA offers to free Defendants from the 1987 Act's restrictions or permits them to operate in the United States.[3] And as the Government concedes, Defendants have not operated any office in the United States (other than Palestine's UN Mission, which has long been held to fall outside U.S. jurisdiction) or obtained a waiver of the 1987 Act's prohibitions since the enactment of the PSJVTA. *See* Gov't Br. at 6.

---

[3] In the absence of any express "benefits" language in the PSJVTA, Plaintiffs repeatedly assert that the PSJVTA "*implicitly allows*" Defendants to operate in the United States. Pls.' Br. at 2 (emphasis added); *see also id.* at 14, 23, 32. Plaintiffs offer no support for this assertion, which would violate U.S. law. As the D.C. Circuit explained in this very case, any waiver of the 1987 Act's prohibition on Defendants' activities in the United States must be *express*. *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1130 (D.C. Cir. 2019). There is no such thing as an "implicit" waiver of the 1987 Act's prohibitions.

Plaintiffs' "benefits" argument is premised on their broader misimpression that Defendants are currently permitted to operate in the United States.  They are not.  Plaintiffs' recitation of the history of Defendants' presence in the United States leaves off in 2017-18, when the President "did not renew the statutory waiver which would allow the PLO to operate in the United States" but—according to Plaintiffs—"exercised his constitutional (*i.e.*, non-statutory) plenary foreign affairs powers to permit the PLO to continue to engage in certain activities," including "public diplomacy."  Pls.' Br. at 31.  The source cited for this characterization is a September 2018 memorandum from DOJ's Office of Legal Counsel ("OLC").  *Id.*  That memorandum, however, merely clarifies the Executive's authority: "[i]f the President chooses to allow the PLO to pursue diplomatic endeavors in the United States, then Congress may not impede that decision."  DOJ OLC, *Statutory Restrictions on the PLO's Washington Office*, at 2, 7, 22, 24 (Sept. 11, 2018).

In fact, six days after the OLC memorandum, the President ordered Defendants to "cease all public operations … resolve any outstanding obligations …, vacate [their U.S. Mission in Washington, D.C.] …, terminate staff, and close its U.S. bank account, not later than ... October 10, 2018."  *Cessation of Operations of the Office of the General Delegation of the Palestine Liberation Organization Located in Washington, DC*, 83 Fed. Reg. 46990 (Sept. 17, 2018); s*ee also* U.S. State Dep't, *Closure of the PLO Office in Washington* (Sept. 10, 2018), https://2017-2021.state.gov/closure-of-the-plo-office-in-washington/index.html  ("reflecting  Congressional concerns, the Administration has decided that the PLO office in Washington will close").  Although Defendants were permitted to maintain a U.S. mission in Washington between 1994 and 2017, that office was thus closed at the direction of the U.S. Government in October 2018, well before the PSJVTA.  *See* Jim Zanotti & Jennifer K. Elsea, Cong. Rsch. Serv., R46274, *The Palestinians and Amendments to the Anti-Terrorism Act: U.S. Aid and Personal Jurisdiction*

[hereinafter, "CRS Report"], at 2 n.16 (Mar. 18, 2020) ("Since late 2018, the PLO has not maintained a representative office in the United States.").

Contrary to Plaintiffs' assertions, that decision remains in effect—following the closure of their D.C. office in 2018, Defendants are not permitted to operate in the United States (aside from UN-related activities that fall outside U.S. jurisdiction, as explained in Defendants' opening brief). *See* Defs.' Opening Br. at 14 n.8, 29-31 & n.16.   To this day, both Congress and the Executive Branch have reiterated that the PA and PLO are banned from operating in the United States.   *See* CRS Report at 2 n.11 (explaining that "22 U.S.C. § 5202 ... generally prohibits the PLO to operate facilities in the United States"); DOJ OLC, *Application of the Anti-Terrorism Act of 1987 to Diplomatic Visit of Palestinian Delegation*, 2022 WL 16859386, at *3 (Oct. 28, 2022) (indicating that "reopening" of Defendants' U.S. Mission "or the opening of another facility within the United States" would trigger the 1987 ATA's prohibitions, 22 U.S.C. § 5202(3)); *see also* 93 Corpus Juris Secundum *War and National Defense* § 69 (2023) (explaining it is "unlawful" for the PA or PLO "to establish or maintain an office, headquarters, or other facilities within the jurisdiction of the United States at the direction of, or with funds provided by, the PLO").

Unlike the ATCA, the PSJVTA does not provide consent to jurisdiction as an exchange for acceptance of a waiver of this prohibition.   Rather than offering Defendants some government "benefit" to accept or reject in exchange for their consent, the PSJVTA instead purports to impose personal jurisdiction on Defendants if they continue to engage in the same activities previously held insufficient to support jurisdiction under the Due Process Clause.   As the Supreme Court explained in *College Savings Bank*, such a framework does not give rise to knowing and voluntary consent.   *See* 527 U.S. at 686-87 (distinguishing a benefit or "gratuity" conditioned on consent from the legislative imposition of jurisdiction).

C.     **Defendants Have Not Knowingly and Voluntarily Consented to Personal Jurisdiction in This Case.**

Notably, the Government does not join Plaintiffs in arguing that Defendants have knowingly and voluntarily consented to personal jurisdiction in this case.  The Government "does not take a position" on "whether Plaintiffs have shown that Defendants' actions satisfy the deemed consent provisions of the PSJVTA," or on "whether any such actions were knowing and voluntary under the specific facts of this case."  Gov't Br. at 1, 2 n.1.  The Government thus has nothing to say about whether, under the circumstances of this case, applying the PSJVTA to "deem" that Defendants have "consented" to jurisdiction would violate due process.  The Government's attempts to defend the statute on a facial—but not on an as-applied—basis are addressed separately in Section III below.

Plaintiffs assert that Defendants consented to personal jurisdiction under both the Payments Predicate and the U.S. Activities Predicate of the PSJVTA.  For the reasons set forth below, the conduct relied upon by Plaintiffs in this case is insufficient to establish knowing and voluntary consent to jurisdiction, as none of the conduct supports the presumption that Defendants have submitted to the jurisdiction of the Court.

1.     **The Payments Predicate Cannot Manufacture "Consent" to Personal Jurisdiction.**

Plaintiffs' allegations regarding payments made to those injured or imprisoned in connection with attacks in Palestine, or to their families, cannot give rise to knowing and voluntary consent to jurisdiction because the courts have already held that Defendants did *not* subject themselves to jurisdiction in the United States by making such payments.  Such payments occur entirely outside the United States, under Palestinian law, and do not require authorization or permission from the U.S. Government.  Accordingly, courts have consistently held that such

- 15 -

payments are insufficient to support the exercise of personal jurisdiction under the Due Process Clause.  *See Klieman*, 923 F.3d at 1119 (affirming dismissal for lack of personal jurisdiction despite significant payment allegations); *Shatsky v. PLO*, 955 F.3d 1016, 1022-23, 1037 (D.C. Cir. 2020) (holding alleged "martyr payments" did not confer personal jurisdiction).[4]

Plaintiffs erroneously claim that the D.C. Circuit's decision in *Shatsky* did not address "martyr payments" because the allegations at issue in that case pre-dated the effective date of the Payments Predicate, and no qualifying payments had yet been made.  *See* Pls.' Br. at 34 (citing *Shatsky*, 955 F.3d at 1038).  That assertion, however, ignores the remainder of the D.C. Circuit's opinion, which affirmed the district court's conclusions that "martyr payments," among other facts, did not provide a constitutionally-sufficient basis for the exercise of general or specific jurisdiction over Defendants.  *See Shatsky*, 955 F.3d at 1022-23, 1036-38.

Plaintiffs and the Government attempt to burnish the alleged "connection" between such payments and this forum by arguing the payments have a "close nexus" to the United States because they are made by reason of "an act of terrorism that killed or injured a U.S. national."  *See* Gov't Br. at 10; Pls.' Br. at 13, 33.  That assertion, which mistakenly implies the payments are made *because* of the killing of an American, overlooks the undisputed fact that the payments are part of a much broader social welfare program designed to provide a "social safety net in the face of brutal and oppressive living conditions under Israeli military occupation."  Carnegie

---

[4] Courts have similarly held, on the merits, that such payments are also insufficient to establish civil liability under the ATA.  *See Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 970 (D.C. Cir. 2016) (affirming grant of summary judgment on the merits to Defendants, even though the attacker "was receiving payments from the PA's Ministry of Prisoners"); *Shatsky v. PLO*, No. 02-2280, 2017 WL 2666111, at *10 (D.D.C. June 20, 2017) ("without more, these after-the-fact payments are not sufficient for a reasonable jury to conclude that defendants proximately caused the … bombing"), *vacated for lack of jurisdiction*, 955 F.3d 1016 (D.C. Cir. 2020).

Endowment for Int'l Peace, *Palestinian Prisoner Payments* (2021).[5]  It also overlooks the D.C. Circuit's prior holding in this case that the attacks at issue (and thus any payments purportedly following from such attacks) did <u>not</u> target the United States or American citizens, who were the victims of indiscriminate violence in Israel and Palestine.  *See Klieman*, 923 F.3d at 1126; *see also Waldman v. PLO*, 835 F.3d 317, 337 (2d Cir. 2016) (noting such attacks "affected United States citizens only because they were victims of indiscriminate violence that occurred abroad").

Plaintiffs also wrongly assert that the payments give rise to implied consent to jurisdiction because "it is likely that PA funds to support their martyrs program continue to transit through the United States, specifically New York."  Pls.' Br. at 15, 34.  Plaintiffs identify nothing in the record to support this assertion, and the jurisdictional discovery materials produced by Defendants demonstrate just the opposite.  Defendants produced the entire jurisdictional discovery record generated in a similar case, *Shatsky v. PLO*, No. 18-12355 (S.D.N.Y.), where identical PSJVTA jurisdictional issues were litigated.  The *Shatsky* record included <u>four days of 30(b)(6) testimony on the Payments Predicate</u> and five 30(b)(1) depositions on the U.S. Activities Predicate.  This included the depositions of the Palestinian Deputy Minister of Finance (Mr. Farid Ghannam) and the Director of Salary and Financials (Mr. Abdel Jabbar Salem).

Those materials confirm that, contrary to Plaintiffs' unsupported speculation, the payments at issue occur entirely outside the United States, in Palestine.  The payments are made by "wire transfer" from the Palestinian Authority "to the beneficiary families of the prisoners in their bank accounts" in Palestine.  Salem July 27, 2021 Dep. Tr. 56:19-24; Ghannam July 30, 2021 Dep. Tr. 132:9-11.  The payments are made in New Israeli Shekels, not U.S. dollars.  *See* Klieman-JD00558

---

[5]  A copy of the Carnegie Endowment report is available at the following link: https://carnegieendowment.org/specialprojects/breakingtheisraelpalestinestatusquo/payments.

(Shatsky-JD00562) (reflecting approval of monthly payments in Shekels); Farid Ghannam July 29, 2021 Dep. Tr. 69:17-71:19 (payment record reflected payments in Shekels); Salem July 27, 2021 Dep. Tr. 54:7-16 ("[t]he currency that is used in the [prisoner] salaries and the allocations is the Israeli shekel").  There is no evidence the payments ever touch the U.S. financial system.

Rather than identifying any evidence that the Palestinian payments at issue in this case "transit through the United States," Plaintiffs instead rely on a two-decades-old case addressing payments made by an unrelated defendant long before passage of the PSJVTA.  *See* Pls.' Br. at 34 (discussing *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005)).  The payments at issue in *Linde* were made by a Saudi charity, and were converted from Saudi Riyals to U.S. dollars in New York, before they were transferred to bank accounts in the West Bank.  384 F. Supp. 2d at 577-78.  The payments were not made or controlled by the PA or PLO, and pre-dated the PSJVTA's effective date by two decades.  The undisputed record in this case demonstrates that, in contrast to *Linde*, the payments at issue here occur entirely in Palestine, do not require the use of U.S. correspondent accounts as intermediaries, and are denominated in New Israeli Shekels, not dollars.[6]

---

[6] To the extent Plaintiffs have introduced this "transiting through the U.S. financial system" theory in an attempt to reargue specific jurisdiction, any such argument is foreclosed by the D.C. Circuit's mandate.  When the D.C. Circuit remanded this case for reconsideration in light of the passage of the PSJVTA, it expressly "reinstated" its prior holdings regarding "general jurisdiction, specific jurisdiction, and discovery."  *See* Judgment, *Klieman v. Palestinian Auth.*, No. 15-7034 (D.C. Cir. Aug. 18, 2020).  Plaintiffs' unsupported and inaccurate speculation that the payments pass through the U.S. financial system is also insufficient to support their implicit request for additional discovery.  *See Nyambal v. IMF*, 772 F.3d 277, 281 (D.C. Cir. 2014) ("mere conjecture and surmise" are insufficient to support jurisdictional discovery); *Triple Up Ltd. v. Youku Tudou Inc.*, No. 17-7033, 2018 WL 4440459, at *3 (D.C. Cir. July 17, 2018) (rejecting request for jurisdictional discovery that was "nothing more than a jurisdictional theory in search of facts to go with it").

Finally, Plaintiffs' argument that the PSJVTA does not impose any new "punishment" on Defendants because the alleged "martyr payments" are already prohibited by the Taylor Force Act (*see* Pls.' Br. at 21-22) again confuses prescriptive and adjudicative jurisdiction.  *See* Defs.' Opening Br. at 27-28.  Although Congress may deploy its jurisdiction to prescribe laws by passing statutes like the Taylor Force Act prohibiting foreign aid if Defendants continue to make such payments, that prescriptive authority does not answer the separate question whether Congress can impose *jurisdiction to adjudicate* over Defendants in civil suits in U.S. courts.  In other words, Congress's authority to regulate foreign conduct under its jurisdiction to prescribe does not equally establish jurisdiction to adjudicate, which "is activated only when there is personal jurisdiction" under due process standards.  *Laker Airways v. Sabena*, 731 F.2d 909, 923 (D.C. Cir. 1984).

### 2.      The U.S. Activities Relied Upon by Plaintiffs Fail to Demonstrate Implied Consent to Personal Jurisdiction.

Plaintiffs' allegations regarding Defendants' activities in the United States are also insufficient to establish knowing and voluntary consent to jurisdiction.  Plaintiffs repeat the same arguments rejected by the district courts in *Fuld*, *Sokolow*, and *Shatsky*, asserting that Defendants consented to jurisdiction by "send[ing] diplomats to American college campuses" and advocating the Palestinian cause through press conferences and social media posts.  *See* Pls.' Br. at 15.  Such conduct does not support a "meaningful inference … that Defendants intended to submit … to the jurisdiction of an American court," because the courts have consistently held that the same conduct does *not* support the exercise of personal jurisdiction under the Due Process Clause.  *Fuld*, 578 F. Supp. 3d at 587; *see also Sokolow*, 607 F. Supp. 3d at 326.  As Defendants explained in their opening brief, under longstanding pre-PSJVTA judicial holdings uncontested by the Government, these diplomatic activities are exempt from jurisdictional consideration due to the UN

Headquarters Agreement, which obligates the United States to "refrain from impairing the function" of Palestine's UN Mission.  *See* Defs.' Opening Br. at 30 n.16, 35-43.

Plaintiffs' argument that such activities nonetheless may give rise to implied consent to jurisdiction stems primarily from their mistaken belief that Defendants are otherwise permitted to operate in the United States.  Plaintiffs assert that "[i]nspection of the PA and PLO's course of conduct reveals that they have long accepted the bargain: license from the United States government to operate in the U.S. in exchange for exposure to jurisdiction over lawsuits for their attacks on American citizens."  Pls.' Br. at 28.  But as noted above, this description of Defendants' "course of conduct" is simply wrong—with the exception of UN-related activities (which are governed by the UNHQA and cannot serve as a basis for jurisdiction under pre-PSJVTA case law), Defendants have *not* been permitted to operate in the United States since well before passage of the PSJVTA.  *See supra* at 12-14.

As a result, the only activities in which Defendants currently engage while in the United States are those related to the work of Palestine's UN Mission.  And as every other court to consider the issue has held, those limited activities are simply "too thin to support a meaningful inference of consent to jurisdiction in this country" because they do not "even remotely signal[] approval or acceptance of the Court's jurisdiction."  *Fuld*, 578 F. Supp. 3d at 587.

## II.    The Judiciary, Not Congress, Must Decide Whether Defendants' Conduct Demonstrates Knowing and Voluntary "Consent" to Personal Jurisdiction.

The PSJVTA violates the doctrine of separation of powers by directing courts always to "deem" that Defendants have consented to jurisdiction if the statute's factual predicates are met—regardless of whether those predicates satisfy the Due Process Clause.  The Government concedes that, in applying the "deemed consent" provisions of the PSJVTA, the judiciary still must assess "whether the facts show consent was knowing and voluntary."  Gov't Br. at 17-18.  But,

respectfully, that is exactly the problem: the PSJVTA mandates that courts *always must* "deem" Defendants to have "consented" to jurisdiction merely by engaging in specified activities, *regardless* of whether those activities independently support a presumption of knowing and voluntary consent.  As the Government acknowledges, the validity of Defendants' purported consent is a matter for the judiciary, not the legislature.  By mandating that Defendants shall be "deemed" to have "consented" any time they engage in the specified activities, Congress improperly usurped the judicial function.

Plaintiffs, on the other hand, all but concede a separation-of-powers violation.  Throughout their brief, Plaintiffs repeatedly assert that the PSJVTA was designed to "restore" the "pre-*Daimler* status quo" and the "jurisdictional landscape of 1992-2014 for terrorism cases," and to remedy the "disrupt[ion]" caused "by *Goodyear/Daimler*."  *See* Pls.' Br. at 1, 20, 22, 28.  The problem, of course, is that *Daimler* and *Goodyear* are constitutional holdings of the Supreme Court, which establish the basic constitutional requirements for a federal court to exercise personal jurisdiction under the Due Process Clause.  Such decisions cannot be undone by legislation without violating separation of powers.  *See Marbury v. Madison*, 5 U.S. (1 Cranch.) 137, 177 (1803) (permitting Congress to supersede the Court's constitutional holdings by legislative fiat would make the Constitution, "like other acts … alterable when the legislature shall please to alter it," in violation of separation of powers).

Plaintiffs also attempt to defend the PSJVTA by invoking *Bank Markazi v. Peterson*, 578 U.S. 212, 230-32 (2016), where the Court upheld a statute that imposed "a new legal standard" governing which types of assets owned by Iran were available for execution on a judgment.  *Bank Markazi* explained, however, that the statute was permissible because it merely changed substantive law; it neither interfered with the judiciary's ability to interpret the law nor altered

constitutional standards.  *Id.* at 225-26, 228 n.19 (Congress cannot act "in a way that requires a federal court to act unconstitutionally").  Driving home that point, the Court in *Bank Markazi* held that Congress is "powerless to prescribe" laws that dictate functions assigned by the Constitution to other branches of the government.  *Id.* at 228.  The application of constitutional due process standards is assigned exclusively to the Judicial Branch.  *See Livnat*, 851 F.3d at 56 ("congressional interests may be relevant to whether personal jurisdiction comports with due-process standards," but "they cannot change the standards themselves").

The PSJVTA, on the other hand, impermissibly usurps the judiciary's ability to interpret and apply the law by mandating that a court must always find "consent" in certain circumstances, regardless of whether those circumstances satisfy the constitutional standards for consent.  The PSJVTA thus divests the federal judiciary of its independent role in determining whether consent is "knowing and voluntary" under the Due Process Clause, in violation of separation of powers.

## III.    The Government's Purported Distinction Between Facial and As-Applied Challenges Does Not Affect the Result in This Case.

The Government attempts to defend the constitutionality of the PSJVTA by arguing the statute is not "facially" invalid.  *See* Gov't Br. at 1, 4, 14, 18.  Without addressing the facts of this case,[7] the Government asserts the PSJVTA is constitutional because "consent provided by the PSJVTA *can be* knowing and voluntary," and the statute "provides *the opportunity* for knowing and voluntary consent."  *Id.* at 4, 9 (emphasis added).  That argument, however, does not affect the result in this case.  Because the specific conduct relied upon by Plaintiffs in this case— payments allegedly made in Palestine and Defendants' limited UN-related activities in the United States—cannot give rise to valid "consent" to personal jurisdiction under the Due Process Clause,

---

[7] As noted above, the Government "takes no position" on whether the PSJVTA provides valid consent to jurisdiction as applied in this case.  *See* Gov't Br. at 1, 2 n.1.

the PSJVTA is unconstitutional as applied to Defendants in this case.  This Court need not go

further and address the facial validity of the statute.  *See Fed. Election Comm'n v. Wisconsin Right*

*to Life, Inc.*, 551 U.S. 449, 482, (2007) (Alito, J. concurring) ("because [the statute] is

unconstitutional as applied to the advertisements before us, it is unnecessary to go further and

decide whether [the statute] is unconstitutional on its face").

With respect to the U.S. Activities Predicate, Defendants have argued "*[t]he conduct relied*

*upon by Plaintiffs in this case* does not satisfy" the standard for implied consent, limiting

Defendants' argument to the particular activities alleged.  Defs.' Opening Br. at 28-29; *see also*

*id.* at 32 (explaining "Defendants' limited activities in the United States" do not support an

inference of consent to personal jurisdiction).  Accordingly, this Court need not determine whether

*any* conceivable activities satisfying the U.S. Activities Predicate could *ever* provide a basis for

the constitutional exercise of personal jurisdiction.  Rather, it is enough for purposes of this case

that the U.S. activities as alleged here are "too thin to support a meaningful inference of consent

to jurisdiction in this country," as they are unrelated to the claims at issue and do not "even

remotely signal[] approval or acceptance of the Court's jurisdiction." *Fuld*, 578 F. Supp. 3d at

587.[8]

The same is also true with respect to the Payments Predicate: for all the reasons described

in Section I-C-1 above, the alleged payments relied upon by Plaintiffs in this case cannot

---

[8] Contrary to the Government's assertions (*see* Gov't Br. at 18), courts in lookalike cases have found the PSJVTA unconstitutional <u>as applied</u> to the facts of the case. *See, e.g., Fuld*, 578 F. Supp. 3d at 587 ("Measured against these standards, the PSJVTA does not constitutionally provide for personal jurisdiction over Defendants <u>in this case</u>."); *id.* ("the conduct (<u>at least as alleged in this case</u>) is too thin to support a meaningful inference of consent to jurisdiction"); *id.* ("Neither form of conduct, <u>as alleged in this case</u>, even remotely signals approval or acceptance of the Court's jurisdiction …..") (emphases added).

constitutionally give rise to knowing and voluntary consent to personal jurisdiction by Defendants. *See supra* at 15-19; *see also* Defs.' Opening Br. at 26-28.

The parties' arguments regarding the Payments Predicate may be more amenable to facial consideration, as Defendants can envision no scenario in which welfare payments made by the Palestinian government entirely outside the United States, under a program of general applicability under Palestinian law, and without the involvement of any U.S. entity, could ever provide a constitutional basis for "deeming" that Defendants have "consented" to personal jurisdiction in the United States.[9]  But the Government greatly overstates the significance of the "facial" and "as-applied" labels, which the D.C. Circuit has repeatedly held do not affect the substantive result.  *See Hodge v. Talkin*, 799 F.3d 1145, 1156 (D.C. Cir. 2015) ("The distinction between facial and as-applied challenges is not so well defined that it has some automatic effect." (quotation omitted)); *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 509 n.5 (D.C. Cir. 2016) (holding party's characterization of "facial" or "as-applied" challenge is not determinative); *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1128 (2019) (noting "[t]he line between facial and as-applied challenges can sometimes prove 'amorphous'" and "invites pleading games"); *Am. Ass'n of Cosmetology Sch. v. DeVos*, 258 F. Supp. 3d 50, 66 n.6 (D.D.C. 2017) ("often the as applied/facial dichotomy represents nothing more than a distinction without a difference" (quotation omitted)).

---

[9] Defendants' separation of powers argument does present a facial challenge to the statute. Defendants argue the PSJVTA violates separation of powers by directing courts to *always* find consent if its factual predicates are met, regardless of whether Defendants' conduct satisfies the constitutional standard for consent under the Due Process Clause.  *See* Defs.' Opening Br. at 43-44.  Defendants can envision no set of circumstances in which Congress's usurpation of the judicial role in this manner would be constitutional.

The Government's argument that, in different circumstances, consent to jurisdiction under the PSJVTA *could* be knowing and voluntary does not change the fact that, on the facts as alleged here, Defendants did *not* knowingly and voluntarily consent to jurisdiction. This Court need go no further to conclude that the PSJVTA violates the Due Process Clause as applied to Defendants in this case.

<u>**CONCLUSION**</u>

This Court should join the district courts in *Sokolow*, *Fuld*, and *Shatsky*, and hold that the PSJVTA is unconstitutional as applied to the PA and PLO in this case.

Date:   July 21, 2023                              Respectfully submitted,

*/s/ Gassan A. Baloul*
Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendants*

- 25 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 21, 2023, I caused a true and correct copy of the foregoing Reply Brief Regarding the Constitutionality of the PSJVTA to be served on all counsel of record in this action through the Court's CM/ECF System.

<u>/s/ *Gassan A. Baloul*</u>
Gassan A. Baloul