UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ESTATE OF ESTHER KLIEMAN, et al.,

                  Plaintiffs,

v.

THE PALESTINIAN AUTHORITY, et al.,

                  Defendants.

Civil Action No. 04-1173 (PLF)

**DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING *MALLORY***

The Supreme Court's recent decision in *Mallory v. Norfolk Southern Railway Co.*, 143 S. Ct. 2028 (2023), reaffirms that *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee* ("*Bauxites*"), 456 U.S. 694 (1982), provides the appropriate framework for evaluating knowing and voluntary consent to personal jurisdiction. Applying that framework, *Mallory* held that business registration statutes create valid consent when they ask out-of-state corporations to consent to personal jurisdiction "in exchange for status as a registered foreign corporation and the benefits that entails." 143 S. Ct. at 2033. Plaintiffs and the Government ignore *Mallory*'s focus on both *Bauxites* and the choice made by Norfolk Southern to accept the offered benefits in exchange for consent to jurisdiction. Plaintiffs also present several unsupported factual and legal theories, unrelated to *Mallory*, in support of jurisdiction, which this Court should reject. They then use those new theories to justify yet another request for more jurisdictional discovery—though they still rely on nothing but speculation.

I. *Mallory* **Confirms the Due Process Standards for Implied Consent to Personal Jurisdiction Established in *Bauxites*.**

Despite their separate opinions, all nine Justices agreed that *Bauxites* provides the due process framework to evaluate whether "'actions of the defendant … amount to a legal submission to the jurisdiction of the court.'" *Mallory*, 143 S. Ct. at 2039, 2044 (plurality op.); *id.* at 2045-46 (Jackson, J., concurring); *id.* at 2048, 2051 (Alito, J., concurring in part); *id.* at 2057 (Barrett, J., dissenting) (each citing *Bauxites*). *Bauxites* distinguishes between valid "consent" to jurisdiction and "mere assertions of power" by the forum to impose jurisdiction. *See* Def. Br. (DE 342) 18-19 (quoting *Bauxites*). As Defendants argued from the beginning, *id.* at 22-23, registration statutes exemplify valid implied consent under the standard established in *Bauxites*: when a defendant files registration forms pursuant to a state statute and accepts the benefit of "doing business in the state," that defendant freely and voluntarily accepts the conditions the forum places on such activities.

Plaintiffs claim *Mallory* held that any legislatively-specified conduct can create implied consent <u>regardless</u> of whether it reflects acceptance of a benefit conditioned on submission to jurisdiction, or conduct otherwise sufficient to support a jurisdictional finding. *Mallory* says no such thing. *Mallory* applied the "exchange-of-benefits" theory discussed in Defendants' brief (*see* Def. Br. 23-25), explaining courts may infer "consent" from the defendant's choice to accept a benefit "with jurisdictional strings attached." 143 S. Ct. at 2044. States thus may ask out-of-state corporations to consent to personal jurisdiction "<u>in exchange for</u> status as a registered foreign corporation and the <u>benefits</u> that entails." *Id*. at 2033 (emphasis added). Indeed, *Mallory* is clear that "state laws requiring consent to suit <u>in exchange for</u> access to [the State's] markets" are one of "a variety of legal arrangements" under *Bauxites* that can give rise to implied consent to jurisdiction. *Id.* at 2041 n.8; *id.* at 2041 (the statute "gave the company the right to do business in-state <u>in return for</u> agreeing to answer any suit against it," and "the company had <u>taken full advantage</u> of its opportunity to do business in the Commonwealth" (emphases added)).

By accepting the invitation to register in Pennsylvania, the Court explained, Norfolk Southern agreed to "both the benefits and burdens shared by domestic corporations"—including consent to jurisdiction in the State. *Id*. at 2037. In fact, the plurality went into great detail to demonstrate that Norfolk Southern's specific actions—registering to do business in Pennsylvania under the state statute and "tak[ing] full advantage" of the benefits it entailed by hiring nearly 5,000 employees, maintaining 2,400 miles of track, and spending over $1 billion—were sufficient to support the presumption it had submitted to personal jurisdiction. 143 S. Ct. at 2041-42.

Plaintiffs ignore that language and focus on the portion of the plurality opinion that discusses ways a defendant may submit to jurisdiction ("its decision to file a piece of paper" to incorporate in a particular state, failing to contest jurisdiction, ignoring court orders, traveling to a

state, or signing a contract with a forum selection clause (143 S. Ct. at 2044)). *See* Pl. Supp. Br. 2-3. But those examples involve express consent, benefits conditioned on consent, litigation conduct with jurisdictional significance, or "tag" (not "consent") jurisdiction. None involved legislation imposing deemed jurisdictional consent to deter disfavored conduct—the scenario of both the PSJVTA and the statute in *College Savings Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666 (1999).

The Government also argues that *Mallory* means that legislation may specify conduct to create deemed consent "even if that same conduct would not otherwise be enough to establish specific or general personal jurisdiction." Gov't Supp. Br. 2. This reading ignores not only the benefit accepted by Norfolk Southern in exchange for its consent, but also *Mallory*'s embrace of *Bauxites*, which requires that the "nature" of the defendant's conduct must be capable of "supporting a jurisdictional finding." *See* Def. Reply 1, 6 (quoting *Volkart Bros. v. M/V Palm Trader*, 130 F.R.D. 285, 289 (S.D.N.Y. 1990) (applying *Bauxites*)). Consent cannot be inferred from conduct that, as here, has been adjudicated to lack jurisdictional import. *Id.* at 15-20.

*Mallory* does not cite, let alone purport to reject, *College Savings*, whose standard for distinguishing consent from legislatively-imposed jurisdiction is fully in line with *Bauxites*. *Contra* Gov't Supp. Br. 2. *Mallory* involved the acceptance of an in-forum benefit conditioned on consent to suit in Pennsylvania, while *College Savings* involved no benefit but rather legislatively-imposed jurisdiction on Florida to punish conduct that Congress wanted to curtail. *College Savings* thus presents a "fundamentally different" case from one involving the acceptance of a "gratuity" conditioned on consent. 527 U.S. at 686-87. Both cases are consistent with *Bauxites*, 456 U.S. at 705-06, which distinguished between actual consent and jurisdiction imposed as "punishment."

**II.     This Court Should Reject Plaintiffs' Attempts To Reargue the PSJVTA.**

Plaintiffs improperly present new theories, unrelated to *Mallory*, in support of jurisdiction. They argue that Defendants accepted the benefit of a "continued presence inside the United States" and advance a new theory that it "is the *Sovereign* that confers the benefit, not the *statute*." Pl. Supp. Br. 3.  These examples of Defendants' U.S. "presence" are incorrect and Plaintiffs' new theory of sovereignty does not apply to the PSJVTA.

Plaintiffs first point to a DOJ opinion that the 1987 Anti-Terrorism Act cannot constitutionally prevent the Executive from engaging in diplomacy with the PLO.[1]  As such, the DOJ explains, the 1987 ATA could not constitutionally prohibit the PLO from spending funds on "lodging, food, and transportation" during diplomatic visits to the United States when invited by the Executive.  2022 DOJ Op. at 2.  Plaintiffs' reliance on this opinion makes little sense, as DOJ was opining on a constitutional limitation on Congressional power—not any benefit provided to the PLO.  *Id*.  Indeed, the PSJVTA already accounts for that constitutional limit by providing that jurisdiction cannot be based on "any activity undertaken exclusively for the purpose of meetings with officials of the United States."  18 U.S.C. § 2334(e)(3)(D).[2]  Diplomatic visits with Executive Branch officials, as claimed by Plaintiffs, qualify as "meetings with officials of the United States." Nor can the PSJVTA be read as an implied waiver of the 1987 ATA for such diplomatic visits. Def. Reply 12.  The law of this case requires that any waiver of the 1987 ATA be expressly made by Executive Order.  *Estate of Klieman v. Palestinian Auth*., 923 F.3d 1115, 1130 (D.C. Cir. 2019).

More fundamentally, the PSJVTA does not provide <u>notice</u> to Defendants that diplomacy with the United States can imply consent to personal jurisdiction.  Notice is a due process necessity

---

[1] *Application of Anti-Terrorism Act of 1987 to Diplomatic Visit of Palestinian Delegation*, 46 Op. O.L.C. __, slip op. (Oct. 28, 2022) ("2022 DOJ Op.").
[2] Section 2334(e)(3)(F) covers "any personal or official activities conducted ancillary to activities listed under this paragraph," which certainly includes lodging, food, and transportation.

- 4 -

for "knowing" jurisdictional consent. Plaintiffs read the "knowing", and thus "notice", requirement out of due process by arguing that U.S. diplomatic visits create a surprise basis for jurisdiction if Palestinian officials expend funds on food or lodging. The 2022 DOJ opinion (Pl. Supp. Br. 3) gives no such notice; indeed, it does not mention personal jurisdiction or the PSJVTA. Even under the Government's formulation, due process requires at least "fair warning" (Gov't Supp. Br. 1), and the PSJVTA provides no such warning.

Second, Plaintiffs claim that Defendants' "U.S.-based notary activities" create jurisdiction. *See* Pl. Supp. Br. 3. But the decision that Plaintiffs cite held that "the notarization of documents" was "<u>insufficient</u> to support any meaningful consent." *Sokolow v. PLO*, 607 F. Supp. 3d 323, 326 (S.D.N.Y. 2022) (emphasis added). Those state-licensed notaries do not act on Defendants' behalf when they send documents to PLO consulates in Canada and Mexico. *Sokolow*, Def. Opp., Doc. 1064, at 15-18 (S.D.N.Y. Apr. 29, 2022). When deposed, the notaries denied having authority to act for, or receiving compensation from, Defendants. *Id*. Equally important, the DOJ—which enforces 1987 ATA prohibitions on PLO activity in the United States, 22 U.S.C. §§ 5202-03—has never asserted that these notaries are Defendants' agents. This issue does not implicate *Mallory*.

Third, Plaintiffs claim that Defendants' UN Mission "is a gratuity from the United States Government." Pl. Supp. Br. 3. But courts have long held that the UN Mission is protected and limited under the United Nations Headquarters Agreement ("UNHQA") and does <u>not</u> depend on U.S. government authorization. *See U.S. v. PLO*, 695 F. Supp. 1456, 1464-71 (S.D.N.Y. 1988); Def. Reply 19-20. Nor does the U.S. government claim that Defendants' activities exceed UNHQA bounds, despite DOJ authority (*supra*) to enjoin activity exceeding those bounds. To the contrary, the 2022 DOJ opinion agrees that Palestine's UN Mission operates under the rights granted to the United Nations under the UNHQA—not on U.S. government sufferance or gratuity.

2022 DOJ Op. at 4 n.4.  Statutory authority to regulate the size and location of UN missions, 22 U.S.C. § 4309a(a)(1)(B), does not negate the UNHQA or give the U.S. the right to "expel" (*see* Pl. Supp. Br. 3) Palestine's UN Mission.  *See U.S. v. PLO*, 695 F. Supp. at 1464-71.

In the end, Plaintiffs' statement that "it is the *Sovereign* that confers the benefit, not the *statute*" (Pl. Supp. Br. 3) makes no sense.  The United States speaks through its three co-equal branches, and no branch presently offers any benefit to Defendants that is conditioned on accepting personal jurisdiction.  Def. Reply 12-20.  Unlike its predecessor statute, the Anti-Terrorism Clarification Act, the PSJVTA does not ground "deemed consent" on acceptance of foreign assistance or an express waiver of the ATA's prohibitions.  *See* Def. Br. 7-8.  The PSJVTA thus falls outside the "exchange-of-benefits" line of cases reaffirmed by *Mallory*, which hinge on the defendant "accepting an in-[forum] benefit with jurisdictional strings attached." 143 S. Ct. at 2044.

Nothing in *Mallory* suggests the Court would accept deemed consent if the defendant had not accepted any benefit or engaged in other conduct capable of supporting a jurisdictional finding under *Bauxites* (Def. Reply 1, 6).  143 S. Ct. at 2038 ("To decide this case, we need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit.").

**III.   *Mallory* Does Not Change the Analysis of the PSJVTA's Factual Predicates.**

Finally, this Court should reject Plaintiffs' attempt to use the factual claims above to argue for additional jurisdictional discovery.  As explained previously, their speculation cannot justify further discovery.  *See* Def. Reply 17-18, citing *Nyambal v. IMF*, 772 F.3d 277, 281 (D.C. Cir. 2014) ("mere 'conjecture and surmise'" are insufficient); *Triple Up Ltd. v. Youku Tudou Inc.*, No. 17-7033, 2018 WL 4440459, at *3 (D.C. Cir. July 17, 2018) (rejecting discovery based on "nothing more than a jurisdictional theory in search of facts to go with it").  Like the other courts to address the PSJVTA, this Court should decide the constitutional issues on the ample existing record.

- 7 -

Dated: August 14, 2023

Respectfully submitted,

*/s/ Gassan A. Baloul*
Gassan A. Baloul (DC Bar 1034245)
gassan.baloul@squirepb.com
Mitchell R. Berger (DC Bar 385467)
mitchell.berger@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, I caused a true and correct copy of the foregoing Supplemental Brief Regarding *Mallory* to be served on all counsel of record in this action through the Court's CM/ECF System.

/s/ *Gassan A. Baloul*
Gassan A. Baloul
