```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

ESTATE OF ESTHER KLIEMAN, et al.,
                                        Civil Case
                 Plaintiff(s),          No. 04-1173 PLF
          v.
                                        Washington, D.C.
PALESTINIAN AUTHORITY, et al.,
                                        December 12, 2025
                 Defendant(s).

-----------------------------------------------------------

                      STATUS CONFERENCE
            BEFORE THE HONORABLE PAUL L. FRIEDMAN
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S):   Richard D. Heideman, Esquire
                        Noel J. Nudelman, Esquire
                        Tracy Reichman Kalik, Esquire
                        Joseph Tipograph, Esquire
                        Heideman, Nudelman, Kalik, PC
                        5335Wisconsin Avenue Northwest
                        Suite 440
                        Washington, D.C. 20015

                        Edward B. MacAllister, Esquire
                        Perles Law Firm, PC
                        816 Connecticut Avenue Northwest
                        12th Floor
                        Washington, D.C. 20036


FOR THE DEFENDANT(S):   Mitchell R. Berger, Esquire
                        Amy Brown Doolittle, Esquire
                        Squire, Patton, Boggs, LLP
                        2550 M Street Northwest
                        Washington, D.C. 20037


REPORTED BY:            Tammy Nestor, RMR, CRR
                        Official Court Reporter
                        333 Constitution Avenue Northwest
                        Washington, D.C. 20001
                        tammy_nestor@dcd.uscourts.gov
```

The following proceedings began at 2:05 p.m.:

THE COURTROOM DEPUTY:  This is Civil Action 04-1173, Estate of Esther Klieman, et al., versus the Palestinian Authority, et al.

Counsel, please approach the podium and state your appearances for the record.

MR. HEIDEMAN:  May it please the Court.  Richard Heideman is my name.  I am lead counsel for the Klieman family in this case.

With me at counsel table are Noel J. Nudelman, Tracy Reichman Kalik, and also Joseph H. Tipograph of our firm, and in addition, Edward MacAllister of the Perles Law Firm, who is our co-counsel since the beginning of this case. Thank you, Your Honor.

THE COURT:  Good afternoon, all.

MR. BERGER:  Good afternoon, Your Honor.  Mitchell Berger from Squire, Patton, Boggs, with my colleague Amy Brown Doolittle, for the defendants.

THE COURT:  Good afternoon.

So it's been a while since we all have been together.

Let me -- I think I understand some of where we are but not all of where we are.  You don't agree on everything. You do agree on some things.

I think, first of all, we are really here on two cases, Civil Action 04-1173 and Civil Action 18-3013.  They

are both entitled Klieman versus PLA and PLO.  And one of you, I guess the defendants, thinks that they are totally duplicative and they shouldn't both be still alive and well.

Just to review, way back when, my great friend, now retired, Magistrate Judge John Facciola, I referred the case to him for management of discovery.  And go back and look at dockets 91, 92, 93 and then, to show you how old the case is, docket 226.

The idea originally, and there's some language, that we would have fact discovery first and then expert discovery.

And one of the questions between the two of you is whether we move on to expert discovery when fact discovery is over or whether we move to summary judgment first.

It was back and forth between me and the D.C. Circuit.  And the late great, and I mean this sincerely, Judge Stephen Williams, wrote an opinion for the circuit discussing the Promoting Security and Justice for Victims of Terrorism Act of 2019.

It turns out he and I got it wrong according to the chief justice.

So after Judge Williams' opinion, it went to the Supreme Court.  And after lots of twists and turns and decisions by the Second Circuit in Fuld, the Supreme Court decided Fuld versus PLO, 135 Supreme Court 2090, June 20,

2025.

And it seems to me that after Fuld, one of the motions before me is moot.  And tell me if you disagree unless I have already decided it's moot.  But the motion for jurisdictional discovery, it seems to me, is moot because the Supreme Court in Fuld says that I have jurisdiction.  You can correct me if I'm wrong.

The second question is factual discovery and fact discovery.  And the plaintiff thinks there is more factual discovery to be done, and the defendants think that factual discovery is over and we should move right to summary judgment.

And then the question of expert discovery, the plaintiffs think that we should move on to expert discovery because of some language in docket 91 by Judge Facciola.  The defendant is saying no, we should do summary judgment first.

And then there's the question of the second Klieman case, whether it should be dismissed, whether it should be stayed, what should happen to it.  That's 18-3013.

I will say where my preliminary thinking is.  On question number one, I think we don't need jurisdictional discovery.  I can deny the motion as moot because of Fuld.  Question number -- the third thing I raised, I guess, expert discovery, should it follow -- let me put it a different

way.  What should follow the conclusion of fact discovery, expert discovery or motion for summary judgment?  And in my view, it should be a motion for summary judgment because the question on summary judgment is whether there are genuine issues of material fact, and experts don't matter.

On the question of fact discovery, whether it's been completed or not and what more is left, I don't know the answer to that.  There was this one opinion by Judge Facciola requiring disclosure of some document that's very central in the view of some and very sensitive in the view of some.  And there was a motion to reconsider filed before Judge Facciola, and I guess there were also objections filed before me.  But while he was reconsidering, I wasn't doing anything about the objections.  And I don't think he ever resolved it, but I may be wrong.

So that's sort of where I think I am, which is no need for jurisdictional discovery.  Let's not do expert discovery.  Let's do summary judgment if and when fact discovery is closed.  The question in my mind, although you are free to discuss anything you want, is where we stand on fact discovery and where we stand on objections to Judge Facciola's January 2014 order.

So who wants to go first?

MR. MacALLISTER:  Thank you, Your Honor.  Edward MacAllister for the plaintiffs.  May it please the Court?

THE COURT:  Yes, sir.

MR. MacALLISTER:  On the question of jurisdictional discovery, we agree with Your Honor, the motion to compel jurisdictional discovery is moot, and we agree with the defendants.  I think we put that in our joint status report.

On the second question for expert discovery, we think we should proceed to expert discovery after the close of fact discovery because that's the way cases normally go.  The scheduling order was signed by Your Honor.  That's docket 91.  But we can be ready to go for expert discovery very soon.  We have our experts lined up and ready to go.  An expert opinion with proper facts can, in fact, create a genuine issue of material fact as long as it meets the requirements of the rule.

THE COURT:  Say that again.

MR. MacALLISTER:  An expert opinion, as long as it relies on facts, can create a genuine issue of material fact as long as it meets the requirements of Rule 56.

Lastly, Your Honor, in terms of fact discovery, when Judge Facciola issued his order, the defendants then filed a motion for reconsideration, which was fully briefed.  And at the same time, Your Honor filed a minute order on January 22, 2014 which granted the defendants' unopposed motion to expand the time to file Rule 72 objections.  So that deadline is extended to 14 days after the -- after

Judge Facciola were to rule on the motion for reconsideration.

THE COURT:  Which has not happened.

MR. MacALLISTER:  Which has not happened.

And additionally, Your Honor ruled that all pending motions were moot when Your Honor signed the motion -- granted the motion for reconsideration on the basis of personal jurisdiction.  So technically the motions are moot.  And we have Judge Facciola's order there.

So there's just a procedural question of what happens with the defendant's motion for reconsideration or Rule 72 objections from the parties.  That's a very technical procedural question.

THE COURT:  Yeah, that's a technical question.  The real question is -- I guess the two questions are, is fact discovery done and should we do expert discovery now or after summary judgment?

So where are you on the question of whether fact discovery is done?

MR. MacALLISTER:  Your Honor, after Judge Facciola's order is resolved, then fact discovery will be over.

THE COURT:  Okay.  We need to resolve --

MR. MacALLISTER:  It's a very important issue.  We meet the Rule 26 test, relevance and proportionality.  I think that's an easy win for us.  It's a very -- those files

go right to the heart of the case.

THE COURT:  So essentially, you are referring to Judge Facciola's order, you are referring to docket -- the last paragraph of docket 226 --

MR. MacALLISTER:  226, that's right, Your Honor.

THE COURT:  -- where he says, I ask defendants to now deem document request No. 16 to include a request for all documents in their possession, custody, or control which discuss any payments to families of persons denominated as martyrs and include the words Al Aqua.  Responsive documents shall be provided within 30 days.

And that never happened because of other events?

MR. MacALLISTER:  Yes, Your Honor.

And then in terms of expert discovery, Your Honor, we would propose that expert disclosures with reports would be due on February 28 and then counter reports, 30 days after and then 60 days for the parties to complete expert depositions.  And expert discovery will be closed by May 29.

THE COURT:  All right.

MR. MacALLISTER:  Thank you, Your Honor.

MR. BERGER:  Good afternoon again, Your Honor. Mitchell Berger.

Your Honor had two questions.  Is fact discovery done?  Let me start there.  The answer is it certainly should be.  Discovery was extended nine times in this case

over the course of five years.  The plaintiffs propounded 93 requests for production.

THE COURT:  If I understood him correctly, the only fact discovery he's talking about is the last paragraph of docket 226.

MR. BERGER:  Let me deal with that then because I wrote down what Mr. MacAllister said, and then I have a suggestion on how to handle it.

He said this discovery goes right to the heart of the case.  Your Honor, I know you have read our position statement in the joint status report.  There's not a single one of those seven words that's legally correct.

Documents that are martyr files that have nothing to do with the attack at issue here that simply mention the words Al Aqsa don't support any relevant theory of liability.  The Supreme Court, when it wasn't busy addressing jurisdiction in Fuld, also addressed the requirements in the Twitter versus Taamneh case for secondary liability, which is really what their claim says.

It says there has to be a discernable nexus to the attack at issue.  They don't even -- Judge Facciola also, likewise, someone I revere, didn't have to operate with that substantive standard.  He was also operating with the pre-2015 discovery standard, which is or may lead to admissible evidence.

Both the substantive law and the procedural law have moved on.  But the substantive law --

THE COURT:  How has the substantive law moved on?

MR. BERGER:  Because Twitter versus Taamneh --

THE COURT:  Pardon me?

MR. BERGER:  Twitter versus Taamneh, the Supreme Court's decision which was followed by the D.C. Circuit in the Amazon versus Department of Agriculture case says that to make a case of aiding and abetting, and Twitter versus Taamneh is an anti-terrorism case, Amazon versus Agriculture followed it just generally, says that in a case involving alleged support for a terrorist attack, the plaintiffs have to prove a discernible nexus between the defendants' alleged facilitated acts and the actual attack in question.

Now, there's nothing in the 45,000, 50,000 martyr files that have nothing to do with this attack that simply might mention Al Aqsa that have a discernible nexus to this attack.

And so that theory can't be supported as a factual matter by making us dig through literally tens of thousands of martyr files, which are not digitized, to see if they mention Al Aqsa.  We've already produced long ago all the files having to do with this attack and the individuals who received prisoner payments with respect to this attack.  This is truly a fishing expedition.

Even Judge Facciola, before the Supreme Court changed the rules, said he was doing this only in an abundance of caution.  And while that was a noble impulse, the law has now overtaken abundance of caution rulings.  And if that weren't true as a matter of substantive law, it's true as a matter of post-2015 discovery, law which says proportionality.

So the question is, in a 21-year-old case, are we to be sent off to look through 40 or 50 thousand martyr files in Palestine that aren't digitized and to review them page by page to see if they contain a reference to Al Aqsa when none of those has anything to do with this attack.

Now, they will say to you, and I am trying to save Your Honor some time and maybe Mr. MacAllister some time, yeah, but, you know, it shows they supported the Al Aqsa Martyrs Brigade, and that supports primary liability because Al Aqsa Martyrs Brigade is a foreign terrorist organization.

Well, you have heard the phrase a day late and a dollar short.  It's a little more than that.  The Al Aqsa Martyrs Brigade wasn't designated until three days after the attack, so they can't pursue that theory of liability either.

And so what we have said and what we are suggesting is that if there were ever a case for which Rule 56(d) were invented, this is it.  It's purpose-built for our problem,

which is we have three pathways we can go.  We can go do all the discovery, but then we will make a Rule 72 objection to Judge Facciola's 12- or 13-year-old order.  That doesn't strike us as a good use of anybody's time.

The second is we make our motion for summary judgment where we frame the legal and factual issues, and they then get to file an affidavit in response under Rule 56(d) that says here's the discovery we still need, here's what we believe is discoverable, here's why it's relevant to the issues.

And, frankly, that fits both the factual issues and the expert issue if they can -- if they want to outline in an affidavit why they think the experts could possibly create a trial issue.

In fact, at least Your Honor won't be dealing with this on a blank slate.  You will know what we think the legal issues are and the factual issues.

And the third one, if we get there, and I'm simply trying to be helpful to the Court, it's not really what we want, which is, given that the substantive law has changed and given that the discovery law has changed, Your Honor could simply vacate ECF 226 and remand the issue to a different magistrate to take a fresh look at it under fresh law, and then we will know.

One obviously creates more work for this Court if we

file a motion for summary judgment and there's a 56(d) affidavit.  If I say 56(f), forgive me.  That's what it was when I started out, and they moved it to 56(d), but it's 56(d) that --

THE COURT:  56(d) is, yeah, when facts are unavailable to the opposing party.

MR. BERGER:  Right.  And there's well-developed law in the circuit about what they have to do.  It says it has to be an affidavit.  It has to address three factors.  But that would be better than taking counsel's representations that it goes right to the heart of the case.  They would have to do a bit more than that.  They would have to explain why, once we had framed the legal and factual issues, why they need these Al Aqsa martyr files, or, as I say, we can go back to a magistrate, which seems to me, rather than burdening Your Honor with Rule 72 objections of a 12- or 13-year-old order doesn't seems to make a lot of sense, we can get a new magistrate, we can put those issues back in front of the new magistrate.

THE COURT:  We have four new magistrates.

MR. BERGER:  I know.  When I was here, it was only three.  When I was in the U.S. Attorney's Office, it was only three, and so now it's four.  It's growing.  You've got four magistrates, and they are all very good.  I have already been in front of two or three of them.

Those strike us as the way forward.

There is, in candor, because there's a lot to dig through here, there's another order as well.  We also talk about that, I think, in our joint status report.

There are two loose ends in discovery.  One is ECF 226, which is the Al Aqsa Martyrs Brigade documents, and the other is third-party discovery from the British Broadcasting Corporation for the outtakes of a BBC documentary.  It's not discovery we are pursuing, but it's mentioned in plaintiffs' section of the joint status report at ECF 238.

They wanted the BBC to produce outtakes from a documentary on Yasser Arafat.  You know, my mother always said don't make comparisons, but if the AAMB discovery is attenuated, this one is attenuated on steroids.  So, you know, what are they going to prove on outtakes from a documentary --

THE COURT:  Has BBC ever been noticed or --

MR. BERGER:  Oh, they objected, and they filed an appeal to the circuit.  And then when Your Honor dismissed --

THE COURT:  Yeah, yeah.

MR. BERGER:  But those are the two loose ends.  And they are literally loose ends when we have already been in discovery for five years; 93 requests for production, 22

interrogatories, 102 requests for admission, 12 deponents over 14 days.  You know, enough is enough already.  It's time to get the show on the road either with a motion for summary judgment, which doesn't prejudice them because 56(d) protects their rights, or we should take these two loose ends and send them back to another magistrate for a fresh look.

Those are our respectful suggestions.

The last part is Your Honor's other question, expert discovery.

I probably defend these clients in a dozen Anti-terrorism Act suits, and the experts are the same usual suspects from one case to another.  They are what the circuit -- this circuit looked at in the Gilmore case that we have cited, which is experts who say grace over documents.  I said, you know, I looked at these documents, and these guys, they very badly did it.

That's exactly the stuff that was thrown out as inadmissible expert testimony in the Gilmore case, and that's an active issue in the Sokolov case right now back on remand in the Second Circuit.

They owe the Court some explanation of who their experts are and what they are going to say.  If it's that type of expert where the circuit law is already clear that that's not admissible, then let's not waste time on it

because it's expensive to do expert discovery.  But that they can address in a 56(d) affidavit too against the backdrop of fully developed legal and undisputed factual issues.  Those are, I think, our answers to the Court's two questions.

THE COURT:  The only thing that makes me sad about this status conference is that my friend Dick Hibey is no longer with us.

MR. BERGER:  Yes, you know, that's very sad.  We dealt with him in the Shatsky case that was in front of Judge Leon.  There are a number of people.  And on the defense case in one of those cases, Mark Rochon, he just passed away too.  It's all very sad stuff.

THE COURT:  Mark, was in his 80s, which used to seem old to me but doesn't anymore.  But poor Mark was not --

MR. BERGER:  No.  When they are younger than I am, Your Honor, it's chilling as well as sad.

All right.  Thank you, Your Honor.

MR. MacALLISTER:  Your Honor, may I respond?

THE COURT:  Yes, sir.

MR. MacALLISTER:  Thank you.  I just wanted to respond to defense counsel's arguments.  Under Twitter, Twitter did announce a slight modulation of the preexisting circuit case law under the ATA on secondary liability.  But Twitter also -- Twitter said that you can prove the nexus

either by showing a terrorist organization received funding for the very specific attack, and it doesn't have to be a lot of funding as long as it's going to the very specific attack, or if the defendant was funding the terrorist organization to a very large extent such that they did not even need to know about the specific attack.

There's two different ways for plaintiff to prove the nexus. So this case could be either, but we are not restricted to showing that the PA handed a gun to the shooter. We can also show that the PA directed sufficient material support to AAMB such that the nexus is satisfied. There's two different ways.

Secondly, defense counsel suggested that perhaps we could vacate Judge Facciola's ruling and assign it to a new magistrate, but if there are any issues with Judge Facciola's ruling, that can be addressed under Rule 72.

I think it's incredibly judicially inefficient to throw out what is a great order. And if Your Honor looks at the order, on page -- it's docket entry 226, page 3 to 5, Judge Facciola lists all of the documents that he had to review to come up with his solution. And it's quite a list. He was an expert on this case. He knew all the discovery in and out. And he came up with a ruling.

To throw that out would be a waste of tremendous judicial --

THE COURT:  Well, there was a motion to reconsider that ruling, right?

MR. MacALLISTER:  Yes, Your Honor.

THE COURT:  And what happened to that?

MR. MacALLISTER:  The motion to reconsider was fully briefed.  Then you granted the defendants' motion for reconsideration on the basis of personal jurisdiction and dismissed the case.  You also ruled on --

THE COURT:  So the motion to reconsider was never ruled on?

MR. MacALLISTER:  Never ruled on, and then technically, you found it moot because of the dismissal.

THE COURT:  Okay.  But now that we are back talking about discovery, how does one object to what Judge Facciola did, by moving to reconsider before a magistrate judge or by objecting to the order before me or is either choice available?

MR. MacALLISTER:  Well, defendants in their joint status report suggested that some of the issues they have raised perhaps would be suitable under Rule 72, so we think that would be a wise way to proceed.

THE COURT:  Let me say this.  I don't do discovery anymore, so I think the most logical thing is to send this back to the magistrate judge to consider the motion to reconsider, to consider whether fact discovery is closed, to

consider whether the requests that they are making are, as you say -- I mean whether the request that you were making is too broad or not.

And the idea -- Mr. Berger says it's a fishing expedition and 50,000 files involved.  I don't know the answer to whether that's true or -- I don't know how many files are involved and whether, if they seem like a lot, they can be narrowed in some way.  But managing this kind of a discovery -- set of discovery problems, I think, in my experience, is better for a magistrate judge than for me. It's something that I would have said even when I was an active judge, not just because I'm a senior judge.

MR. MacALLISTER:  That makes sense to us, Your Honor.

THE COURT:  There may be a lot of work involved.  And the best way sometimes to resolve these discovery disputes is not in a setting like this, but to sit down around a table with the magistrate judge or in some cases a special master.  But we don't need a special master.  We have four terrific magistrate judges, all of whom have had extensive civil experience in complicated cases.  So that would be my suggestion.

MR. MacALLISTER:  That makes sense, Your Honor. After all, you assigned the case to Judge Facciola for discovery last time around.  Makes sense to finish off the fact discovery that way this time as well.

THE COURT: I agree that whichever magistrate judge gets it will have a bit of a learning curve and will have to dive in. I can't help the fact that Judge Facciola retired and isn't available to do this.

MR. MacALLISTER: Unfortunately.

THE COURT: Although, he might accept an appointment as a special master.

MR. MacALLISTER: That would be great. We think throwing out his order would be a waste of valuable judge making.

And then my opposing counsel talked about how Rule 56(d) protects us. Well, but the way that discovery usually proceeds is you have fact discovery, then you have expert discovery, and then they can make their motion for summary judgment. That's the way the rules are structured. Rule 56(d) puts the burdens on the plaintiffs to articulate a need for expert discovery. We think that discovery should proceed as normal.

And the question of the BBC, since -- as Your Honor made all the pending motions moot, we think that wipes out all the BBC issues. And we do not intend to pursue any BBC discovery. We can make that representation here. That takes care of that issue.

The one remaining issue is, in fact, discovery, Judge Facciola's order.

And the question of experts, opposing counsel was disparaging the expert in the Gilmore case; however, we don't have that expert.  The expert that is in our case is Matt Levitt.  He was recently pronounced an expert in the 9/11 case.  And I can get the exact words for you.  The Court said, this is Magistrate Judge Sarah Netburn, said Levitt's overall qualifications are difficult to dispute.

And the defendants themselves said they allege that his expertise pertains to the Palestinian-Israeli conflict, Hamas and Hezbollah and state sponsors of terrorism like Iran.  So I think there's no question that you will see that he's an expert that stands up to all the requirements of the rule as well as our other experts.

A    But we would let the Court know who they are when we file the expert disclosure with reports, as the rules set forth.  So that is why we propose proceeding in this manner.

And I think that those are the points I wanted to make in response to opposing counsel.  Thank you.

THE COURT:  Thank you.

MR. BERGER:  May I just be heard briefly?

MR. MacALLISTER:  And if you have any other questions, I'm --

THE COURT:  Yes.

MR. BERGER:  Just a procedure to suggest.  I don't think this is a time to be angling for procedural advantage.

The fact is we don't think Judge Facciola's order was correct, but the easiest way to deal with it is just vacate it and let's get a fresh look, rather than being constrained by what I am sure they are going to argue, well, it's a motion for reconsideration, we all know the standard formulation, there's got to be something new, just not another spin on the same ball.  It's 12 years old.  It ought to be vacated.  It ought to be sent back for de novo consideration by the magistrate judge.  That's our suggestion there.

I'm glad he said Matt Levitt, by the way, when he was about to read words.  I thought he was going to say usual suspects.  Matt Levitt has been around the block in a lot of these cases.  And the fact that a judge dealing with a 9/11 attack says something and that he knows how to spell Palestine, that has nothing to do with the second intifada.  So that's precisely why we think that's an issue that's going to have to be weighed in the context of 56(d)

Your Honor, to think about expert discovery, if Your Honor is going to vacate ECF 226 and send it to a magistrate for new consideration of those issues, that seems to me is a good day's work and that gets the case advanced towards then deciding what, if any, fact discovery remains.  And then we can see where we stand if there's a Rule 72 objection to that order.

MR. MacALLISTER:  One last point, Your Honor.  I would just say if defense thinks that the ruling should be vacated, they can file a motion to vacate it.  But there's no reason to vacate that ruling.

Thank you, Your Honor.

THE COURT:  Anything else?

Okay.  So it probably won't happen today, but I'm going to send this to a magistrate judge who will consider this discussion, debate, about docket 226 before I do that.

Anything else?

MR. BERGER:  Thank you for making time for us on a Friday afternoon, Your Honor.

MR. MacALLISTER:  Thank you.

THE COURT:  Thank you.  Have a good holiday, everybody.

(The hearing concluded at 2:38 p.m.)

- - -

C E R T I F I C A T E


I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.


12/19/25                    s/ Tammy Nestor
                            Tammy Nestor, RMR, CRR
                            Official Court Reporter
                            333 Constitution Avenue NW
                            Washington, D.C. 20001
                            tammy_nestor@dcd.uscourts.gov